FILED
2009 JUL 13 PM 1:21
CLERK U.S. DISTRICT COURT
CENTRAL DIST. O CALIF.
LOS ANGELES
BY _____

1  ZIMMERMAN REED P.L.L.P.
   HART L. ROBINOVITCH (*Pro Hac Vice* Pending)
2  Email: Hart.Robinovitch@zimmreed.com
   14646 N. Kierland Blvd., Suite 145
3  Scottsdale, AZ 85254
   (480) 348-6400
4  (480) 348-6415 Facsimile

5  RIDOUT & LYON, LLP
   CHRISTOPHER P. RIDOUT (State Bar No. 143931)
6  Email: c.ridout@ridoutlyonlaw.com
   DEVON M. LYON (State Bar No. 218293)
7  Email: d.lyon@ridoutlyonlaw.com
   555 E. Ocean Blvd., Ste. 500
8  Long Beach, California  90802
   (562) 216-7380
9  (562) 216-7385 Fax

10 (Additional counsel listed below)

11 **Attorney for Plaintiffs and the Class**

12

13              UNITED STATES DISTRICT COURT

14           FOR THE CENTRAL DISTRICT OF CALIFORNIA

15

16 JANE DOE 1 AND JANE DOE 2,         Case No. EDCV09-1316 VAP (DTBx)
   individually, and on behalf of all others
17 similarly situated,                  PLAINTIFFS' NOTICE
                                        OF MOTION AND MOTION TO
18              Plaintiffs,             PROCEED ANONYMOUSLY
                                        AND REQUEST TO FILE
19      v.                              DECLARATIONS UNDER SEAL,
                                        MEMORANDUM OF POINTS
20 SPEARMINT RHINO COMPANIES           AND AUTHORITIES
   WORLDWIDE, INC., SPEARMINT
21 RHINO CONSULTING WORLDWIDE,         Date:  8/10/09
   INC., K-KEL, INC., AND OXNARD       Time:  9:00 AM
22 HOSPITALITY SERVICES, LP.           Court: Riverside, 2

23              Defendants.

24                                                          COPY

25 TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

26      PLEASE TAKE NOTICE that on a date to be determined upon assignment of

27 this case to a Judge, in a courtroom to be determined upon assignment of this case to

28

MOTION TO PROCEED ANONYMOUSLY
42407

1  a Judge, and before Judge of the United States District Court for the Central District
2  of California to be determined upon assignment of this case, Plaintiffs Doe 1 and
3  Doe 2 will move this Court for an Order permitting them to proceed anonymously in
4  this matter using only pseudonyms and file under seal the declarations attached to
5  this motion disclosing their true identities. Upon notification by the Court of the
6  assignment of this case, Plaintiffs Doe 1 and Doe 2 shall re-notice this Motion to set
7  forth the hearing date, time, and location, and shall serve an amended notice of this
8  Motion upon Defendants, together with supporting declarations of Doe 1 and Doe 2.
9       This Motion is based on this Notice of Motion and Motion to Proceed
10 Anonymously, the supporting Memorandum of Points and Authorities, the
11 Declarations of Doe 1 and Doe 2 to be filed under seal when the motion is re-
12 noticed, all pleadings and records in this matter, and any other arguments and
13 evidence presented to this Court at or before the hearing on this motion.

RIDOUT & LYON, LLP

Dated: _____    _____
                             Christopher P. Ridout, CA Bar No. 143931
                             Devon M. Lyon CA Bar No. 218293
                             555 E. Ocean Boulevard, Suite 500
                             Long Beach, CA 90802
                             (562) 216-7380 Telephone
                             (562) 216-7385 Fax

**Attorney for Plaintiffs and the Class**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Pursuant to the principals set forth in *Does I through XXIII v. Advanced Textile Corp.*, 214 F.3d 1058 (9th Cir. 2000), Plaintiffs file this action using fictitious names and move that this Court allow them to proceed anonymously because: (a) they wish to preserve their rights to privacy; (b) there is a significant social stigma attached to the Plaintiffs' occupation as an exotic dancers; (c) there is an inherent amount of physical danger associated with Plaintiffs' profession and they fear that disclosure of their legal names and addresses may subject to them to risk of injury by current and former patrons; and (d) in addition to the fear of retaliation by the Defendants, they would be hesitant to maintain this action enforcing fundamental employment rights if their names were to be forever associated with the Defendants.

Applying the controlling the case law, an anonymous proceeding is appropriate in this matter involving the Defendants' ongoing and willful violation of state and federal labor laws in exotic dance nightclub industry, litigated by two women that are unlikely to proceed in the prosecution of this matter if public disclosure of their true identities is required.

## II. ANONYMOUS PROCEEDINGS ARE APPROPRIATE IN THIS MATTER

While unusual, there is strong precedent for this Court to allow Jane Doe 1 and Jane Doe 2 to proceed anonymously in this matter when nondisclosure "is necessary . . . to protect a person a person from harassment, injury, ridicule or personal embarrassment."[1] In the past, many courts, including the U.S. Supreme Court, have allowed parties to proceed anonymously in cases where sensitive issues like abortion or birth control are involved or where the privacy and safety of the

---

[1] *United States v. Doe*, 655 F.2d 920, 922 n. 1 (9th Cir. 1981)

MOTION TO PROCEED ANONYMOUSLY

3

plaintiffs are at stake.² The Ninth Circuit explicitly permitted the use of anonymous proceedings in this circuit, where appropriate, in *Doe v. Advanced Textile, supra*, holding "that where, as here, the named plaintiffs in a Fair Labor Standards Act collective action demonstrate that they have an objectively reasonable fear of extraordinarily severe retaliation, they may conceal their identities from defendants at least until the district court rules on plaintiffs' motion for court-ordered notice to potential class members, and potential class members have been given an opportunity to join the suit."

### III. DOES 1 AND 2 SATISFY THE CRITERIA SET FORTH IN *ADVANCED TEXTILE*

In addition to the standard considerations of privacy, the Court of Appeals for the Ninth Circuit in *Advanced Textile* established the following factors to be considered in using party anonymity to shield against retaliation:

1. the severity of the threatened harm;
2. the reasonableness of anonymous party's fears; and
3. the anonymous party's vulnerability to such retaliation.

In allowing plaintiffs to proceed anonymously, the Court must also weigh any perceived benefit to the plaintiffs with any unfairness caused to the defendants and the public's interest in open judicial proceedings.³ As discussed below, all of these factors weigh in favor of the plaintiffs' request.

#### A. THE THREATENED HARM

As previously noted, plaintiffs move to proceed anonymously because: (a) they wish to preserve their rights to privacy; (b) there is a significant social stigma attached to the Plaintiffs' occupation as an exotic dancers; (c) there is an inherent amount of physical danger associated with Plaintiffs' profession and they fear that

---

² *See, for example, Roe v. Wade*, 410 U.S. 113 (1973); *Doe v. Bolton*, 410 U.S. 179 (1973); *Poe v. Ullman*, 367 U.S. 497 (1961).

³ *Advanced Textiles, supra*, at 1068.

1  disclosure of their legal names and addresses may subject to them to risk of injury by
2  current and former patrons; and (d) in addition to the fear of retaliation by the
3  Defendants, they would be hesitant to maintain this action enforcing fundamental
4  employment rights if her name were to be forever associated with the Defendants.

5  Exotic dancers and the adult nightclub industry are generally viewed
6  unfavorably by the public at large. Unlike other occupations that are generally
7  frowned upon or joked about (such as attorneys, for example) the social stigma
8  associated with exotic dancers and their industry intertwines general societal mores
9  relating to sexuality and its many facets.

10  Societal attitudes and views on exotic dancing is almost a matter of judicial
11  notice. A few years ago, *Sports Illustrated* and *Reuters* covered a story where a
12  coach removed a college sophomore from his track team due to her part-time
13  occupation as an exotic dancer (after being discovered by the college baseball team,
14  who were not punished for frequenting the adult nightclub).[4] He justified his actions
15  by declaring "her decision to remain an exotic dancer would detract from the image
16  and accomplishments of her teammates."[5] Foley notes that the coach's assumption
17  "that is nothing wrong with seeing an exotic dancer but something unacceptable
18  about being one, is a familiar anomaly in the American attitude toward stripping."[6]
19  Professors Skipper and Foley found that:

> In a survey of 75 college students, we discovered a negative public image of strippers. In answer to the question, "What type of women do you think make their living by stripping?" the following words and phrases were representative of the replies: "hard women," "dumb," "stupid," "uneducated," "lower class," "can't do anything else for a living," "oversexed," "immoral," and "prostitutes."
>
> Our data leaves little doubt that the strippers feel the impact of negative public sentiment. Almost every girl in our sample firmly believe that

---

[4] Brenda Foley, *Naked politics*, NWSA [NATIONAL WOMEN'S STUDIES ASSOCIATION] JOURNAL, Vol. 14, Issue 3 (Summer 2002), at 1-17.
[5] *Id.*
[6] *Id.*

most people's conception of stripping was that it was dirty and immoral.[7]

While exotic dancers in the abstract endure such a negative image, actual exotic dancers are able to avoid that social stigma by creating an alter ego in the form of a "stage name" or pseudonym, working at an adult nightclub in another city, and otherwise maintaining their personal privacy. To force them to forego such protections and divulge their true identity for the purposes of this litigation, especially in the class context, seems counterintuitive. Although the public's perception may affect other aspects of the Plaintiffs' lives, it should not cost them their enjoyment of fundamental employment rights.

Courts have consistently ruled that anonymous proceedings are appropriate when dealing with cases that involve a sexually-related undertone. Whether it involves pregnancy, birth control, abortion, sexual orientation, gender identity, or criminal sexual victimization, the judiciary has protected the privacy and dignity of individuals who, despite their status in society's eyes, choose to enforce fundamental rights for the betterment of themselves and others.[8]

In *N.W. Enterprises, Inc. v. City of Houston*, 352 F.3d 162 (5th Cir. 2003), the Fifth Circuit specifically addressed the reasonableness of adult entertainers' need to remain anonymous in judicial proceedings for safety reasons:

> Adult entertainers may anonymously (or through stage names) put their bodies on display in front of strangers, but these actions do not imply a willingness to publicize the entertainers' personal information through which customers or other private persons may trace the entertainers to their homes or otherwise invade their privacy without permission. The

---

[7] James K. Skipper, Jr. and Charles H. McCaghy, *Stripteasers: The Anatomy and Career Contigencies of a Deviant Occupation*, SOCIAL PROBLEMS, Vol. 17, No. 3 (Winter, 1970), at 391-405.

[8] *See, for example, Doe v. Deschamps*, 64 F.R.D. 652, 653 (D. Mont. 1974) (pregnancy); *Poe v. Ullman*, 367 U.S. 497 (1961) (birth control); *Roe v. Wade*, 410 U.S. 113 (1973) (abortion); *Doe v. United Services Life Ins. Co.*, 123 F.R.D. 437 (S.D.N.Y. 1988) (sexual orientation); *Doe v. Blue Cross & Blue Shield*, 794 F. Supp. 72 (D.R.I. 1992) (gender identity); and *United States EEOC v. ABM Indus.*, 2008 U.S. Dist. LEXIS 73221 (E.D. Cal. July 24, 2008) (identity of rape victim).

fact that an entertainer is willing to dance publicly or a manager is willing to be employed in a sexually oriented business that deals with the public, or the fact that a determined harasser or stalker might conceivably follow an entertainer home after she leaves work, does not mean that adult entertainers and managers have voluntarily sacrificed all privacy rights and need for safety protections.

As the case above illustrates, exotic dancers, including the Plaintiffs, face a real danger that patrons might attempt to interact with them at their home or otherwise engage in some form stalking or inappropriate behavior. The mere presence of "bouncers" or security personnel at Defendants' and other adult nightclubs support the proposition that their clientele are at risk of committing violent or inappropriate behavior and often desire to interact with dancers in ways that are not mutual. Exotic dancers are frequently escorted to their automobiles when exiting adult nightclubs to protect against such dangers. The same is true here. If Plaintiffs were forced to disclose their legal names and other personally-identifying information, their patrons would have the opportunity to locate them for any number of insidious reasons. This harm, on its face, is reasonable given the occupation and industry at issue. As individual women in this particular industry, the plaintiffs are clearly vulnerable to this type of harm; the use of security personnel at Defendants' clubs and their nightly escorts would otherwise be superfluous. As noted by the Court in *Advanced Textiles*, "plaintiffs are not required to prove that the defendants intend to carry out the threatened retaliation."[9] The use of pseudonyms in this matter "may prevent the dissemination of information [putting them in harm]"[10] and otherwise reduce the risk of danger for the Plaintiffs.

In addition to physical violence, there is also a real danger that, without the proper protective order, Defendants will retaliate against Plaintiffs by contacting current and prospective employers, either directly or through industry groups and

---

[9] *Advanced Textiles*, at 1071.
[10] *U.S. v. Doe*, 655 F.2d 920, 922 (9th Cir. 1980).

networking events[11], in order to "blacklist" them from working in the adult nightclub industry. Further, upon information and belief, it is Defendants' policy to retaliate against dancers who assert their statutory rights to be recognized as employees by, *inter alia*, imposing financial penalties, attempting to confiscate their tip income, and/or terminating them. Certainly, the Plaintiffs face "greater threats of retaliation than the typical FLSA plaintiff."[12] Here, as in *Advanced Textile*, Plaintiffs "are more effectively protected from retaliation by concealing their identities than by relying on the deterrent effect of post hoc remedies under FLSA's anti-retaliation provision, 29 U.S.C. §215(a)(3)."[13] While the risk of retaliation by the Defendants may be reduced through an appropriate protective order or by the addition of class members (i.e., "safety in numbers"), proceeding anonymously is warranted in this early stage of litigation.[14]

### B. PREJUDICE TO DEFENDANTS

There is no prejudice to Defendants if the Plaintiffs file this action under a fictitious name and proceed anonymously. In the ordinary course of business, Defendants themselves, identify the exotic dancers they employ through stage names

---

[11] For example, there is the Association of Club Executives ("ACE") which is the adult nightclubs' trade association, whose mission, as stated on their website, is "[t]o provide and share information concerning the political and legal status of the adult nightclub industry and to further provide a platform for the strategic planning of initiatives to combat negative challenges", available on their website at <http://www.acenational.org/>; there is also the "Annual Gentlemen's Club Expo" held in Las Vegas, NV by Exotic Dancer Publications which features a "Legal Cases & Legislation Recap" on August 26, 2009, schedule available online at <http://www.edpublications.net/index.php?option=com_content&view=article&id=50&Itemid=106>; lastly, there aren't so many adult nightclubs in Southern California and the Las Vegas metropolitan area that it would be impractical to contact each directly.

[12] *Advanced Textile, supra*, at 1070-71.

[13] *Id*, at 1071.

[14] "In addition, plaintiffs' vulnerability to retaliation is enhanced at this stage of the litigation because they are twenty-three individuals among an estimated workforce of 25,000. We acknowledge that plaintiffs' vulnerability may lessen as their co-workers join the suit, providing them with safety in numbers. Cf. Engineered Building Products, Inc., 162 N.L.R.B. 649, 1967 WL 18948, (1967) (stating that 'when virtually every employee is wearing a union button the danger to each of them is greatly lessened'); The Borden Co., 157 N.L.R.B. 1100, 1966 WL 18212, at (1966) (finding that employer deprived employees of 'safety in numbers .... by calling attention to the small number of union adherents')." *Id*, at 1072.

and employee codes in the point of sale (POS) systems; it is Plaintiffs' understanding that adult nightclubs, including some of the Defendants, routinely fail to verify and/or record exotic dancers' legal names and photo identification. Lastly, Defendants will be made aware of Plaintiffs' identities in a confidential manner as required by the Court and subject to an appropriate protective order, so as to satisfy any due process concerns. By doing this Defendants are in no manner prejudiced if Plaintiffs proceed anonymously: Defendants will be promptly informed of Plaintiffs true identifies allowing them to prepare any defenses they may have for trial without delay. All Plaintiffs seek is to remain anonymous to members of the public having no direct interest in this proceeding.

### C. PUBLIC INTEREST

The public interest will not be harmed by allowing the Plaintiffs to proceed anonymously. The masking of the Plaintiffs' legal names will in no way affect the public's ability to monitor this matter and scrutinize the legal issues involved. In *Advanced Textile*, the Court noted that in "FLSA actions brought by the Secretary of Labor, the 'informant's privilege' may be used to conceal names of employees who precipitated the suit by filing complaints with the Department of Labor."[15] Here, as in *Advanced Textile*, the Plaintiffs are merely attempting to obtain the same result in a private cause of action.

Similarly, the public has an interest in seeing this matter decided on the merits. Employee suits to enforce their statutory rights and to challenge practices which violate public policy benefit the general public.[16] If the Plaintiffs are not allowed to proceed anonymously, they are unlikely to proceed at all, which would ultimately harm the public interest.

---

[15] *Advanced Textile, supra*, quoting *Usery v. Ritter*, 547 F.2d 528, 531 (10th Cir. 1977)
[16] *Id*, citing *Wirtz v. C & P Shoe Corp.*, 336 F.2d 21, 30 (5th Cir. 1964).

## IV. THE DECLARATIONS OF DOE 1 AND 2 IN SUPPORT OF THIS MOTION SHOULD BE FILED UNDER SEAL

For the reasons set forth in the memorandum above, good cause exists to protect the identity of Plaintiffs Doe 1 and 2 in this case. Accordingly, Plaintiffs respectfully request that this Court file under seal the declarations that they will be filing in support of their motion to proceed anonymously. *CA-CD Civil L.R. 79-5.1.*

## V. CONCLUSION

Based upon the foregoing, Plaintiffs Doe 1 and Doe 2 respectfully request that this Court enter an Order allowing them to proceed anonymously in this matter, using only pseudonyms, and further order that the declarations to be filed in support of this motion be filed under seal.

Dated: July 13, 2009

RIDOUT & LYON, LLP

(Christopher P. Ridout, CA Bar No. 143931
Devon M. Lyon CA Bar No. 218293
555 E. Ocean Boulevard, Suite 500
Long Beach, CA 90802
(562) 216-7380 Telephone
(562) 216-7385 Fax

**Attorney for Plaintiffs and the Class**

*Of Counsel:*

(Motions to be Admitted *Pro Hac Vice* to be Filed)

Timothy J. Becker, MN Bar No. 256663
ZIMMERMAN REED, P.L.L.P.
651 Nicollet Mall, Suite 501
Minneapolis, MN 55402
(612) 341-0400
(612) 341-0844 Facsimile

Caleb LH Marker, MI Bar No. P70963
CONSUMER LAW CENTER, PLLC
P.O. Box 1110
408 Wildwood Avenue
Jackson, Michigan 49204-1110
(517) 998-7400
(888) 490-7755 Facsimile

| | |
|---|---|
| 1 | Jason J. Thompson, MI Bar No. P47184 |
| 2 | SOMMERS SCHWARTZ PC<br>2000 Town Center, Suite 1000<br>Southfield, MI  48075 |
| 3 | (248) 355-0300<br>(248) 936-2143 Facsimile |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

MOTION TO PROCEED ANONYMOUSLY