**PRIORITY SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES -- GENERAL</u>

Case No.   EDCV 09-1316-VAP (DTBx)                                  Date:  February 23, 2010

Title:   TRACY DAWN TRAUTH, individually, and on behalf of all others similarly situated *-v-* SPEARMINT RHINO COMPANIES WORLDWIDE, INC., SPEARMINT RHINO CONSULTING WORLDWIDE, INC., AND OXNARD HOSPITALITY SERVICES, LP.
================================================================
PRESENT:       HONORABLE VIRGINIA A. PHILLIPS, U.S. DISTRICT JUDGE

      Marva Dillard                                                       None Present
      Courtroom Deputy                                       Court Reporter

ATTORNEYS PRESENT FOR                             ATTORNEYS PRESENT FOR
PLAINTIFFS:                                                       DEFENDANTS:

      None                                                               None

PROCEEDINGS:     MINUTE ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND TO STRIKE (IN CHAMBERS)

    Defendants' Motion to Dismiss and to Strike came before the Court for hearing on February 8, 2010.  After reviewing and considering all papers filed in support of, and in opposition to, the Motion, as well as the arguments advanced by counsel at the hearing, the Court DENIES the Motion to Dismiss and to Strike.

EDCV 09-1316-VAP (DTBx)
TRACY DAWN TRAUTH, et al. v. SPEARMINT RHINO COMPANIES WORLDWIDE, INC., et al.
MINUTE ORDER of February 23, 2010

# I. BACKGROUND

## A. Procedural History

On July 13, 2009, Plaintiffs Jane Doe 1 and Jane Doe 2 filed a putative class action against Defendants Spearmint Rhino Companies Worldwide, Inc. ("Spearmint Rhino Co."), Spearmint Rhino Consulting Worldwide, Inc. ("Spearmint Rhino Consulting"), K-Kel, Inc. ("K-Kel"), and Oxnard Hospitality Services, L.P. ("Oxnard").

On July 13, 2009, Plaintiffs filed a "Motion to Proceed Anonymously and Request to File Declarations Under Seal," which the Court denied.  On August 13, 2009, Plaintiffs filed a "Motion for Reconsideration of the Court's July 29, 2009 Order Denying Plaintiffs' Motion to Proceed Anonymously" and a supporting declaration. On September 15, 2009, Plaintiffs withdrew their Motion for Reconsideration.  On October 7, 2009, Plaintiff D. Trauth filed a First Amended Complaint against Defendants Spearmint Rhino Co., Spearmint Rhino Consulting, and Oxnard (collectively, "Defendants").  The FAC no longer named Defendant K-Kel, and Plaintiffs Jane Doe I and Jane Doe 2.  On November 20, 2009, Plaintiff Tracy Dawn Trauth filed a Second Amended Complaint ("SAC").

Plaintiff alleges four claims against Defendants: (1) violation of the Fair Labor Standards Act ("FLSA") for failure to pay statutory minimum wages; (2) violation of the California Labor Code for failure to pay statutory minimum wages; (3) violation of the California Labor Code for unlawful tip splitting and acceptance of other payments from employees; and (4) violation of California Business and Profession Code § 17200, the Unfair Competition Act ("UCL").

On December 10, 2009, Defendants filed a "Motion to Dismiss the Second Amended Complaint against Two Defendants and to Strike Allegations in the Second Amended Complaint regarding Entities Not Named as Defendants" ("Motion"), with exhibits 1 through 9.  On January 19, 2009, Plaintiff filed Opposition. On January 25, 2009, Defendant filed a Reply.

## B.   Plaintiff's Factual Allegations

EDCV 09-1316-VAP (DTBx)
TRACY DAWN TRAUTH, et al. v. SPEARMINT RHINO COMPANIES WORLDWIDE, INC., et al.
MINUTE ORDER of February 23, 2010

    Plaintiff alleges she worked as a dancer at Spearmint Rhino's Oxnard location ("Oxnard") on at least two occasions -- August 18, 2005 and July 13, 2006. (SAC ¶ 6.) Plaintiff alleges she was "(1) misclassified by Defendants as an independent contractor and as a result, was not paid any wages (and provided other benefits and rights) which she was entitled to as an employee; [and] (2) required to split tip income with Defendants and their employees . . . ." (Id.)

    Plaintiff brings the action individually and on behalf of the following class: "All individuals, who at any time from the date four years prior to the date the Complaint was originally filed continuing through the present, worked as . . . dancer[s] at any of the Spearmint Rhino Nightclubs in the state of California, but were designated as . . . independent contractor[s], and therefore, not paid any minimum wages" (hereinafter, the "Class"). (SAC ¶ 66.) The Class contains the following subclass: "All individuals, who at any time from the date four years prior to the date the Complaint was originally filed continuing through the present, worked as . . . dancer[s] at Spearmint Rhino - Oxnard, but were designated as . . . independent contractor[s], and therefore, not paid any minimum wages" (hereinafter, the "Subclass"). (Id.)

    Plaintiff brings her claims against three Defendants: Spearmint Rhino Co., Spearmint Rhino Consulting, and Oxnard. She alleges that Defendants "are business entities that jointly employ and control the work of members of the Class that work or have worked at the various 'Spearmint Rhino Gentlemen's Clubs' located in California[,] [s]pecifically, . . . in at least the following cities: City of Industry, CA; Los Angeles, CA; Oxnard, CA; Rialto, CA; Santa Barbara, CA; Santa Maria, CA; Torrance, CA; and Van Nuys, CA" (collectively, the "Spearmint Rhino Nightclubs" or the "Nightclubs"). (SAC ¶ 7.)

    Plaintiff alleges that Oxnard, d.b.a. Spearmint Rhino Oxnard, "maintains ownership, recruitment, management, and/or operational interests in at least one nightclub featuring exotic dancing by Class members, including the Spearmint Rhino Gentlemen's Club located at 630 Maulhardt Avenue, Oxnard, CA 93030 where members of the Class have been and or currently employed." (SAC ¶ 10.)

    Plaintiff alleges the "officers and employees of [Spearmint Rhino Co. and Spearmint Rhino Consulting] are the <u>de facto</u> senior managers of all the Spearmint

EDCV 09-1316-VAP (DTBx)
TRACY DAWN TRAUTH, et al. v. SPEARMINT RHINO COMPANIES WORLDWIDE, INC., et al.
MINUTE ORDER of February 23, 2010

Rhino Nightclubs in California, including Spearmint Rhino - Oxnard."  (Id.) Furthermore, Spearmint Rhino Co. and Spearmint Rhino Consulting "jointly employed all . . . dancers working the Spearmint Rhino Nightclubs, managed, directed and controlled the operations in each . . ., and directed the common employment policies . . . ."  (SAC ¶ 13.)  Spearmint Rhino Co. and Spearmint Rhino Consulting and their principals "created the common business model employed at each Spearmint Rhino Nightclub regarding dancer classification and tip splitting and require that it continue[s] to be employed."  (Id.)

Plaintiff further alleges that Spearmint Rhino Co. and Spearmint Rhino Consulting "either directly or indirectly own, manage, direct, operate, and control the business operations at all the 'Spearmint Rhino Nightclubs' located in California and listed on the www.spearmintrhino.com website. . . ."  (SAC ¶ 11.)  Each of the Spearmint Rhino Nightclubs "delegates its senior management functions to [Spearmint Rhino Co. and Spearmint Rhino Consulting]."  (SAC ¶ 12.)

To support these allegations, Plaintiff cites a January 31, 2008 "Press Release," allegedly issued by Spearmint Rhino Consulting, which states, "Brett Schuster has been promoted to Senior District Manager of Spearmint Rhino.  Along with overseeing management and operations <u>for each club</u>, Brett will also supervise the other two Spearmint Rhino District Managers.  With 17 Spearmint Rhino Gentlemen's Club locations in the United States, executives rely heavily on the District Managers to oversee <u>all aspects of operations for all locations</u>."  (SAC ¶ 12 (emphasis added).)  Plaintiff also refers to a video posted on the Spearmint Rhino website, which allegedly states, "There is no innate cost to [dancer income stream]; the dancers don't receive a payroll or a salary . . . .  Those offices, in turn, report to the United States to the Los Angeles County world headquarters."  (SAC ¶ 15.)

## II. LEGAL STANDARDS
A.   **Motion to Dismiss**
Rule 12(b)(6) allows a party to bring a motion to dismiss for failure to state a

EDCV 09-1316-VAP (DTBx)
TRACY DAWN TRAUTH, et al. v. SPEARMINT RHINO COMPANIES WORLDWIDE, INC., et al.
MINUTE ORDER of February 23, 2010

claim upon which relief can be granted.  As a general matter, the Federal Rules require only that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Conley v. Gibson, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In addition, the Court must accept all material allegations in the complaint -- as well as any reasonable inferences to be drawn from them -- as true.  See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005).

   "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic, 550 U.S. at 555 (citations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  Id.

   In other words, the allegations must be plausible on the face of the complaint.  See Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Id.  (citations and internal quotations omitted).

   Although the scope of review is limited to the contents of the complaint, the Court may also consider exhibits submitted with the complaint, Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990), and "take judicial notice of matters of public record outside the pleadings," Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988).

**B.   Motion to Strike**
   Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  The Ninth Circuit has held that "[t]he function of a 12(f) motion to strike

EDCV 09-1316-VAP (DTBx)
TRACY DAWN TRAUTH, et al. v. SPEARMINT RHINO COMPANIES WORLDWIDE, INC., et al.
MINUTE ORDER of February 23, 2010

is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993) (quotations and citation omitted).

"Motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." Neilson v. Union Bank of Cal., N.A., 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003) (citations omitted). "Given their disfavored status, courts often require 'a showing of prejudice by the moving party' before granting the requested relief." Id. (quoting Sec. & Exch. Comm'n v. Sands, 902 F. Supp. 1149, 1166 (C.D. Cal. 1995)).

In determining whether to grant a motion to strike, a district court views the pleadings in the light most favorable to the non-moving party. California Dep't of Toxic Substances Control v. Alco Pac., Inc., 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002) (citation omitted). Whether to grant a motion to strike is within the sound discretion of the district court. Id., citing Fantasy Inc., 984 F.2d at 1528.

### III.  DISCUSSION
**A.  Motion to Dismiss**

Relying on the Ninth Circuit decision Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677 (9th Cir. 2009), which analyzes the meaning of the term "employer" under California law, Defendants argue the Court should dismiss the SAC against Spearmint Rhino Co. and Spearmint Rhino Consulting because Plaintiff fails to plead facts sufficient to support her allegation that they are "joint employers."  (Mot. at 6.)

Plaintiff, on the other hand, relies on the FLSA's broader definition of "employer" to argue Defendants are "joint employers."  (Opp'n at 8.)  In other words, Defendants rely on state law, and Plaintiff cites federal law, to support their respective contentions.

Plaintiff brings her first claim under the FLSA; her second and third claims

EDCV 09-1316-VAP (DTBx)
TRACY DAWN TRAUTH, et al. v. SPEARMINT RHINO COMPANIES WORLDWIDE, INC., et al.
MINUTE ORDER of February 23, 2010

under the California Labor Code; and her fourth claim based on violations of both the FLSA and California Labor Code. Neither party, therefore, addresses the distinct definitions of "employer" under federal and state labor law, which is necessary to determine whether or not Plaintiff states a claim.

### i. Definition of "Employer" Under the FLSA

Under the FLSA, the term "employer" "includes any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). The term "employer" is not to be construed in its common-law sense. Mednick v. Albert Enterprises, Inc., 508 F.2d 297, 299 (5th Cir. 1975), citing Rutherford Food Corp. v. McComb, 331 U.S. 722 (1947). "[T]he term . . . is not limited to the narrow conception of principal and agent, or master and servant, but is given a broad meaning so as to carry out the declared purpose of the [FLSA]." Walling v. Atlantic Greyhound Corp., 61 F. Supp. 992 (E.D.S.C. 1945).

"The Ninth Circuit has stated that the concept of joint employment should be defined expansively under the FLSA." Maddock v. KB Homes, Inc., 631 F. Supp. 2d 1226, 1232 (C.D. Cal. 2007), citing Torres-Lopez v. May, 111 F.3d 633, 639 (9th Cir. 1997). On the other hand, "[t]aken literally and applied in this context [a too broadly inclusive definition of 'employer'] would make any supervisory employee, even those without any control over the corporation's payroll, personally liable for the unpaid or deficient wages of other employees. It makes more sense . . . to interpret the language as intended to prevent employers from shielding themselves from responsibility for the acts of their agents." Maddock, 631 F. Supp. 2d at 1232-33, citing Baird v. Kessler, 172 F. Supp. 2d 1305, 1311 (E.D. Cal. 2001) (quoting Donovan v. Agnew, 712 F.2d 1509, 1513 (1st Cir. 1983)).

"The determination of whether an employer-employee relationship exists does not depend on 'isolated factors but rather upon the circumstances of the whole activity.'" Bonnette v. Cal. Health and Welfare Agency, 704 F.2d 1465, 1469 (9th Cir. 1983) (quoting Rutherford, 331 U.S. at 730), disapproved of on other grounds by Garcia v. San Antonio Metro. Transit Auth., 469 U.S. 528 (1985). The Supreme Court has stated that "the touchstone is 'economic reality.'" Id. (quoting Goldberg v. Whitaker House Coop., Inc., 366 U.S. 28, 33 (1961)).

EDCV 09-1316-VAP (DTBx)
TRACY DAWN TRAUTH, et al. v. SPEARMINT RHINO COMPANIES WORLDWIDE, INC., et al.
MINUTE ORDER of February 23, 2010

    To "assist district courts in divining the existence of an employer-employee relationship, the Ninth Circuit has established what it refers to as 'a useful framework.'" Baird, 172 F. Supp. 2d at 1310, citing Bonnette, 704 F.2d at 1470. Although not "etched in stone," the Ninth Circuit has stated that courts should examine whether the alleged employer: (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Bonnette, 704 F.2d at 1470. These factors are intended to guide a court's analysis, but the ultimate determination must be based "upon the circumstances of the whole activity." Rutherford, 331 U.S. at 730; Bonnette, 704 F.2d at 1470 ("The four factors . . . provide a useful framework for analysis . . . but they are not etched in stone and will not be blindly applied.").

    The FLSA's definition of "employer" contemplates the possibility of simultaneous employers, each of which may be liable as an employer. See 29 C.F.R. § 791.2(a). Thus, a person may be an employee of two or more employers at the same time. 29 C.F.R. § 791.2(a). If an employee performs work that simultaneously benefits two or more employers, a joint employment relationship may exist. For example, a joint employment relationship exists where: (1) there is an arrangement between the employers to share the employee's services; (2) one employer acts directly or indirectly in the interest of the other employer in relation to the employee; (3) the employers are associated with one another, directly or indirectly, with respect to the employment of the employee by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer. 29 C.F.R. § 791.2(b). "[J]oint employment will generally be considered to exist when (1) the employers are not 'completely disassociated' with respect to the employment of the individuals and (2) where one employer is controlled by another or the employers are under common control." Chao v. A-One Med. Servs., Inc., 346 F.3d 908, 918 (9th Cir. 2003), citing 29 C.F.R. § 791.2(b).

    Defendants do not address whether Plaintiff states a claim under the FLSA, instead citing Ninth Circuit authority that analyzes the term "employer" under California law. In the Opposition, Plaintiff argues she has sufficiently alleged that Spearmint Rhino Co. and Spearmint Rhino Consulting are "joint employers" under the FLSA. The Court now considers whether Plaintiff has alleged facts in the SAC to

**EDCV 09-1316-VAP (DTBx)**
**TRACY DAWN TRAUTH, et al. v. SPEARMINT RHINO COMPANIES WORLDWIDE, INC., et al.**
**MINUTE ORDER of February 23, 2010**

satisfy the Bonnette factors.[1]

Plaintiff has not plead facts to show whether Defendants had the power to hire and fire the employees, the first factor identified by Bonnette. The Court's inquiry, however, does not end here, as courts have considered the four factors "[i]n varying combinations" to determine whether join employment exists. Bonnette, 704 F.2d at 1470.

Turning to the second factor, Plaintiff alleges Defendants supervised and controlled Plaintiff's work schedule and conditions of employment. (See SAC ¶¶ 42-47 (discussing Defendants' involvement in scheduling and work conditions).) For example, regarding scheduling, Plaintiff states that Defendants required her to work shifts for a minimum number of hours, to clock-in and clock-out at the beginning and end of each shift, and to pay a fine, penalty or be reprimanded if she was absent or late for a shift. (SAC ¶ 43). Furthermore, Plaintiff alleges Defendants employ guidelines and rules that dictate how she and other dancers should conduct themselves while working, such as hours of operation, the length of shifts, the sequences a dancer must perform, the format and themes of the dancers' performances, and the minimum tip amounts for patrons who purchase table dances. (SAC ¶¶ 42, 45.)

While these facts appear sufficient to establish that Defendants supervised and controlled Plaintiff's work schedule and conditions of employment, Plaintiff fails to allege what each Defendant actually did, or how each Defendant's role was distinct. For example, Plaintiff fails to allege the role of Spearmint Rhino Co. in supervising and controlling Plaintiff's work schedule, and how its role differed from

---

[1] Courts also have considered factors derived from the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §§ 1801-1872, in determining whether a joint employment relation exists. Maddock, 631 F. Supp. 2d at 1233, citing Torres-Lopez v. May, 111 F.3d 633, 640 (9th Cir. 1997). The parties here have not addressed the Torres-Lopez factors in their briefs. Furthermore, the Bonnette factors are more relevant to the determination of economic reality of the employer-employee relationship in this case.

EDCV 09-1316-VAP (DTBx)
TRACY DAWN TRAUTH, et al. v. SPEARMINT RHINO COMPANIES WORLDWIDE, INC., et al.
MINUTE ORDER of February 23, 2010

Oxnard's role. Instead, Plaintiff employs the general term "Defendants" for nearly every allegation related to the FLSA. When describing the parties in the SAC, however, Plaintiff states that Spearmint Rhino Co. and Spearmint Rhino Consulting "oversee the management and operations at each Spearmint Rhino Nightclub in the United States." (SAC ¶ 12.) This statement is a mere conclusion.

One specific allegation in the SAC that relates to Spearmint Rhino Consulting's role in supervising and controlling Plaintiff's work schedule and conditions of employment, however, is that Spearmint Rhino Consulting issued a press release confirming that Spearmint Rhino (Plaintiff is unsure whether this refers to Spearmint Rhino Co. or Spearmint Rhino Consulting) employs a "Senior District Manager" who oversees "all aspects" of management and operations of each Spearmint Rhino club. (SAC ¶ 12 (emphasis added).) In addition, Plaintiff refers to a "corporate introduction video" on Spearmint Rhino's website that allegedly discusses the amount of time and price range for table dances, and states, "But we also have that dancer income stream, and the profitability of the dancer income stream is extremely high compared to the costs of other goods sold. There is no innate cost to that; the dancers don't receive a payroll [sic] or a salary." (SAC ¶ 15.) The contact information on the website is listed as "Spearmint Rhino Consulting Worldwide, Inc.," located in Norco, California. The video and press release suggest that Spearmint Rhino Consulting has at least some role in setting employment standards for the individual Spearmint Rhino Nightclubs.

While these allegations alone may not be sufficient to establish this factor, when considered with Plaintiff's allegations elsewhere in the SAC and construing the pleadings in the light most favorable to the Plaintiff, Plaintiff has sufficiently established, beyond a speculative level, that Defendants supervised and controlled certain conditions of Plaintiff's employment. Thus, the Court finds that Plaintiff has satisfied this factor.

As to the third factor, Plaintiff alleges that Defendants determined the rate and method of payment of her employment. Specifically, Plaintiff alleges Defendants: (1) set the minimum amount dancers must collect from patrons for each dance (SAC ¶

EDCV 09-1316-VAP (DTBx)
TRACY DAWN TRAUTH, et al. v. SPEARMINT RHINO COMPANIES WORLDWIDE, INC., et al.
MINUTE ORDER of February 23, 2010

44); (2) required dancers to pay "rent," typically exceeding 30% of each table dance tip; (3) established the "split" or percentage that dancers must pay Defendants for each dance; and (4) required dancers to pay per-dance amounts or "tip-outs" to the nightclub manager, dance checkers, disc jockey, bouncers/door staff and other employees as part of the Defendants' tip-splitting policy.  (SAC ¶ 47.)

As above, Plaintiff conflates Defendants into one entity and fails to allege distinct facts related to the conduct of each Defendant.  The only specific allegation in the SAC regarding this factor is Plaintiff's reference to a "corporate introduction video" on Spearmint Rhino's website that allegedly discusses the price range for a table dance, and states, "But we also have that dancer income stream, and the profitability of the dancer income stream is extremely high compared to the costs of other goods sold.  There is no innate cost to that; the dancers don't receive a payroll [sic] or a salary."  (SAC ¶ 15.)  Furthermore, the video refers to the "U.S. corporate offices" and states that other offices "in turn, report to the United States to the Los Angeles County world headquarters."  (Id.)  The contact information on the website is listed as "Spearmint Rhino Consulting Worldwide, Inc.," located in Norco, California.

Construing the pleadings in the light most favorable to the Plaintiff, these facts, coupled with the other allegations in the SAC are sufficient to establish, beyond a speculative level, that Defendants exercised control in determining the rate and method of payment of Plaintiff's employment.  See Wheeler v. Hurdman, 825 F.2d 257 (10th Cir. 1987) (applying a version of the economic reality test and noting, "the extent of the employer's right to control the 'means and manner' of the worker's performance is the most important factor to review.").  Thus, the Court concludes that this factor has been satisfied.

As to the fourth factor -- whether Defendants maintained employment records -- Plaintiff alleges Defendants classified her as an independent contractor and accordingly "issue[d] no 1099 forms, W-2 forms or other documents to any dancers showing any sums being paid to dancers as wages."  (SAC ¶ 46.)  Thus, the Court does not consider this factor, given Defendants' failure to maintain employment records and their assertion of "independent contractor" status for the dancers.

The Court also notes that Defendants' Request for Judicial Notice, which

EDCV 09-1316-VAP (DTBx)
TRACY DAWN TRAUTH, et al. v. SPEARMINT RHINO COMPANIES WORLDWIDE, INC., et al.
MINUTE ORDER of February 23, 2010

Defendants claim illustrates that each Spearmint Rhino Nightclub is a separate entity, shows the nine Nightclubs listed are registered to the same address, Spearmint Rhino's Corporate headquarters in Norco, California, and share the same "Agent for Service." (Defendants' RJN, Exs. 1-9.) This supports Plaintiff's allegations that the individual Nightclubs are managed and operated jointly by the Spearmint Rhino corporate entity.

     The Court finds Plaintiff sufficiently alleges Spearmint Rhino Co. and Spearmint Rhino Consulting are joint employers under the FLSA's "economic reality test." See Maddock, 631 F. Supp. 2d at 1236 (citation omitted). While "individually the [facts] may not support a joint employment relationship, taken together they demonstrate that [the Defendants] exercised significant control over" the dancers' daily routines. Maddock, 631 F. Supp. 2d at 1236 (citation omitted); Bonnette, 704 F.2d at 1470 (finding that the "control" factor had been satisfied by the showing that the defendants, though not responsible for the day-to-day supervision of the plaintiffs, made the final determination as to the number of hours the plaintiffs would work and exactly what tasks they would perform, and where the defendants would intervene when problems arose between the plaintiffs and their employers). Accordingly, the Court DENIES Defendants' Motion to Dismiss as to Plaintiff's FLSA claim.

     **ii.    Definition of "Employer" Under California Law**
    Plaintiff's state law claims are predicated on a showing that there was an employer-employee relationship between Plaintiff and Spearmint Rhino Co. and Spearmint Rhino Consulting. Under California law, only an "employer" is liable for failing to provide minimum wages and unlawful tip-splitting. Cal. Labor Code §§ 226.7, 350, 1194, 1197. Additionally, Plaintiff's claim for unfair competition, pursuant to Cal. Bus. & Prof. Code § 172000, is grounded in part on Plaintiff's California Labor Code claims.

     The California Supreme Court has suggested that the federal definition of "employer" is inapplicable under California law. See, e.g., Reynolds v. Bement, 36 Cal. 4th 1075, 1088 (2005) ("where the language or intent of state and federal labor laws substantially differ[s], reliance on federal regulations or interpretations to

EDCV 09-1316-VAP (DTBx)
TRACY DAWN TRAUTH, et al. v. SPEARMINT RHINO COMPANIES WORLDWIDE, INC., et al.
MINUTE ORDER of February 23, 2010

construe state regulations is misplaced. While the FLSA contains an express definition of 'employer,' [certain sections of the California Labor Code] do[ ] not."). Thus, in those cases, "a different test must be applied." Maddock, 631 F. 2d at 1238. The California statutes under which Plaintiff brings her claims do not contain express definitions of "employer." Thus, the Court must examine "a different test."

In California, where a statute does not define the parameters of an employee-employer relationship, courts use the common law test of employment. Metro. Water Dist. of S. Cal. v. Superior Court, 32 Cal. 4th 491, 500-01 (2004). "There is no magic formula for determining whether an organization is a joint employer. Rather, the court must analyze myriad facts surrounding the employment relationship in question. No one factor is decisive." Vernon v. State, 116 Cal. App. 4th 114, 129-30 (2004) (citations and quotations marks omitted).

The Court may consider several factors in assessing the relationship of the parties: (1) payment of salary or other employment benefits and Social Security taxes; (2) ownership of the equipment necessary to performance of the job, and the location where the work is performed; (3) the obligation of the defendant to train the employee; (4) the authority of the defendant to hire, transfer, promote, discipline or discharge the employee; (5) the authority to establish work schedules and assignments; (6) the defendant's discretion to determine the amount of compensation earned by the employee; (7) the skill required of the work performed and the extent to which it is done under the direction of a supervisor; (8) whether the work is part of the defendant's regular business operations; (9) the skill required in the particular occupation; (10) the duration of the relationship of the parties; and (11) the duration of the plaintiff's employment. Id. at 130 (citing cases from various jurisdictions in which courts considered such factors).

The key factor in analyzing whether an entity is an employer is "the right to control and direct the activities of the person rendering service, or the manner and method in which the work is performed." Doe I, 572 F.3d at 682, citing Serv. Employees Int'l Union v. County of L.A., 225 Cal. App. 3d 761 (1990) (internal quotations and citation omitted); Vernon, 116 Cal. App. 4th at 130, citing Lee v. Mobile County Com'n, 954 F. Supp. 1540, 1546 (S.D. Ala. 1995) ("Of these factors, the extent of the defendant's right to control the means and manner of the workers'

EDCV 09-1316-VAP (DTBx)
TRACY DAWN TRAUTH, et al. v. SPEARMINT RHINO COMPANIES WORLDWIDE, INC., et al.
MINUTE ORDER of February 23, 2010

performance is the most important.").

Whether the allegations in the SAC adequately establish that Spearmint Rhino Co. and Spearmint Rhino Consulting, along with Oxnard, were Plaintiff's employers is a close issue. While Plaintiff states facts indicating Spearmint Rhino Co. and Spearmint Rhino Consulting exercised control over how Plaintiff discharged her day-to-day duties, the SAC does not identify each entity's role, making it impossible to determine the degree to which Spearmint Rhino Co. and Spearmint Rhino Consulting controlled Plaintiff's job performance. The SAC also fails to allege facts addressing the other factors central to the joint employer test.

Nevertheless, the SAC does allege Spearmint Rhino Co. and Spearmint Rhino Consulting exercised some control over the individual Spearmint Rhino Nightclubs, as indicated, for example, in Spearmint Rhino Consulting's Press Release announcing a new "Senior District Manager," who oversees "all aspects" of management and operations "for all locations." (SAC ¶ 12.)

Plaintiff also alleges that Defendants exercised discretion regarding her compensation, and set policies regarding payroll and salary, at the corporate headquarters for all locations. (SAC ¶¶ 14, 15, 45-47.) The "Corporate Introduction Video" also supports Plaintiff's allegation that the corporate entity exercised control of some day-to-day operations in the individual Spearmint Rhino Nightclubs, such as the length of time and charges for table dances, and the policy that "dancers don't receive a payroll [sic] or a salary." (SAC ¶ 15.) Furthermore, as noted in the previous section, Defendants' Request for Judicial Notice demonstrates that each of the nine Nightclubs is registered to the same address, Spearmint Rhino's Corporate headquarters in Norco, CA, and shares the same "Agent for Service." (Defendants' RJN, Exs. 1-9.) These specific facts, taken together, support Plaintiff's allegation that the individual Nightclubs are managed and operated jointly by the Spearmint Rhino corporate entity.

Given these allegations, the Court holds that the SAC adequately avers that Spearmint Rhino Co. and Spearmint Rhino Consulting were Plaintiff's joint employers. At this stage in the litigation, when the court must draw all inferences in favor of Plaintiff, the court cannot hold as a matter of law that Spearmint Rhino Co.

**EDCV 09-1316-VAP (DTBx)**
**TRACY DAWN TRAUTH, et al. v. SPEARMINT RHINO COMPANIES WORLDWIDE, INC., et al.**
**MINUTE ORDER of February 23, 2010**

and Spearmint Rhino Consulting were not Plaintiff's joint employers.  Accordingly, the Court DENIES Defendants' Motion to Dismiss as to Plaintiff's second, third, and fourth claims.

**B.    Motion to Strike**

Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  The Ninth Circuit has held that "[t]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."  Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993) (quotations and citation omitted).

Defendants argue that all allegations in the SAC regarding Nightclubs other than Oxnard should be stricken and that the Class definition seeking to bring claims on behalf of all dancers at all nightclubs should be stricken.  (Mot. at 8-12.)  Thus, Plaintiff moves to strike from the SAC all references to "Spearmint Rhino Gentlemen's Clubs" or "Spearmint Rhino Nightclub(s)."  (Mot. at 8.)

Defendants' argument is threefold: (1) the joint-employer doctrine cannot extend liability for alleged conduct at Oxnard to conduct at the seven other nightclubs; (2) Plaintiff does not have Article III standing against the unnamed entities that own and operate the Nightclubs where she did not work; and (3) the Class impliedly pled by Plaintiff against the seven Nightclubs should be stricken. (Mot. at i.)

Plaintiff's allegations regarding the individual Spearmint Rhino Nightclubs are not "redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f). Rather, reference to the Nightclubs supports Plaintiff's theory regarding Defendants' control of Oxnard.

Defendants' arguments regarding Plaintiff's standing can be construed as: (1)

**EDCV 09-1316-VAP (DTBx)**
**TRACY DAWN TRAUTH, et al. v. SPEARMINT RHINO COMPANIES WORLDWIDE, INC., et al.**
**MINUTE ORDER of February 23, 2010**

an assertion that Plaintiff lacks adequacy as a class representative,[2] (2) an assertion that Plaintiff "implied" a Defendant class that cannot be certified;[3] or (3) a motion to dismiss for lack of subject matter jurisdiction.  In any event, none of these arguments has merit.

To satisfy the Court's standing requirements under Article III to the United States Constitution, a plaintiff must show: (1) injury in fact; (2) causation; and (3) redressability.  See Friends of the Earth, Inc. v. Laidlaw Environmental Serv. (TCO), Inc., 528 U.S. 167, 168-69 (2000), citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  Here, Plaintiff has pled facts that establish an actual controversy and injury with respect to each named Defendant, and that is sufficient for standing.  See Mutchka v. Harris, 373 F. Supp. 2d 1021, 1024 (C.D. Cal. 2005).  Defendants do not dispute Plaintiff has satisfied these requirements as to the three named Defendants, but rather argue that Plaintiff lacks standing to assert claims against the seven Nightclubs.

Oxnard is the only Spearmint Rhino Nightclub named as a defendant in the SAC.  Though mentioned in the class allegations, Plaintiff does not directly assert claims against the seven other individual Nightclubs.  Furthermore, the other individual Nightclubs have not been named as Defendants, nor has Plaintiff moved to certify the Class.  Plaintiff accordingly must demonstrate Article III standing only as to the Defendants named in the SAC, which she has done.  See Henry v. Circus

---

[2] Whether Plaintiff can represent dancers from other clubs on a class basis is question to be addressed if and when Plaintiff attempts to certify such a class.  See Mutchka v. Harris, 373 F. Supp. 2d 1021, 1024 (C.D. Cal. 2005).

[3] Plaintiff has filed a putative class action and has not yet sought class certification.  Plaintiff's allegations regarding Nightclubs other than Oxnard are necessary at this stage to describe allegations of the purported class.  Plaintiff has set forth allegations regarding where members of the purported class worked and the relationship between the purported class and those clubs.  Whether that class ultimately can be certified is a question to be addressed at the class certification stage.

EDCV 09-1316-VAP (DTBx)
TRACY DAWN TRAUTH, et al. v. SPEARMINT RHINO COMPANIES WORLDWIDE, INC., et al.
MINUTE ORDER of February 23, 2010

Circus Casinos, Inc., 223 F.R.D. 541, 544 (D. Nev. 2004) ("to establish Article III standing in a class action, at least one named plaintiff must have standing in his own right to assert a claim against each named defendant before he may purport to represent a class claim against that defendant").  Unlike the plaintiff in Henry, the only "subsidiar[y], partnership[], [or] joint venture[]" Plaintiff asserts a claim against is Oxnard, the Nightclub where she actually worked.   See id. at 542.

The Federal Rules provide a mechanism for excising defective class allegations before discovery, pursuant to Rule 23(c): "[T]he court must -- at an early practicable time -- determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A); see Sanders v. Apple, Inc., ___ F. Supp. 2d ___, No. 08-1713 JF(PVT), 2009 WL 150950, *10-11 (N.D. Cal. Jan. 21, 2009).  The Supreme Court stated, "Sometimes the issues are plain enough from the pleadings to determine whether the interests of absent parties are fairly encompassed within the named plaintiff's claim."  Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160 (1982). Thus, a court may strike "impertinent" matters from the pleadings "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."  Sanders, 2009 WL 150950, at *10, citing Bureerong v. Uvawas, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996).  In this instance, the Court concludes that the motion to strike is premature.  It is not clear from the pleadings that the interests of absent parties are fairly encompassed with Plaintiff's claim.  Plaintiff presumably will conduct discovery and add individual Nightclubs as named Defendants if and when class members are added to the action who are currently employed or have been employed at the other Nightclubs.  Until that time, Plaintiff must establish Article III standing only against the named Defendants.

The Court, therefore, DENIES Defendants' Motion to Strike Allegations in the Second Amended Complaint Regarding Entities Not Named as Defendants.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' Motion to Dismiss the Second Amended Complaint Against Two Defendants and to Strike Allegations in the Second Amended Complaint Regarding Entities Not Named as Defendants.

**IT IS SO ORDERED.**