Peter E. Garrell, Esq. (SBN: 155177)
    pgarrell@linerlaw.com
Kim Zeldin, Esq. (SBN: 135780)
    kzeldin@linerlaw.com
LINER GRODE STEIN YANKELEVITZ
SUNSHINE REGENSTREIF & TAYLOR LLP
1100 Glendon Avenue, 14th Floor
Los Angeles, California 90024-3503
Telephone:  (310) 500-3500
Facsimile:  (310) 500-3501

Attorneys for Defendants,
SPEARMINT RHINO COMPANIES
WORLDWIDE, INC., SPEARMINT RHINO
CONSULTING WORLDWIDE, INC., and
OXNARD HOSPITALITY SERVICES, INC.
(erroneously sued herein as Oxnard Hospitality
Services, LP)

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACY DAWN TRAUTH, individually, and on behalf of all others similarly situated,<br><br>   Plaintiffs,<br><br>vs.<br><br>SPEARMINT RHINO COMPANIES WORLDWIDE, INC., SPEARMINT RHINO CONSULTING WORLDWIDE, INC., AND OXNARD HOSPITALITY SERVICES, INC.,<br><br>   Defendants. | Case No. EDCV09-1316 VAP (DTBx)<br><br>Honorable Virginia A. Phillips<br><br>**DECLARATION OF PETER E. GARRELL IN SUPPORT OF DEFENDANTS' EX PARTE APPLICATION FOR INTERIM ORDER STAYING ACTION UNTIL COURT HEARS AND RULES ON DEFENDANTS' MOTION FOR A STAY**<br><br>Date Action Filed:  July 13, 2009 |

Case No.  EDCV09-1316 VAP (DTBx)
DECLARATION OF PETER E. GARRELL IN SUPPORT OF DEFENDANTS' EX PARTE APPLICATION

I, Peter E. Garrell, declare as follows:

1. I am an attorney at law licensed to practice in the State of California and all United States District Court for the Central District of California. I am a partner with the law firm of Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor LLP (the "Liner Firm") counsel for defendants Spearmint Rhino Companies Worldwide, Inc., Spearmint Rhino Consulting Worldwide, Inc., and Oxnard Hospitality Services, Inc. (erroneously sued herein as Oxnard Hospitality Services, LP) in the above-captioned matter. The facts set forth herein are of my own personal knowledge, except for those matters set forth on information and belief, and as to those matters I am informed and believe them to be true. I submit this declaration in support of Defendants' Ex Parte Application for Interim Order Staying Action Until Court Hears and Rules on Defendants' Motion for Stay.

2. Following entry of the Scheduling Order, Plaintiff served written discovery on Defendants (requests for production and interrogatories) and deposition notices.

3. The first set of Plaintiff's written discovery was due on March 15, 2010.

4. Defendants served a notice of deposition of Plaintiff for March 11, with a request for production of documents.

5. Plaintiff's counsel advised Defendants that the date for the deposition was inconvenient and alternative dates were being negotiated. No new date has been set. Plaintiff refused to produce some of the documents Defendants' requested and produced a stack of pleadings in other cases, some involving entities doing business as Spearmint Rhino, which were not responsive to any requests but apparently produced to demonstrate an "abundance" of documents, albeit having no relationship to the case at hand. No information relating to the composition of the class was produced.

6. Plaintiff also noticed 30(b)(6) depositions for each Defendant (which the parties have agreed will be rescheduled to accommodate counsel and the witnesses' schedules).

7. Defendants served only objections to the discovery due on March 15 (and objections to the 30(b)(6) deposition notices). The reason for not serving substantive responses to the written discovery, as stated therein, was, in part, because of the settlement and Defendants' intent to move to stay under the *Colorado River* doctrine. In addition, the discovery was objected to because it requested information beyond standing and class certification.

8. In addition, Plaintiff served deposition notices for John Gray (for March 31), Kathy Vercher (for April 2), Dyanna Lauren Gray (who is Mr. Gray's ex-wife and is not an officer or director of any of the defendants) (for April 1), and Brett Shuster (for April 5).

9. Pursuant to Local Rule 7-19.1, beginning on March 15, before filing this ex parte application, I contacted Plaintiff's counsel, Christopher Ridout to meet and confer regarding whether Plaintiff would stipulate to a stay of the action pending final judgment in the state court approving the global settlement under the *Colorado River* doctrine, and alternatively whether Plaintiff would stipulate to a temporary interim stay until the underlying motion to stay is briefed, heard and decided.

10. Plaintiff's counsel stated that Plaintiff intended to oppose the request for a stay and this ex parte application for an interim stay.

11. Attached hereto as Exhibits A-B are true and correct copies of emails exchanged between myself and Mr. Ridout reflecting our meet and confer discussions.

12. A global settlement in a parallel state court putative class action entitled *Omlor v. City of Industry, et al,* Case No. BC418020 was recently reached. As of March 12, 2010 final signatures and a fully executed comprehensive settlement agreement were obtained.

13.     As provided in the global settlement agreement, the settlement class in *Omlor* consists of: "the group of individuals who worked as exotic dancers and who have provided nude, semi-nude, and/or bikini entertainment for customers at one or more of the Clubs owned by the following entities at some point during the period of time from July 13, 2005 up to and including the entry of the Preliminary Approval Order: City of Industry Hospitality Venture, Inc., Downtown LA Club Venture, Inc., Inland Restaurant Venture I, Inc., Midnight Sun Enterprises, Inc., Olympic Avenue Venture, Inc., The Oxnard Hospitality Services, Inc., Rialto Pockets, Inc., Rouge Gentlemen's Club, Inc., Santa Barbara Hospitality Services, Inc., and Santa Maria Restaurant Enterprises, Inc."

14.     In addition, the *Omlor* Settlement Agreement includes a separate subclass which includes: "The group of individuals who worked as exotic dancers and who provided nude, semi-nude, and/or bikini entertainment for customers of Farmdale Hospitality Services, Inc." The class period for those individuals in the subclass (and the corresponding releases) date back to the prior settlement of July 1, 2007 in the Farmdale Litigation.

15.     As part of the *Omlor* Settlement Agreement, the parties also stipulated to the filing of an amendment of the *Omlor* complaint, which First Amended Complaint was filed on March 15, 2010. The First Amended Complaint (pursuant to the *Omlar* Settlement Agreement) adds ten clubs as Defendants (thus expanding the class definition), and adds claims pursuant to the Federal Labor Standards Act ("FLSA") and the Private Attorney General Act ("PAGA"). The class period is for a period of four years dating back to the date of the filing of the *Trauth* Action or July 13, 2005.

16.     With respect to the terms, the *Omlor* Settlement Agreement requires Defendants to pay up to $5 million on a claims-made basis in exchange for a release and judgment of dismissal with prejudice of all Released Claims. In particular, the settlement provides that there will be a minimum payment of thirty percent of the

1 Net Settlement Amount (defined as the $5 million gross settlement amount, minus
2 attorney fees and costs of up to one third of the Gross Settlement amount, and the
3 settlement administrator's fees).

4  17.  As provided in the *Omlor* Settlement Agreement, the "Released Claims"
5 include: "any and all claims, liabilities, demands, causes of action, or lawsuits,
6 known or unknown (including Unknown Claims), whether legal, statutory, equitable
7 or of any other type or form, whether under federal or state law, and whether brought
8 in an individual, representative or any other capacity, that in any way relate to or
9 arise out of or in connection with acts, omissions, facts, statements, matters,
10 transactions, or occurrences that have been or could have been alleged in the Action,
11 including but not limited to overtime, minimum wages, missed or inadequate meal
12 periods and rest breaks, unpaid tip income, reimbursement for uniform costs,
13 itemized wage statement violations, record keeping violations, and waiting time
14 penalties, claims under Labor Code §§ 201, 202, 203, 204, 212, 218, 218.6, 221, 224,
15 226, 226.7, 350, 351, 353, 402, 435, 510, 512, 1174, 1194, 1197, 1199, 2802, and
16 2968, and Wage Commission Orders 5 and 10, and Business & Professions Code
17 §§ 17200, et seq. as it relates to the underlying California Labor Code claims, and
18 interest, attorneys' fees and costs arising from Defendants' treatment of the Members
19 of the Settlement Class as independent contractors." In addition, those individuals
20 who make claims will, pursuant to the terms of the settlement agreement, also release
21 the FLSA claims. *Ibid.*

22  18.  The *Omlor* Settlement Agreement also requires a payment to the
23 California Labor and Workforce Development Agency of $15,000 for the PAGA
24 claim from the attorney fee award.

25  19.  To the extent that the claims made do not total 30% of the Net
26 Settlement Amount, that amount shall be divided equally between a charity or
27 charities chosen by the parties and re-distributed on a pro rata basis to the class
28 members who made claims.

20. In addition to the monetary payments, the *Omlor* Settlement Agreement requires injunctive relief in the form of changes in the practices at all of the existing nightclubs. In particular, the nightclubs are required to stop the practice of charging dancers stage fees.

21. The *Omlor* Settlement Agreement also contains various terms to help ensure that there will be a significant number of claims. For example, Defendants are required to provide addresses and other identifying information from their files, a settlement administrator is required to conduct certain address searches to update those addresses, there is a mail notice to all class members, there is an internet notice, and there is a provision for a second mailing upon receipt of a returned envelope with a forwarding address.

22. The *Omlor* Settlement Agreement also provides a mechanism to allow the class members to challenge the data upon which the individual's settlement payment is calculated. Further, it provides a mechanism for objecting to the Settlement Agreement and allowing class members to opt out of the settlement.

23. As part of the settlement, the *Omlor* plaintiffs will conduct confirmatory discovery relating to the existence of common facts and law, the number of shifts, the composition of the class and the types of records maintained by the clubs to substantiate the identity of the class members. The defendants in *Omlor* also agreed to make a person most knowledgeable from each club available for deposition.

24. As noted above, the Los Angeles Superior Court is scheduled to hold its preliminary approval hearing regarding the *Omlor* Settlement Agreement on April 30, 2010. Pursuant to the Settlement Agreement, the Final Approval Hearing must be heard within 120 days following entry of the order granting preliminary approval.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 18, 2010 at Los Angeles, California.

1
2                                                               */s/ Peter E. Garrell*
3                                                               Peter E. Garrell
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28