ZIMMERMAN REED P.L.L.P.
HART L. ROBINOVITCH (Admitted *Pro Hac Vice*)
Email: Hart.Robinovitch@zimmreed.com
14646 N. Kierland Blvd., Suite 145
Scottsdale, AZ 85254
(480) 348-6400
(480) 348-6415 Facsimile

RIDOUT & LYON, LLP
CHRISTOPHER P. RIDOUT (State Bar No. 143931)
Email: c.ridout@ridoutlyonlaw.com
DEVON M. LYON (State Bar No. 218293)
Email: d.lyon@ridoutlyonlaw.com
555 E. Ocean Blvd., Ste. 500
Long Beach, California  90802
(562) 216-7380
(562) 216-7385 Facsimile

(Additional counsel listed below)

**Attorneys for Plaintiffs and the Class**

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACY DAWN TRAUTH, CHRISTEEN RIVERA, and JENNIFER BLAIR, individually, and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SPEARMINT RHINO COMPANIES WORLDWIDE, INC., SPEARMINT RHINO CONSULTING WORLDWIDE, INC., and, OXNARD HOSPITALITY SERVICES, INC., <br><br> Defendants. | Case No. EDCV09-1316 VAP (DTBx) <br><br> **THIRD AMENDED COMPLAINT (Class Action)** <br><br> **Jury Trial Demanded** |

## I.    **INTRODUCTION**

1.    This is a nationwide class action brought by Plaintiffs Tracy Dawn Trauth, Christeen Rivera, and Jennifer Blair (hereinafter "Plaintiffs") against Defendants Spearmint Rhino Companies Worldwide, Inc., Spearmint Rhino Consulting Worldwide, Inc., and Oxnard Hospitality Services, Inc., (hereinafter collectively referred to as "Defendants"). The Class that Plaintiffs seek to represent is composed of female employees who, during the relevant time period, worked as exotic dancers for Defendants at nightclubs they operated and controlled in California, Florida, Idaho, Kentucky, Nevada, and Texas.  All class members were denied their fundamental rights under applicable state and federal wage and hour laws in a similar and common way.  Specifically, Plaintiffs complain that Defendants misclassified Plaintiffs and all other members of the Class as independent contractors, as opposed to employees, at all times in which they worked as dancers at any of Defendants' adult nightclubs located in California, Florida, Idaho, Kentucky, Nevada, and Texas.  As a result, Defendants failed to pay Plaintiffs and all other members of the Class the minimum wages and other benefits that they were entitled to under federal and state law.  Additionally, in California Defendants engaged in unlawful tip-splitting by requiring dancers in the Class to split and share gratuities given to them by patrons with Defendants and employees, such as managers, doormen, and DJ's.  Plaintiffs, therefore, bring this class action seeking damages, backpay, restitution, liquidated damages, applicable civil penalties, prejudgment interest, reasonable attorneys' fees and costs, declaratory and injunctive relief and all other relief that the Court deems just, reasonable and equitable in the circumstances.

## II.    **JURISDICTION & VENUE**

2.    This Complaint alleges causes of action under the laws of the United States, including the Fair Labor Standards Act, 29 U.S.C. §201 *et. seq.* ("FLSA"). Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. §1331.

3.     The Court also has diversity jurisdiction pursuant 28 U.S.C. §1332 and pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d)("CAFA"). Diversity of citizenship between the parties exists and the amount-in-controversy requirements under the above-referenced provisions are met.

4.     This action is also brought on behalf of the Oxnard and Farmdale Subclasses, more fully defined herein, pursuant to Section 1194 of the California Labor Code and Section 17204 of the California Business and Professions Code (the "UCL").

5.     A substantial part of the events and conduct giving rise to the claims in this action occurred in this Judicial District.   Defendants Spearmint Rhino Worldwide, Spearmint Rhino Consulting and Oxnard reside in and have their headquarters and principal places of business in this district.   The unlawful and fraudulent actions of Spearmint Rhino Worldwide, Spearmint Rhino Consulting and Oxnard, as described further within, occurred in and continue to occur in the State of California.   Key decisions, agreements and activities regarding the unlawful, fraudulent and unconscionable actions of Defendants Spearmint Rhino Worldwide and Spearmint Rhino Consulting, as described further within, were made in this district and emanated to other districts including those in California, Florida, Idaho, Kentucky, Nevada, and Texas where the Nightclubs are located.   Business policies and material decisions regarding the employment practices challenged in this case were made in significant part by Defendants Spearmint Rhino Worldwide and Spearmint Rhino Consulting from their offices in Norco, California and/or City of Industry, California.    Those unlawful policies and agreements dictated by Defendants Spearmint Rhino Worldwide and Spearmint Rhino Consulting emanated to and were applied in all Nightclubs, including all those located in the states of California, Florida, Idaho, Kentucky, Nevada, and Texas where class members worked. As a result, venue is proper in this jurisdiction pursuant to 28 U.S.C. §1391.

### III.   **PARTIES & STANDING**

6.     Plaintiff Tracy Dawn Trauth ("Trauth") is a resident of San Bernardino County, California.  At relevant times, Trauth was an employee of Defendants, as defined in 29 U.S.C. §201 *et seq.* and Cal. Labor Code. §1194, working as an exotic dancer at the Spearmint Rhino nightclub in Oxnard, California.  Trauth worked as a female exotic dancer at the Spearmint Rhino nightclub in Oxnard, California during the class period and is a member of the Class.  Like other Class members, during the periods Trauth worked at the Spearmint Rhino nightclub, Trauth was: (1) misclassified by Defendants as an independent contractor and as a result, was not paid any wages (and provided other benefits and rights) which she was entitled to as an employee; and, (2) required to split tip income with Defendants and their employees and described more fully below.

7.     Plaintiff Christeen Rivera ("Rivera") is a resident of Ventura County, California.  At relevant times, Rivera was an employee of Defendants, as defined in 29 U.S.C. §201 *et seq.* and Cal. Labor Code. §1194, working as an exotic dancer at the Spearmint Rhino nightclub in Oxnard, California.  Rivera worked as a female exotic dancer at the Spearmint Rhino nightclub in Oxnard, California during the class period and is a member of the Class.  Like other Class members, during the periods Rivera worked at the Spearmint Rhino nightclub, Rivera was: (1) misclassified by Defendants as an independent contractor and as a result, was not paid any wages (and provided other benefits and rights) which she was entitled to as an employee; and, (2) required to split tip income with Defendants and their employees and described more fully below.

8.     Plaintiff Jennifer Blair ("Blair") is a resident of Washoe County, Nevada.  At relevant times, Blair was an employee of Defendants, as defined in 29 U.S.C. §201 *et seq.* and N.R.S. 608.010, working as an exotic dancer at the Spearmint Rhino nightclub in Las Vegas, Nevada.  Blair worked as a female exotic dancer at the Spearmint Rhino nightclub in Las Vegas, Nevada during the class

period and is a member of the Class.  Like other Class members, during the periods
Blair worked at the Spearmint Rhino nightclub, Blair was: (1) misclassified by
Defendants as an independent contractor and as a result, was not paid any wages
(and provided other benefits and rights) which she was entitled to as an employee;
and, (2) required to tip out Defendants' employees and described more fully below.

9.    The original Complaint alleged two subclasses -- one for dancers in the
state of Nevada and one for dancers in the state of California.  On October 6, 2009,
Plaintiff Trauth filed her First Amended Complaint severing the claims of the two
subclasses subject to a tolling agreement and order regarding the claims of the
Nevada subclass.  The Court's order of October 7, 2009 granting leave to amend
contemplated the re-filing of the Nevada subclass' claims and tolled the statute of
limitations on those claims.  See Exhibit A attached hereto.  On November 20, 2009
Ms. Trauth filed her Second Amended Complaint more fully identifying her by her
full legal name.  On April 19, 2010, the Court granted Ms. Trauth leave to file a
Third Amended Complaint, maintaining the same core allegations from the original
complaint and, among other things: (1) expanding the misclassification claims to
assert claims on behalf of a national class, including the previously severed Nevada
subclass; and (2) adding Jennifer Blair and Christeen Rivera as Plaintiffs.

10.   The Defendants in this matter are business entities that jointly employ
and control the work of members of the Class that work or have worked at the
various  "Spearmint  Rhino",  "Rouge"  and/or  "Blue  Zebra"  gentlemen's
clubs/nightclubs located in California, Florida, Idaho, Kentucky, Nevada, and Texas.
Specifically, there are gentlemen's clubs/nightclubs in at least the following cities:
City of Industry, CA; Los Angeles, CA; Oxnard, CA; Rialto, CA; Santa Barbara,
CA; Santa Maria, CA; Torrance, CA; and Van Nuys, CA, West Palm Beach, FL,
Boise, ID, Lexington, KY, Las Vegas, NV, and Dallas, TX.

11.   Defendant Spearmint Rhino Companies Worldwide, Inc. (referred to
herein as "Spearmint Rhino Worldwide") is a Nevada corporation located at 1875

Tandem Way, Norco, CA 92860 and/or 15423 East Valley Boulevard, City of Industry, CA 91746.   The resident agent for Spearmint Rhino Company is the Corporation Service Company d/b/a "CSC – Lawyers Incorporating Service", which maintains registered office addresses at 2730 Gateway Oaks Drive, Suite 100, Sacramento, CA 95833 and 502 East John Street, Carson City, NV, 89706.   The Chairman and Chief Executive Officer of Spearmint Rhino Worldwide is John Gray.   The President of Spearmint Rhino Worldwide is Kathy Vercher.

12.   Defendant Spearmint Rhino Consulting Worldwide, Inc. (referred to herein as "Spearmint Rhino Consulting") is a Delaware corporation located at 1875 Tandem Way, Norco, CA 92860 and/or 15423 East Valley Boulevard, City of Industry, CA 91746.   The resident agent for Spearmint Rhino Consulting is the Corporation Service Company d/b/a "CSC – Lawyers Incorporating Service", which maintains a registered office address of 2730 Gateway Oaks Drive, Suite 100, Sacramento, CA 95833.   The Chairman and Chief Executive Officer of Spearmint Rhino Consulting is John Gray.   The President and Chief Operating Officer of Spearmint Rhino Consulting is Kathy Vercher.

13.   Defendant Oxnard Hospitality Services, Inc. d/b/a "Spearmint Rhino Gentlemen's Club" (referred to herein as "Oxnard" or "Spearmint Rhino – Oxnard") is a California corporation conducting business at 630 Maulhardt Avenue, Oxnard, CA 93030 but with its principal offices at 1875 Tandem Way, Norco, CA 92860.   Upon information and belief, Defendant Oxnard maintains ownership, recruitment, management, and/or operational interests in at least one nightclub featuring exotic dancing by Class members, including the Spearmint Rhino Gentlemen's Club located at 630 Maulhardt Avenue, Oxnard, CA 93030 where members of the Class have been and are currently employed.   The resident agent for Spearmint Rhino – Oxnard is the Corporation Service Company d/b/a "CSC – Lawyers Incorporating Service", which maintains a registered office address of 2730 Gateway Oaks Drive, Suite 100, Sacramento, CA 95833.   Upon information and belief, the officers and

1   employees of Spearmint Rhino Worldwide and Spearmint Rhino Consulting are the

2   *de facto* senior managers of all of the Nightclubs in California, including Spearmint

3   Rhino – Oxnard.

4   14.   Both Spearmint Rhino Worldwide and Spearmint Rhino Consulting

5   either directly or indirectly own, manage, direct, operate, dictate employment

6   policies, and control the business operations at all of the "Spearmint Rhino",

7   "Rouge" and "Blue Zebra" Gentlemen's Clubs/Nightclubs located in California,

8   Florida,   Idaho,   Kentucky,   Nevada,   and   Texas   and   listed   on   the

9   www.spearmintrhino.com website, including but not limited to those doing business

10  at 15411 East Valley Boulevard, City of Industry, CA 91746 ("Spearmint Rhino –

11  City of Industry"); 2020 East Olympic Boulevard, Los Angeles, CA 90021

12  ("Spearmint Rhino – Los Angeles"); 630 Maulhardt Avenue, Oxnard, CA 93030

13  ("Spearmint Rhino – Oxnard"); 312 South Riverside Avenue, Rialto, CA 92376

14  ("Spearmint Rhino – Rialto"); 312 South Riverside Avenue, Rialto, CA 92376

15  ("Spearmint Rhino – Rialto II"); 22 East Montecito Street, Santa Barbara, CA 93101

16  ("Spearmint Rhino – Santa Barbara"); 505 South Broadway, Santa Maria, CA 93454

17  (Spearmint Rhino – Santa Maria"); 19900 Normandie Avenue, Torrance, CA 90502

18  ("Spearmint Rhino – Torrance"); 15004 Oxnard Street, Van Nuys, CA 91411

19  ("Spearmint Rhino – Van Nuys"); 2154 Zip Code Place, West Palm Beach, FL

20  33409 ("Spearmint Rhino – West Palm Beach"); 1500 Grove Street. Boise, ID 83703

21  ("Spearmint Rhino – Boise"); 5539 Athens Boonesboro Road, Lexington, KY 40509

22  ("Spearmint Rhino – Lexington"); 3340 South Highland Drive, Las Vegas, NV

23  89109 ("Spearmint Rhino – Las Vegas");   10965 Composite Drive, Dallas, TX

24  75220 ("Spearmint Rhino – Dallas"), 6872 Farmdale Avenue, North Hollywood, CA

25  91606 ("Blue Zebra – North Hollywood"); 1616 E. 15th Street, Loas Angeles, CA

26  90021 ("Rouge – Los Angeles"); and 14626 Raymer Street, Van Nuys, CA 91343

27  ("Rouge – Van Nuys") (all of the foregoing gentlemen's clubs/nightclubs are

28  collectively referred to herein as the "Nightclubs"). As described more fully below,

THIRD AMENDED COMPLAINT (CLASS ACTION)                                                    6
42407

1    the Class consists of exotic dancers who worked at all of the Nightclubs during the

2    relevant time period.

3        15.    Each of the Nightclubs delegates its senior management functions to

4    Spearmint Rhino Worldwide and Spearmint Rhino Consulting.    While each

5    Nightclub has a distinct business location where the nightclub operated and

6    conducted business with the public, each Nightclub nevertheless maintains its

7    principal corporate offices at 1875 Tandem Way, Norco, CA 92860, the same

8    location as Spearmint Rhino Worldwide's and Spearmint Rhino Consulting's

9    headquarters.   Upon information and belief, John Gray and/or Kathy Vercher of

10   Spearmint Rhino Worldwide and Spearmint Rhino Consulting are also executives,

11   officers or directors of each Nightclub; otherwise manage and control each

12   (including that relating to the employment and conduct of dancers while at the

13   nightclubs) by indirect means; and/or otherwise have the express or implied authority

14   to act for and bind each legally through their actions.   Gray, Vercher and/or other

15   employees, executives and officers of Spearmint Rhino Worldwide and Spearmint

16   Rhino Consulting have made corporate decisions and executed contractual

17   agreements and legal documents on behalf of the Nightclubs.   Upon information and

18   belief, the Nightclubs share certain officers, directors and employees with Spearmint

19   Rhino Worldwide and Spearmint Rhino Consulting and act at their behest with

20   regard to material matters pertinent to the dancer's work at the Nightclubs.   On

21   January 31, 2008, Spearmint Rhino Consulting issued the following Press Release

22   confirming that Spearmint Rhino Worldwide and/or Spearmint Rhino Consulting

23   oversee the management and operations at each Nightclub in the United States:

24       Brett Schuster has been promoted to Senior District Manager of
         Spearmint Rhino.
25
         Along with overseeing management and operations for each club, Brett
26       will now also supervise the other two Spearmint Rhino District
         Managers.
27

28

---

THIRD AMENDED COMPLAINT (CLASS ACTION)                                                   7
42407

With 17 Spearmint Rhino Gentlemen's Club locations in the United States, executives rely heavily on the District Managers to oversee all aspects of operations for all locations.

With many years of the service and hospitality industry under his belt, Brett will play a major role in helping streamline operations for each location. …

"I am happy to be in this new position," says Brett Schuster. "It feels great to be in a position where I can play a major role in taking Spearmint Rhino to the next level.

Brett Schuster can be contacted at Spearmint Rhino's World Headquarters at (951) 371-3788 or bschuster@spearmintrhino.com.

About Spearmint Rhino Gentlemen's Clubs
Spearmint Rhino Gentlemen's Club is a chain of the most upscale gentlemen's clubs in the world. With Spearmint Rhino Gentlemen's Club and affiliate locations worldwide (including the United States, United Kingdom, Europe and Australia) and growing, guests are treated to the unique ambience, superior service and first class entertainment that only Spearmint Rhino can offer. For more information on Spearmint Rhino Gentlemen's Club, visit www.SpearmintRhino.com or www.myspace.com/spearmintrhinoworldwide.

http://www.free-press-release.com/news/print-1201826665.html.

16.    At all relevant times Spearmint Rhino Worldwide and Spearmint Rhino Consulting jointly employed all exotic dancers working in the Nightclubs, managed, directed and controlled the operations in each Nightclub, and dictated the common employment policies applicable in each Nightclub, including but not limited to the decisions: (1) to misclassify dancers as independent contractors, as opposed to employees; (2) to require that dancers split their table dance tips with Defendants; (3) to require that dancers further split their table dance tips with Defendants' managers, doormen, floor walkers, DJ's and other employees who do not usually receive tips, by paying "tip-outs;" (4) to not pay any dancers any wages; (5) to demand improper and unlawful payments from class members; (6) to adopt and implement employment policies which violate the FLSA, California Labor Code, UCL, Non-California State Law Claims and/or other laws; and/or (7) to threaten retaliation against any dancer attempting to assert her statutory rights to be recognized as an employee.    Spearmint Rhino Worldwide, Spearmint Rhino Consulting and their

principals created the common business model employed at each Nightclub regarding dancer classification and tip splitting and require that it continue to be employed.

17.    Upon information and belief, all named Defendants agreed and conspired among themselves, as well as with non-parties listed below which own part of certain Nightclubs, to unlawfully: (1) misclassify dancers as independent contractors, as opposed to employees; (2) require that dancers split their table dance tips with Defendants; (3) require that dancers further split their table dance tips with Defendants' managers, doormen, floor walkers, DJ's and other employees who do not usually receive tips, by paying "tip-outs;" (4) not pay any dancers any wages; (5) demand improper and unlawful payments from class members; (6) adopt and implement employment policies which violate the FLSA, California Labor Code, UCL, Non-California State Law Claims, and/or other laws; and/or (7) threaten retaliation against any dancer attempting to assert her statutory rights to be recognized as an employee.  The non-parties that Defendants unlawfully conspired with regarding the foregoing include, but are not limited to, City of Industry Hospitality Venture, Inc., Downtown LA Club Venture, Inc., Farmdale Hospitality Services, Inc., Inland Restaurant Venture I, Inc., Midnight Sun Enterprises, Inc., Olympic Avenue Venture, Inc., The Oxnard Hospitality Services, Inc., Rialto Pockets, Inc., Rouge Gentlemen's Club, Inc., Santa Barbara Hospitality Services, Inc., Santa Maria Restaurant Enterprises, Inc., K-Kel Inc., High Expectations Hospitality, LLC, Kentucky Hospitality Venture, LLC, LCM, LLC, and WPB Hospitality, LLC.    The unlawful agreements between Defendants and the aforementioned non-parties in the enterprise were entered into in California as part of a strategy to maximize their revenues and profits by disregarding applicable wage and hour laws and engaging in the other unlawful conduct described.   The agreements were made at the time the non-parties were formed and/or entered into agreements with Spearmint Rhino Consulting for management services and

direction. As a result of those agreements and the unlawful conduct emanating from California, class members working at all the Nightclubs nationwide were injured during the class period. Where there is a civil conspiracy to commit a wrongful act, and as here, the wrongful act itself is committed and damage results therefrom, each participant in the wrongful act is responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity. *Harrell v. 20th Century Ins. Co.*, 934 F.2d 203 (9th Cir. 1991).

18.   At relevant times, inter alia, Spearmint Rhino Worldwide and Spearmint Rhino Consulting maintained a "corporate introduction video" on the www.spearmintrhino.com website describing their business operations and confirming the following facts:

"The business is about the girls; the business is about selling more dances…"

\* \* \*

"…we, of course, have the most beautiful women in the world work for us as entertainers."

\* \* \*

"We ensure that when we recruit the dancers and the workers in the club, that they have got good social skills; that they will sit with the customer and they won't hard-sell or pressurize him into a dance; that he can enjoy his experience."

\* \* \*

"Another misnomer in the business is that it's that of a restaurant or a nightclub; that is to say, that the income stream is primarily that of door and drink or beverage sales. And while the income is certainly that, of the door and beverage sales, what makes these businesses go off the charts as regards to an income and profitability stream is the income made by these so-called couch dance or table dance.

A table dance lasts three minutes and costs typically $10- to $20, depending on the jurisdiction. One of the things that we preach to our people is if a small club of ours -- and this is a small club example -- has 30 dancers on a shift, if you can get every dancer -- a shift being eight hours -- to do just one more dance per eight-hour shift, it's over $10,000 a month additional income into the stream of the club.

What other business can you so easily increase those gross numbers by?"

\* \* \*

"…delivering it to the executives so they can make the best business decisions possible in the shortest amount of time. We've been able to reach out and test facilities that are thousands and thousands of miles away from where we're at here in the U.S. corporate offices."

\* \* \*

"One of the other niceties, besides the business element itself, is the fact that the revenue stream is so egregiously higher than other types of investments, and multifaceted.   That is to say, we have food sales, beverage sales, waitress sales, door admission sales.  But we also have that dancer income stream, and the profitability of the dancer income stream is extremely high compared to cost of other goods sold.  There is no innate cost to that; the dancers don't receive a payroll or a salary."

\* \* \*

"Those offices, in turn, report to the United States to the Los Angeles County world headquarters."

\* \* \*

"…over 2700 employees and 6,000 dancers operating in Russia, Europe, United Kingdom, the United States and Australia."

http://www.spearmintrhino.com/1corpvideo.html.   (Copy of transcript of corporate video appearing on website on June 30, 2009 attached hereto as Exhibit B).

19.   Defendants knew or should have known that the "income and profitability stream" and "dancer income stream" discussed in the video was unlawful as, among other things, Cal. Labor Code §350(e) and §351 confirm that all money given to dancers by patrons is the sole property of the dancer.  Despite this, Defendants continued to willfully engage in the acts described below misclassifying dancers and splitting tip income in violation of their legal duties.

20.   At all relevant times, Defendants have owned and operated a night club business engaged in interstate commerce and which utilized goods which moved in interstate commerce.   For example, goods sold at the Nightclubs are moved in interstate commerce.  Spearmint Rhino Worldwide and Spearmint Rhino Consulting own, manage and control the business operations at numerous nightclubs in several states doing business under the "Spearmint Rhino" moniker. (*See* www.spearmintrhino.com listing locations in all states).   Upon information and belief, during the relevant time period the annual gross revenues of each Defendant exceeded $500,000.00 per annum.

21.   By reason of the foregoing, Defendants, along with the Nightclubs and the persons who directly and indirectly hold ownership interest in those entities, were at all relevant times enterprises engaged in commerce as defined in 29 U.S.C.

§203(r) and §203(s).  Defendants, the Nightclubs and their owners constitute an "enterprise" within the meaning of 29 U.S.C. §203(r)(1), because they perform related activities through common control for a common business purpose.  At relevant times, Plaintiffs were jointly employed by Defendants and enterprises engaged in commerce within the meaning of 29 U.S.C. §206(a) and §207(a).

## IV.  **GENERAL ALLEGATIONS APPLICABLE TO ALL COUNTS**

22.  The FLSA applied to Plaintiffs and the Class at all times in which they worked at the Nightclubs.

23.  Florida Statute §§ 448.01, *et seq.*, the Florida Minimum Wage Act, Florida Stat. § 448.110, the Florida Constitution, Art. X § 24, Idaho Hours Worked Act, I.C.A. § 44-1201, *et seq.*, and Idaho Minimum Wage Law, I.C.A. §§ 44-*1501, et seq.*, Kentucky Wages and Hours Laws, K.R.S. §§ 337*, et seq.*, and 803 Ky. Admin. Regs. 1:005, *et seq.,* the Nevada Compensation, Wages and Hours Law, N.R.S. § 608.005 *et seq.*, the Nevada Constitution, Art. 15, § 16, and the Texas Minimum Wage Act, Chapter 62 of the Texas Labor Code (collectively referred to herein as the "Non-California State Wage and Hour Laws"), as well as the California Labor Code, also applied to each Class member during the period they worked at the Nightclubs.  Under 29 U.S.C. § 218(a) if application of the FLSA results in a lower minimum wage than that provided by the state wage and hour laws, such as the California Labor Code and Non-California State Wage and Hour Laws, the higher wages dictated by the state laws apply.  At all relevant times, the minimum hourly wages under the FLSA have been lower than those provided by the California Labor Code and Non-California State Wage and Hour Laws.

24.  No exceptions to the application of the FLSA, the California Labor Code, and/or the Non-California State Wage and Hour Laws apply to Plaintiffs and the Class.  For example, no Class member has ever been a professional or artist exempt from the provisions of the FLSA, the California Labor Code, or the Non-California State Wage and Hour Laws.  The exotic dancing performed by Class

THIRD AMENDED COMPLAINT (CLASS ACTION)
42407

12

members while working at the Nightclubs does not require invention, imagination or talent in a recognized field of artistic endeavor, and Class members have never been compensated by Defendants on a set salary, wage or fee basis. Rather, Class members' sole source of income while working at the Nightclubs have been tips given to them by patrons, (i.e. table dance tips and stage dance tips).

25. At relevant times, Plaintiffs and each member of the Class, defined below, were employees of Defendants under the FLSA, the California Labor Code, and/or the Non-California State Wage and Hour Laws. Upon information and belief, during the relevant time period over 500 different women have worked as exotic dancers at the Nightclubs without being paid any minimum wages while also being denied the rights and benefits of an employee.

26. At relevant times, Defendants have been the employers of Plaintiffs and each member of the Class, defined below, under the FLSA, the California Labor Code, the Non-California Wage and Hour Laws and other applicable law. Defendants suffered or permitted Class members to work. Defendants directly or indirectly employed and exercised significant control over the wages, hours and working conditions of the exotic dancers in the Class.

27. At all relevant times, all Defendants have been the joint employers of Plaintiffs and members of the Class (and/or each subclass) under the FLSA, the California Labor Code, the Non-California State Wage and Hour Laws and/or other applicable law. Plaintiffs' and Class members' employment for one Defendant is not completely disassociated from their employment by the other Defendant. Spearmint Rhino Worldwide, Spearmint Rhino Consulting, and Oxnard do not act entirely independent of each other and are not completely dissociated with respect to the employment of Plaintiffs and the Class. Spearmint Rhino Worldwide and Spearmint Rhino Consulting maintain significant control over Plaintiffs and other Class members while working at the Nightclubs. Spearmint Rhino Worldwide and Spearmint Rhino Consulting play significant roles in establishing, maintaining and

directing the employment policies that are to be applied to Class members while working at the Nightclubs.   Spearmint Rhino Worldwide and Spearmint Rhino Consulting benefit financially from the work Class members perform while working at the Nightclubs.   Additionally, joint employers like Oxnard (and the other nominal operators / partners in the other Nightclubs) act directly or indirectly in the interest of Spearmint Rhino Worldwide and Spearmint Rhino Consulting in relation to any supervision they provided Plaintiffs and the other dancers in the Class.   As joint employers of Plaintiffs and members of the Class, Spearmint Rhino Worldwide and Spearmint Rhino Consulting are responsible both individually and jointly for compliance with all of the applicable provisions of the FLSA, the California Labor Code, and/or the Non-California Wage and Hour Laws.  29 C.F.R. §791.2(a) and (b).

28.   During the relevant time period, the employment terms, conditions and policies that applied to Plaintiffs were the same as those applied to the other Class members who worked as exotic dancers at the Nightclubs.

29.   Throughout the relevant time period, Defendants' policies and procedures regarding the classification of all exotic dancers (including Plaintiffs) at the Nightclubs and treatment of dance tips were the same.

30.   As a matter of common business policy, Defendants systematically misclassified Plaintiffs and all Class members as independent contractors, as opposed to employees.   Defendants' classification of Plaintiffs as independent contractors was not due to any unique factor related to their employment or relationship with Defendants.   Rather, as a matter of common business policy, Defendants routinely misclassified all exotic dancers as independent contractors as opposed to employees.  As a result of this uniform misclassification, Plaintiffs and the members of the Class were not paid the minimum wages required under the FLSA, the California Labor Code, and/or the Non-California Wage and Hour Laws, deprived of other statutory rights and benefits, and therefore, suffered harm, injury and incurred financial loss.

31.     Plaintiffs and members of the Class incurred financial loss, injury and damage as a result of Defendants' common practices misclassifying them as independent contractors and failing to pay them minimum wages in addition to the tips that they were given by patrons. Plaintiffs' injury and financial loss was caused by Defendants' application of those common policies in the same manner as they were applied to absent Class members.

32.     During the relevant time period, no Class member received any wages or other compensation from Defendants.  Members of the Class generated their income solely through the tips received from customers when they performed exotic table, chair, couch, lap and/or VIP room dances (hereinafter collectively referred to as "table dance tips").

33.     All monies Class members like Plaintiffs received from customers when they performed exotic dances were tips, not wages or service fees. Tips belong to the person they are given to.  Table dance tips were given by patrons directly to dancers in the Class and therefore, belong to dancers in the Class, not Defendants.  Cal. Labor Code § 350(e) confirms that all monies given to dancers by patrons are considered gratuities and therefore, are the sole property of the dancers.

34.     The full amount dancers in the Class are given by patrons in relation to exotic dances they perform are not taken into Defendants' gross receipts, with a portion then paid out to the dancers.  Neither Defendants nor any of their affiliated companies issue W-2 forms, 1099 forms or any other documents to Class members indicating any amounts being paid from their gross receipts to Class members as wages.

35.     Plaintiffs and members of the Class are tipped employees as they are engaged in an occupation in which they customarily and regularly receive more than $30 a month in tips. No tip credits offsetting any minimum wages due, however, are permitted under the California Labor Code. Cal. Labor Code § 351.  Therefore, as employees of Defendants, Class members are entitled to: (i) receive the full

1    minimum wages due under the California Labor Code and/or the Non-California

2    Wage and Hour Laws, without any tip credit, and (ii) to retain the full amount of any

3    table dance tips and monies given to them by customers when they perform exotic

4    dances.

5         36.    Defendants' misclassification of Plaintiffs and other Class members as

6    independent contractors was designed to deny Class members their fundamental

7    rights as employees to receive minimum wages, to demand and retain portions of tips

8    given to Class member by customers, and done to enhance Defendants' profits at the

9    expense of the Class.

10        37.    Defendants' misclassification of exotic dancers like Plaintiffs was

11   willful. Defendants knew or should have known that Plaintiffs and the other dancers

12   performing the same job functions were improperly misclassified as independent

13   contractors. For instance, in *Harrell v. Diamond A Entertainment, Inc.*, 992 F.Supp.

14   1343, 1347-48 (M.D. Fla. 1997) the United States District Court for the Middle

15   District of Florida confirmed:

> Arrangements factually similar to the one in this case have been tested
> by federal courts in Texas, Indiana and Colorado. *See Reich v. Circle C.
> Investments, Inc.*, 998 F.2d 324 (5th Cir.1993) (whether dancer was
> "employee" under FLSA); *Reich v. ABC/York-Estes Corp.*, 1997 WL
> 264379 (N.D.Ill.1997) (whether dance fees were "tips" under FLSA);
> *Reich v. Priba Corp.*, 890 F.Supp. 586 (N.D.Tex.1995) (whether dancer
> was "employee" under FLSA); *Reich v. ABC/York-Estes Corp.*, 157
> F.R.D. 668 (N.D.Ill.1994) (whether dance fees were "tips" under
> FLSA), rev'd on other grounds,64 F.3d 316 (7th Cir.1995); *Martin v.
> Priba Corp.*, 1992 WL 486911 (N.D.Tex.) (whether dancer was
> "employee" under FLSA); *Martin v. Circle C Investments, Inc.*, 1991
> WL 338239 (W.D.Tex.); *Donovan v. Tavern Talent & Placements, Inc.*,
> 1986 WL 32746 (D.Colo.) (whether "tips" could be used to offset
> completely the minimum wage requirement). Without exception, these
> courts have found an employment relationship and required the
> nightclub to pay its dancers a minimum wage.

25        38.    Employment is defined with "striking breadth" in the wage and hour

26   laws. *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 325-26, 112 S.Ct. 1344,

27   1349-50 (1992).    The determining factor as to whether dancers like Plaintiffs are

28   employees or independent contractors under FLSA or the California Labor Code is

---

THIRD AMENDED COMPLAINT (CLASS ACTION)                                              16
42407

not the dancer's election, subjective intent or any contract. *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727 (1947); *Real v. Driscoll Strawberry Associates, Ltd.*, 603 F.2d 748, 755 (9th Cir. 1979); *Borello & Sons v. Dept of Industrial Relations* (1989) 48 Cal.3d 341. Rather, the test for determining whether an individual is an "employee" under the FLSA, the California Labor Code, and the Non-California Wage and Hour Laws is the economic reality test. Under the economic reality test, employee status turns on whether the individual is, as a matter of economic reality, in business for herself and truly independent, or rather is economically dependent upon finding employment in others.

39.   Any contract which attempts to have workers in the Class waive, limit or abridge their statutory rights to be treated as an employee under FLSA, the California Labor Code, and/or the Non-California Wage and Hour Laws is void, unenforceable, unconscionable and contrary to public policy. Workers in the Class cannot validly "elect" to be treated as employees or independent contractors under threat of adverse treatment. Nor can workers in the Class agree to be paid less than the minimum wage.

40.   Despite this, Defendants unfairly, unlawfully, fraudulently and unconscionably attempt to coerce dancers in the Class to waive their FLSA, the California Labor Code, and/or the Non-California Wage and Hour Laws rights and elect to be treated as independent contractors. Defendants threaten to penalize and discriminate against dancers in the Class if they assert their FLSA, the California Labor Code, and/or the Non-California Wage and Hour Laws rights such as through termination and the confiscation of all table dance tips, among other adverse conditions and retaliations. Any such retaliation based on the assertion of statutory rights under the wage and hour laws is unlawful. 29 U.S.C. §215(a)(3); Cal. Labor Code §98.6. Further, Cal. Labor Code §98.6(b) makes it unlawful for an employer to even threaten to discharge, demote, terminate or  discriminate in the terms and conditions of employment because an employee has made a bona fide complaint

against an employer for violation of the Labor Code.  This protection encompasses the exercise of statutory rights on the employees own behalf and on behalf of others. Any actual or threatened retaliation against an employee for the assertion of wage and hour law claims violates the state's fundamental public policy to protect the payment of wages and employee's rights.

41.   Under the applicable test, courts utilize several factors to determine economic dependence and employment status.  They are: (i) the degree of control exercised by the alleged employer, (ii) the relative investments of the alleged employer and employee, (iii) the degree to which the employee's opportunity for profit and loss is determined by the employer, (iv) the skill and initiative required in performing the job, (v) the permanency of the relationship, and (vi) the degree to which the alleged employee's tasks are integral to the employer's business.

42.   The totality of circumstances surrounding the employment relationship between Defendants and the dancers in the Class working at the Nightclubs establishes economic dependence by the dancers on Defendants and employee status. Here, as a matter of economic reality, Plaintiffs and all other Class members are not in business for themselves and truly independent, but rather are economically dependent upon finding employment in others, namely Defendants.   The dancers are not engaged in occupations or businesses distinct from that of Defendants.  Rather, their work is the basis for Defendants' business.  See e.g., Exhibit C.  Defendants obtain the customers who desire exotic dance entertainment and provide the workers who conduct the exotic dance services on behalf of Defendants.  Defendants retain pervasive control over the nightclub operation as a whole, and the dancer's duties are an integral part of the operation.

A.    **Degree Of Control – Plaintiffs And The Other Dancers Exercise No Control Over Their "Own" Or Their Employers' Business.**

43.   Plaintiffs and the other members of the Class do not exert control over a meaningful part of the nightclub business and do not stand as separate economic

entities from Defendants.   Defendants exercise control over all aspects of the working relationship with Plaintiffs and the other dancers in the nightclubs.

44.   Class members' economic status is inextricably linked to those conditions over which Defendants have complete control.  Plaintiffs and the other dancers are completely dependent on the Nightclubs for their earnings.  The club controls all of the advertising and promotion without which dancers like Plaintiffs could not survive economically. Moreover, Defendants create and control the atmosphere and surroundings at the Nightclubs, the existence of which dictates the flow of customers into the club.  The dancers have no control over the customer volume or the atmosphere at each of the nightclubs.

45.   Defendants employ guidelines and rules dictating the way in which dancers like Plaintiffs must conduct themselves while working at the Nightclubs. Defendants set the hours of operation; length of shifts dancers must work; the show times during which a dancer may perform; minimum table dance tips; determine the sequence in which a dancer may perform on stage during her stage rotation; the format and themes of dancers' performances (including their costuming and appearances); theme nights; conduct while at work (i.e., that they be on the floor as much as possible when not on stage and mingle with patrons in a manner which supports Defendants' general business plan); pay tip-splits;   pay "tip-outs" to managers, doormen and other employees who do not normally receive tips from patrons; require that dancers help sell a minimum number of drinks to patrons (or be penalized and have to buy the drinks themselves); and all other terms and conditions of employment.

46.   Defendants require that Plaintiffs and the other dancers in the Class schedule work shifts. Defendants require that each shift worked by a dancer be of a minimum number of hours.  Further, Defendants require dancers like Plaintiffs to clock-in and clock-out (or otherwise check in or report) at the beginning and end of each shift.  If late or absent for a shift, a dancer is subject to fine, penalty, or

1  reprimand by Defendants.  Once a shift starts a dancer, like Plaintiffs, are required to

2  complete the shift and cannot leave early without penalty or reprimand.

3       47.    While working at the Nightclubs dancers like Plaintiffs perform exotic

4  table, chair, couch, lap and/or VIP room dances for patrons offering them tips

5  (referred to herein "table dance tips" or "tips").  Defendants, not the dancers, set the

6  minimum tip amount that dancers must collect from patrons when performing exotic

7  dances.  Defendants announce the minimum tip amounts to patrons in the nightclub

8  wishing to see table dances.

9       48.    Defendants dictate the manner and procedure in which table dance tips

10  are collected from customers and tracked.  Each time a dancer performs an exotic

11  table dance for a patron and receives a table dance tip, the dancer is required to

12  immediately account to Defendants for their time and any table dance tip given to

13  them by the patron.  Additionally, Defendants employ other employees called

14  "checkers," doormen and/or floor walkers to watch dancers work, count private

15  dances they perform, and record the amount of any table dance tips received.  At the

16  end of a work shift, dancers like Plaintiffs are required to clock out and account to

17  Defendants for all dances performed for the patrons of the nightclub.  Then, in

18  addition to any base "rent" payment, the dancer is required pay a portion of each

19  table dance tip given to them by patrons over to Defendants as "rent."  The rent

20  payment typically exceeds 30% of each table dance tip.

21       49.    The entire sum that a dancer receives from the patron in relation to the

22  table dance is not given to Defendants (and/or the nightclubs) and taken into their

23  gross receipts.  Rather, the dancers keep their share of the payment under the tip

24  share policy and only pay over to Defendants and the nightclub the portion they

25  demand as "rent." (*e.g.* $7 from each $20 table dance tip received).  As a result, there

26  is no pay out by Defendants to the dancer of any wage.  Defendants (and/or the

27  nightclubs) issue no 1099 forms, W-2 forms or other documents to any dancers

28  showing any sums being paid to dancers as wages.

THIRD AMENDED COMPLAINT (CLASS ACTION)
42407

20

50.     Defendants establish the split or percentage which each dancer is required to pay it for each type of dance they receive table dance tips for during the work shift.   In addition, per-dance amounts or "tip-outs" must be paid by dancers (e.g. approx. $1 for each dance) to the nightclub manager, dance checkers, disk-jockey, bouncers/door staff and/or other employees as part of Defendants' tip-splitting policy.   Further, dancers are required to help Defendants' sell a minimum amount of drinks to patrons during each work shift.   If the minimum drink quota is not met, the dancers face penalties (such as being forced to buy the drinks themselves from Defendants).   Dancers are also required to help sell goods (such as Spearmint Rhino t-shirts, hats, and calendars) bearing the Spearmint Rhino logo to patrons as part of their job duties performing table dances.    As part of these "logo special" dances where goods are sold as a package with a table dance, Defendants also require dancers to perform for patrons for a longer period of time.   The foregoing establishes that Defendants control and set the terms and conditions of all dancer's work.  This is the hallmark of economic dependence and control.

**B.      *Skill and Initiative of a Person in Business for Themselves***

51.     Plaintiffs, like all other dancers, do not exercise the skill and initiative of a person in business for themselves.

52.     Plaintiffs, like all other dancers, are not required to have any specialized or unusual skills to work at the Nightclubs.  Prior dance experience is not required to perform at the Nightclubs.  Dancers are not required to attain a certain level of skill in order to work at the Nightclubs.   There are no dance seminars, no specialized training, no instruction booklets, and no choreography provided or required in order to work at any of the Nightclubs.  The dance skills utilized are commensurate with those exercised by ordinary people who choose to dance at a disco or at a wedding.

53.     Plaintiffs, like all other dancers, do not have the opportunity to exercise the business skills and initiative necessary to elevate their status to that of independent contractors.  Dancers, like Plaintiffs, own no enterprise.  Dancers, like

Plaintiffs, exercise no business management skills. Dancers maintain no separate business structures or facilities. Dancers exercise no control over customer volume or atmosphere at the Nightclubs. Dancers do not actively participate in any effort to increase the nightclub's client base, enhance goodwill, or establish contracting possibilities. The scope of a dancer's initiative is restricted to decisions involving what clothes to wear (within Defendants' guidelines) or how provocatively to dance which is consistent with the status of an employee opposed to an independent contractor.

54.   Plaintiffs, like all other dancers, are not permitted to hire or subcontract other qualified individuals to provide additional dances to patrons, and increase their revenues, as an independent contractor in business for themselves would.

### C.   *Relative Investment*

55.   Plaintiffs' relative investment is minor when compared to the investment made by Defendants.

56.   Plaintiffs, like all other dancers, have made no capital investment in the facilities, advertising, maintenance, sound system and lights, food, beverage and other inventory, or staffing of the Nightclubs. All investment and risk capital is provided by Defendants. Dancers' investment is limited to expenditures on costumes and make-up which they may choose to wear while working, and their own labor. But for Defendants' provision of the lavish nightclub work environment the dancers would earn nothing.

### D.   *Opportunity for Profit and Loss*

57.   Defendants, not dancers like Plaintiffs, manage all aspects of the business operation including attracting investors, establishing the hours of operation, setting the atmosphere, coordinating advertising, hiring and controlling the staff (managers, waitresses, bartenders, bouncers/doormen, etc.). Defendants, not the dancers, take the true business risks for the Nightclubs. The transcript attached hereto as Exhibit B shows that Defendants, not the dancers, are responsible for

1   attracting investors required to provide the capital necessary to open, operate and

2   expand the nightclub business.

3       58.   Dancers like Plaintiffs do not control the key determinants of profit and

4   loss of a successful enterprise.  Specifically, Plaintiffs are not responsible for any

5   aspect of the enterprises' on-going business risk.  For example, Defendants, not the

6   dancers, are responsible for all financing, the acquisition and/or lease of the physical

7   facilities and equipment, inventory, the payment of wages (for managers, bartenders,

8   doormen, and waitresses), and obtaining all appropriate business' insurance and

9   licenses.   Defendants, not the dancers, establish the minimum table dance tip

10  amounts that should be collected from patrons when dancing.  Even with respect to

11  any "rent" payments, the dancers do not truly pay the Club's "rent" for the exclusive

12  use of space.  Rather, the term "rent" is a misnomer or subterfuge for tip-splitting as

13  in reality, Defendants simply demand a set portion (approx. 35%) of each table dance

14  tip given to a dancer.

15      59.   The extent of the risk that dancers like Plaintiffs are confronted with is

16  the loss of any "base rent" fee due to Defendants when the employee clocks out after

17  each shift.  Defendants, not the dancers, shoulder the risk of loss. The table dance

18  tips the dancers receive are not a return for risk on capital investment.  They are a

19  gratitude for services rendered.  From this perspective, it is clear that a dancer's

20  "return on investment" (i.e. table dance tips) is no different than that of a waiter who

21  serves food during a customer's meal at a restaurant.

22      **E.**   **_Permanency_**

23      60.   Certain dancers in the Class have worked at the Nightclubs significant

24  periods of time.

25      **F.**   **_Integral Part of Employer's Business_**

26      61.   Dancers like Plaintiffs are essential to the success of the Nightclubs.

27  The continued success of the Nightclubs depends to an appreciable degree upon the

28  provision of exotic dances by dancers for patrons.  In fact, the primary reason the

nightclubs exist is to showcase the dancers' physical attributes for customers.  The primary "product" or "good" Defendants are in business to sell patrons that come to their nightclubs are lap dances performed by the exotic dancers in the Class that Defendants' recruit to work in their clubs and instruct to work in a specific way.  *See*, Transcript, Exhibit B at pp. 4, 6, 8, 9, 15:

> "...we, of course, have the most beautiful women in the world *work for us* as entertainers.

> ...And the details, the level of details that we have at our clubs from the wall finishes to the pictures, to the line of sight to the pictures, to the furnishings *and, of course, to our product, which is the girls*....

> ...We ensure that when we recruit the dancers and the workers in the club that they have good social skills; that they will sit with the customer and they won't hard-sell or pressurize him into a dance; that he can enjoy his experience...

> ...What John Gray has brought to this industry is a clear vision.  And within the vision is an understanding, it's almost a psychology, and it's putting value into the table dance.

> ...Men are willing to pay for that type of attention and that's not sexual attention, that's fantasy attention and that's what the backbone of the clubs are all about.  Another misnomer in the business is that it's that of a restaurant or a nightclub; that is to say, that the income stream is primarily that of door and drink or beverage sales.  And while the income is certainly that, of the door and beverage sales, what makes these businesses go off the charts as regards to an income and profitability stream is the income made by these so-called couch dance or table dance.

> ...But we also have the dancer income stream and the profitability of the dancer income stream is extremely high compared to cost of other goods sold."

(emphasis added).

62.    Many of the Nightclubs do not serve alcohol and therefore, are not truly in direct competition with other enterprises in the nightclub, tavern or bar business.  Absent the provision of exotic dances by dancers for customers, a nightclub serving only non-alcoholic beverages would have difficulty remaining in business.  Moreover, Defendants are able to charge admission prices and a much higher price for their drinks (e.g. $10 for soft drinks) than establishments without exotic dancers because the dancers are the main attraction of the Nightclubs.  Moreover, dancers in

1    the Class must help sell Defendants' drink products to customers.  If the dancer does

2    not meet her quota for drink sales to patrons, she is penalized by Defendant and

3    required to purchase or pay for the drinks herself.  As a result, the dancers are an

4    integral part of the Nightclubs' business.

5        63.    The foregoing demonstrates that dancers in the Class like Plaintiffs are

6    economically  dependent  on  Defendants  and  subject  to  significant  control  by

7    Defendants.  Therefore, Plaintiffs were misclassified as independent contractors and

8    should have been paid minimum wages at all times she worked at any Spearmint

9    Rhino Nightclub and otherwise been afforded all rights and benefits of an employee

10   under federal and state wage and hour laws.

## V.  DEFENDANTS' INTENT

12       64.    All  actions  and  agreements  by  Defendants  described  herein  were

13   willful, intentional and not the result of mistake or inadvertence.

14       65.    Defendants were aware that the FLSA, the California Labor Code,

15   and/or the Non-California Wage and Hour Laws applied to their operation of the

16   Nightclubs at all relevant times and that under the economic realities test applicable

17   to determining employment status under those laws the dancers were misclassified as

18   independent contractors. Defendants and their affiliated companies, were aware of

19   and/or the subject of previous litigation and enforcement actions relating to wage and

20   hour law violations where the misclassification of exotic dancers as independent

21   contractors was challenged.  In the vast majority of those prior cases, exotic dancers

22   working under conditions similar to those employed at the Nightclubs were

23   determined to be employees under the wage and hour laws, not independent

24   contractors. *See e.g., Harrell*, 992 F Supp 1343 (M.D. Fla. 1997)(quoted above,

25   citing cases).  Further Defendants were aware, and on actual or constructive notice,

26   that Cal. Labor Code §350(e), §351 and AB 2509 rendered all table dance tips given

27   to class members by patrons when working in the Nightclubs the dancer/class

28   member's sole property, rendering Defendants' tip-share, rent and tip-out polices

THIRD AMENDED COMPLAINT (CLASS ACTION)                                            25
42407

1   unlawful.  Despite being on notice of their violations, Defendants intentionally chose

2   to continue to misclassify dancers like Plaintiffs, withhold payment of minimum

3   wages and require dancers to split their tips with Defendants and their employees, to

4   them in effort to enhance their profits.   Such conduct and agreements were

5   intentional, unlawful, fraudulent, deceptive, unfair and contrary to public policy.

## VI.  INJURY AND DAMAGE

66.    Plaintiffs and all Class members suffered injury, were harmed, incurred
damage and financial loss as a result of Defendants' conduct complained of herein.
Among other things, Plaintiffs and the Class were entitled to minimum wages and to
retain all of the table dance tips and other tips they were given by patrons.  By failing
to pay Plaintiffs and the Class minimum wages and interfering with their right to
retain all of the table dance tips and other tips they were given by patrons,
Defendants injured Plaintiffs and the members of the Class and caused them
financial loss, harm, injury and damage.

## VII.  CLASS ALLEGATIONS

67.    Plaintiffs bring this action individually and as a class action pursuant to
Rule 23 of the Federal Rules of Civil Procedure as to Counts 2, 3 4, and 5.  Count 1,
in contrast, is brought pursuant to 29 U.S.C. § 216(b).

68.    In addition, Plaintiffs bring this action as aggrieved employees on
behalf of themselves and other current and former employees pursuant to Labor
Code Private Attorneys General Action of 2004, California Labor Code § 2699 et
seq.

69.    All requirements of Fed.R.Civ.P. 23 (a) and (b) are satisfied.

70.    The Class to be certified against Defendants Spearmint Rhino
Worldwide and Spearmint Rhino Consulting is defined as follows:

> All individuals, who at any time from July 13, 2005 through the present,
> worked as an exotic dancer at any of the Nightclubs, but were
> designated as an independent contractor and therefore, not paid any
> minimum wages.

---

THIRD AMENDED COMPLAINT (CLASS ACTION)
42407

(Referred to herein as the "Class").  Additionally, within the Class, there are eight (8) subclasses:

### a.      Oxnard Subclass

The "Oxnard Subclass" consists of the following class members:

All individuals who performed as exotic dancers and who have provided nude, semi-nude, and/or bikini entertainment for customers at one or more of the Clubs owned by the following entities during the period of time from July 13, 2005 through the present:  City of Industry Hospitality Venture, Inc., Downtown LA Club Venture, Inc., Inland Restaurant Venture I, Inc., Midnight Sun Enterprises, Inc., Olympic Avenue Venture, Inc., The Oxnard Hospitality Services, Inc., Rialto Pockets, Inc., Rouge Gentlemen's Club, Inc., Santa Barbara Hospitality Services, Inc., Santa Maria Restaurant Enterprises, Inc.

### b.      The Farmdale Subclass

The "Farmdale Subclass" consists of the following class members:

All individuals who performed as exotic dancers and who provided nude, semi-nude, and/or bikini entertainment for customers of Farmdale Hospitality Services, Inc. during the period of time from July 13, 2006 through the present.

### c.      The Kentucky Subclass

The "Kentucky Subclass" consists of the following class members:

All individuals who performed as exotic dancers and who have provided nude, semi-nude, and/or bikini entertainment for customers at the Club owned by Kentucky Hospitality Venture, LLC during the period of time from May 3, 2005 through the present.

### d.      The Idaho Subclass

The "Idaho Subclass" consists of the following class members:

All individuals who performed as exotic dancers and who have provided nude, semi-nude, and/or bikini entertainment for customers at the Club owned by LCM, LLC during the period of time from July 13, 2007 through the present.

### e.      The Texas Subclass

The "Texas Subclass" consists of the following class members:

All individuals who performed as exotic dancers and who have provided nude, semi-nude, and/or bikini entertainment for customers at the Club owned by High Expectations Hospitality Venture, LLC. during the time period from May 3, 2007 through the present.

### f.     The Nevada Subclass

The "Nevada Subclass" consists of the following class members:

> All individuals who performed as exotic dancers and who have provided nude, semi-nude, and/or bikini entertainment for customers at the Club owned by K-Kel Inc. during the period of time from July 13, 2006 through the present.

### g.     The Florida Subclass

The "Florida Subclass" consists of the following class members:

> All individuals who performed as exotic dancers and who have provided nude, semi-nude, and/or bikini entertainment for customers at the Club owned WPB Hospitality, LLC during the period of time from May 3, 2006 through the present.

### h.     The FLSA Subclass

The "FLSA Subclass" consists of the following class members:

> All individuals who are members of the Oxnard, Farmdale, Kentucky, Idaho, Texas, Nevada and/or Florida Settlement Classes who provided nude, semi-nude and/or bikini entertainment for customers at the Clubs during the period of time from July 13, 2006 through the present.

71.     The individuals in the Class and each subclass are so numerous that joinder of all members is impracticable. Although the precise number of such individuals is currently unknown, Plaintiffs believe that the number of individuals who have worked as exotic dancers at each of the Nightclubs during the relevant time period but who were not paid any minimum wages exceeds 500 women.

72.     There are questions of law and fact common to the Class and each subclass that predominate over any questions solely affecting individual members, including, but not limited to:

> a. whether Defendants violated the FLSA, the California Labor Code, and/or the Non-California Wage and Hour Laws  by classifying all exotic dancers at the Nightclubs as "independent contractors," as opposed to employees, and not paying them any minimum wages;
>
> b. whether the monies given to dancers by patrons when they perform table dances are gratuities;

c.  whose property the monies given to dancers when they perform table dances is;

d.  whether Defendants unlawfully required Class members to split their tips with Defendants and Defendants' employees;

e.  whether Defendants are joint employers of the dancers in the Class;

f.  whether Defendants and certain third parties agreed and conspired to deny class member their rights under the wage and hour laws;

g.  whether Defendants failed to keep required employment records;

h.  whether Defendants violated the UCL by engaging in unlawful, unfair fraudulent, and/or unconscious acts, including those classifying all exotic dancers at the Nightclubs as "independent contractors" as opposed to employees, not paying them any minimum wages, splitting their tips, and threatening to terminate them and impose penalties and other discrimination if they ever tried to exercise their statutory rights; and/or,

i.  the amount of damages, restitution and/or other relief (including all applicable civil penalties, liquidated damages and equitable relief) available which Plaintiffs and the Class are entitled to.

73.  Plaintiffs' claims are typical of those of the Class and each respective subclass.  Plaintiffs, like other members of the Class, were misclassified as independent contractors and denied their rights to wages and to keep all of their gratuities under the wage and hour laws.  The misclassification of Plaintiffs resulted from the implementation of a common business practice which affected all Class members in a similar way.  Plaintiffs challenge Defendants' business practices under legal theories common to all Class members.

74.  Plaintiffs and the undersigned counsel are adequate representatives of the Class.  Plaintiffs Trauth and Rivera are members of the Class and the Oxnard and Farmdale Subclasses.  Plaintiff Blair is a member of the Class and the Nevada

Subclass.  Given Plaintiffs' injury and loss, Plaintiffs have the incentive and are committed to the prosecution of this action for the benefit of the Class.  Plaintiffs have no interest that are antagonistic to those of the Class or that would cause them to act adversely to the best interests of the Class.  Plaintiffs have retained counsel experienced in class action litigation, including wage and hour disputes.

75.   This action is maintainable as a class action under Fed.R.Civ.P. 23(b)(1) and 23(c)(4) because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendants.

76.   This action is maintainable as a class action under Fed.R.Civ.P. 23(b)(3) because questions of law and fact common to the Class and each subclass predominate over any questions affecting only individual members of the Class and because a class action is superior to other methods for the fair and efficient adjudication of this action.

## FIRST CAUSE OF ACTION
## VIOLATION OF THE FLSA
### (Failure to Pay Statutory Minimum Wages)
### (Against all Defendants)

77.   Plaintiffs hereby incorporate all of the preceding paragraphs by reference as if fully set forth herein, unless inconsistent.

78.   At relevant times, Defendants Spearmint Rhino Consulting and Spearmint Rhino Worldwide, along with the respective nominal individual business entities, jointly employed Plaintiffs within the meaning of the FLSA.

79.   29 U.S.C. § 206 requires that Defendants pay all employees minimum wages for all hours worked.  29 U.S.C. § 206(a) provides in pertinent part:

> Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates:

(1) except as otherwise provided in this section, not less than--

    (A) $5.85 an hour, beginning on the 60th day after May 25, 2007;
    (B) $6.55 an hour, beginning 12 months after that 60th day; and
    (C) $7.25 an hour, beginning 24 months after that 60th day;

80.    Prior to 2007, 29 U.S.C. 206(a)(1) read: "except as otherwise provided in this section, not less than $4.25 an hour during the period ending on September 30, 1996, not less than $4.75 an hour during the year beginning on October 1, 1996, and not less than $5.15 an hour beginning September 1, 1997".

81.    29 U.S.C. § 207(a) provides in pertinent part:

... no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate of not less than one and one-half times the regular rate at which he is employed.

82.    Like other dancers working at the Nightclubs, Defendants failed to pay Plaintiffs the minimum wages set forth in 29 U.S.C. §206 or §207, or any wages whatsoever.  In fact, Defendants required that dancers like Plaintiffs actually pay them in order to work.

83.    Defendants failed to pay dancers like Plaintiffs minimum wages throughout the relevant time period because it misclassified them as independent contractors.

84.    The amounts paid to exotic dancers, like Plaintiffs, by customers in relation to private table dances performed were tips, not wages.  Those monies were not the property of Defendants.  The entire amount collected from the customers in relation to table dances performed by exotic dancers were not made part of any Defendants' gross receipts at any point.

85.    As a result, the amounts paid dancers like Plaintiffs by customers in relation to private table dances were tips, not wages or service fees, and no part of those amounts can be used to offset Defendants' obligation to pay dancers, like

Plaintiffs, minimum wages due.  *See e.g., Reich v. ABC/York-Estes Corp.*, 157 F.R.D. 668, 680 (N.D.Ill.1994), rev'd on other grounds, 64 F.3d 316 (7th Cir.1995); *Reich v. ABC/York-Estes Corp.*, 1997 WL 264379 at *5-7 (N.D.Ill.1997).

86.   Further, no tip credit applies to reduce or offset any minimum wages due.  The FLSA only permits an employer to allocate an employee's tips to satisfy a portion of the statutory minimum wage requirement provided that the following conditions are satisfied: (1) the employer must inform the tipped employees of the provisions of § 3(m) of the FLSA, 29 U.S.C. § 203(m); and (2) tipped employees must retain *all the tips* received except those tips included in a tipping pool among employees who customarily receive tips. 29 U.S.C. § 203(m).

87.   Neither of these conditions was satisfied.  Defendants did not inform dancers like Plaintiffs of the provisions of § 3(m) of the FLSA, 29 U.S.C. § 203(m); and Plaintiffs did not retain all the tips received except those tips included in a tipping pool among employees who customarily receive tips. 29 U.S.C. § 203(m). Defendants never notified any dancers that their table dance tips were being used to reduce the minimum wages otherwise due under FLSA's tip-credit provisions and that they were still due the reduced minimum wage for tipped employees.  Rather, Defendants maintained that no dancers were ever due any minimum wages due to their classification as independent contractors and, in turn, were paid none.

88.   Further, Defendants' requirement in certain states that dancers like Plaintiffs split their tips and (i) pay Defendants a portion of all table dance tips as "rent"; and (ii) also pay a percentage of their tips as "tip-outs" to other employees who do not customarily receive tips, such as managers, checkers, disc-jockeys and bouncers/doormen/floor walkers, was not part of a valid tip pooling or tip sharing arrangement.

89.   Based on the foregoing, Plaintiffs are entitled to the full statutory minimum wages set forth in 29 U.S.C. §§206 and 207 for all periods in which she

1   worked at the Nightclubs, along with all applicable penalties, liquidated damages,

2   and other relief.

3        90.   Defendants' conduct in misclassifying dancers like Plaintiffs as

4   independent contractors was intentional and willful and done to avoid paying

5   minimum wages and the other benefits that they were legally entitled to.

6        91.   The FLSA provides that a private civil action may be brought for the

7   payment of federal minimum wages and for an equal amount in liquidated damages

8   in any court of competent jurisdiction by an employee pursuant to 29 U.S.C. §216(b)

9   ("Any employer who violates the provisions of section 206 or section 207 of this title

10  shall be liable to the employee or employees affected in the amount of their unpaid

11  minimum wages, or their unpaid overtime compensation, as the case may be, and in

12  an additional equal amount as liquidated damages.").   Moreover, Plaintiffs may

13  recover attorneys' fees and costs incurred in enforcing her rights pursuant to 29

14  U.S.C. §216(b).

15       92.   12 U.S.C. §211(c) provides in pertinent part:

16  (c)  Records

17  Every employer subject to any provision of this chapter or of any order
    issued under this chapter shall make, keep, and preserve such records of
18  the persons employed by him and of the wages, hours, and other
    conditions and practices of employment maintained by him, and shall
19  preserve such records for such periods of time, and shall make such
    reports therefrom to the Administrator as he shall prescribe by
20  regulation or order as necessary or appropriate for the enforcement of
    the provisions of this chapter or the regulations or orders thereunder.
21

22       93.   29 C.F.R.§516.2 and 29 C.F.R. §825.500 further require that every

23  employer shall maintain and preserve payroll or other records containing, without

24  limitation, the total hours worked by each employee each workday and total hours

25  worked by each employee each workweek.

26       94.   29 U.S.C. §215(a)(5) provides in pertinent part:

27  …[I]t shall be unlawful for any person—

28  (5) to violate any of the provisions of section 211(c) of this title…

THIRD AMENDED COMPLAINT (CLASS ACTION)                                          33
42407

95.    To the extent Defendants failed to maintain all records required by the aforementioned statutes and regulations, and failed to furnish Plaintiffs comprehensive statements showing the hours that they worked during the relevant time period, it also violated the aforementioned laws causing Plaintiffs damage.

96.    When the employer fails to keep accurate records of the hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-688 66 S.Ct. 1187 (1946) is controlling. That rule states:

> ... where the employer's records are inaccurate or inadequate ... an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

97.    The Supreme Court set forth this test to avoid placing a premium on an employer's failure to keep proper records in conformity with its statutory duty, thereby allowing the employer to reap the benefits of the employees' labors without proper compensation as required by the FLSA.   Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with ... the Act." *Id.*

98.    Based on the foregoing, Plaintiffs seek unpaid minimum wages at the required legal rate for all working hours during the relevant time period, back pay, restitution, damages, reimbursement of any base rent and tip-splits, liquidated damages, prejudgment interest calculated at the highest legal rate, attorneys' fees and costs, and all other costs, penalties and other relief allowed by law.

# SECOND CAUSE OF ACTION

## VIOLATION OF CALIFORNIA LABOR CODE
### (Failure to Pay Statutory Minimum Wages)
### (Against Defendants Spearmint Rhino Worldwide, Spearmint Rhino Consulting and Oxnard On Behalf of the Oxnard & Farmdale Subclasses)

99.   Plaintiffs Trauth and Rivera hereby incorporate all of the preceding paragraphs by reference as if fully set forth herein.

100.   At relevant times, Plaintiffs Trauth and Rivera and all members of the Class were employees of the Defendants within the meaning of California Labor Code §350(b).

101.   At all relevant times, all Defendants were the employers of Plaintiffs Trauth and Rivera and all members of the Oxnard and Farmdale Subclasses within the meaning of California Labor Code §350(a) and any other applicable laws and regulations. Each Defendant was "a person engaged in any business or enterprise in this state that has one or more persons in service under any appointment, contract of hire, or apprenticeship, express or implied, oral or written, irrespective of whether the person is the owner of the business or is operating on a concessionaire or other basis."

102.   Defendants Spearmint Rhino-Worldwide and Spearmint Rhino Consulting were joint employers of Plaintiffs Trauth and Rivera and the Oxnard and Farmdale Subclasses, along with any other nominal owners of the Nightclubs located in California where the dancers in the Oxnard and Farmdale Subclasses worked (such as Oxnard).   The names of the individuals and/or entities which are the nominal owners of the Nightclubs located in California other than Oxnard are currently unknown and but will be obtained in discovery.

103.   Defendants controlled the workplace environment and imposed rules and working conditions on the dancers in the class in manners inconsistent with a true independent contractor relationship.   Many of these conditions are discussed above.   Additionally, upon information and belief, Defendants set additional rules

and working conditions applicable to all dancers in the class including those requiring that the dancers wear certain types of outfits or costumes and work shifts of certain duration without providing applicable rest breaks or meal breaks required by law. This further violated applicable law, including but not limited to Cal. Labor Code §226.7, §558, and Section 12 of the Order of the Industrial Wage Commission regulating the hours of work.

104. Defendant failed to pay Plaintiffs Trauth and Rivera and the members of the Oxnard and Farmdale Subclasses required minimum wages for the time they spent working at the Nightclubs located in California. Defendants paid no dancer in the class wages. Instead, Defendants unlawfully charged dancers in the class money to work by taking a portion of their tips; charging "rent," "house-fees" or "stage fees;" requiring dancers to help sell beverages and other goods to patrons or to personally buy them from Defendants; and/or collecting fines and penalties, among other things.

105. The California Labor Code requires that all employees be paid minimum wages by their employers. Cal. Labor Code §1194 provides:

> (a) Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

Cal. Labor Code §1197(a) further provides: that "the payment of a less wage that the minimum so fixed is unlawful."

106. During the duration of their employment, and/or when class members' employment at the nightclubs was terminated they were not timely paid all wages due. As a result, additional penalties under Labor Code 203 apply.

107. California wage and hour laws provide greater protections for workers than the FLSA. The California Minimum Wage is higher than the minimum wage

required by FLSA.  Therefore, the higher California Minimum Wage applies to all members of the Class.  29 U.S.C. §218(a).

108.  Cal. Labor Code §350(e) confirms that any amounts paid directly by a patron to a dancer is a gratuity or tip belonging solely and entirely to her.  Assembly Bill 2509 further confirms this.  *See* Letter of Department of Industrial Relations, Division of Labor Standards Enforcement, dated June 22, 2001 (true and correct copy attached hereto as Exhibit C and incorporated herein).

109.  California law does not allow for any reduction or offset against minimum wage due based on tips received.  Cal. Labor Code §351 provides:

> No employer or agent shall collect, take, or receive any gratuity or a part thereof that is paid, given to, or left for an employee by a patron, or deduct any amount from wages due an employee on account of a gratuity, or require an employee to credit the amount, or any part thereof, of a gratuity against and as a part of the wages due the employee from the employer. Every gratuity is hereby declared to be the sole property of the employee or employees to whom it was paid, given, or left for.

110.  All amounts paid to class members by customers in relation to dances, goods sold and other work performed while working at the Nightclubs located in California were tips and gratuities, not wages or service fees; belong solely to the class member; and cannot be used to offset Defendants' obligation to pay them minimum wages. Exhibit C.

111.  Employers like Defendants must pay premium or overtime rates when employees work beyond specific daily or weekly limits.  For example, Cal. Labor Code §510(a) provides that employees shall receive compensation at not less than 1 ½ times the regular rate for employment in excess of 8 hours per day, 40 hours in a workweek or for working the first 8 hours on the seventh consecutive workday in one workweek.

112.  As a result of Defendants' conduct described above, members of the Oxnard and Farmdale Subclasses were injured, damaged, harmed and incurred financial loss.

113.   Defendants Spearmint Rhino Worldwide, Spearmint Rhino Consulting and Oxnard failed to pay Plaintiffs Trauth and Rivera, or any other member of the Oxnard and Farmdale Subclasses, any minimum hourly wages for their labor during the relevant time period.  Rather, Defendants systematically misclassified all dancers in the Oxnard and Farmdale Subclasses as independent contractors, as opposed to employees, so as to attempt to avoid paying Oxnard and Farmdale Subclasses members any wages and other benefits due employees.  All unpaid wages must now be paid to the Oxnard and Farmdale Subclasses, along with other relief appropriate under the circumstances.

114.   Cal. Labor Code §1194.2 provides:

> In any action under Section 1193.6 or Section 1194 to recover wages because of the payment of a wage less than the minimum wage fixed by an order of the commission, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

115.   In addition, Plaintiff demands all penalties provided for by the Labor Code and if no penalty is so specified, then the penalties provided for under the Labor Code §2699(f)(2) for each employee for each payroll period one year from the filing of the lawsuit.

116.   To the extent Defendants Spearmint Rhino – Worldwide, Spearmint Rhino – Consulting and Oxnard failed to maintain all records required by the aforementioned statutes and regulations, it also violated the applicable law causing the Oxnard and Farmdale Subclasses further damage.

117.   The California Labor Code, including Cal. Labor Code § 226(a), required Defendants to maintain records regarding each Oxnard and Farmdale Subclasses member's employment, including hours worked and any deductions from wages.

118.   To the extent Defendants failed to maintain complete records regarding each Oxnard and Farmdale Subclasses member's employment, including hours worked and any deductions from wages, Defendants violated applicable law.

1    119.   None of the provisions of the Labor Code can be contravened, set aside

2    abrogated, or waived by Oxnard and Farmdale Subclasses members. *See*, Cal. Labor

3    Code § 219.

4    120.   Plaintiffs Trauth and Rivera and the Oxnard and Farmdale Subclasses

5    allege that the Court in *Hernandez v. Mendoza* (1988) 199 Cal.App.3d 721 adopted

6    the rule in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-688 66 S.Ct.

7    1187 (1946), stating:

> Although the employee has the burden of proving that he performed
> work for which he was not compensated, public policy prohibits making
> that burden an impossible hurdle for the employee. (*Anderson v. Mt.
> Clemens Pottery Co., supra*, 328 U.S. 687.)  [W]here the employer's
> records are inaccurate or inadequate and the employee cannot offer
> convincing substitutes a ... difficult problem arises. The solution,
> however, is not to penalize the employee by denying him any recovery
> on the ground that he is unable to prove the precise extent of
> uncompensated work. Such a result would place a premium on an
> employer's failure to keep proper records in conformity with his
> statutory duty; it would allow the employer to keep the benefits of an
> employee's labors without paying due compensation .... In such a
> situation we hold that an employee has carried out his burden if he
> proves that he has in fact performed work for which he was improperly
> compensated and if he produces sufficient evidence to show the amount
> and extent of that work as a matter of just and reasonable inference. The
> burden then shifts to the employer to come forward with evidence of the
> precise amount of work performed or with evidence to negative the
> reasonableness of the inference to be drawn from the employee's
> evidence. If the employer fails to produce such evidence, the court may
> then award damages to the employee, even though the result be only
> approximate.

20    121.   As a result of the foregoing conduct, Plaintiffs Trauth and Rivera seek

21    on behalf of themselves and all members of the Oxnard and Farmdale Subclasses

22    unpaid minimum wages at the required legal rate for all of their working hours

23    during the relevant time period; all other damages; attorneys' fees and costs;

24    restitution; interest calculated at the highest legal rate; all applicable penalties able to

25    be recovered for them or for the state, including those under Labor Code section

26    2699; and all other relief allowed by law.

---

THIRD AMENDED COMPLAINT (CLASS ACTION)
42407

**THIRD CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA LABOR CODE**
**(Unlawful Tip-Splitting and Acceptance of Other Payments from Dancers)**
**(Against Defendants Spearmint Rhino Worldwide, Spearmint Rhino Consulting and Oxnard On Behalf of the Oxnard and Farmdale Subclasses)**

122.   Plaintiffs Trauth and Rivera hereby incorporate all of the preceding paragraphs by reference as if fully set forth herein.

123.   At relevant times, Plaintiffs Trauth and Rivera and all members of the Oxnard and Farmdale Subclasses were employees of the Defendants within the meaning of the California Labor Code.  At all relevant times, all Defendants were the joint employers of Plaintiffs Trauth and Rivera and all members of the Oxnard and Farmdale Subclasses within the meaning of the California Labor Code.

124.   Defendants are subject to Wage Order 10, 8 CCR 11000 which regulates "any industry, business or establishment operated for the purpose of furnishing entertainment or recreation to the public, including but not limited to *theaters, dance halls,* bowling alleys, billiard parlors, skating rinks, riding academies, racetracks, amusement parks, athletic fields, swimming pools, gymnasiums, gold courses, tennis courts, carnivals, and *wired music studios*." (Emphasis added)

125.   In addition, and in the alternative, Defendants are subject to Wage Order 5, 8 CCR 11050, which regulates, *inter alia*, "Public Housekeeping Industry" embracing any industry, business or establishment which provides meals, housing, or maintenance services whether operated as a primary business or when incidental to other operations in an establishment not covered by an industry order of the Commission, and includes, but is not limited to the following: (1) Restaurants, *night clubs, taverns*, bars, cocktail lounges, lunch counters, cafeterias, boarding houses, clubs, and all similar establishments where food in either solid or liquid form is prepared and served to be consumed on the premises.

126.   Cal. Labor Code §350(e) confirms that any amounts paid directly by a patron to a dancer is a gratuity or tip belonging solely and entirely to the dancer:

THIRD AMENDED COMPLAINT (CLASS ACTION)
42407

40

"Gratuity" includes any tip, gratuity, money, or part thereof that has been paid or given to or left for an employee by a patron of a business over and above the actual amount due the business for services rendered or for goods, food, drink, or articles sold or served to the patron. *Any amounts paid directly by a patron to a dancer employed by an employer subject to Industrial Welfare Commission Order No. 5 or 10 shall be deemed a gratuity.*

127.   Assembly Bill 2509 confirmed that the full amount given to or left for a dancer (like Plaintiffs Trauth and Rivera and the Oxnard and Farmdale Subclasses) is a gratuity and the sole property of the dancer.   On June 22, 2001, the State of California, Department of Industrial relations. Division of Labor Standards Enforcement published an opinion letter further confirming this and stating:

By adding this provision, any amounts that are directly paid by a customer to a dancer, are defined as a gratuity and are sole property of the dancer, notwithstanding "the actual amount due the business for services rendered." AB 2509 thus expanded the definition of a gratuity for dancers. By way of illustration:

A customer in a restaurant leaves $60 for the waiter, on a bill for $50. The waiter is entitled to keep only $10, the amount of the gratuity. The underlying $50 is "the actual amount due the business for services rendered or for goods, food, drink . . . sold or served to the patron," and this amount is collected by the waiter for delivery to the employer. *In contrast, a patron at a striptease theater gives $30 to a dancer, consisting of $20 for the dance fee (which may have been pre-set by the employer) plus $10 as an additional amount for the dancer's services. Under AB 2509, the dancer is entitled to keep the entire $30.*
                    *   *   *
As a caveat to this, however, please note that if the T-shirt sales are accomplished through dancing (e.g., while dancing, the dancer sells a shirt she is wearing to a customer so that the "sale of the shirt" is nothing more than a means of accomplishing a striptease dance) then the special definition would apply.
                    *   *   *
Over the past seven or eight years, the State Labor Commissioner's office has received substantial numbers of complaints from dancers about being forced to pay "stage fees" to their employers in order to be granted the "privilege" of working. These "stage fees," often in the amount several hundred dollars per shift, were taken from the amounts that customers paid to dancers for their services.   Dancers' organizations were instrumental in supporting the legislation that clearly prohibits this practice.

(Emphasis added).

---

128.   All table dance tips and/or other amounts that patrons gave directly to members of the Oxnard and Farmdale Subclasses were tips / gratuities belonging entirely and solely to the Oxnard and Farmdale Subclasses member.

129.   No part or portion of these sums should have been paid by any Oxnard and Farmdale Subclasses member to Defendants as rent, stage fees, house fees or otherwise.

130.   No part or portion of these sums should have been paid by Plaintiffs Trauth and Rivera or any Oxnard and Farmdale Subclasses members to any other employees of Defendants (such as managers, doormen, floor walkers, checkers, or disk jockeys) as "tip-outs" or otherwise.  This practice was not part of any valid tip-pool.   Managers, doormen, floor walkers, checkers, and disk jockeys are not employees who typically receive tips.

131.   California law does not allow for any reduction or offset in the minimum wages due based on tips received. Cal. Labor Code §351 provides:

> No employer or agent shall collect, take, or receive any gratuity or a part thereof that is paid, given to, or left for an employee by a patron, or deduct any amount from wages due an employee on account of a gratuity, or require an employee to credit the amount, or any part thereof, of a gratuity against and as a part of the wages due the employee from the employer. Every gratuity is hereby declared to be the sole property of the employee or employees to whom it was paid, given, or left for.  An employer that permits patrons to pay gratuities by credit card shall pay the employees the full amount of the gratuity that the patron indicated on the credit card slip, without any deductions for any credit card payment processing fees or costs that may be charged to the employer by the credit card company. Payment of gratuities made by patrons using credit cards shall be made to the employees not later than the next regular payday following the date the patron authorized the credit card payment.

132.   Cal. Labor Code §221 and §224 further provide that it is unlawful for an employer to divert any part of an employee's wages to itself.

133.   Defendants violated the aforementioned laws by requiring Plaintiffs Trauth and Rivera and the Oxnard and Farmdale Subclasses members: (a) to pay Defendants rent, stage fees, house-fees, or other amounts; (b) to pay Defendants a portion of each table dance tip received from patrons; (c) to pay tip-outs to

THIRD AMENDED COMPLAINT (CLASS ACTION)
42407

Defendants' employees who do not normally receive tips (including managers, doormen, floor walkers and disk-jockeys); (d) to sell goods (drinks, t-shirts, novelties) for Defendants as part of a dance and pay Defendants' money; (e) to pay Defendants for drinks not sold to patrons.

134.   Based on the foregoing, all members of the Oxnard and Farmdale Subclasses were injured, damaged and incurred financial loss as a result of the conduct of Defendants.

135.   In addition, Plaintiff demands all penalties provided for by the Labor Code and if no penalty is so specified, then the penalties provided for under the Labor Code §2699(f)(2) for each employee for each payroll period one year from the filing of the lawsuit.

136.   All monies Defendants collected from these practices must be refunded to Plaintiffs Trauth and Rivera and the Oxnard and Farmdale Subclasses, in addition to the minimum wages Defendant did not pay and other relief and amounts allowed by law.

137.   Cal. Labor Code §353 provides: "Every employer shall keep accurate records of all gratuities received by him, whether received directly from the employee or indirectly by means of deductions from the wages of the employee or otherwise. Such records shall be open to inspection at all reasonable hours by the department."

138.   The California Labor Code, including Cal. Labor Code § 226(a), required Defendants to maintain records regarding each Class member's employment, including hours worked and any deductions from wages.

139.   To the extent Defendants failed to maintain complete records regarding each Oxnard and Farmdale Subclasses member's employment, including hours worked and any deductions from wages, Defendants violated the law, causing the Oxnard and Farmdale Subclasses damage.

140.   As a result of the foregoing, Plaintiffs Trauth and Rivera seek on behalf of themselves and all members of the Oxnard and Farmdale Subclasses unpaid minimum wages at the required legal rate for all of their working hours during the relevant time period, reimbursement of any base rent, liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon, full refund of all tip-splits and other amounts paid Defendants, full refund of all tip-outs or other amounts paid other employees, attorneys' fees and costs, civil penalties pursuant to Cal. Labor Code § 2699, and all other damages, restitution, costs, interest calculated at the highest legal rate, and all other relief and amounts allowed by law.

## FOURTH CAUSE OF ACTION

### VIOLATION OF THE NON-CALIFORNIA STATE WAGE AND HOUR LAWS
### (Failure to Pay Statutory Minimum Wage)
### (Against Defendants Spearmint Rhino Worldwide and Spearmint Rhino Consulting On Behalf of the Kentucky, Idaho, Texas, Nevada, and Florida Subclasses)

141.   Plaintiff Blair hereby incorporates all of the preceding paragraphs by reference as if fully set forth herein.

142.   At relevant times, Plaintiff Blair and all members of the Kentucky, Idaho, Texas, Nevada, and Florida Subclasses were employees of the Defendants within the meaning of the Non-California State Wage and Hour Laws.

143.   At all relevant times, Defendants were the employers of all members of the Kentucky, Idaho, Texas, Nevada, and Florida Subclasses within the meaning of the Non-California State Wage and Hour Laws.

144.   The Non-California State Wage and Hour Laws require that all employees be paid minimum wages by their employers.

145.   The Non-California State Wage and Hour Laws provide for higher hourly minimum wages than FLSA.  Therefore, that wage applies to all members of the Kentucky, Idaho, Texas, Nevada, and Florida Subclasses. 29 U.S.C. §218(a).

146.   The Non-California State Wage and Hour Laws do not allow for any reduction or offset in any minimum wages based on tips received. Further, employers cannot take any portion of an employee's tips.

147.   Any agreement between an employee and employer to receive less than the minimum wage is invalid.

148.   Employers must pay premium or overtime rates when employees work beyond specific daily or weekly limits.

149.   Defendants Spearmint Rhino Worldwide, Spearmint Rhino Consulting, failed to pay Plaintiff Blair, or any other member of the Kentucky, Idaho, Texas, Nevada, and Florida Subclasses, any minimum hourly wages for their labor during the relevant time period.   Rather, those Defendants improperly classified all members of the Kentucky, Idaho, Texas, Nevada, and Florida Subclasses as independent contractors so as to attempt to avoid paying them any wages.   All unpaid wages must now be paid to the Kentucky, Idaho, Texas, Nevada, and Florida Subclasses.

150.   All amounts paid to members of the Kentucky, Idaho, Texas, Nevada, and Florida Subclasses by customers in relation to dances performed were tips, not wages or "service fees," and cannot be used to offset Defendants' obligation to pay them minimum wages.

151.   Defendants and the aforementioned non-parties in the enterprise conspired amongst themselves and entered into agreements in California as part of a strategy to maximize their revenues and profits by disregarding applicable wage and hour laws and engaging in other unlawful conduct described within.   As a result of those agreements and the unlawful conduct emanating from California, class members working at all the Nightclubs nationwide were injured during the class period.   As participants in the conspiracy, Spearmint Rhino Consulting and Spearmint Rhino Companies are responsible and jointly and severally liable to the class for all damages ensuing from the wrong.

152.   Based on the foregoing, all members of the Kentucky, Idaho, Texas, Nevada, and Florida Subclasses were injured, damaged and incurred financial loss.

153.   The Non-California State Wage and Hour Laws also require all employers to maintain records for the benefit of their employees show the number of hours worked in the pay period and each day along with any wages paid.

154.   To the extent Defendants Spearmint Rhino Worldwide and Spearmint Rhino Consulting failed to maintain all records required by the aforementioned statutes and regulations, it also violated the aforementioned laws causing the Kentucky, Idaho, Texas, Nevada, and Florida Subclasses damage.

155.   As a result of the foregoing, Plaintiff Blair seeks on behalf of herself and all members of the Kentucky, Idaho, Texas, Nevada, and Florida Subclasses unpaid minimum wages at the required legal rate for all of their working hours during the relevant time period, liquidated damages if available, overtime, prejudgment interest, attorneys' fees and costs, and all other relief, damages, restitution, costs and penalties allowed by law.   Plaintiff Blair further seeks injunctive relief to compel Defendants to recognize the Kentucky, Idaho, Texas, Nevada, and Florida Subclasses members' employee status, to provide all payments guaranteed by law, and for this Court's continuing jurisdiction to enforce compliance.

## FIFTH CAUSE OF ACTION

### (VIOLATION OF BUS. & PROF. CODE §17200 *et seq.*)
### (Against All Defendants On Behalf of Oxnard and Farmdale Subclasses)

156.   Plaintiffs incorporate the allegations of all the foregoing paragraphs by reference, as if fully set forth herein.

157.   Plaintiffs bring this action individually, on behalf of the Class and on behalf of the general public pursuant to § 17200 *et. seq.* of the Bus. & Prof. Code, the Unfair Competition Act (the "UCL").

158.   The conduct of Defendants, as described above, constituted unlawful, unfair, unconscionable and/or fraudulent business acts or practices.

159. Plaintiffs bring this claim on behalf of the Class pursuant to Bus. & Prof. Code §17204 which prohibits unfair competition, defined as "any unlawful, unfair or fraudulent business act or practice." On behalf of the Class, Plaintiffs seek compensation for the loss of their property and the personal financial impacts they have suffered as a result of Defendants' unfair business practices. Defendants' conduct, as described above, has been and continues to be deleterious to the Class and Plaintiffs Trauth and Rivera are seeking to enforce important rights affecting the public interest within the meaning of Code of Civil Procedure §1021.5.

160. Upon information and belief, the unlawful, unfair, unconscionable and fraudulent business acts and practices being challenged were conducted in and from the principal offices of Defendants Spearmint Rhino – Worldwide, Spearmint Rhino – Consulting and Oxnard in California and emanated to and affected Class members in other districts, including those in California, Florida, Idaho, Kentucky, Nevada, and Texas where the Nightclubs are located. Further, Defendants entered into agreements and conspired amongst themselves (and with certain third parties in the enterprise who own part of other Nightclubs) to engage in the above-described unlawful, unfair, unconscionable and/or fraudulent business acts and practices in California and that conduct harmed Class members and caused them injury and financial loss. As such, the UCL applies to all such transactions and dealings.

161. By failing to pay its employees minimum wages in violation of FLSA, the California Labor Code, the Non-California State Wage and Hour Laws, and/or any other state or federal law or regulation, as described above, Defendants engaged in unlawful, unfair, unconscionable and/or fraudulent business acts or practices in violation of the UCL.

162. Unpaid wages constitute restitution of property earned by the employee.

163. By requiring Class members to share their tips (e.g., table dance tips) with Defendants and / or their employees (tip-outs) in violation of FLSA, the California Labor Code, the Non-California State Wage and Hour Laws and/or any

other state or federal law or regulation, as described above, Defendants engaged in unlawful, unfair, unconscionable and/or fraudulent business acts or practices in violation of the UCL.

164. By attempting to have Class members waive, abridge or limit their rights under the FLSA, the California Labor Code, and/or the Non-California State Wage and Hour Laws in order to work as exotic dancers at the Nightclubs, Defendants engaged in unlawful, unfair, unconscionable and/or fraudulent business acts or practices in violation of the UCL.

165. By threatening to retaliate against and penalize Class members for asserting their rights under the FLSA, the California Labor Code, and/or the Non-California State Wage and Hour Laws (such as by terminating them, confiscating their tips, and/or imposing other penalties and discrimination), Defendants engaged in unlawful, unfair, unconscionable and/or fraudulent business acts or practices in violation of the UCL.

166. By failing to maintain employment records under the FLSA, the California Labor Code, and/or the Non-California State Wage and Hour Laws, Defendants engaged in unlawful, unfair, unconscionable and/or fraudulent business acts or practices in violation of the UCL.

167. The acts complained of herein, and each of them, constitute unfair, unlawful, unconscionable and/or fraudulent business practices in violation of Business and Professions Code §17200 et. seq. Defendants' acts and practices described herein offend established public policies, including, but not limited to those set forth in the FLSA, the California Labor Code (including Cal. Labor Code §356), and/or the Non-California State Wage and Hour Laws, and involve business practices that are immoral, unethical, oppressive, and/or unscrupulous.

168. The unfair business practices set forth above have and continue to injure the Class and the general public and cause injury and the loss of money, as described further within. These violations have unjustly enriched the Defendants at the

expense of the Class.  As a result, Plaintiffs, the Class and the general public are entitled to restitution.

169.  In addition, Plaintiff demands all penalties provided for by the Labor Code and if no penalty is so specified, then the penalties provided for under the Labor Code §2699(f)(2) for each employee for each payroll period one year from the filing of the lawsuit.

170.  As joint employers and co-conspirators, Spearmint Rhino Worldwide, Spearmint Rhino Consulting are jointly and severally liable to the entire class for the injuries caused by the aforementioned conduct.

171.  By reason of the foregoing, Plaintiffs and each member of the Class are entitled to recover from Defendants restitution, backpay, declaratory relief, the cost of bringing this action (including reasonable attorneys' fees and costs), and any other relief allowed by law and deemed just and equitable in the circumstances.

## XIII.  JURY DEMAND

Plaintiffs reserve their rights to and hereby request a trial by jury on all matters so triable.

## IX.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of the Class and each respective subclass, pray for an order for relief as follows:

1.     That all Defendants be found jointly and severally liable to Plaintiffs and the Class and each subclass;

2.     For a declaration that Defendants violated the rights of Plaintiffs and the Class under the FLSA, California Labor Code, the Non-California State Wage and Hour Laws and/or any other applicable law;

3.     For nominal damages;

4.     For compensatory and actual damages;

5.     For restitution of all monies due Plaintiffs and the Class and disgorged profits from the unlawful business practices of Defendants;

THIRD AMENDED COMPLAINT (CLASS ACTION)                                        49
42407

6.    For all backpay, unpaid wages, and a refund of all tips, "rent", tip-outs, fines and other amounts paid by Plaintiffs and members of the Class to Defendants and their employees;

7.    For all statutory damages, liquidated damages, penalties and/or other relief allowed by federal and state wage and hour statutes and regulations and/or other laws;

8.    For accrued interest;

9.    For applicable penalties due the class or state, including but not limited to, those under Labor Code 2699;

10.    For an order certifying the Class and Subclass under Fed.R.Civ.P. 23;

11.    For costs of suit and expenses incurred herein, including reasonable attorneys' fees allowed under relevant provision of law including, but not limited to, those allowed under 29 U.S.C. §216(b), California Labor Code §218.5, §1194(a) California Code of Civil Procedure §1021.5 and/or other applicable provision of law; and

12.    For any and all other relief that the Court may deem just, proper and equitable in the circumstances.

ZIMMERMAN REED P.L.L.P.

Dated:    May 7, 2010

/s/ Hart L. Robinovitch
Hart L. Robinovitch, AZ Bar No. 020910
14646 N. Kierland Blvd., Suite 145
Scottsdale, Arizona 85254
(480) 348-6400
(480) 348-6415 Facsimile

Christopher P. Ridout, CA Bar No. 143931
Devon M. Lyon CA Bar No. 218293
RIDOUT & LYON, LLP
555 E. Ocean Boulevard, Suite 500
Long Beach, CA  90802
(562) 216-7380 Telephone
(562) 216-7385 Facsimile

1

Timothy J. Becker, MN Bar No. 256663
ZIMMERMAN REED, P.L.L.P.

2

651 Nicollet Mall, Suite 501
Minneapolis, MN  55402

3

(612) 341-0400
(612) 341-0844 Facsimile

4

5

Caleb LH Marker, MI Bar No. P70963
CONSUMER LAW CENTER, PLLC

6

601 Abbot Road, Suite 100
East Lansing, MI 48823

7

(888) 490-8550
(888) 490-7750 Facsimile

8

**Attorneys for Plaintiffs and the Class**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28