Exhibit A

# SETTLEMENT AGREEMENT

# TABLE OF CONTENTS

**Page**

1.  DEFINITIONS........................................................................................11

2.  MOTION FOR PRELIMINARY APPROVAL AND CERTIFICATION OF PROPOSED CLASSES FOR SETTLEMENT PURPOSES, STAY OF RELATED LAWSUITS, STIPULATION RE AMENDMENT OF COMPLAINT.......................................................................................24

3.  INJUNCTIVE RELIEF..........................................................................26

4.  PAYMENTS BY DEFENDANTS. ........................................................27

5.  CLASS NOTICE, CLAIM FORMS, OBJECTIONS AND OPT-OUTS. ......................29

6.  CLAIMS ADMINISTRATION.............................................................35

7.  COMPUTATION AND DISTRIBUTION OF SETTLEMENT PAYMENTS AND TAXATION. .....................................................................................41

8.  RELEASES AND COVENANTS. .........................................................44

9.  ATTORNEYS' FEES AND EXPENSES................................................51

10. INCENTIVE FEE AWARDS.................................................................53

11. TERMINATION OF SETTLEMENT.....................................................54

12. NO ADMISSION OF WRONGDOING. ...............................................55

13. PRESS CONTACTS/PUBLICITY.........................................................56

14. CONFIRMATORY DISCOVERY.........................................................57

15. MISCELLANEOUS PROVISIONS.......................................................57

## STIPULATION AND SETTLEMENT AGREEMENT

This Stipulation and Settlement Agreement is entered into as of May 17, 2010, by and between Tracy Dawn Trauth, Christeen Rivera, Jennifer Blair, Victoria Omlor, Jasmine Wright, Anicia Vintimilla, Marsha Ellington, Selena Denise Pelaez, Nicole Garcia, Reah Navarro, and Tami Sanchez, individually and on behalf of the Settlement Classes on the one hand, and City of Industry Hospitality Venture, Inc., Downtown LA Club Venture, Inc., Farmdale Hospitality Services, Inc., High Expectations Hospitality, LLC, Inland Restaurant Venture I, Inc., K-Kel Inc, Kentucky Hospitality Venture, LLC, LCM, LLC, Midnight Sun Enterprises, Inc., Olympic Avenue Venture, Inc., The Oxnard Hospitality Services, Inc., Rialto Pockets, Inc., Rouge Gentlemen's Club, Inc., Santa Barbara Hospitality Services, Inc., Santa Maria Restaurant Enterprises, Inc., Spearmint Rhino Companies Worldwide, Inc., Spearmint Rhino Consulting Worldwide, Inc., and WPB Hospitality, LLC, on the other hand.  Words that have initial capitalizations (such as "Agreement") are used in this Agreement as defined in Section 1 herein.

Subject to the approval of the Court and the terms and conditions hereof, this Agreement is intended to fully, finally and forever resolve, discharge, and settle the released claims.

## RECITALS

This Agreement is entered into with reference to the following facts:

A.    On July 13, 2009, an action entitled *Tracy Dawn Trauth  v. The Spearmint Rhino Companies Worldwide, Inc., et al.*, Case No. EDCV09-1316 VAP (DTBx) was filed in the United States District Court for the Central District of California.  The original Complaint contended that persons who performed as dancers at the adult cabarets known as Spearmint Rhino in the states of California and Nevada should have been treated as employees rather than independent contractors, and as a result were entitled to, but did

not receive adequate compensation and benefits in exchange for the services they

provided to the Spearmint Rhino nightclubs.  The Complaint, *inter alia*, also alleged that

Defendants were engaged in unlawful tip-sharing arrangements with the Class.  The

Complaint further alleged that Consulting and Companies are the joint employers of all

dancers performing at nightclubs doing business as Spearmint Rhino, and hence are

jointly and severally liable for any violations of applicable state and federal wage and

hour laws.  The original Complaint alleged two subclasses -- one for dancers in the state

of Nevada and one for dancers in the state of California.  On October 6, 2009, Ms. Trauth

filed her First Amended Complaint severing the claims of the two subclasses subject to a

tolling agreement and order regarding the claims of the Nevada subclass.  The Court's

order of October 7, 2009 granting leave to amend contemplated the re-filing of the

Nevada subclass' claims and tolled the statute of limitations on those claims.  On

November 20, 2009 Ms. Trauth filed her Second Amended Complaint more fully

identifying her by her full legal name.  On April 19, 2010, the Court granted Ms. Trauth

leave to file a Third Amended Complaint, maintaining the same core allegations from the

original complaint and, among other things: (1) expanding the misclassification claims to

assert claims on behalf of a national class, including the previously severed Nevada

subclass; and (2) adding Jennifer Blair and Christeen Rivera as plaintiffs.  The Court

granted Ms. Trauth, Ms. Blair and Ms. Rivera leave to filed a Fourth Amended

Complaint, which amended complaint was filed on August 16, 2010, maintaining the

same core allegations from the Third Amended Complaint to add all parties to the

Settlement Agreement, including adding additional plaintiffs to represent each of the

subclasses and all parties who are making payments under the terms of the Settlement Agreement.

B.   Class Counsel has obtained, through their own investigation, formal and informal discovery, information regarding Defendants' policies and practices regarding their lease agreements with the dancers as well as information concerning the number of Class Members and the number of Dance Shifts performed by dancers at the Clubs. Approximately 3,500 pages of documents were exchanged between the parties. In connection with her motion to intervene in one of the Los Angeles Superior Court actions, Ms. Trauth was deposed. Ms. Trauth also served discovery on defendants, including interrogatories and requests for production. Moreover, Class Counsel, as part of the settlement process, has conducted additional confirmatory discovery relating to the number of Class Members and the number of Dance Shifts performed by each dancer. The confirmatory discovery included a person(s) most knowledgeable deposition on these issues and document production regarding these issues at or prior to the deposition. The documents were made available for inspection and/or photocopying, subject to an appropriate stipulated protective order. In addition, Class Counsel has conducted its own investigation into the underlying events and issues related to the subject matter of the Action and has undertaken an analysis of the legal principles applicable to Plaintiffs' claims and Defendants' defenses thereto. Class Counsel has also confirmed the essential facts upon which this Agreement is based.

C.   Further, Class Counsel has engaged in extensive arms-length negotiations with Defendants' Counsel, with a view toward achieving substantial benefits for the Members of the Settlement Classes while avoiding the cost, delay, and uncertainty of further

litigation, trial, and appellate review.  During the course of the negotiations, and since this Action was filed, Defendants asserted, and continue to assert, that they have substantial defenses to the claims included in the Action, even though Plaintiffs dispute the validity of these defenses, including but not limited to the following:

(1)   Their policies and practices with respect to treating the dancers at the Clubs as independent contractors are standard in the adult entertainment industry, and the lease agreements signed by the dancers are clear and unambiguous;

(2)   Class treatment for trial purposes is improper because individual issues of fact and law will necessarily predominate over common issues, among other reasons, even if the classes are further divided into additional subclasses;

(3)   The Named Plaintiffs cannot prevail on their claims on behalf of the general public because they cannot establish that all dancers were harmed by Defendants' and the Clubs' alleged common policy or course of conduct;

(4)   Based on opinions expressed by the dancers themselves, they prefer to be treated as independent contractors rather than employees;

(5)   The classes proposed in the Action could never be certified.  The fact-intensive inquiry required to evaluate such claims precludes any form of collective adjudication as to liability on behalf of the general public.  Defendants further contend that the lease agreements with the dancers are not unlawful, unfair, deceptive, fraudulent, misleading, or wrongful in any way;

(6)   Dancers make more money than they would as employees, and after offset of monies paid directly to the dancers by customers, the dancers would not be entitled to any damages or restitution;

(7)     All dancers are treated as independent contractors and not as employees, and are
therefore unable to establish their claimed status as employees; and

(8)     Plaintiffs cannot prevail against Consulting, Companies or any of the Clubs based
on the joint employer doctrine and cannot maintain claims against clubs that are
not parties to the Action based upon the joint employer doctrine.  Further, each of
the Clubs is a separate and distinct entity.

D.     As a consequence of the negotiations between the Parties, and of Class Counsel's
investigation, analysis, and discovery, the Parties agree to settle the Action under the
terms and conditions memorialized in this Agreement, believing such Settlement to be
fair, reasonable, adequate, and in the best interests of Plaintiffs, the general public, and
the Members of the Settlement Classes.  Although Plaintiffs and Class Counsel believe
that the claims asserted in the Action are meritorious, they have agreed to execute this
Agreement and urge approval of the Agreement by the Court after considering:

(1)     The substantial factual and legal defenses to the claims alleged in the Action that
are available to Defendants, which render the outcome of the Action, if tried,
uncertain;

(2)     The difficulties Plaintiffs would encounter establishing the elements of claims at
trial;

(3)     The substantial benefits that Class Members will receive pursuant to the
Agreement;

(4)     The fact that the Settlement ensures relief that is reasonably directed toward the
Members of the Settlement Classes in the most expeditious and efficient manner

practicable, and thus much sooner than would be possible if the claims asserted were litigated successfully through trial and appeal; and

(5) The fact that the Agreement allows Members of the Settlement Classes to exclude themselves from the Settlement Classes should they desire to individually pursue the claims alleged in the Action.

E. The Parties agree that any challenges to Tracy Dawn Trauth's standing based upon her alleged performances at the Spearmint Rhino Club in Oxnard, California involve disputed facts. As a result, any current and pending challenges to Ms. Trauth's standing and adequacy to represent the Class are withdrawn without prejudice and can be raised by Defendants in the event that this Settlement does not become Final. Defendants agree to allow Ms. Trauth to add Christeen Rivera, Jennifer Blair, Victoria Omlor, Jasmine Wright, Anicia Vintimilla, Marsha Ellington, Selena Denise Pelaez, Nicole Garcia, Reah Navarro, and Tami Sanchez as co-Plaintiffs/Class Representatives in this Action solely for the purposes of settlement and reserve the right to object to any amendment to add them to the Action as plaintiffs or interveners in this or any action should this Settlement be terminated for any reason.

F. Defendants deny any and all claims of wrongdoing or liability that were asserted, or could have been asserted, in the Action. At the same time, Defendants recognize that the expense, inconvenience, and distraction of defending the Action through motions for class certification and/or decertification, multiple trials and appeals would be substantial, and that the outcome of such continued litigation is inherently uncertain. Without admitting, generally or specifically, and denying any wrongdoing or liability whatsoever, or waiving any of their rights or defenses, Defendants nevertheless agree to the terms of

6

the Agreement and to class treatment of Plaintiffs' claims for the purposes of settlement only in order to effectuate an efficient, cost-effective, prompt, and fair resolution of this matter, subject only to the terms and conditions memorialized herein.

G.  On March 12, 2007, an action entitled *Melissa Arfat v. Blue Zebra Entertainment, Inc.,* Case No. BC367741 was filed in the Los Angeles Superior Court - Central Judicial District (as defined below the "Farmdale Lawsuit.") The complaint in the Farmdale Lawsuit contended that persons who performed as dancers at the adult cabaret known as the Blue Zebra located at 6872 Farmdale Avenue, North Hollywood, California should have been treated as employees rather than independent contractors, and as a result were entitled to, but did not receive, adequate compensation and benefits in exchange for the services they provided to the Farmdale Club. The Farmdale Lawsuit was settled as of September 19, 2007, which settlement was given final approval by the Los Angeles County Superior Court on March 18, 2008. The settlement relating to the Farmdale Lawsuit released defendants in the Farmdale Lawsuit from claims asserted on a class basis by the group of individuals who performed as exotic dancers and who provided nude, semi-nude, and/or bikini entertainment for customers at the Farmdale Club for a period from March 12, 2003 up to and including June 30, 2007 from all claims for failure to pay minimum wages, overtime, unlawful deduction from paychecks, unlawful tip collection, failure to provide rest periods, uniform and waiting time penalties, reimbursement for tips, stage fees and other wages accrued as more fully set forth in the settlement and final approval order in the Farmdale Lawsuit.

H.  During the course of negotiations of this settlement, Class Counsel advised defendants that they were preparing to refile Ms. Blair's class complaint alleging FLSA and ancillary

7

state law claims against Spearmint Rhino-Companies Worldwide, Inc., Spearmint Rhino Consulting Worldwide, Inc., K-Kel, Inc. and/or other entities on behalf of a nationwide class of dancers, who performed at Spearmint Rhino nightclubs in Nevada, Texas, Florida, Idaho and Kentucky.

I.      Certain procedures regarding simplification of the claims made process and class notice set forth below have been undertaken by the parties with a particular goal of protecting the privacy rights and anonymity of class members, many of whom perform under pseudonyms and who have family members and/or colleagues who may not know that they work in this highly sensitive and unique industry.

J.      The Parties are aware of certain similar lawsuits that have been filed subsequent to the commencement of this case. The Parties intend, by and through this Settlement, to resolve all of those other actions. The following are the similar actions of which the Parties are currently aware.

1. In 2009 and 2010, several putative class actions were filed in the Los Angeles Superior Court on behalf of groups of individuals who performed as exotic dancers and who provided nude, semi-nude, and/or bikini entertainment for customers at nightclubs in the State of California doing business as Spearmint Rhino, Blue Zebra, and Rouge. These putative class actions claim that those persons who performed as dancers at the adult cabarets should have been treated as employees rather than independent contractors, and as a result were entitled to, but did not receive, adequate compensation and benefits in exchange for the services they provided. To date, none of these putative class actions have been certified nor have any motions for class certification been filed. Those actions are as follows:

(a) A lawsuit entitled *Victoria Omlor and Jasmine Wright v. The Spearmint Rhino Companies Worldwide, Inc.*, Case No. BC420882, was filed in the Los Angeles County Superior Court. This lawsuit, as originally filed, involves the nightclub in City of Industry, California doing business as Spearmint Rhino. As part of an anticipated settlement of that action, Plaintiffs filed a first amended complaint in this action on March 15, 2010, alleging wage and hour violations at all nightclubs doing business as Blue Zebra, Rouge, and Spearmint Rhino in the state of California. The putative class in this Action overlaps with and is broader than the putative class in *Omlor*. The parties in *Omlor* reached a settlement, but it was rescinded by counsel for plaintiffs in *Omlor* and not submitted to the Court for preliminary approval nor approved by the court. When *Omlor* counsel was notified that Lead Class Counsel had contacted defendants to attempt to increase the value of the pool of settlement benefits flowing to the class, he informed Lead Class Counsel that he considered settlement negotiations terminated and did not seek to join Lead Class Counsel in their efforts to enhance and broaden the settlement pool. This Agreement is more comprehensive and provides greater benefits to those members of the putative class who would have been included in the *Omlor* settlement document. However, after receipt of the motion for preliminary approval, counsel for Plaintiffs in the *Omlor* case met with Defendants' Counsel and raised various issues concerning the terms of the Agreement and Notice to the Class. Counsel for plaintiffs in *Omlor* also discussed these issues with Plaintiffs' counsel in *Trauth*. Counsel for *Trauth* and counsel for *Omlor* thereafter negotiated with Defendants' Counsel, which ultimately led to additional modifications to the Agreement and Notice, which all parties agreed would be of benefit to the class. In addition, as part of this negotiation, it was agreed that counsel for plaintiffs in *Omlor* would be added as Class Counsel in the *Trauth* action, and plaintiffs in *Omlor* would be added to the *Trauth* case as Class Representatives.

(b) A lawsuit entitled *Michelle Hoisington v. Inland Restaurant Venture I, Inc.*, Case No. BC419669, was filed in Los Angeles County Superior Court. This lawsuit involves the nightclub in Van Nuys, California doing business as Spearmint Rhino.

(c) A lawsuit entitled *Michelle Hoisington v. Rouge Gentlemen's Club*, Case No. BC419646, was filed in Los Angeles County Superior Court. This lawsuit involves the nightclub in Van Nuys, California doing business as Rouge.

(d) A lawsuit entitled *Victoria Omlor and Anicia Vintimilla v. The Spearmint Rhino Companies Worldwide, Inc.*, Case No. BC420882, was filed in the Los Angeles County Superior Court. This lawsuit involves the nightclub located in Van Nuys, California doing business as Spearmint Rhino.

(e) A lawsuit entitled *Stacy Salazar v. Rouge Gentlemen's Clubs, Inc.*, Case No., BC432102, was filed in Los Angeles County Superior Court. This lawsuit involves two Rouge nightclubs, five Spearmint Rhino nightclubs, one Blue Zebra nightclub, as well as sixteen (16) other nightclubs not bearing the names Blue Zebra, Rouge, or Spearmint Rhino and not alleged to have any connection to the aforementioned nightclubs.

2. In addition, a putative class action entitled *Selena D. Pelaez v. Spearmint Rhino Companies Worldwide, Inc., et al.*, Case No. A-10-613508 -C, was filed in the District Court of the State of Nevada, Clark County. This lawsuit involves the Spearmint Rhino nightclub in Las Vegas, Nevada. Like the putative class actions filed in California, this action was filed on behalf of individuals who performed as exotic dancers and who provided nude, semi-nude, and/or bikini entertainment for nightclub customers. The complaint alleges that those persons who performed as dancers at the adult cabaret should have been treated as employees rather than independent contractors, and as a result were entitled to, but did not receive, adequate

compensation and benefits in exchange for the services they provided. It also alleges conversion and unjust enrichment claiming that, among other things, the Spearmint Rhino Club required the dancers to pay fees to exchange chips for cash and mandated the payment of moneys to Spearmint Rhino employees.

3. A putative class action entitled *Elizabeth Merritt v. Spearmint Rhino Companies Worldwide, Inc. and Olympic Avenue Venture, Inc.*, AAA # 11459004900 08, was filed with the American Arbitration Association. This action involves the nightclub located in Los Angeles, California doing business as Spearmint Rhino. Like the California and Nevada court actions, this proceeding was filed on behalf of individuals who performed as exotic dancers and who provided nude, semi-nude, and/or bikini entertainment for nightclub customers. This action also presents claims that those persons who performed as dancers at the adult cabaret should have been treated as employees rather than independent contractors, and as a result were entitled to, but did not receive, adequate compensation and benefits in exchange for the services they provided.

1. **DEFINITIONS.**

As used in this Settlement Agreement,

1.1 "Action" means the lawsuit entitled *Tracy Dawn Trauth, et al. v. Spearmint Rhino Companies Worldwide, Inc., et al.*, Case No. EDCV09-1316 VAP (DTBx), filed in the United States District Court for the Central District of California.

1.2 "Administrative Costs" means all administrative costs of settlement, including, but not limited to, Class Notice, mailing of the Class Notice, internet notice on the Settlement Administrator's website, claims administration, and any reasonable fees and costs incurred or

charged by the Settlement Administrator, in connection with the execution of its duties under this Agreement.

      1.3     "Agreement" or "Settlement Agreement" means this Stipulation and Settlement Agreement.

      1.4     The "Arbitration" means *Elizabeth Merritt v. Spearmint Rhino Companies Worldwide, Inc. and Olympic Avenue Venture, Inc.*, AAA # 11459004900 08, filed with the American Arbitration Association.

      1.5     "CAFA Notice" means the notice to be sent by Defendants to appropriate federal and state officials pursuant to the requirements of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715(b).

      1.6     "California State Court Actions" means the following actions filed and pending (as of the date of the execution of this Agreement) in Los Angeles County Superior Court: *Victoria Omlor and Jasmine Wright v. The Spearmint Rhino Companies Worldwide, Inc.*, Case No. BC420882; *Michelle Hoisington v. Inland Restaurant Venture I, Inc.*, Case No. BC419669; *Michelle Hoisington v. Rouge Gentlemen's Club*, Case No. BC419646; *Victoria Omlor and Anicia Vintimilla v. The Spearmint Rhino Companies Worldwide, Inc.*, Case No. BC420882; and *Stacy Salazar v. Rouge Gentlemen's Clubs, Inc.*, Case No., BC432102.

      1.7     "Claim Form" means the form, identical in all material respects to the document attached hereto as Exhibit A, to be provided and returned by the Members of the Settlement Classes.

      1.8     "Claims Period" means the time period between the date that the Settlement Administrator distributes the Class Notice and the date by which all claims must be submitted to the Settlement Administrator for consideration, of which the duration shall be sixty (60) days.

Any claim submitted to the Settlement Administrator that is postmarked on or before the

ninetieth (90) day after entry of the Preliminary Approval Order is valid; all others postmarked

after that date shall be deemed untimely and not valid, other than as set forth herein.

   1.9 "Class Counsel" means Christopher P. Ridout, Esq. of the of the Law Offices of

Ridout & Lyon LLP, Hart Robinovitch, Esq. and Tim Becker, Esq. of Zimmerman Reed P.L.L.P,

Caleb Marker, Esq. of the Consumer Law Center, and Stephen M. Harris, Esq. of the Law

Offices of Knapp, Petersen & Clarke and Robert L. Starr, Esq. of the Law Offices of Robert L.

Starr.

   1.10 "Class Member(s)" or "Member(s) of the Settlement Class(es)" means an

individual member or members of the Settlement Class.

   1.11 "Class Notice" means the proposed notice submitted in conjunction with the

proposed Preliminary Approval Order and in substantially the form as Exhibit B, attached hereto.

   1.12 "Class Notice Documents" means the Class Notice, the Claim Form, a blank W-9

Form, and a Request for Exclusion Form.

   1.13 "Class Representatives" means Tracy Dawn Trauth, Christeen Rivera, Jennifer

Blair, Victoria Omlor, Jasmine Wright, Anicia Vintimilla, Marsha Ellington, Selena Denise

Pelaez, Nicole Garcia, Reah Navarro and Tami Sanchez, or any other person(s) duly appointed

as additional or successor representatives of the Class.

   1.14 "Club(s)" shall refer to the Clubs owned by City of Industry Hospitality Venture,

Inc., Downtown LA Club Venture, Inc., Farmdale Hospitality Services, Inc., High Expectations

Hospitality, LLC, Inland Restaurant Venture I, Inc., K-Kel Inc., Kentucky Hospitality Venture,

LLC, LCM, LLC, Midnight Sun Enterprises, Inc., Olympic Avenue Venture, Inc., Rialto

Pockets, Inc., Rouge Gentlemen's Club, Inc., Santa Barbara Hospitality Services, Inc., Santa

Maria Restaurant Enterprises, Inc., The Oxnard Hospitality Services, Inc., and WPB Hospitality, LLC, individually ("Club") or collectively ("Clubs").

1.15    "Companies" means Spearmint Rhino Companies Worldwide, Inc.

1.16    "Consulting" means Spearmint Rhino Consulting Worldwide, Inc.

1.17    "Court" means the United States District Court for the Central District of California.

1.18    "Dance Shift(s)" means an individual set or any part thereof wherein a Member of the Settlement Classes provided entertainment at one of the Clubs generally between the hours of either 11:30 a.m. to 6:30 p.m. or 6:30 p.m. to 2:00 a.m., or in Nevada from 5 a.m. to 1 p.m., 1 p.m. to 9 p.m., or 9 p.m. to 5 a.m., which shall each be considered an individual Dance Shift..

1.19    "Defendants" means Spearmint Rhino Companies Worldwide, Inc., Spearmint Rhino Consulting Worldwide, Inc. and all other defendants named in the Fourth Amended Complaint.

1.20    "Defendants' Counsel" means Peter E. Garrell, Esq. and Kim Zeldin, Esq. of Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor LLP.

1.21    "Effective Date" means the day after the Judgment becomes both Final and no longer subject to appeal or review (or further appeal or review), whether by exhaustion of any possible appeal, lapse of time, or otherwise.

1.22    "ERISA" means The Employee Retirement Income Securities Act of 1974, 29 U.S.C. § 1001, *et. seq.*

1.23    "Existing Club(s)" means those Clubs currently operating and owned by City of Industry Hospitality Venture, Inc., Farmdale Hospitality Services, Inc., High Expectations Hospitality, LLC, Inland Restaurant Venture I, Inc., K-Kel Inc., Kentucky Hospitality Venture,

14

LLC, LCM, LLC, Midnight Sun Enterprises, Inc., Olympic Avenue Venture, Inc., The Oxnard

Hospitality Services, Inc., Rialto Pockets, Inc., Rouge Gentlemen's Club, Inc., Santa Barbara

Hospitality Services, Inc., Santa Maria Restaurant Enterprises, Inc., and WPB Hospitality, LLC,

individually ("Existing Club") or collectively ("Existing Clubs").

    1.24   "Fairness Hearing" means the hearing to be held by the Court to consider whether

to issue an order of final approval of the Settlement pursuant to Federal Rule of Civil Procedure

23. At the Fairness Hearing, the Court will also hear any other pertinent matters, including what

legal fees, compensation, and expenses should be awarded to Class Counsel, and to the Class

Representatives.

    1.25   "Farmdale Class Period" means from July 13, 2006 through the date of the entry

of the Preliminary Approval Order.

    1.26   "Farmdale Lawsuit" means the action filed in the Los Angeles Superior Court -

Central Judicial District, on March 12, 2007 entitled *Melissa Arafat v. Blue Zebra Entertainment,*

Case No. BC367741.

    1.27   "Farmdale Releasing Persons" means each and every Farmdale Settlement Class

Member who does not timely and validly opt-out as required under Section 5.8 and their

respective heirs, beneficiaries, devisees, legatees, executors, administrators, trustees,

conservators, guardians, estates, personal representatives, successors-in interest, and assigns.

    1.28   "Farmdale Settlement Class" means the group of individuals who performed as

exotic dancers and who provided nude, semi-nude, and/or bikini entertainment for customers of

Farmdale Hospitality Services, Inc. during the Farmdale Class Period.

    1.29   "Farmdale Settlement Class Member" means those individuals who are members

of the Farmdale Settlement Class.

1.30  "Final" means the later of:

(a)      the date of final affirmance of the Judgment on appeal, the expiration of the time for a petition or a denial of a petition seeking review of the Judgment or, if review is granted, the date of final affirmance of the Judgment following review pursuant to that grant; or

(b)      the date of final dismissal of any appeal from the Judgment or the final dismissal of any petition for review of the Judgment; or

(c)      if no appeal or petition seeking review of the Judgment is filed, the expiration date of the time for the filing or noticing of any appeal from the Judgment and any petition seeking review of the Judgment, i.e., sixty (60) days after entry of the Judgment.

1.31  "Florida Class Period" means the period of time from May 3, 2006 through the date of entry of the Preliminary Approval Order.

1.32  "Florida Releasing Persons" means each and every Florida Settlement Class Member who does not timely and validly opt-out as required under Section 5.8 and their respective heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, estates, personal representatives, successors-in interest, and assigns.

1.33  "Florida Settlement Class" means the group of individuals who performed as exotic dancers and who have provided nude, semi-nude, and/or bikini entertainment for customers at the Club owned WPB Hospitality, LLC during the Florida Class Period.

1.34  "Florida Settlement Class Member" means those individuals who are members of the Florida Settlement Class.

1.35   "FLSA" means the Federal Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et seq.*

1.36   "FLSA Class Period" means the period of time from July 13, 2006 through the date of entry of the Preliminary Approval Order.

1.37   "FLSA Releasing Persons" means each and every FLSA Class Member who does not timely and validly opt-out as required under Section 5.8 and her respective heirs beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, estates, personal representatives, successors-in-interest and assigns.

1.38   "FLSA Settlement Class" means those individuals who are members of the Oxnard, Farmdale, Kentucky, Idaho, Texas, Nevada and/or Florida Settlement Classes who elect to participate in the Settlement and timely submit a Valid Claim Form and who performed at one or more of the Clubs as exotic dancers and who provided nude, semi-nude and/or bikini entertainment for customers at the Clubs during the FLSA Class Period.

1.39   "FLSA Settlement Class Member" means those individuals who are members of the FLSA Settlement Class.

1.40   "Gross Settlement Amount" shall mean the sum of ten million dollars ($10,000,000), which has been accepted as full and adequate consideration for the Settlement and releases provided herein.

1.41   "Idaho Class Period" means the period of time from May 3, 2006 through the date of entry of the Preliminary Approval Order.

1.42   "Idaho Releasing Persons" means each and every Idaho Settlement Class Member who does not timely and validly opt-out as required under Section 5.8 and her respective heirs

beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, estates, personal representatives, successors-in-interest and assigns.

1.43    "Idaho Settlement Class" means the group of individuals who performed as exotic dancers and who have provided nude, semi-nude, and/or bikini entertainment for customers at the Club owned by LCM, LLC during the Idaho Class Period.

1.44    "Idaho Settlement Class Member" means those individuals who are members of the Idaho Settlement Class.

1.45    "Judgment" means an order substantially in the form attached hereto as Exhibit C.

1.46    "Kentucky Class Period" means the period from May 3, 2005 through the date of the entry of the Preliminary Approval Order.

1.47    "Kentucky Releasing Persons" means each and every Kentucky Settlement Class Member who does not timely and validly opt-out as required under Section 5.8 and her respective heirs beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, estates, personal representatives, successors-in-interest and assigns.

1.48    "Kentucky Settlement Class" means the group of individuals who performed as exotic dancers and who have provided nude, semi-nude, and/or bikini entertainment for customers at the Club owned by Kentucky Hospitality Venture, LLC during the Kentucky Class Period.

1.49    "Kentucky Settlement Class Member" means those individuals who are members of the Kentucky Settlement Class.

1.50    "Lead Class Counsel" means Christopher P. Ridout, Esq. of the of the Law Offices of Ridout & Lyon LLP and Hart Robinovitch, Esq. of Zimmerman Reed P.L.L.P.

1.51    "LWDA" means the California Labor and Workforce Development Agency.

1.52  "Member(s) of Settlement Class(es)" or "Class Member(s)" means any individual who is a member of the Settlement Class(es).

1.53  "Named Plaintiffs" means Tracy Dawn Trauth, Jennifer Blair, and Christeen Rivera, individually or collectively.

1.54  "Net Settlement Amount" means the balance remaining after Court-approved attorneys' fees and costs and Administration Costs are subtracted from the Gross Settlement Amount. Penalties allocated to the California Labor Code Section 2699 claim shall be deducted from the portion of the Net Settlement Amount allocated to the Oxnard and Farmdale Settlement Classes. Incentive fees shall be paid per Section 10.1.

1.55  The "Nevada Action" means *Selena D. Pelaez v. Spearmint Rhino Companies Worldwide, Inc.*, Case No. A-10-613508-C, filed in the District Court of the State of Nevada, Clark County.

1.56  "Nevada Class Period" means the period of time from July 13, 2006 through the date of entry of the Preliminary Approval Order.

1.57  "Nevada Releasing Persons" means each and every Nevada Settlement Class Member who does not timely and validly opt-out as required under Section 5.8 and her respective heirs beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, estates, personal representatives, successors-in-interest and assigns.

1.58  "Nevada Settlement Class" means the group of individuals who performed as exotic dancers and who have provided nude, semi-nude, and/or bikini entertainment for customers at the Club owned by K-Kel Inc. during the Nevada Class Period.

1.59  "Nevada Settlement Class Member" means those individuals who are members of the Nevada Settlement Class.

1.60    "Oxnard Class Period" means the period of time from July 13, 2005 through the date of entry of the Preliminary Approval Order.

1.61    "Oxnard Releasing Persons" means each and every Oxnard Settlement Class Member who does not timely and validly opt-out as required under Section 5.8 and her respective heirs beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, estates, personal representatives, successors-in-interest and assigns.

1.62    "Oxnard Settlement Class" means the group of individuals who performed as exotic dancers and who have provided nude, semi-nude, and/or bikini entertainment for customers at one or more of the Clubs owned by the following entities during the Oxnard Class Period:  City of Industry Hospitality Venture, Inc., Downtown LA Club Venture, Inc., Inland Restaurant Venture I, Inc., Midnight Sun Enterprises, Inc., Olympic Avenue Venture, Inc., The Oxnard Hospitality Services, Inc., Rialto Pockets, Inc., Rouge Gentlemen's Club, Inc., Santa Barbara Hospitality Services, Inc., Santa Maria Restaurant Enterprises, Inc. during the Oxnard Class Period.

1.63    "Oxnard Settlement Class Member" means those individuals who are members of the Oxnard Settlement Class

1.64    "Party" and "Parties" shall mean the Plaintiffs and the Defendants, individually or collectively.

1.65    "Plaintiffs" means the Named Plaintiffs on behalf of themselves and on behalf of each Member of the Settlement Classes.

1.66    "Preliminary Approval Order" means an order entered by the Court preliminarily approving the Settlement, identical in all material respects to the document attached hereto as Exhibit D.

1.67   "Released Persons" means City of Industry Hospitality Venture, Inc., Downtown LA Club Venture, Inc., Farmdale Hospitality Services, Inc., High Expectations Hospitality, LLC, Inland Restaurant Venture I, Inc., K-Kel Inc., Kentucky Hospitality Venture, LLC, LCM, LLC, Midnight Sun Enterprises, Inc., Olympic Avenue Venture, Inc., Rialto Pockets, Inc., Rouge Gentlemen's Club, Inc., Santa Barbara Hospitality Services, Inc., Santa Maria Restaurant Enterprises, Inc., Spearmint Rhino Companies Worldwide, Inc., Spearmint Rhino Consulting Worldwide, Inc., The Oxnard Hospitality Services, Inc., and WPB Hospitality, LLC, including, but not limited to, their current or former officers, directors, trustees, employees, agents, insurers, attorneys, auditors, accountants, experts, parent companies, subsidiaries, affiliates, divisions, stockholders, members, heirs, executors, representatives, predecessors, successors, and/or assigns, insurers, reinsurers, contractors, representatives, benefit plans sponsored or administered by the Clubs, Consulting or Companies.

1.68   "Request for Exclusion Form" means the form, identical in all material respects to the document attached hereto as Exhibit E.

1.69   "Settlement" means the compromise and settlement embodied in this Agreement.

1.70   "Settlement Administrator" means Gilardi & Co. LLC.

1.71   "Settlement Class" or "Settlement Classes" means all individuals, who performed as an exotic dancer at any of the Clubs and falls within at least one of the following subclasses: The FLSA Settlement Class, the Oxnard Settlement Class, the Farmdale Settlement Class, the Nevada Settlement Class, the Kentucky Settlement Class, the Idaho Settlement Class, the Texas Settlement Class, and the Florida Settlement Class.

1.72   "Stage Fee(s)" means any fees paid by a dancer to any of the Clubs for the purpose of allowing the dancer entrance to the Club(s) for purposes of performing at the Club(s).

21

1.73   "Stage Name" means the name or pseudonym utilized by a dancer while performing at one or more of the Clubs.

1.74   "Texas Class Period" means the period from May 3, 2007 through the date of entry of the Preliminary Approval Order.

1.75   "Texas Releasing Persons" means each and every Texas Settlement Class Member who does not timely and validly opt-out as required under Section 5.8 and their respective heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, estates, personal representatives, successors-in interest, and assigns.

1.76   "Texas Settlement Class" means the group of individuals who performed as exotic dancers and who have provided nude, semi-nude, and/or bikini entertainment for customers at the Club owned by High Expectations Hospitality Venture, LLC. during the Texas Class Period.

1.77   "Texas Settlement Class Member" means those individuals who are members of the Texas Settlement Class.

1.78   "Unidentified Class Members" means those individuals for whom the Clubs do not have a record or other information regarding participation in any of the Settlement Classes, but who request the Class Notice Documents or obtain them on the Settlement Administrator's website.

1.79   "Unknown Claims" means any released claims that the Class Representatives and the Members of the Settlement Classes do not know or suspect to exist in their favor at the time of the release of the Released Persons which, if known by her, might have affected her settlement with and release of the Released Persons, or might have affected her decision not to object to this Settlement.  With respect to any and all claims or potential claims the Class Representatives and the Class Members may have, upon the Effective Date, the Class Representatives and the Class

22

Members shall be deemed to have, and by operation of the Final Judgment shall have, expressly

waived, and may not assert in any proceedings as a bar to or voiding in any way the effectiveness

of this release, the provisions, rights and benefits of any provisions of the Laws of the United

States or of any state which provides that a general release does not extend to claims which a

party does not know or expect to exist in its favor at the time of executing the release, which if

known to the party may have materially affected the Settlement. Upon the Effective Date, the

Class Representatives and each Class Member shall be deemed to have, and by operation of the

Judgment shall have, expressly waived the provisions, rights and benefits of California Civil

Code § 1542, which provides:

> A general release does not extend to claims which the creditor does
> not know or suspect to exist in his or her favor at the time of
> executing the release, which if known by him or her must have
> materially affected his or her settlement with the debtor.

The Class Representatives and any and all Members of the Settlement Classes may later

discover facts in addition to or different from those which they now know or believe to be true

with respect to the subject matter of the released claims, but the Class Representatives and each

Class Member, upon the Effective Date, shall be deemed to have, and by operation of the

Judgment shall have, fully, finally, and forever settled and released any and all released claims,

known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not

concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or

equity now existing or coming into existence in the future, including but not limited to conduct

which is negligent, intentional, with or without malice, or a breach of any duty, law or rule,

without regard to the subsequent discovery or existence of such different or additional facts. The

Class Representatives and each Class Member shall be deemed by operation of the Judgment to

have acknowledged that the foregoing waiver was separately bargained for and a key element of the Settlement of which this release is a part.

1.79    "Valid Claim(s)" means a Claim Form and W-9 Form duly completed and timely submitted by a Class Member in accordance with the requirements set forth in Sections 5 and 6.

2.    **MOTION FOR PRELIMINARY APPROVAL AND CERTIFICATION OF PROPOSED CLASSES FOR SETTLEMENT PURPOSES, STAY OF RELATED LAWSUITS, STIPULATION RE AMENDMENT OF COMPLAINT.**

2.1    **Immediate Notice To the Court.**  The Parties shall immediately provide notice to Judge Virginia Phillips of this Settlement Agreement.

2.2    **Motion For Preliminary Approval.**  Promptly upon execution of this Agreement, Plaintiffs shall file in the Court their motion for preliminary approval requesting approval of the terms of this Agreement and requesting entry of the Preliminary Approval Order, in substantially the form attached hereto as Exhibit D.  The motion will request an injunction preliminarily barring any Class Members or those purporting to be Class Members, unless they have timely excluded themselves from the Settlement Classes as provided in Section 5.8, from commencing or continuing to prosecute any action if such other action is based on or relates to the allegations and claims in the Action.  Defendants will join in the request for preliminary approval of the Settlement and the request for preliminary injunction and will accept the class certification of the Settlement Classes for settlement purposes only.

2.3    **Basis for Class Certification of Settlement Classes.**  The Class Representatives will seek class certification of the Settlement Class under Federal Rule of Civil Procedure 23(b)(2) and (b)(3) as a claims-made, opt-out class.  The Class Representatives will

24

also seek certification of the Federal Labor Standards Act claims as an opt-in collective action pursuant to 29 U.S.C. Section 216(b).

   **2.4**  **Class Certification for Settlement Purposes Only.**  The Parties hereby stipulate to class certification of the Settlement Class pursuant to Federal Rule of Civil Procedure 23 and 29 U.S.C. Section 216(b) for settlement purposes only.  The certification by the Court of the Settlement Classes shall have no bearing in deciding whether the claims asserted in the Action are, or were, appropriate for class treatment in the absence of the Settlement and this Agreement.

   **2.5**  **Vacating Settlement Class Certification and Reservation of Rights.** The class certification of the Settlement Classes shall be binding only with respect to the Settlement of the Action.  If the Agreement is terminated, or is reversed, vacated, or modified in any material respect by the Court or any other court, the certification of the Settlement Classes shall be vacated, the Action shall proceed as though the Settlement Classes had never been certified, and no reference to the prior Settlement Classes or any documents related thereto shall be made for any purpose.

   **2.6**  **Lead Class Counsel.**  Defendants agree that they will not oppose Lead Class Counsel's motion to be appointed "Lead Plaintiffs' Class Counsel and Liaison Counsel," who shall have primary responsibility for finalizing settlement documents and agreements, conducting settlement procedures, filing and arguing approval motions, conducting relevant confirmatory discovery, conducting negotiations and other dealings with Defendants and all other class litigation functions through the day Judgment is entered.  However, all Class Counsel can participate in all such matters, including without limitation, finalizing settlement documents and agreements, conducting settlement procedures, filing and arguing approval motions,

conducting relevant confirmatory discovery, conducting negotiations and other dealings with Defendants.

     2.7     **Request for Fairness Hearing.** The Parties will request, in the motion for preliminary approval, that the Court hold a Fairness Hearing no later than one hundred and twenty (120) days after the entry of the Preliminary Approval Order. At the Fairness Hearing, the Parties will jointly request that the Court enter the Judgment, in substantially the form attached hereto as Exhibit C.

     2.8     **Stipulation Re Amendment to Complaint.** The Parties stipulated to the filing of the Third and Fourth Amended class action complaints. The Fourth Amended Class action complaint was filed on August 16, 2010. The deadline for Defendants to file a response to the Fourth Amended Complaint is suspended pending settlement approval proceedings. In the event the Settlement is rescinded, terminated or not approved for any reason, the Third and Fourth amended class action complaints will be withdrawn and will be treated by the Parties and the Court as if they had not been filed.

**3.    INJUNCTIVE RELIEF.**

     3.1     In consideration for the releases and covenants herein, within thirty (30) days following the Effective Date, the Existing Clubs in the State of California agree to stop charging dancers Stage Fees.

     3.2     In consideration for the releases and covenants herein, the Existing Clubs agree to reclassify all dancers at the Existing Clubs as employees within eighteen months after the Effective Date. However, any Existing Club may, following thirty (30) days written notification to Class Counsel, not reclassify the dancers or if reclassified, make a new reclassification to independent contractor or partner if any of the following occur: (a) there is a development in the

26

Federal Law or the laws in the states of California, Nevada, Texas, Kentucky, Florida, or Idaho that clarifies, establishes or otherwise supports Defendants' position that exotic dancers are independent contractors or partners; or (b) if, after one year of the reclassification of dancers as employees, Consulting and the Existing Clubs make a determination that, because a majority of the other adult nightclubs in the relevant market have not converted their dancers to employees, the quality and/or number of prospective dancers they are able to attract is such that they are unable to remain competitive in the adult nightclub industry by continuing to treat the dancers as employees; or (c) if, prior to the reclassification or after it, there is (i) a vote by 75% of the dancers at any Existing Club requesting that they be treated as independent contractors or partners; and (ii) a modification of procedures pertaining to dancers working in an Existing Club, that Existing Club will not have to reclassify the dancers as employees or if already reclassified as employees, the Existing Club may reclassify the dancers as independent contractors or partners following such a vote.

**4.      PAYMENTS BY DEFENDANTS.**

4.1      The Gross Settlement Amount is ten million dollars ($10,000,000).  Under no circumstances shall Defendants be responsible for making payments in excess of the Gross Settlement Amount.

4.2      The following companies shall be responsible for payment of a maximum of up to five hundred thousand dollars ($500,000) of the Gross Settlement Amount:  City of Industry Hospitality Venture, Inc., Farmdale Hospitality Services, Inc., Inland Restaurant Venture I, Inc., Midnight Sun Enterprises, Olympic Avenue Venture, Inc., The Oxnard Hospitality Services, Inc., Rialto Pockets, Inc., Rouge Gentlemen's Club, Inc., Santa Barbara Hospitality Services, Inc., and Santa Maria Restaurant Enterprises, Inc.  The following

27

companies shall be responsible for payment of a maximum of up to two hundred and fifty thousand dollars ($250,000) of the Gross Settlement Amount:  High Expectations Hospitality, LLC, Kentucky Hospitality Venture, LLC, LCM, LLC, and WPB Hospitality, LLC.  K-Kel, Inc. shall be responsible for payment of a maximum of up to one million five hundred thousand dollars ($1,500,000) of the Gross Settlement Amount.

      4.3      Consulting shall be responsible for payment of a maximum amount of up to 2.5 million dollars ($2,500,000) of the Gross Settlement Amount, over and above the 7.5 million dollars ($7,500,000) set forth in the preceding Section.

      4.4      The Class Members shall be paid their individual Settlement payments from the Net Settlement Amount, in the manner described in Section 7.  Any payments to Class Members shall be allocated 50% to actual damage claims and 50% to liquidated damage claims. If the Class Members' claims amount to less than $2,100,000, Defendants shall distribute the difference between $2,100,000 and the total claims as follows:  (1) ten percent (10%) to Class Members who file claims on a *pro rata* basis; and (2) ninety percent (90%) will be paid over a 5 year period of time and earmarked for a special fund to be used for the benefit of dancers created and managed by Defendants.  The purpose of the special fund shall be to assist dancers with medical, education, childcare, or similar needs.  Any unclaimed Net Settlement Amount in excess of $2,100,000 will be kept by Defendants.

      4.5      Beginning on January 15, 2011 and for a period of five (5) years, Defendants' Counsel will provide Class Counsel and the Court with quarterly statements (on January 15, April 15, July 15, October 15 of each year) reflecting (a) the total amount available for disbursement from the special fund at the beginning and end of the quarter; (b) each amount disbursed from the special fund, the person(s) to whom the amount was disbursed and the

purpose of each disbursement; and (c) anticipated disbursements from the special fund for the next quarter, including the amounts of the disbursements, to whom the amount will be disbursed and the purpose of each anticipated disbursement.  Class Counsel will be responsible for reviewing the quarterly statements to ensure that the special fund is used to assist dancers with medical, education, child care or similar needs and is paid out over the five year period of time.

## 5.   CLASS NOTICE, CLAIM FORMS, OBJECTIONS AND OPT-OUTS.

### 5.1   Class Notice and Claim Forms.

5.1.1   Within fifteen (15) days after entry of the Preliminary Approval Order, Defendants and the Clubs will provide the Settlement Administrator, based on the Clubs' records, the following information about each Member of the Settlement Classes, to the extent it is available in Defendants' records:  (a) legal name; (b) last known home address; (c) Social Security number; (d) driver's license number; and (e) and the Club(s) each Class Member performed at, as reflected in the Clubs' records.

5.1.2   Within thirty (30) days of the entry of the Preliminary Approval Order, the Settlement Administrator shall perform National Change of Address updates to the class list using the database maintained by the United States Postal Service and shall update any data concerning addresses it has with social security and driver's license numbers, if necessary, and mail to each Member of the Settlement Classes a copy of the Class Notice Documents.  The Parties agree that the proposed Class Notice constitutes the best notice practicable under the circumstances, and constitutes due and sufficient notice of the pendency of the class action, the proposed Settlement, and the Fairness Hearing to all persons entitled to notice, in full compliance with due process under the United States Constitution.

5.1.3    If the Class Notice Documents mailed to a Class Member are returned within thirty (30) days of the initial mailing, with a forwarding address provided by the Postal Service, the Class Notice Documents will be, within ten (10) days re-mailed to the forwarding address provided, and the completed Class Notice Documents shall be due within sixty (60) days of mailing of the original notice, or within twenty-five (25) days of the re-mailed notice, whichever is later.  If the Class Notice Documents are returned from the initial notice mailing, without a forwarding address, thirty (30) days after the initial mailing, provided by the Postal Service, the Settlement Administrator will perform a skip trace for those individuals in an attempt to locate a more current address.  The Settlement Administrator shall use any driver's license or social security data for this purpose.  If the Settlement Administrator is successful in locating a new address, it will, within ten (10) days of the return of the Class Notice Documents, re-mail the Class Notice Documents to the Member of the Settlement Classes and any claim shall be due within sixty (60) days of mailing of the original notice, or within twenty-five (25) days of the re-mailed notice, whichever is later.

5.1.4    If, after the second mailing, the Class Notice Documents are returned as undeliverable, or are otherwise designated by the Postal Service as having been sent to an invalid address, the Settlement Administrator shall have no further obligation to take steps to locate the address of the actual or potential Class Member to whom the Class Notice Documents were sent.

5.2      **Internet Notice.**  The Settlement Administrator shall place the Class Notice Documents (including the Claim Form), a copy of the Third Amended Complaint, the Settlement Agreement, the Preliminary Approval Order, and a reference to the PACER website for the United States District Court for the Central District of California on its website within five (5) days of entry of the Preliminary Approval Order; these documents shall remain on that

website through the Effective Date.  The website shall be referenced in the Class Notice.  There

shall be no other website created or maintained concerning the Settlement.

     5.3     **Posted Notice In Existing Clubs.**  The Existing Clubs shall post a copy of

the Class Notice in the dressing rooms of the Existing Clubs within one week of entry of the

Preliminary Approval Order, and the notices will remain posted until a period of two weeks after

the Class Notice is initially mailed by the Settlement Administrator.

     5.4     **Costs of Class Notice Documents.**  Costs of the Class Notice Documents,

the mailing of the Class Notice Documents, and internet notice on the Settlement Administrator's

website will be paid by the Existing Clubs from the Gross Settlement Amount.

     5.5     **Confirmation of Notice Served.**  No later than thirty (30) days before the

Fairness Hearing, Class Counsel shall file with the Court a declaration from a competent

representative of the Settlement Administrator attesting that the Class Notice has been mailed to

the Class Members.

     5.6     **Confidentiality of Claim Information.**  All information and

documentation submitted by Class Members in support of or in connection with their claims or

provided by Defendants will be treated by the Settlement Administrator as confidential and shall

not be disclosed to third parties or Class Counsel, or utilized for any purpose other than

evaluating the Class Members' claims unless such information is necessary to resolve any dispute

about the nature or validity of the claim.  Class Counsel, as the attorneys for Class Members who

have not opted out, shall have access to such information only in the circumstances of disputed

claims, and shall keep the information confidential.  Class Counsel shall be entitled to disclosure

of the total number of class members identified by Defendants, the total number of claims, and

whether such claims have a monetary value of more than, less than, or equal to thirty percent of the Net Settlement Amount, and the monetary value of the claims.

        5.7      **Objections.** All objections to the Settlement must be in writing and must be filed with the Court and mailed to Class Counsel and Defendants' Counsel no later than ninety (90) days following entry of the Preliminary Approval Order. This deadline to file an objection shall apply notwithstanding an Unidentified Class Member's late receipt of the Class Notice Documents. All objections must state with particularity the factual and legal bases for each objection raised, and furnish copies of any documents the objector wishes to submit in support of her position. The objection must also state the Class Member's (1) full legal name; (2) any Stage Name(s); (3) the Club(s) she performed at; (4) the specific dates, if known, or the approximate date ranges (month(s)/year(s)) she performed as a dancer at each Club; (5) mailing address and telephone number at the time she performed as a dancer at each Club; (6) current mailing address and telephone number if different from their mailing address and telephone number at the time she performed as a dancer at each Club. Further, any objector who intends to appear at the Fairness Hearing, either in person or through counsel, must include with the objection a written notice of intention to appear stating the purpose for her appearance. The notice of intention to appear must: (i) state how much time the Class Member and/or counsel anticipates needing to present the objection; (ii) identify, by name, address, and telephone number any witnesses the Class Member and/or his/her/their attorney intends to present to testify, along with a summary of their anticipated testimony; (iii) identify all exhibits the Class Member and/or his/her/their attorney intends to offer in support of the objection; and (iv) attach complete copies of all such exhibits. Any Class Member who does not provide an objection and/or notice of intention to appear in complete accordance with the deadlines and other requirements set forth herein and in

the Class Notice will be deemed to have waived any objections to the Settlement and shall be barred from speaking or otherwise presenting any views at the Fairness Hearing or from pursuing any appeals. The Class Representatives and Defendants will be permitted to respond in writing to objections no later than five (5) days before the Fairness Hearing. The Class Representatives waive any right to object to the Settlement, and hereby endorse the Settlement as fair, reasonable, and adequate and in the best interests of the Settlement Classes. Objections may be made only by persons who are validly Class Members and who have not opted out as set forth in Section 5.8. If a Member of the Settlement Classes wants to object to the Settlement, but wishes to receive her share of the Settlement payments in the event the Settlement is approved, she must file a Valid Claim. If the Court approves the Settlement despite any objections, and the Member of the Settlement Classes has not submitted a Valid Claim, she will not receive any Settlement payment and will have released the released claims.

### 5.8 Opportunity to Opt-out.

5.8.1 Any Member or potential member of the Settlement Classes who wishes to opt-out of the Settlement Classes must mail to the Settlement Administrator, at the address that is set forth in the Class Notice, a signed request for exclusion from the Settlement Classes, postmarked no later than ninety (90) days of entry of the Preliminary Approval Order. The Request for Exclusion Form is attached hereto as Exhibit E. This deadline to file a request for exclusion shall apply notwithstanding such Class Member's contention regarding non-receipt or late receipt of the Class Notice Documents. The Settlement Administrator shall date stamp the original of any opt-out statement and serve copies on both Class Counsel and Defendants' Counsel via electronic mail and overnight delivery within five (5) business days of receipt of such statements. Class Counsel shall file copies of all timely requests for such exclusion, not

33

timely rescinded, with the Court prior to the Fairness Hearing. Class Members shall be permitted to withdraw or rescind their opt-out statements by submitting a "rescission of opt-out" statement to the Settlement Administrator within the Claims Period. The rescission of opt-out statement shall state that the person previously submitted an opt-out statement seeking exclusion from the settlement, and that the person has reconsidered and wishes to withdraw the opt-out statement.

      5.8.2   Persons requesting exclusion from the Settlement must set forth in her request: (1) her full legal name; (2) any Stage Name (s); (3) the Club(s) she performed at; (4) the specific dates, if known, or the approximate date ranges (month(s)/year(s)) she performed as a dancer at each Club; (5) her mailing address and telephone number at the time she performed as a dancer at each Club; and (6) her current mailing address and telephone number if different from their mailing address and telephone number at the time she performed as a dancer at each Club. Any Member of the Settlement Classes who does not timely file and mail notice of her intention to opt-out will be deemed included as a Member of the Settlement Classes in accordance with this Settlement. The Class Representatives waive any right to opt-out of the Settlement Classes.

      5.8.3   If a Member of the Settlement Classes submits both a Claim Form and a request for exclusion, the request for exclusion will be invalid and the Member of the Settlement Classes will be included in the Settlement Classes and be bound by the terms of the Settlement.

      5.8.4   Within ten (10) days following the last day of the Claims Period, the Settlement Administrator will provide Class Counsel and Counsel for Defendants with information setting forth the total number of opt-outs.

## 6.    CLAIMS ADMINISTRATION.

6.1    **Claims-Made Process**. A claims-made process is employed in this Settlement, *inter alia*: (1) in order to allow Class Members to establish that they performed more shifts than may be contained in the Clubs' records; (2) to allow Class Members to reject Settlement payments and any related burden to amend prior years' tax returns; and (3) to allow Class Members wishing to remain anonymous and limit communications, given the potentially sensitive nature of their profession, to do so.

6.2    **Claim Form Required**. In order to be paid any Settlement benefits, a Class Member must complete and sign the Claim Form and a W-9 Form and return those forms along with any and all supporting documentation to the Settlement Administrator before the expiration of the Claims Period. Class Members who do not timely submit the Claim Form and W-9 Form to the Settlement Administrator will not be entitled to receive any monetary benefits from the Settlement.

6.2.1    The Claim Form shall require Class Members who performed at any of the Clubs to attest, to the best of the Class Member's knowledge: the number of Dance Shifts the dancer performed during the Farmdale, Florida, Idaho, Kentucky Nevada, Oxnard, and/or Texas, Class Periods.

6.3    **Claims Process.** In order for a claim to be timely, Class Members must complete and sign the Claim Form and W-9 Form and return them along with any and all supporting documentation to the Settlement Administrator. The Claim Form and any supporting documentation must be received by the Settlement Administrator, or postmarked on or before the expiration of the Claims Period. The Settlement Administrator shall review and verify the executed Claim Form and W-9 Form for completeness and accuracy, as well as any

35

documentation submitted by the Class Member in support of her claim. Defendants (with a copy to Class Counsel) or the Settlement Administrator have discretion to request in writing additional information, including proof of identity, in order to determine Class Member status and the validity of the claim. In those circumstances where a Class Member submits a Valid Claim, the Settlement Administrator shall provide a check to the Class Member in accordance with the distribution plan set forth in Section 7, and shall issue a 1099 Form to each individual to whom a payment is to be made.

6.4     **Determination of Number of Dance Shifts For Individual Class Member Compensation.** If a Class Member's submitted Claim Form contains a number of Dance Shifts that does not exceed 10% of the number of Dance Shifts reflected in the Clubs' records, the payment will be calculated using the number of Dance Shifts on the Class Member's Claim Form. The Settlement Administrator will mail each Class Member whose Claim Form contains a number of Dance Shifts that exceeds 10% of the number of Dance Shifts reflected in the Clubs' records, within ten (10) days of receipt of the Class Member's completed Claim Form, a notice informing her of this fact and that she has the option of: (i) accepting the number of Dance Shifts for that Class Member contained in the Clubs' records as the basis for her claim; or (ii) submitting supporting documentation and evidence supporting the number of Dance Shifts in the Claim Form pursuant to the procedures set forth below. If the Class Member does nothing further or fails to timely submit additional documentation supporting the number of Dance Shifts stated on her Claim Form, her claim shall be calculated based on the number of Dance Shifts for that Class Member contained in the Clubs' records.

6.5     **Determination of The Identity of the Clubs the Dancer Performed at for Purposes of Determining Individual Class Member Compensation.** If the information

regarding the Club(s) at which the Class Member claims to have performed listed on the Class Member's submitted Claim Form matches the information contained in the Clubs' records, the Class Members' Settlement payment will be calculated using the identities of the Clubs on the submitted Claim Form. The Settlement Administrator will mail each Class Member whose Claim Form contains a statement that she danced at any Club(s) not reflected in the Clubs' records, within ten (10) days of receipt of the submitted Claim Form, a notice informing her of this fact and that she has the option of: (i) accepting the identity of the Club(s) at which she performed that are contained in the Clubs' records as the basis for her claim; or (ii) submitting documentation and evidence supporting her claim that she danced at additional or different Club(s), pursuant to the procedures set forth below. If the Class Member does nothing further or fails to timely submit additional documentation supporting her claim that she performed at additional or different Clubs, her claim shall be calculated based on the Clubs' records regarding the identity of the Clubs at which the Class Member performed.

6.6 **Unidentified Class Members.** In the event that a dancer who has not been identified as a Class Member by any of the Clubs based upon their records or otherwise, i.e., an Unidentified Class Member, believes she is a Class Member, such dancer may request the Class Notice Documents by writing to or calling the Settlement Administrator, or by downloading a Claim Form from the Settlement Administrator's web site, which shall contain a link for this purpose. To be potentially included in the Class, the Unidentified Class Member must submit completed Class Notice Documents within the Claims Period. Failure to comply with the foregoing requirements by an Unidentified Class Member will forfeit her entitlement to receive benefits under the Settlement.

6.7     **Dispute Resolution Procedure.** In the event of any disagreement between a Class Member or potential Class Member and Defendants regarding the right to receive a Settlement payment or the amount of the Settlement payment, the following dispute resolution procedure shall be used:

6.7.1   **Challenges to the Number of Dance Shifts.** If a Class Member's Claim Form lists Dance Shifts that are greater than 10% of those Dance Shifts contained in the Clubs' records, the Class Member shall have the right to challenge payment based upon the number of Dance Shifts contained in the Clubs' records.  The challenge shall be made as follows:

(a)     The Class Member must submit, within ten days of the notification described in Section 6.4 above additional documentation supporting the number of Dance Shifts stated on her Claim Form to the Settlement Administrator who will provide the information to Class Counsel and Defendants' Counsel;

(b)     Class Counsel and Defendants' Counsel will then meet and confer in an attempt to resolve the dispute.  Such a decision must be made within seven (7) days of the receipt of the Class Member's submission of the additional documentation.

(c)     If the dispute cannot be resolved informally between the Parties, Class Counsel will promptly notify the Settlement Administrator and the dispute shall be submitted to the Settlement Administrator for a non-binding ruling, which shall be made within fourteen (14) days of the notification by Class Counsel.  In making these determinations, the Settlement Administrator shall review the documentation submitted by the Unidentified Class Member and any opposing documentation submitted by the Clubs in addition to the pertinent business records of the Clubs, and shall make a determination as to the number of Dance Shifts to which a Class Members is entitled to be compensated.  Within fourteen (14) days after mailing

of the Settlement Administrator's non-binding ruling, at the election of either the Class Member or the Clubs, either may request a hearing with the Court for a ruling, subject only to applicable appeals of orders of the Court.

6.7.2   **Challenges to the Identity of the Clubs at Which the Dancers Performed.**  If a Class Member's submitted Claim Form states that she performed at Club(s) different from or in addition to those contained in the Clubs' records, the Class Member will have the right to challenge the information contained in the Clubs' records.  The challenge shall be made as follows:

(a)   The Class Member must submit, within ten days of the notification described in Section 6.5 above, additional documentation supporting her claim that she performed at Club(s) different from or in addition to those contained in the Clubs' records for that Class Member, to the Settlement Administrator who will provide the information to Class Counsel and Defendants' Counsel;

(b)   Class Counsel and Defendants' Counsel will meet and confer in an attempt to reach a joint decision regarding whether the Class Member's Settlement payment should be based upon Dance Shifts at Clubs at which the Clubs' records reflect she did not perform.  Such a decision must be made within seven (7) days of receipt of the Class Member's submission of the additional documentation;

(c)   If the determination of whether the Class Member's Settlement payment should be based on the information in the Class Member's Claim Form cannot be resolved informally between the Parties, Class Counsel will promptly notify the Settlement Administrator and the dispute shall be submitted to the Settlement Administrator for a non-binding ruling, which shall be made within fourteen (14) days of the notification by Class

Counsel. In making this determination, the Settlement Administrator shall review the documentation submitted by the Class Member and any opposing documentation submitted by the Clubs in addition to the pertinent business records of the Clubs, and shall make a determination as to whether or not the Class Member's Settlement payment should be based on the identity of the Clubs contained in the Class Member's Claim Form or the Clubs' records. Within fourteen (14) days after mailing of the Settlement Administrator's non-binding ruling, either the Class Member or the Clubs may request a hearing with the Court for a ruling, subject only to applicable appeals of orders of the Court.

      6.7.3 **Determination of Whether Unidentified Class Members Should Be Included Within the Settlement Class.** Following submission of completed Class Notice Documents and supporting documents by an Unidentified Class Member,

             (a)     Class Counsel and Defendants' Counsel will meet and confer in an attempt to reach a joint decision regarding whether the Unidentified Class Member should be included within the Settlement Class. Such a decision must be made within seven (7) days of the receipt of the Unidentified Class Member's completed Class Notice Documents.

             (b)     If the determination of whether the Unidentified Class Member is a Member of the Settlement Classes cannot be resolved informally between the Parties, the dispute shall be submitted to the Settlement Administrator for a non-binding ruling, which shall be made within fourteen (14) days of receipt of the Class Notice Documents. In making this determination, the Settlement Administrator shall review the documentation submitted by the Unidentified Class Member and any opposing documentation submitted by the Clubs in addition to the pertinent business records of the Clubs, and shall make a determination as to whether or not the Unidentified Class Member is a Member of the Settlement Classes. Within fourteen (14)

days after mailing of the Settlement Administrator's non-binding ruling, at the election of either the Class Member or the Clubs, either may request a hearing with the Court for a ruling, subject only to applicable appeals of orders of the Court.

   6.7.4 **Costs of Settlement Administrator.**  The Settlement Administrator shall perform all necessary class administration duties, which shall include, without limitation, mailing notices and Claim Forms, performing address updates and verifications as necessary prior to the first mailing, mailing deficiency letters, performing a single skip trace on any returned mail for which a forwarding address has not been provided by the United States Postal Service, and the calculation, processing, and mailing of all class member settlement checks and 1099s to Members of the Settlement Classes and tax authorities.  All Administration Costs shall be paid by Defendants and deducted from the Gross Settlement Amount.  The Settlement Administrator, Gilardi & Co. LLC, has agreed to perform their services for a fixed sum of $55,000.

## 7. COMPUTATION AND DISTRIBUTION OF SETTLEMENT PAYMENTS AND TAXATION.

  7.1 **Distribution Formula.**

   7.1.1 Members of the Settlement Classes not opting out and who submit a Valid Claim will receive a lump-sum payment as full and valuable consideration for the waiver and release of claims set forth in Section 8, in an amount determined by the Settlement Administrator and in accordance with the provisions of this Agreement.  Members of the Settlement Classes who do not submit a Valid Claim will not be entitled to receive any payment and will nonetheless be bound by the terms of the Settlement unless they exclude themselves from the Settlement Classes.

7.2     The Net Settlement Fund shall be allocated in three pools as follows:

7.2.1   Pool 1: 70% of the Net Settlement Fund shall be allocated to the Oxnard and Farmdale Settlement Classes. The Oxnard and Farmdale Settlement Class Members shall be paid from this pool by dividing the amount in the pool by the total number of Dance Shifts performed by all Oxnard and Farmdale Settlement Class Members and then multiplying that number by the number of Dance Shifts performed by the individual Oxnard or Farmdale Class Member who submits a Valid Claim, as determined by the Settlement Administrator. Of this sum to be paid, 30% of the payment shall be earmarked as compensation for any claimed tip sharing practices.

7.2.2   Pool 2: 20% of the Net Settlement Amount shall be allocated to the Nevada Settlement Class. The Nevada Settlement Class Members shall be paid from this pool by dividing the amount in the pool by the total number of Dance Shifts performed by all Nevada Settlement Class Members and then multiplying that number by the number of Dance Shifts performed by the individual Nevada Settlement Class Member who submits a Valid Claim, as determined by the Settlement Administrator.

7.2.3   Pool 3: 10% of the Net Settlement Amount shall be allocated to the Texas Settlement Class, the Florida Settlement Class, the Idaho Settlement Class, and the Kentucky Settlement Class collectively. These classes shall be paid from this pool by dividing the amount in the pool by the total number of Dance Shifts performed by all Texas Settlement Class Members, Florida Settlement Class Members, Idaho Settlement Class Members, and Kentucky Settlement Class Members and then multiplying that number by the number of Dance Shifts performed by the individual class member who submits a Valid Claim, as determined by the Settlement Administrator.

7.3     **Time For Distribution.** The Settlement Administrator shall cause the

Settlement payment(s) to the Class Members who have made Valid Claims to be mailed fifteen

(15) days following the date on which the Court's decision regarding the last dispute by the

Members of the Settlement Classes becomes Final.

7.3.1   **Taxation.** The Settlement Administrator will issue 1099 Forms to each

recipient of any monies paid from the Gross Settlement Amount or Net Settlement Amount

pursuant to this Settlement. The Parties agree that for purposes of these payments, Settlement

Class Members are independent contractors and Defendants and Settlement Class Members are

not employers and employees. Forms 1099, and any other required forms, will be distributed at

times and in the manner required by the Internal Revenue Code of 1986 (the "Code") and

consistent with this Agreement. If the Code, the regulations promulgated thereunder, or other

applicable tax law, is changed after the date of this Agreement, the processes set forth in this

Section may be modified in a manner to bring the Clubs in compliance with any such changes.

7.3.2   Each Class Member, Class Representative, and Class Counsel shall be

obligated to obtain their own tax advice concerning the proper reporting and tax consequences of

any payments received under this Settlement Agreement, and shall each assume the

responsibility of remitting to the Internal Revenue Service and any other relevant taxing

authority, any amounts required by law from each recipient of any monies paid under this

Agreement without any further contribution from any of the Released Persons.

7.3.3   The Clubs will not be liable for any tax consequences and each Member of

the Settlement Classes shall hold the Clubs harmless and indemnify them for all taxes, interest,

penalties, and costs, including attorneys' fees, incurred by the Clubs by reason of any claims

relating to the non-withholding of employee taxes from claims payments from the Net or Gross

Settlement Amount. Each Class Representative shall hold the Clubs harmless and indemnify

them for all taxes, interest, penalties and costs, including attorneys' fees, incurred by the Clubs

by reason of any claims relating to the non-withholding of taxes from incentive payments paid to

the Class Representatives pursuant to this Agreement.

      7.4      **Penalties Pursuant to California Labor Code Section 2699.**  A total of

twenty thousand dollars ($20,000) shall be allocated to the California Labor Code Section 2699

claim and paid within thirty (30) days of the Effective Date.  Seventy-five (75) percent of that

amount or fifteen thousand dollars ($15,000) shall be paid by the following entities to the LWDA

for penalties under the Private Attorneys General Act:  City of Industry Hospitality Venture, Inc.,

Farmdale Hospitality Services, Inc., Inland Restaurant Venture I, Inc., Midnight Sun Enterprises,

Inc., Olympic Avenue Venture, Inc., The Oxnard Hospitality Services, Inc., Rialto Pockets, Inc.,

Rouge Gentlemen's Club, Inc., Santa Barbara Hospitality Services, Inc., Santa Maria Restaurant

Enterprises, Inc. The $15,000 shall be deducted from the portion of the Net Settlement Fund or

the pool allocated for payment to the Oxnard and Farmdale Settlement Classes.  The five

thousand dollars ($5,000) remaining of the amount allocated to the Labor Code Section 2699

claim shall remain a part of the pool allocated to the payment of claims for the Oxnard and

Farmdale Settlement Classes.

**8.**      **RELEASES AND COVENANTS.**

      8.1      **Release by Oxnard and Farmdale Class Members.**  Upon the Effective

Date of this Agreement, the Oxnard Releasing Persons and the Farmdale Releasing Persons

hereby forever and completely discharge the Released Persons from any and all claims,

liabilities, demands, causes of action, or lawsuits, known or unknown, including Unknown

Claims, whether legal, statutory, equitable or of any other type or form, whether under federal or

44

state law, and whether brought in an individual, representative or any other capacity, that in any

way relate to or arise out of or in connection with acts, omissions, facts, statements, matters,

transactions, or occurrences that have been or could have been alleged in the Action, including

but not limited to overtime, minimum wages, missed or inadequate meal periods and rest breaks,

unpaid tip income, reimbursement for uniform costs, itemized wage statement violations, record

keeping violations, and waiting time penalties, arising in connection with such claims from the

Clubs, Consulting and/or Companies' treatment of the Oxnard and Farmdale Settlement Class

Members as independent contractors during the Oxnard Class Period for the members of the

Oxnard Settlement Class and during the Farmdale Class Period for the members of the Farmdale

Settlement Class, including but not limited to claims under Labor Code §§ 201, 202, 203, 204,

212, 218, 218.6, 221, 224, 226, 226.7, 350, 351, 353, 402, 435, 510, 512, 1174, 1194, 1197,

1199, 2802, and the Private Attorneys General Act, Labor Code 2698 *et seq.*, Wage Commission

Orders 5 and 10, and Business & Professions Code §§ 17200, *et seq.* ,as it relates to the

underlying California Labor Code claims, and any and all claims pursuant to or derived from

ERISA that arise from any alleged failure to pay wages including all claims for benefits under

any benefit plan subject to ERISA that arise from such failure, and any interest, attorneys' fees

and costs.

        8.2    **Release by Nevada Settlement Class Members.** Upon the Effective

Date of this Agreement, the Nevada Releasing Persons hereby forever and completely discharge

the Released Persons from any and all claims, liabilities, demands, causes of action, or lawsuits,

known or unknown, including Unknown Claims, whether legal, statutory, equitable or of any

other type or form, whether under federal or state law, and whether brought in an individual,

representative or any other capacity, that in any way relate to or arise out of or in connection with

acts, omissions, facts, statements, matters, transactions, or occurrences that have been or could have been alleged in the Action, including but not limited to overtime, minimum wages, missed or inadequate meal periods and rest breaks, unpaid tip income, reimbursement for uniform costs, itemized wage statement violations, record keeping violations, conversion, unjust enrichment, and waiting time penalties, arising in connection with such claims from the Clubs, Consulting and/or Companies' treatment of the Nevada Settlement Class Members as independent contractors or lessees during the Nevada Class Period, including but not limited to claims under Nevada Compensation, Wages and Hours Laws, N.R.S. 608.005, *et seq.* and Nevada Constitution, Art. 15, § 16, and any and all claims pursuant to or derived from ERISA that arise from any alleged failure to pay wages including all claims for benefits under any benefit plan subject to ERISA that arise from such failure, and any interest, attorneys' fees and costs.

      8.3      **Release by Idaho Settlement Class Members.** Upon the Effective Date of this Agreement, the Idaho Releasing Persons hereby forever and completely discharge the Released Persons from any and all claims, liabilities, demands, causes of action, or lawsuits, known or unknown, including Unknown Claims, whether legal, statutory, equitable or of any other type or form, whether under federal or state law, and whether brought in an individual, representative or any other capacity, that in any way relate to or arise out of or in connection with acts, omissions, facts, statements, matters, transactions, or occurrences that have been or could have been alleged in the Action, including but not limited to overtime, minimum wages, missed or inadequate meal periods and rest breaks, unpaid tip income, reimbursement for uniform costs, itemized wage statement violations, record keeping violations, and waiting time penalties, arising in connection with such claims from the Clubs, Consulting and/or Companies' treatment of the Idaho Settlement Class Members as independent contractors during the Idaho Class Period,

including but not limited to claims under Idaho Hours Worked Act, I.C.A. §§ 44-1201, *et seq.*, and Minimum Wage Law, I.C.A. §§ 44-1501, *et seq*, and any and all claims pursuant to or derived from ERISA that arise from any alleged failure to pay wages including all claims for benefits under any benefit plan subject to ERISA that arise from such failure, and any interest, attorneys' fees and costs.

   8.4  **Release by Kentucky Settlement Class Members.** Upon the Effective Date of this Agreement, the Kentucky Releasing Persons hereby forever and completely discharge the Released Persons from any and all claims, liabilities, demands, causes of action, or lawsuits, known or unknown, including Unknown Claims, whether legal, statutory, equitable or of any other type or form, whether under federal or state law, and whether brought in an individual, representative or any other capacity, that in any way relate to or arise out of or in connection with acts, omissions, facts, statements, matters, transactions, or occurrences that have been or could have been alleged in the Action, including but not limited to overtime, minimum wages, missed or inadequate meal periods and rest breaks, unpaid tip income, reimbursement for uniform costs, itemized wage statement violations, record keeping violations, and waiting time penalties, arising in connection with such claims from the Clubs, Consulting and/or Companies' treatment of the Kentucky Settlement Class Members as independent contractors during the Kentucky Class Period, including those claims arising under KRS Chapters 207, 337, 342 or 344, and any and all claims pursuant to or derived from ERISA that arise from any alleged failure to pay wages including all claims for benefits under any benefit plan subject to ERISA that arise from such failure, and any interest, attorneys' fees and costs.

   8.5  **Release by the Texas Settlement Class Members.** Upon the Effective Date of this Agreement, the Texas Releasing Persons hereby forever and completely discharge

the Released Persons from any and all claims, liabilities, demands, causes of action, or lawsuits,

known or unknown, including Unknown Claims, whether legal, statutory, equitable or of any

other type or form, whether under federal or state law, and whether brought in an individual,

representative or any other capacity, that in any way relate to or arise out of or in connection with

acts, omissions, facts, statements, matters, transactions, or occurrences that have been or could

have been alleged in the Action, including but not limited to overtime, minimum wages, missed

or inadequate meal periods and rest breaks, unpaid tip income, reimbursement for uniform costs,

itemized wage statement violations, record keeping violations, and waiting time penalties, arising

in connection with such claims from the Clubs, Consulting and/or Companies' treatment of the

Texas Settlement Class Members as independent contractors during the Texas Class Period,

including those claims arising under the Texas Payment of Wages Act, Tex. Lab. Code Ann.

§§ 61.001, *et seq.*, Minimum Wage Act, Tex. Lab. Code Ann. §§ 62.001, *et seq.* and Texas

Payday Rules, 40 Tex. Admin. Code §§ 821.1, *et seq*, and any and all claims pursuant to or

derived from ERISA that arise from any alleged failure to pay wages including all claims for

benefits under any benefit plan subject to ERISA that arise from such failure, and any interest,

attorneys' fees and costs.

      8.6     **Release by the Florida Settlement Class Members.** Upon the Effective

Date of this Agreement, the Florida Releasing Persons hereby forever and completely discharge

the Released Persons from any and all claims, liabilities, demands, causes of action, or lawsuits,

known or unknown, including Unknown Claims, whether legal, statutory, equitable or of any

other type or form, whether under federal or state law, and whether brought in an individual,

representative or any other capacity, that in any way relate to or arise out of or in connection

with acts, omissions, facts, statements, matters, transactions, or occurrences that have been or

could have been alleged in the Action, including but not limited to overtime, minimum wages,

missed or inadequate meal periods and rest breaks, unpaid tip income, reimbursement for

uniform costs, itemized wage statement violations, record keeping violations, and waiting time

penalties, arising in connection with such claims from the Clubs, Consulting and/or Companies'

treatment of the Florida Settlement Class members as independent contractors during the Florida

Class Period including those claims arising under Florida Statute §§ 448.01, *et seq.*, the Florida

Minimum Wage Act, Florida Stat. § 448.110, and Florida Constitution, Art. X § 24, and any and

all claims pursuant to or derived from ERISA that arise from any alleged failure to pay wages

including all claims for benefits under any benefit plan subject to ERISA that arise from such

failure, and any interest, attorneys' fees and costs.

       8.7     **Release by FLSA Settlement Class Members.**  Upon the Effective Date

of this Agreement, all members of the Oxnard, Farmdale, Kentucky, Idaho, Texas, Nevada

and/or Florida Settlement Classes who sign the Claim Form and submit it to the Settlement

Administrator shall be deemed to have opted into the FLSA collective action.  Upon the

Effective Date, each and every FLSA Settlement Class Member and the FLSA Releasing Persons

hereby forever completely release and discharge the Released Persons from any and all wage-

related claims of any kind, including but not limited to claims pursuant to FLSA that any of the

FLSA Releasing Persons has, had, might have or might have had against any of the Released

Persons based on any act or omission that occurred, during the FLSA Class Period, in any way

related to any of the facts or claims alleged or could have been alleged in the Action or by reason

of the negotiations leading to this settlement, even if presently unknown and/or un-asserted.  The

matters released by the FLSA Releasing Persons herein also include any FLSA retaliation claims

that could be brought by FLSA Settlement Class Members against any Released Persons based

on any act or omission that occurred during the FLSA Class Period, any breach of contract claims, and any state common law wage claims including, but not limited to, claims of unjust enrichment and *quantum meruit*, and any and all claims pursuant to or derived from ERISA that arise from any alleged failure to pay wages, including any claims for benefits under any benefit plans subject to ERISA that arise from any such alleged failure, and any wage-and-hour laws or wage-related claims under other laws, and any other claims of any kind related to the Released Persons' alleged failure to pay wages to FLSA Settlement Class Members during the FLSA Class Period.

      8.8    **No Assignment of Rights.** The Class Representatives warrant and represent that they have not assigned any released claim to any other person or entity. This warranty and representation shall survive the execution of this Agreement. The Class Representatives shall hold the Released Persons harmless from and against any claim, damages, litigation, causes of action, and expenses, including reasonable attorneys' fees, resulting from any breach by them of this warranty and representation, or any breach of their release of released claims.

      8.9    **Covenant Not to Sue.** As of the Effective Date, the Class Representatives, on behalf of themselves and the Members of the Settlement Classes, covenant and agree: (i) not to file against the Released Persons any claim based on, related to, or arising from any Released Claim; (ii) to the extent any lawsuit or administrative claim has been made, it shall be dismissed or withdrawn; and (iii) that the foregoing covenants and agreements shall be a complete defense to any such claims against any Released Persons.

9.      **ATTORNEYS' FEES AND EXPENSES.**

9.1      **Application.**  Class Counsel may apply to the Court for an award of attorneys' fees and costs up to 25% of the Gross Settlement Amount.  The petition for attorneys' fees and costs shall be filed no later than ten (10) days prior to the Fairness Hearing.  Defendants shall not oppose such application, if the application requests an aggregate award of attorneys' fees and costs that does not exceed 25% of the Gross Settlement Amount.  In no event shall Defendants be required to pay aggregate attorneys' fees and costs pursuant to this Section 9 in excess of 25% of the Gross Settlement Amount.  Any application for attorneys' fees and costs shall be made based on the different pools of benefits created under this Agreement.

9.2      **Payment.**  Subject to Section 9.1, Existing Clubs and Consulting agree to pay fees and costs awarded by the Court.  Twenty-five percent of the attorneys' fees and costs awarded by the Court shall be paid to Class Counsel, within ten days of the Effective Date; twenty-five percent of the attorneys' fees and costs awarded by the Court shall be paid to Class Counsel 120 days after the Effective Date; twenty-five percent of the attorneys' fees and costs awarded by the Court shall be paid to Class Counsel 240 days after the Effective Date; and the final twenty-five percent of the attorneys' fees and costs awarded by the Court shall be paid to Class Counsel 360 days after the Effective Date.  Interest shall not accrue on any amount awarded by the Court if payment is timely made under this Section.  Any attorney fee award will be deposited as set forth in this Section into an independent escrow account to be maintained by a depository institution or independent escrow company, and the funds will only be disbursed to Class Counsel based on written authorization of each Court appointed Class Counsel entitled a share thereof, or based upon any allocation specified by Court order.  If this Agreement is

terminated pursuant to any provision of this Agreement or otherwise, the obligations under this Section 9, including the obligation to pay such fees and costs, shall be null and void.

9.3     **Court Award as Exclusive Remedy.** Except as provided in this Agreement, Defendants shall not bear any other expenses, costs, damages, or fees incurred by the Class Representatives, by any Member of the Settlement Classes, or by Class Counsel and their experts, advisors, agents, class administrators or representatives. Any award of attorneys' fees and costs payable hereunder and approved by the Court shall be in complete satisfaction of any and all claims for such attorneys' fees and costs under state or federal law which the Class Representatives, the Settlement Classes, or Class Counsel have or may have against the Released Persons arising out of or in connection with the Action and this Settlement, including, but not limited to, any claims for attorneys' fees and costs involved in litigating the Action and negotiating and implementing this Agreement, including attorneys' fees and costs incurred through and after the final disposition and termination of the Action.

9.4     **Fees for Objecting Class Members or Class Members Who Opt-Out.** Other than as may be ordered by the Court, Defendants and the Released Persons shall not be responsible to any Class Representative or Class Members who submit objections to the Settlement (or any part thereof). Defendants and the Released Persons shall not be responsible for attorneys' fees, costs, or expenses of any kind to any Class Representatives or Class Members who exclude themselves from the Action, unless otherwise allowed by law and ordered by a court. The Class Representatives and Class Counsel shall not be responsible to any Class Members who submit objections to the Settlement (or any part thereof) or exclude themselves from the Action for attorneys' fees, costs, or expenses of any kind.

52

9.5    **Settlement Administrator Payment.**  Consistent with the provisions of Section 6.7.4, the Existing Clubs shall be responsible for all expenses of the Settlement Administrator, and the Class Representatives shall seek Court approval for payment of these expenses, and the Settlement Administrator shall receive payment of all expenses incurred up to date of the Judgment.  Such payment shall be from the Gross Settlement Amount.

## 10.    INCENTIVE FEE AWARDS.

10.1    **Application.**  Class Counsel may apply to the Court for an award of incentive fees up to seventy-seven thousand dollars ($77,500) to the Class Representatives no later than ten (10) days prior to the Fairness Hearing.  Defendants agree not to oppose an application by Named Plaintiff Tracy Dawn Trauth for an incentive award up to fifteen thousand dollars ($15,000).  Defendants further agree they shall not oppose an application for Jennifer Blair, Christeen Rivera, Victoria Omlor, Jasmine Wright, Anicia Vintimilla, Marsha Ellington, Selena Denise Pelaez, Nicole Garcia, Reah Navarro, and Tami Sanchez for incentive fee awards of up to six thousand two hundred and fifty dollars ($6,250) each.  If the Class Members' claims amount to less than two million, one hundred thousand dollars ($2,100,000), the incentive fee awards will be distributed from the difference between the $2,100,000 and the total claims, before that amount is distributed to Class Members on a *pro rata* basis or any amount is distributed to the special fund.  If the difference between the $2,100,000 and the total claims is not sufficient to pay the total incentive fee award, then the incentive fee awards shall be paid in the first instance from the difference between the $2,100,000 and the total claims and any additional amounts due for incentive fee awards shall be shall be paid from the Gross Settlement Amount.  If the Class Members' claims amount to $2,100,000 or more, the incentive fee awards will be paid from the Gross Settlement Amount.

    10.2    **Payment.**  The Settlement Administrator will pay the incentive fees awarded by the Court to the Class Representatives within ten (10) days of the Effective Date.

**11.    TERMINATION OF SETTLEMENT.**

    11.1    This Agreement and the Settlement shall terminate and be cancelled within ten (10) business days after any of the following events if one of the Parties provides written notification of an election to terminate the Settlement:

    11.1.1  The Court declines to provide preliminary approval of this Agreement, or declines to enter or materially modifies the contents of the for of Preliminary Approval Order attached hereto as Exhibit D;

    11.1.2  The Court declines to provide final approval of this Agreement, or declines to enter or materially modifies the contents of the form of Judgment attached hereto as Exhibit C;

    11.1.3  The Court's Judgment is vacated, reversed or modified in any material respect on any appeal or other review or in a collateral proceeding occurring prior to the Effective Date;

    11.1.4  The Effective Date does not occur for some other reason; or

    11.1.5  Any federal or state authorities object to or request material modifications to the Agreement.

    11.2    In addition, if the combined number of Dance Shifts for the individuals opting out of the Settlement exceeds two and a half (2.5) percent of the number of Dance Shifts performed by the Settlement Classes as a whole as reflected in Defendants' and the Existing Clubs' business records, then Defendants may, in their sole discretion, unilaterally withdraw from and terminate

this Agreement no later than ten (10) business days after the Settlement Administrator furnishes information setting forth the total number of opt-outs.

   11.3 **Effect of Termination.**  In the event the Agreement is not approved by the Court or the Settlement is terminated or fails to become effective in accordance with the terms of the Agreement, the Parties shall be restored to their respective positions in the Action as of April 16, 2010.  In such event, the terms and provisions of the Agreement, shall have no further force and effect with respect to the Parties and shall not be used in the Action or in any other proceeding for any purpose, and any Order or Judgment entered by the Court in accordance with the terms of the Agreement shall be treated as vacated, *nunc pro tunc*.  The Party who terminates the Agreement, for whatever reason, will be responsible for the Administrative Costs incurred thus far (whether Defendants have initially paid for them or not).  If both Parties terminate the Agreement, they will be equally responsible for the Administrative Costs incurred thus far (whether Defendants have initially paid for them or not).  In the event the Settlement is terminated, the Existing Clubs and Consulting shall have no obligations to make any payments to any Party, Class Member or attorney, and any Preliminary Approval Order, Judgment, including any order of class certification pursuant to the Agreement shall be vacated.

**12.** **NO ADMISSION OF WRONGDOING.**

   Neither this Agreement nor the Settlement, nor any act performed or document executed pursuant to or in furtherance thereof is, or may be deemed to be or may be used as (a) an admission or evidence of the validity of any released claim, or any alleged wrongdoing or liability of the Released Persons; (b) an admission or evidence of any fault or omission of the Released Persons in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal, other than such proceedings as may be necessary to consummate or

enforce this Agreement, the Settlement memorialized herein or the Judgment; and (c) an admission or evidence that the Action is appropriate for class treatment or suitable for maintenance as a private-attorney-general action; provided, however, that this Agreement and/or Judgment may be filed and used in any action or proceeding in any court, administrative agency or other tribunal to support a defense of *res judicata*, collateral estoppel, release, good faith settlement, accord and satisfaction, claim preclusion, issue preclusion or any similar defense or counterclaim.

**13.    PRESS CONTACTS/PUBLICITY.**

The Parties and their lawyers will not contact the press or general media regarding the Action or this Agreement for a period of six months from the entry of Judgment. As used herein, "the press or general media" shall refer to and include newspapers, periodicals, magazines, online publications, and television and radio stations and programs, and any representative of the foregoing. The Parties and their lawyers may return phone calls or otherwise respond to any inquiries they receive directly from the press or general media, but in doing so will only advise of the existence of this provision and direct the requesting Party to the Court file without providing any further information. This provision shall not preclude Defendants and the Clubs from making announcements and/or disclosure required by law.

## 14.   CONFIRMATORY DISCOVERY.

14.1     Class Counsel has been permitted to conduct confirmatory discovery as part of the settlement process. The Clubs have provided Class Counsel with the following information from their records: (1) the total number of Class Members and (2) the total number of Dance Shifts performed by the putative Class Members for all Clubs during the applicable class period for each settlement subclass covered by this Settlement.

14.2     In addition, Defendants have produced a person most knowledgeable for deposition regarding: (1) the total number of Class Members; (2) the total number of Dance Shifts performed by the putative Class Members for all Clubs during the applicable class period for each settlement subclass covered by this Settlement; and (3) other facts as may be relevant to the Settlement.

## 15.   MISCELLANEOUS PROVISIONS.

15.1     **Destruction of Documents Produced.**  All documents and/or things produced or generated through discovery by any Party in this litigation shall be destroyed within 30 days of the Effective Date. Each Party shall promptly certify to the other that all documents and/or things produced or generated through discovery have been destroyed.

15.2     **CAFA Notice.**  Defendants agree to send the CAFA Notice.

15.3     **Amendment.**  This Agreement may be amended or modified only by a written instrument signed by or on behalf of the Parties hereto or their successors-in-interest.

15.4     **Arms-Length Negotiations.**  This Agreement and Settlement were entered into after substantial good faith, arms-length negotiations between the Parties, Class Counsel and Defendants' Counsel.

57

15.5     **Authority to Execute.**  Each counsel or other person executing this

Agreement on behalf of any of the Parties hereto warrants that such person has the authority to do

so.

15.6     **Cooperation of the Parties.**  The Parties acknowledge that it is their

intent to consummate expeditiously the Settlement memorialized in this Agreement and will

cooperate to the extent necessary to effectuate and implement, and exercise their best efforts to

accomplish, all terms and conditions of the Agreement.  The Parties further agree that the terms

of the Agreement were negotiated in good faith by the Parties, and reflect a settlement that was

reached voluntarily after consultation with competent legal counsel of the Parties' own choosing.

15.7     **Effective Agreement; Counterparts.**  This Agreement may be executed

in one or more counterparts.  All executed counterparts and each of them shall be deemed to be

one and the same Agreement.  The Agreement may be executed by signature delivered by

facsimile or PDF and need not be the original "ink" signature.  A complete set of executed

counterparts shall be filed with the Court.  This Agreement shall become effective upon its

execution by the Class Representatives, Defendants and approval by the Court.

15.8     **Entire Agreement.**  This Agreement and the exhibits hereto constitute the

entire fully integrated agreement among the Parties.  No representations, warranties or

inducements have been made to any Party concerning the Settlement, this Agreement or its

exhibits other than the representations, warranties and covenants contained in such documents.

15.9     **Force Majeure.**  The failure of any of the Parties to perform any of their

obligations hereunder shall not subject such Party to any liability or remedy for damages, or

otherwise, where such failure is occasioned in whole or in part by acts of God, fires, accidents,

earthquakes, other natural disasters, explosions, floods, wars, interruptions or delays in

transportation, power outages, labor disputes or shortages, shortages of material or supplies, governmental laws, restrictions, rules or regulations, sabotage, terrorist acts, acts or failures to act of any third parties, or any other similar or different circumstances or causes beyond the reasonable control of such Party.

15.10    **Governing Law.** This Agreement shall be governed by the laws of the State of California. All actions or proceedings relating to this Agreement may only be brought in the United States District Court for the Central District of California.

15.11    **Jurisdiction.** Upon the occurrence of the Effective Date, the Settlement should be enforceable by the Court, and the Court shall retain exclusive and continuous jurisdiction over the Parties and the Members of the Settlement Classes to interpret and enforce the terms and conditions of, and rights under, the Settlement until the terms of the Agreement are fully performed.

15.12    **Notice.** Unless otherwise indicated herein, where any Party's exercise of any right under this Agreement requires written notice, the Party shall serve such written notice on the counsel of record for the other Party by First Class U.S. mail or any method that is at least as reliable and timely as First Class U.S. mail.

15.13    **Party's Reliance On Own Knowledge.** Each of the Parties acknowledges and represents that it has fully and carefully read this Agreement prior to execution; that it has been fully apprised by its counsel of the legal effect and meaning of this document and all terms and conditions hereof; that it has had the opportunity to make whatever investigation or inquiry it deemed necessary or appropriate in connection with the subject matter of the Action; that it has been afforded the opportunity to negotiate as to any and all terms hereof; and that it is executing this Agreement voluntarily, free from any undue influence, coercion,

duress, or menace of any kind. This Agreement reflects the conclusion of each of the Parties that this Agreement, the Settlement, the judgments to be entered hereunder, and the releases, waivers and covenants contemplated hereby are in the best interest of said Parties, the general public, and the Settlement Classes. Except as expressly provided herein, this Agreement is not intended to confer upon any other person or entity any rights or remedies.

15.14 **Severability.** In the event that any one or more of the provisions contained in this Agreement shall for any reason be held invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall in no way affect any other provision if Defendants' Counsel and Class Counsel, on behalf of the Parties and the Settlement Classes, mutually elect in writing to proceed as if such invalid, illegal, or unenforceable provision had never been included in this Agreement, except as otherwise provided herein.

15.15 **Use of Headings and Captions in Agreement.** The headings and captions inserted in this Agreement are for convenience only and in no way define, limit, or otherwise describe the scope or intent of this Agreement, or any provision hereof, or in any way affect the interpretation of this Agreement. Except as otherwise provided in this Agreement, the Parties shall bear their own respective costs and fees. None of the Parties, or their respective counsel, shall be deemed to be the drafter of this Agreement or its exhibits for purposes of construing their provisions. The language in all parts of this Agreement and its exhibits shall be interpreted according to its fair meaning, and shall not be interpreted for or against any of the Parties as the drafter of the language.

15.16 **Computation of Time.** When the period is stated in days or a longer unit of time exclude the day of the event that triggers the period, count every day including intermediate Saturdays, Sundays, and legal holidays (unless the word "business" appears before

the word "days" in which event Saturdays, Sundays and legal holidays should not be counted) and include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday or legal holiday.

15.17    **Waiver.** The waiver by any of the Parties to this Agreement of any provision of the Agreement shall not be deemed a waiver by that Party of any other provision of this Agreement.

15.18    **Cooperation of Class Counsel.** All Class Counsel agree not object or otherwise disparage the settlement terms and will agree to cooperate with each other in supporting the settlement, administering the Settlement, and moving towards securing both preliminary and final court approval of the Settlement without unreasonable delay. If however, there is a dispute between Class Counsel as to a matter relating to the Settlement or administration, Lead Class Counsel shall determine the appropriate course of action taking the Settlement Classes' best interests into account.

<div align="center">**Signature Pages to Follow**</div>

IT                    IS                    SO                    AGREED:

Dated: __9-10-10__                    TRACY DAWN TRAUTH

                                      By: _____
                                             Tracy Dawn Trauth


Dated: _____              CHRISTEEN RIVERA

                                      By: _____
                                             Christeen Rivera


Dated: _____              JENNIFER BLAIR

                                      By: _____
                                             Jennifer Blair


Dated: _____              VICTORIA OMLOR

                                      By: _____
                                             Victoria Omlor

IT IS SO AGREED:

Dated: _____                TRACY DAWN TRAUTH

                                              By: _____
                                                     Tracy Dawn Trauth

Dated: 9/8/2010                               CHRISTEEN RIVERA

                                              By: _Christeen Rivera_
                                                     Christeen Rivera

Dated: _____                JENNIFER BLAIR

                                              By: _____
                                                     Jennifer Blair

Dated: _____                VICTORIA OMLOR

                                              By: _____
                                                     Victoria Omlor

Dated: _____                JASMINE WRIGHT

                                              By: _____
                                                     Jasmine Wright

IT IS SO AGREED:

Dated: _____          TRACY DAWN TRAUTH

                                By: _____
                                        Tracy Dawn Trauth


Dated: _____          CHRISTEEN RIVERA

                                By: _____
                                        Christeen Rivera


Dated: _9/9/10_____            JENNIFER BLAIR

                                By: _____
                                        Jennifer Blair


Dated: _____          VICTORIA OMLOR

                                By: _____
                                        Victoria Omlor


Dated: _____          JASMINE WRIGHT

                                By: _____
                                        Jasmine Wright

62

IT IS SO AGREED:

Dated: _____

**TRACY DAWN TRAUTH**

By: _____
                 Tracy Dawn Trauth


Dated: _____

**CHRISTEEN RIVERA**

By: _____
                 Christeen Rivera


Dated: _____

**JENNIFER BLAIR**

By: _____
                 Jennifer Blair


Dated: _____

**VICTORIA OMLOR**

By: *Victoriamarie* _____
                 Victoria Omlor


Dated: _____

**JASMINE WRIGHT**

By: _____
                 Jasmine Wright

IT IS SO AGREED:

Dated: _____

TRACY DAWN TRAUTH

By: _____
      Tracy Dawn Trauth

Dated: _____

CHRISTEEN RIVERA

By: _____
      Christeen Rivera

Dated: _____

JENNIFER BLAIR

By: _____
      Jennifer Blair

Dated: _____

VICTORIA OMLOR

By: _____
      Victoria Omlor

Dated: 9/8/10 _____

JASMINE WRIGHT

By: _____
      Jasmine Wright

Dated: _____

ANICIA VINTIMILLA

By: _____
      Anicia Vintimilla

Dated: 9/7/10

MARSHA ELLINGTON

By: _____
      Marsha Ellington

Dated: _____

SELENA DENISE PELAEZ

By: _____
      Selena Denise Pelaez

Dated: _____

NICOLE GARCIA

By: _____
      Nicole García

Dated: _____

REAH NAVARRO

By: _____
      Reah Navarro

Dated: _____

TAMI SANCHEZ

By: _____
      Tami Sanchez

63

Dated: _____          ANICIA VINTIMILLA

                                     By: _____
                                          Anicia Vintimilla


Dated: _____          MARSHA ELLINGTON

                                     By: _____
                                          Marsha Ellington


Dated: __9/9/10__                    SELENA DENISE PELAEZ

                                     By: _____
                                          Selena Denise Pelaez


Dated: _____          NICOLE GARCIA

                                     By: _____
                                          Nicole Garcia


Dated: _____          REAH NAVARRO

                                     By: _____
                                          Reah Navarro


Dated: _____          TAMI SANCHEZ

                                     By: _____
                                          Tami Sanchez

Dated: _____          ANICIA VINTIMILLA

                                  By: _____
                                        Anicia Vintimilla


Dated: _____          MARSHA ELLINGTON

                                  By: _____
                                        Marsha Ellington


Dated: _____          SELENA DENISE PELAEZ

                                  By: _____
                                        Selena Denise Pelaez


Dated: 9·8·2010                   NICOLE GARCIA

                                  By: _____
                                        Nicole Garcia


Dated: _____          REAH NAVARRO

                                  By: _____
                                        Reah Navarro


Dated: _____          TAMI SANCHEZ

                                  By: _____
                                        Tami Sanchez

Dated: _____

ANICIA VINTIMILLA

By: _____
    Anicia Vintimilla


Dated: _____

MARSHA ELLINGTON

By: _____
    Marsha Ellington


Dated: _____

SELENA DENISE PELAEZ

By: _____
    Selena Denise Pelaez


Dated: _____

NICOLE GARCIA

By: _____
    Nicole Garcia


Dated: 9/10/10

REAH NAVARRO

By: _____
    Reah Navarro


Dated: _____

TAMI SANCHEZ

By: _____
    Tami Sanchez


63

Dated: _____          ANICIA VINTIMILLA

                                  By: _____
                                          Anicia Vintimilla


Dated: _____          MARSHA ELLINGTON

                                  By: _____
                                          Marsha Ellington


Dated: _____          SELENA DENISE PELAEZ

                                  By: _____
                                          Selena Denise Pelaez


Dated: _____          NICOLE GARCIA

                                  By: _____
                                          Nicole Garcia


Dated: _____          REAH NAVARRO

                                  By: _____
                                          Reah Navarro


Dated: 9/9/2010                   TAMI SANCHEZ

                                  By: _____
                                          Tami Sanchez


63

Dated: _9 - 16 - 10_                    ANICIA VINTIMILLA

                                        By: _____
                                             Anicia Vintimilla


Dated: _____            MARSHA ELLINGTON

                                        By: _____
                                             Marsha Ellington


Dated: _____            SELENA DENISE PELAEZ

                                        By: _____
                                             Selena Denise Pelaez


Dated: _____            NICOLE GARCIA

                                        By: _____
                                             Nicole Garcia


Dated: _____            REAH NAVARRO

                                        By: _____
                                             Reah Navarro


Dated: _____            TAMI SANCHEZ

                                        By: _____
                                             Tami Sanchez

Dated: _9·10·10_    CITY OF INDUSTRY HOSPITALITY
                    VENTURE, INC.

                    By: _Kathy Vercher_
                    Print Name: _Kathy Vercher_

Dated: _9·10·10_    DOWNTOWN LA CLUB VENTURE, INC.

                    By: _Kathy Vercher_
                    Print Name: _Kathy Vercher_

Dated: _9·10·10_    FARMDALE HOSPITALITY SERVICES,
                    INC.

                    By: _Kathy Vercher_
                    Print Name: _Kathy Vercher_

Dated: _9·10·10_    INLAND RESTAURANT VENTURE I, INC.

                    By: _Kathy Vercher_
                    Print Name: _Kathy Vercher_

Dated: _9·10·10_    MIDNIGHT SUN ENTERPRISES, INC.

                    By: _Kathy Vercher_
                    Print Name: _Kathy Vercher_

64

Dated: 9·10·10

OLYMPIC AVENUE VENTURE, INC.

By: _____

Print Name: _____


Dated: 9·10·10

THE OXNARD HOSPITALITY SERVICES, INC.

By: _____

Print Name: _____


Dated: 9·10·10

RIALTO POCKETS, INC.

By: _____

Print Name: _____


Dated: 9·10·10

ROUGE GENTLEMEN'S CLUB, INC.

By: _____

Print Name: _____


Dated: 9·10·10

SANTA BARBARA HOSPITALITY SERVICES, INC.

By: _____

Print Name: _____


65

Dated: 9·10·10

SANTA MARIA RESTAURANT
ENTERPRISES, INC.

By: _____

Print Name: Kathy Vercher


Dated: 9·10·10

SPEARMINT RHINO COMPANIES
WORLDWIDE, INC.

By: _____

Print Name: Kathy Vercher


Dated: 9·10·10

SPEARMINT RHINO CONSULTING
WORLDWIDE, INC.

By: _____

Print Name: Kathy Vercher


Dated: _____

K-KEL, INC.

By: _____

Print Name: _____


66

Dated: _____     SANTA MARIA RESTAURANT
                            ENTERPRISES, INC.

                            By: _____

                            Print Name: _____


Dated: _____     SPEARMINT RHINO COMPANIES
                            WORLDWIDE, INC.

                            By: _____

                            Print Name: _____


Dated: _____     SPEARMINT RHINO CONSULTING
                            WORLDWIDE, INC.

                            By: _____

                            Print Name: _____


Dated: September 9, 2010     K-KEL, INC.

                            By: _Kevin M Kelly, President_____

                            Print Name: _Kevin M. Kelly_____

Dated: 9·10·10

HIGH EXPECTATIONS HOSPITALITY, LLC

By: _____

Print Name: Kathy Vercher

Dated: 9·10·10

KENTUCKY HOSPITALITY VENTURE, LLC

By: _____

Print Name: Kathy Vercher

Dated: 9·10·10

LCM, LLC

By: _____

Print Name: Kathy Vercher

Dated: 9·10·10

WPB HOSPITALITY, LLC

By: _____

Print Name: Kathy Vercher

APPROVED AS TO FORM AND CONTENT:

Dated: _9·16·10____          LINER GRODE STEIN YANKELEVITZ
                             SUNSHINE REGENSTREIF & TAYLOR LLP


                             By: _____
                                 Peter E. Garrell
                                 Attorneys for Defendants and the Clubs


Dated: _____         RIDOUT & LYON LLP
                             ZIMMERMAN REED PLLP
                             CONSUMER LAW CENTER, PLLC


                             By: _____
                                 Christopher Ridout
                                 Hart Robinovitch
                                 Caleb Marker
                                 Co-Class Counsel and Lead Class
                                 Counsel


Dated: _____         KNAPP, PETERSEN & CLARKE
                             LAW OFFICES OF ROBERT L. STARR


                             By: _____
                                 Stephen L. Harris
                                 Robert L. Starr
                                 Co-Class Counsel

68

APPROVED AS TO FORM AND CONTENT:

Dated: _____      LINER GRODE STEIN YANKELEVITZ
     SUNSHINE REGENSTREIF & TAYLOR LLP


     By: _____
        Peter E. Garrell
        Attorneys for Defendants and the Clubs


Dated: 9 - 8 - 10 _____      RIDOUT & LYON LLP
     ZIMMERMAN REED PLLP
     CONSUMER LAW CENTER, PLLC

     By: _____
        Christopher Ridout
        Hart Robinovitch
        Caleb Marker
        Co-Class Counsel and Lead Class
        Counsel


Dated: _____      KNAPP, PETERSEN & CLARKE
     LAW OFFICES OF ROBERT L. STARR


     By: _____
        Stephen L. Harris
        Robert L. Starr
        Co-Class Counsel

APPROVED AS TO FORM AND CONTENT:

Dated: _____     LINER GRODE STEIN YANKELEVITZ
                                    SUNSHINE REGENSTREIF & TAYLOR LLP


                                    By: _____
                                          Peter E. Garrell
                                          Attorneys for Defendants and the Clubs


Dated: _Sept 10/2010_____         RIDOUT & LYON LLP
                                    ZIMMERMAN REED PLLP
                                    CONSUMER LAW CENTER, PLLC


                                    By: _____
                                          Christopher Ridout
                                          Hart Robinovitch
                                          Caleb Marker
                                          Co-Class Counsel and Lead Class
                                          Counsel


Dated: _____     KNAPP, PETERSEN & CLARKE
                                    LAW OFFICES OF ROBERT L. STARR


                                    By: _____
                                          Stephen L. Harris
                                          Robert L. Starr
                                          Co-Class Counsel

APPROVED AS TO FORM AND CONTENT:

Dated: _____     LINER GRODE STEIN YANKELEVITZ
                               SUNSHINE REGENSTREIF & TAYLOR LLP


                               By: _____
                                   Peter E. Garrell
                                   Attorneys for Defendants and the Clubs


Dated: 9/8/10                  RIDOUT & LYON LLP
                               ZIMMERMAN REED PLLP
                               CONSUMER LAW CENTER, PLLC

                               By: _____
                                   Christopher Ridout
                                   Hart Robinovitch
                                   Caleb Marker
                                   Co-Class Counsel and Lead Class
                                   Counsel


Dated: _____     KNAPP, PETERSEN & CLARKE
                               LAW OFFICES OF ROBERT L. STARR


                               By: _____
                                   Stephen L. Harris
                                   Robert L. Starr
                                   Co-Class Counsel

APPROVED AS TO FORM AND CONTENT:

Dated: _____          LINER GRODE STEIN YANKELEVITZ
                                 SUNSHINE REGENSTREIF & TAYLOR LLP

                                 By: _____
                                     Peter E. Garrell
                                     Attorneys for Defendants and the Clubs


Dated: _____          RIDOUT & LYON LLP
                                 ZIMMERMAN REED PLLP
                                 CONSUMER LAW CENTER, PLLC

                                 By: _____
                                     Christopher Ridout
                                     Hart Robinovitch
                                     Caleb Marker
                                     Co-Class Counsel and Lead Class
                                     Counsel


Dated: *9-17-10*                 KNAPP, PETERSEN & CLARKE
                                 LAW OFFICES OF ROBERT L. STARR

                                 By: _____
                                     Stephen L. Harris
                                     Robert L. Starr
                                     Co-Class Counsel

# EXHIBIT A

*Tracy Dawn Trauth, et al. ("Plaintiffs") v.*
*Oxnard Hospitality Services, LP, et al. ("Defendants")*
**United States District Court for the Central District of California**
**Case No. EDCV09-1316 VAP (DTBx)**

### CLASS ACTION CLAIM FORM

**COMPLETE EACH OF THE FOLLOWING IN ORDER TO BE ELIGIBLE FOR
MONETARY RECOVERY**

**YOU MUST COMPLETE, SIGN AND MAIL THIS CLAIM FORM BY FIRST CLASS MAIL
OR EQUIVALENT, POSTAGE PAID POSTMARKED ON OR BEFORE _____, 2010
ADDRESSED AS FOLLOWS, IN ORDER TO BE ELIGIBLE TO RECEIVE RECOVERY, OR
SEE DOCUMENTS AT www.gilardi.com/performersettlement.com**

*MAIL TO:*

**Trauth, et al. v. Oxnard, et al. Settlement Administrator
Gilardi & Co. LLC
P.O. Box 8060
San Rafael, CA 94912
Phone: (866) 243-1452**

**Failure to Complete All Sections Or Failure to Submit This Claim Form Before the Deadline Will
Result in Denial of Your Claim.** *Please Print Clearly.* **Note**: You will be taxed on any Settlement
payment monies you are paid and will receive a Form 1099.

**SECTION A:  CLAIMANT INFORMATION**

**Name/Address Change, if any (*please print*)**

&lt;First Name&gt; &lt;Last Name&gt;   _____
&lt;Address 1&gt;                      _____
&lt;City&gt;, &lt;State&gt;  &lt;Zip&gt;           _____

If the pre-printed address above on the left is incorrect or out of date or if there is no pre-printed data,
YOU MUST provide your current name and address on the blank lines to the right above.  If you move
after submitting this form and prior to receiving payment, please send the Settlement Administrator your
new address.  You are responsible for ensuring the Settlement Administrator has your current and
correct address.

0038613/028/ 49102v01

Additional Required Information (You MUST provide this information to make a Valid Claim):

SOCIAL SECURITY NUMBER: _____ _____

DRIVER'S LICENSE NUMBER: _____ _____

Telephone number: _____
Email: _____

## SECTION B: DANCE HISTORY

PLEASE LIST BELOW THE NAMES OF THE CLUB(S) AT WHICH YOU PERFORMED, THE DATE(S) YOU PERFORMED AS A DANCER AT THE CLUB(S) AND THE NUMBER OF DANCE SHIFTS AT WHICH YOU PERFORMED.

| Name(s) of Club | Date(s) Performed | Number of Dance Shifts |
|---|---|---|
|  |  |  |
|  |  |  |

**PLEASE ATTACH <u>COPIES</u> *(NOT ORIGINALS)* OF ANY SUPPORTING DOCUMENTS YOU HAVE. THE SETTLEMENT ADMINISTRATOR MAY CONTACT YOU FOR FURTHER INFORMATION.**

## SECTION C: CERTIFICATION AND SIGNATURE OF CLAIMANT

I have read and understood the accompanying Notice of Class Action Settlement ("Notice") and am choosing to participate in this action and make a claim under the terms of the Settlement Agreement. I agree to release the claims as described in the Notice to the fullest extent of the law, including all claims arising under the Federal Fair Labor Standards Act relating to the claims made in the Third Amended Complaint. **I understand that I will be responsible for the payment of all taxes owed as a result of receiving any Settlement payment and that I will receive an I.R.S. 1099 tax reporting form reflecting any payment I receive pursuant to the Settlement.**

The undersigned hereby certifies under penalty of perjury that all of the information provided in this Claim Form is true and correct.

Date: _____          _____
    (must be filled in by Claimant)                         Signature

 

                                                  _____
                                                              Print Name

0038613/028/ 49102v01

# EXHIBIT B

### NOTICE OF PROPOSED WAGE/HOUR CLASS AND COLLECTIVE ACTION
### SETTLEMENT, FAIRNESS HEARING, AND CLAIMS PROCEDURE

*Tracy Dawn Trauth, et al. v. Oxnard Hospitality Services, LP et al*
United States District Court for the Central District of California
Case No. EDCV09-1316 VAP (DTBx)

**ATTENTION:  You must timely complete, sign and return the enclosed Claim and W-9
Form (the "Class Notice Documents") to Gilardi & Co. LLC, the Settlement Administrator
so that it is post-marked on or before _____, 2010 if you are to receive Settlement
proceeds.  If you fail to file a valid and timely claim, you will receive nothing under the
Settlement.  If you fail to file a valid and timely claim, and you also fail to exclude yourself
from the Settlement, you will be bound by the release of all claims set forth herein.  If you
file a valid and timely claim you will also be bound by the release of all claims set forth
herein.**

## I.      DESCRIPTION OF THE ACTION

The Plaintiffs contend that exotic dancers performing for customers at the adult clubs doing
business as Spearmint Rhino, Rouge or Blue Zebra, in the states of California, Nevada,
Kentucky, Idaho, Texas and Florida owned by City of Industry Hospitality Venture, Inc.,
Downtown LA Club Venture, Inc., Farmdale Hospitality Services, Inc., High Expectations
Hospitality, LLC, Inland Restaurant Venture I, Inc., K-Kel Inc., LCM, LLC, Kentucky
Hospitality Venture, Midnight Sun Enterprises, Inc., Olympic Avenue Venture, Inc., Rialto
Pockets, Inc., Rouge Gentlemen's Club, Inc., Santa Barbara Hospitality Services, Inc., Santa
Maria Restaurant Enterprises, Inc., The Oxnard Hospitality Services, Inc., and WPB Hospitality,
LLC (the "Clubs") should have been treated as employees rather than independent contractors,
and as a result were entitled to but did not receive adequate compensation and benefits in
exchange for the services they provided to the Club(s).  Plaintiffs further contend that
Defendants were engaged in unlawful tip-sharing arrangements with the dancers.  Defendants in
the Action dispute and deny any and all claims asserted in the Action.  Defendants deny that they
engaged in any wrongdoing, and deny that they are liable to the Class Members in any way.

The United States District Court for the Central District of California has *not* ruled on the merits
of Plaintiffs' claims.

## II.     PRELIMINARY APPROVAL AND CERTIFICATION OF SUBCLASSES

On _____, the United States District Court for the Central District of California
granted preliminary approval of the proposed Settlement of this Action.  The following
Settlement Class has been certified:  all individuals, who performed as an exotic dancer at any of
the Clubs and falls within at least one of the following subclasses:

(1)    "Oxnard Settlement Class":  the individuals who worked as exotic dancers and who have
       provided nude, semi-nude and/or bikini entertainment for customers at one or more of the

-1-

Clubs owned by the following entities at some point during the period of time from July 13, 2005 up to and including the entry of the Preliminarily Approval Order: City of Industry Hospitality Venture, Inc., Downtown LA Club Venture, Inc., Inland Restaurant Venture I, Inc., Midnight Sun Enterprises, Inc., Olympic Avenue Venture, Inc., Rialto Pockets, Inc., Rouge Gentlemen's Club, Inc., Santa Barbara Hospitality Services, Inc., Santa Maria Restaurant Enterprises, Inc. and The Oxnard Hospitality Services, Inc.

(2) "Farmdale Settlement Class": the individuals who worked as exotic dancers and who have provided nude, semi-nude and/or bikini entertainment for customers of Farmdale Hospitality Services, Inc. from July 13, 2006 to the entry of the Preliminary Approval Order.

(3) "Florida Settlement Class": the individuals who performed as exotic dancers and who have provided nude, semi-nude, and/or bikini entertainment for customers at the Club owned WPB Hospitality, LLC from May 3, 2006 to the entry of the Preliminary Approval Order.

(4) "Idaho Settlement Class": the individuals who performed as exotic dancers and who have provided nude, semi-nude, and/or bikini entertainment for customers at the Club owned by LCM, LLC from May 3, 2006 to the entry of the Preliminary Approval Order.

(5) "Kentucky Settlement Class": the individuals who performed as exotic dancers and who have provided nude, semi-nude, and/or bikini entertainment for customers at the Club owned by Kentucky Hospitality Venture, LLC from May 3, 2005 to the entry of the Preliminary Approval Order.

(6) "Texas Settlement Class": the individuals who performed as exotic dancers and who have provided nude, semi-nude, and/or bikini entertainment for customers at the Club owned by High Expectations Hospitality Venture, LLC. from May 3, 2007 to the entry of the Preliminary Approval Order.

(7) "Nevada Settlement Class": the individuals who performed as exotic dancers and who have provided nude, semi-nude, and/or bikini entertainment for customers at the Club owned by K-Kel Inc. from July 13, 2006 to the date of entry of the Preliminary Approval Order.

(8) "FLSA Settlement Class": those individuals who are members of the Oxnard, Farmdale, Kentucky, Idaho, Texas, Nevada and Florida Settlement Classes who elect to participate in the Settlement and timely submit a Valid Claim Form.

According to the Clubs' records, you fall within one or more of the subclasses.

## III.    SUMMARY OF THE SETTLEMENT AGREEMENT

A.    The Settlement provides for a Gross Settlement Amount of up to $10,000,000.

B.     The Gross Settlement Amount shall be used first to pay the following, as directed by the Court:

1.     The attorneys' fees and costs of Class Counsel, not to exceed 25% percent of the Gross Settlement Amount or $2,500,000;

2.     Incentive fees to the Class Representatives – Tracy Dawn Trauth, Jennifer Blair, Christina Rivera, Victoria Omlor, Jasmine Wright, Anicia Vintimilla, Marsha Ellington, Selena Denise Pelaez, Nicole Garcia, Reah Navarro, and Tami Sanchez. Class Counsel may apply to the Court for an award of incentive fees up to seventy-seven thousand five hundred dollars ($77,500) to the Class Representatives no later than ten (10) days prior to the Fairness Hearing. Ms. Trauth may apply, without objection by Defendants' Counsel, for an incentive award of up to $15,000. The remaining Class Representatives may apply for incentive awards of up to $6,250 each, without objection by Defendants' Counsel. This paragraph and specifically payment of incentive fees from the Gross Settlement Amount is subject to Section 10.1 of the Settlement Agreement.

3.     The Administrative Costs of Settlement, including Class Notice, internet notice, claims administration, and any fees and costs incurred or charged by the Settlement Administrator, in connection with the execution of its duties under the Agreement, in an amount not to exceed $55,000.

C.     The amount remaining after payment of the amounts referred to above in paragraph B is the Net Settlement Amount from which the individual Members of the Settlement Classes will be paid. This amount will result in an estimated payment to eligible class members of between $____ and $____ per shift. This amount is an estimate only, and various factors may lead to this number being different at the time of final approval of the settlement, e.g., which pool the Class Member is a member of, the number of shifts being used to calculate the amount per shift which class members are eligible to receive, and the amount of the attorney fee award, and the amount of the incentive fee awards. The Net Settlement Fund shall be allocated in three pools as follows:

Pool 1:  70% of the Net Settlement Amount shall be allocated to the Oxnard and Farmdale Settlement Classes. (There are $15,000 in California Private Attorneys General Act penalties that will be paid first from this pool). Thirty percent of the payments to this pool are allocated to claims regarding tip-sharing.

Pool 2:  20% of the Net Settlement Amount shall be allocated to the Nevada Settlement Class.

Pool 3:  10% of the Net Settlement Amount shall be allocated to the Texas Settlement Class, the Florida Settlement Class, the Idaho Settlement Class, and the Kentucky Settlement Class collectively.

Within each pool, the Class Members will receive Settlement payments on a pro rata basis, based upon the number of Dance Shifts performed.

-3-

D.     If the number of Settlement Class Members who make valid and timely claims would result in total settlement payments that amount to less than $2,100,000, Defendants shall distribute the difference between $2,100,000 and the total claims as follows: (1) 10% to Class Members who file claims on a pro rata basis; and (2) 90% to be paid over a five year period of time and earmarked for a special fund created and managed by Defendants to benefit dancers. The purpose of the special fund shall be to assist dancers with medical, education, childcare, or similar needs. Defendants' Counsel will provide quarterly reports to Plaintiffs' Counsel and the Court regarding disbursements from the special fund. Any unclaimed Net Settlement Amount in excess of $2,100,000 will be kept by Defendants.

E.     The Existing Clubs in California will stop charging dancers Stage Fees within 30 days after the Effective Date. In addition, the Existing Clubs agree to reclassify all dancers at the Existing Clubs as employees within eighteen months after the Effective Date. However, any Existing Club may, following 30 days written notification to Class Counsel, not reclassify the dancers or if reclassified, make a new reclassification to independent contractor or partner provided certain events occur which are listed in full in the Settlement Agreement, which can be found at www.gilardi.com/performersettlement.com.

F.     The Settlement Administrator shall cause the Settlement payment(s) to the Class Members who have made Valid Claims to be mailed fifteen (15) days following the date on which the Court's decision regarding the last dispute by the Members of the Settlement Classes becomes Final.

G.     In addition to the effect of any final Judgment that the Court will enter if the Settlement is approved by the Court, the Settlement Agreement provides a full and complete release by each Class Member and her heirs, successors, and assigns, to City of Industry Hospitality Venture, Inc., Downtown LA Club Venture, Inc., Farmdale Hospitality Services, Inc., High Expectations Hospitality, LLC, Inland Restaurant Venture I, Inc., K-Kel Inc, Kentucky Hospitality Venture, LLC, LCM, LLC, Midnight Sun Enterprises, Inc., Olympic Avenue Venture, Inc., Rialto Pockets, Inc., Rouge Gentlemen's Club, Inc., Santa Barbara Hospitality Services, Inc., Santa Maria Restaurant Enterprises, Inc., Spearmint Rhino Companies Worldwide, Inc., Spearmint Rhino Consulting Worldwide, Inc., The Oxnard Hospitality Services, Inc., and WPB Hospitality, LLC and their current or former officers, directors, employees, agents, insurers, attorneys, auditors, accountants, experts, parent companies, subsidiaries, affiliates, divisions, stockholders, members, heirs, executors, representatives, predecessors, successors, and/or assigns from any and all actions and/or causes of action, suits, obligations, etc. whether asserted in the Action, with respect to the allegations in the Fourth Amended Complaint. All Class Members who submit Valid Claims shall also be deemed to have opted in to the FLSA Settlement Class and shall be deemed to have released all claims relating to the FLSA.

The summary of the terms of the release should be read in conjunction with, and is entirely qualified by, the complete text of the release set forth in the Settlement Agreement, which can be found at www.gilardi.com/performersettlement.com.

H.     If the Court approves the Settlement, lawsuits by Class Members who made claims or did not exclude themselves from the Settlement, related to any Released Claims

-4-

(including Unknown Claims) which arose or may have arisen, in connection with work performed at any of the Clubs by Class Members, and which could have been asserted in the action, and up to preliminary approval of the settlement in the action, but only with respect to claims related to misclassification of dancers as independent contractors, stage fees, and allocation of dance fees, will be prohibited.

       I.    Defendants have denied that they have any liability as a result of the claims brought in the Action.

## IV.    TO RECEIVE MONEY AND CLAIM YOUR SHARE OF THE SETTLEMENT

If you want to claim your share of the Settlement, you must complete and mail the Claim Form (which is enclosed with this Class Notice) to the Settlement Administrator at the address listed below.

<div align="center">

**Trauth, et al. v. Oxnard, et al. Settlement Administrator**
**Gilardi & Co. LLC**
P.O. Box 8060
San Rafael CA 94912
Phone: (866) 243-1452.

</div>

**YOUR CLAIM MUST BE POSTMARKED IN THE PRE-ADDRESSED STAMPED ENVELOPE ON OR BEFORE** _____, which is 90 days after the date of the entry of the Preliminary Approval Order. The Claim Form must be sent by United States postal service first class mail or the equivalent. If a Claim Form is not received by _____, it will be accepted as long as it bears a postmark bearing that date.

If you submit the Claim Form and W-9 Form, or if you do not exclude yourself from the Settlement, you will be bound by all the terms of the Settlement, including a full release of claims that will prevent you from suing Defendants, their employees, officers, directors, parent companies, or any other related persons or entities for the matters being settled in this Action.

If you submit the Claim Form and W-9 form, you will be opting into the Federal Labor Standards Act claims and the release of those claims.

If your submitted Claim Form contains a number of Dance Shifts that does not exceed 10% of the number of Dance Shifts reflected in the Clubs' records, the amount requested on your Claim Form shall be paid. The Settlement Administrator will mail each Class Member whose Claim Form contains a number of Dance Shifts that exceeds 10% of the number of Dance Shifts reflected in the Clubs' records, within 10 days of receipt of the completed Class Action Documents, a statement informing her of this fact and that she has the option of: (i) accepting the number of Dance Shifts for that Class Member contained in the Clubs' records as the basis for her claim; or (ii) submitting supporting documentation and evidence supporting the number of Dance Shifts in the Claim Form pursuant to the procedures set forth below. If the Class Member does nothing further or fails to timely submit additional documentation supporting the number of Dance Shifts stated on her Claim Form, her claim shall be calculated based on the number of Dance Shifts for that Class Member contained in the Clubs' records.

If a the Claim Form you send in lists Dance Shifts that are greater than 10% of those Dance Shifts contained in the Clubs' records, you shall have the right to challenge payment based upon the number of Dance Shifts contained in the Clubs' records. The challenge shall be made as follows:

(1)     You must submit, within 10 days of the notification described above additional documentation supporting the number of Dance Shifts stated on your Claim Form to the Settlement Administrator who will provide the information to Class Counsel and Defendants' Counsel;

(2)     Class Counsel and Defendants' Counsel will then meet and confer in an attempt to resolve the dispute. Such a decision must be made within seven 7 days of the receipt of your submission of the additional documentation.

(3)     If the dispute cannot be resolved informally between the Parties, Class Counsel will notify the Settlement Administrator and the dispute shall be submitted to the Settlement Administrator for a non-binding ruling, which shall be made within 14 days of the notification by Class Counsel.

(4)     Within 14 days after mailing of the Settlement Administrator's non-binding ruling, either you or the Clubs may request a hearing with the Court for a ruling, subject only to applicable appeals of orders of the Court.

If the Club(s) listed on your submitted Claim Form matches the information contained in the Clubs' records reflecting the Clubs at which you performed, your payment will be calculated using the names of the Clubs on the Claim Form. The Settlement Administrator will mail each Class Member whose Claim Form contains a statement that she danced a any Club(s) not reflected in the Clubs' records, within ten (10) days of receipt of the completed Claim Form, a statement informing her of this fact and that she has the option of: (i) accepting the identity of the Club(s) at which the dancer worked that are contained in the Clubs' records as the basis for her claim; or (ii) submitting supporting documentation and evidence supporting her claim that she danced at additional or different Club(s) pursuant to the procedures set forth below. If the Class Member does nothing further or fails to timely submit additional documentation supporting her claim that she worked at additional or different Clubs, her claim shall be calculated based on the Clubs' records regarding the identity of the Clubs at which the Class Member performed.

If your submitted Claim Form states that you performed at any Club(s) that are not contained in the Clubs' records, you will have the right to challenge the information contained in the Clubs' records. The challenge shall be made as follows:

(1)     You must submit, within ten days of the notification described above additional documentation supporting your claim that you performed at Club(s), different from or in addition to those contained in the clubs' records, to the Settlement Administrator who will provide the information to Class Counsel and Defendants' Counsel;

0038613/028/ 49103v01

(2)      Class Counsel and Defendants' Counsel will meet and confer in an attempt to reach a joint decision regarding whether your Settlement payment should be based upon Dance Shifts at Clubs at which the Clubs' records reflect you did not work.  Such a decision must be made within seven (7) days of receipt of your submission of the additional documentation.

(3)      If the determination of whether your Settlement payment should be based on the information in the your submitted Claim Form or not cannot be resolved informally between the Parties, Class Counsel will notify the Settlement Administrator and the dispute shall be submitted to the Settlement Administrator for a non-binding ruling, which shall be made within fourteen (14) days of the notification by Class Counsel.

(4)      Within fourteen (14) days after mailing of the Settlement Administrator's non-binding ruling, you or the Club(s) may request a hearing with the Court for a ruling, subject only to applicable appeals of orders of the Court, subject only to applicable appeals of orders of the Court.

The Settlement Administrator shall cause the Settlement payment(s) to the Class Members who have made Valid Claims to be mailed 15 days following the date on which the Court's decision regarding the last dispute by the Members of the Settlement Classes becomes Final.

## V.     TAXES

The Settlement Administrator will issue 1099 Forms to each recipient of any monies paid from the Gross or Net Settlement Amount pursuant to this Settlement.  You will be obligated to obtain you own tax advice concerning the proper reporting and tax consequences of any payments received under this Settlement Agreement, and you shall assume the responsibility of remitting to the Internal Revenue Service and any other relevant taxing authority, any amounts required by law for any monies paid under this Agreement without any further contribution from any of the Defendants or Clubs.

## VI.    EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not wish to participate in the Settlement, you may exclude yourself by submitting a request for exclusion.  Your request for exclusion must be signed, dated, completed and returned by first class U.S. Mail, or the equivalent to the Settlement Administrator at the address set forth above.  A form of request for exclusion is included with this notice.

The request for exclusion must set forth:  (1) the person's full legal name; (2) her stage name(s); (3) the club(s) where she performed; (4) the specific dates, if known, or the approximate range of dates she performed at the club(s); (5) her mailing address and telephone number at the time she performed at the club(s); and (6) her current mailing address and telephone number if different that the previous.  Within 10 days following the last day of the claims period, the Settlement Administrator will provide class counsel and defendants' counsel with the total number of class members who opted out.

The request for exclusion must be received by the Settlement Administrator no later than
_____, 20__, which is 90 days after the date of entry of the Preliminary Approval Order.
The request for exclusion must be sent by United States Postal Service first class mail or the
equivalent.  If the request for exclusion is received after _____, it will be
accepted as long as it bears a postmark that bears that date.

If you submit a complete and timely request for exclusion, you shall, upon receipt, no longer be a
Member of the Settlement Classes, shall be barred from participating in any portion of the
Settlement, and shall receive no benefits from the Settlement.  You will retain whatever rights or
claims you may have, if any, against Defendants or related persons or entities, and you will be
free to pursue them on an individual basis, if you choose to do so.

Do not submit both a Claim Form and W-9 and a request for exclusion.  If you submit both a
Claim Form and W-9 and also a request for exclusion, the request for exclusion will be
disregarded and you will be included in the Settlement Classes, you will be paid your portion of
the Settlement, and you will be bound by the terms of the Settlement, including the release of all
claims.

If you do not request to be excluded from the Action, and you do not object to the proposed
Settlement in the manner provided above, you will be deemed to have approved the proposed
Settlement and to have waived any objections, and you will be forever foreclosed from objecting
to the fairness or adequacy of the proposed Settlement, the payment of attorneys' fees and costs,
the claims process, the payments to the Class Representatives, or any other aspect of the
Settlement.  If the Settlement is not approved, the Action will continue to be prepared for trial or
other judicial resolution.

## VII.    OBJECTING TO THE SETTLEMENT AND ENTRY OF APPEARANCE

If you believe the Settlement is unfair or inadequate in any respect, you may object to the
Settlement by filing a written objection with the United States District Court for the Central
District of California and mailing a copy of your objection to Class Counsel, counsel for
Defendants, at the addresses listed below, and to the Settlement Administrator at the address
listed above.

-8-

| CLASS COUNSEL | DEFENSE COUNSEL | COURT |
|---|---|---|
| Hart L. Robinovitch, Esq.<br>Timothy J. Becker, Esq.<br>Zimmerman Reed PLLP<br>14646 North Kierland Boulevard<br>Suite 145<br>Scottsdale , AZ 85254 | Peter E. Garrell, Esq.<br>Kim Zeldin, Esq.<br>Liner Grode Stein Yankelevitz<br>Sunshine Regenstreif & Taylor<br>LLP<br>1100 Glendon Avenue, 14th<br>Floor<br>Los Angeles, California<br>90024-3503 | United States District<br>Court, Central District<br>of California<br>3470 Twelfth Street,<br>Riverside, CA 92501-<br>3000 |
| Christopher P. Ridout, Esq.<br>Devon M. Lyon, Esq.<br>Ridout & Lyon<br>555 E. Ocean Blvd., Ste 500<br>Long Beach, CA 90802 | | |
| Caleb LH Marker, Esq.<br>Consumer Law Center, PLLC<br>601 Abbott Road, Suite 100<br>East Lansing MI 48823 | | |
| Stephen M. Harris, Esq.<br>Knapp, Petersen & Clarke<br>550 North Brand Boulevard,<br>Fifteenth Floor<br>Glendale, California  91203-<br>1904 | | |
| Robert L. Starr, Esq.<br>Law Offices of Robert L. Starr<br>23277 Ventura Boulevard<br>Woodland Hills, CA  91364 | | |

All objections must be filed with the Court no later than _____(or 90 days after entry of the Preliminary Approval Order.)  Copies of your objections mailed to Class Counsel, counsel for Defendants, and the Class Administrator must be postmarked no later than _____, 20__.  All objections must state with particularity the factual and legal bases for each objection raised, furnish copies of any documents you wish to submit in support of your position.  All objections must be signed and set forth your name and the name of the case and case number *Tracy Dawn Trauth, et al.  v. Oxnard Hospitality Services, LP, et al.*, United States District Court for the Central District of California, Case No. EDCV09-1316 VAP (DTBx).  In addition, the following information must be sent to the Settlement Administrator along with a copy of your objection (but not filed with the Court):  your current address, telephone number, California (or other applicable jurisdiction), any Stage Name(s), the Club(s) you performed at; the approximate date ranges (month(s)/year(s)) you performed as a dancer at each Club, and your mailing address and telephone number at the time you performed as a dancer at each Club.

Further, if you object and intend to appear at the Fairness Hearing, either in person or through counsel, you must include with the objection a written statement of the purpose for your appearance. The notice of intention to appear must: (i) state how much time you and/or counsel anticipates needing to present the objection; (ii) identify, by name, address, and telephone number any witnesses you and/or your attorney intends to present; (iii) identify all exhibits you and/or your attorney intends to offer in support of the objection; and (iv) attach complete copies of all such exhibits. If you do not provide an objection and/or notice of intention to appear in complete accordance with the deadlines and other requirements set forth herein you will be deemed to have waived any objections to the Settlement and shall be barred from speaking or otherwise presenting any views at the Fairness Hearing or from pursuing any appeals.

If you intend to file an objection, but you also wish to preserve your right to receive benefits under the Settlement in the event your objection is overruled, you must file a Claim Form and W-9 Form in the manner described above. If the Court approves the Settlement despite any objections, and you do not have a Claim Form and W-9 Form on file, you will not receive any Settlement proceeds and you will be barred from filing a lawsuit in the future relating to the allegations of the Action.

If you object to this Settlement and if any proponent of the Settlement chooses to take a deposition or requests that you respond to written discovery, you must make yourself available upon reasonable notice for a deposition taken by the proponents of the Settlement and/or to respond to written discovery.

## VIII.   FINAL HEARING ON PROPOSED SETTLEMENT

The Final Hearing on the fairness and adequacy of the proposed Settlement, the plan of distribution, the enhancement awards to the named class representatives, and Class Counsel's request for attorneys' fees and costs will be held on _____, 2010 at _____ a.m., in Courtroom 2 of the United States District Court, Central District of California, located at 3470 Twelfth Street, Riverside, CA 92501-3000. This Hearing may be continued to a later date without further notice.

You have the right to appear at the Final Hearing, or to otherwise intervene in the Action through an attorney of your own choosing, at your own expense.

## IX.   OTHER LAWSUITS

The Parties are aware of similar putative class actions filed in the Los Angeles Superior Court, the American Arbitration Association and the state court in Nevada on behalf of groups of individuals who performed as exotic dancers and who provided nude, semi-nude, and/or bikini entertainment for customers at nightclubs in the State of California (and in Nevada for the Nevada state court action) doing business as Spearmint Rhino, Blue Zebra and Rouge (the "Other Lawsuits"). None of these classes in these cases have been certified. The following are the Other Lawsuits: *Victoria Omlor and Jasmine Wright v. The Spearmint Rhino Companies Worldwide, Inc.*, Los Angeles Superior Court, Case No. BC420882; *Michelle Hoisington v. Inland Restaurant Venture I, Inc.*, Los Angeles Superior Court Case No. BC419669; *Michelle Hoisington v. Rouge Gentlemen's Club*, Los Angeles Superior Court Case No. BC419646;

*Victoria Omlor and Anicia Vintimilla v. The Spearmint Rhino Companies Worldwide, Inc.*, Los Angeles Superior Court Case No. BC420882; *Stacey Salazar v. Rouge Gentlemen's Clubs, Inc.*, Case No., Los Angeles Superior Court Case No. BC432102; *Selena D. Pelaez v. Spearmint Rhino Companies Worldwide, Inc.*, Nevada District Court, County of Clark, Case No. A-10-613508 -C; *Elizabeth Merritt v. Spearmint Rhino Companies Worldwide, Inc. and Olympic Avenue Venture, Inc.*, AAA # 11459004900 08.  If a judgment is entered in this Action and it becomes Final, the parties will ask those Courts not to proceed with those actions.

## X.   ADDITIONAL INFORMATION

This Class Notice only summarizes the Action, the Settlement and related matters.  For more information, you may:

(a) Inspect the Court files at the United States District Court, Central District of California, located at 3470 Twelfth Street, Room 134, Riverside, CA 92501-3000, from 10:00 a.m. to 4:00 p.m. Monday through Friday.

(b) Log on to PACER at https://ecf.cacd.uscourts.gov/cgi-bin/login.pl using the case name and number listed on page 1 of this notice to examine the pleadings in this action for minimal cost.

(c) Examine the full Settlement Agreement, the notice and the claim form maintained online at www.gilardi.com/performersettlement.com.

(d) Contact the Settlement Administrator at the address and telephone number noted above; or

(e) Class Counsel can be contacted by writing to Hart Robinovitch at the following address or calling him at the following toll free number:

Hart L. Robinovitch, Esq.
ZIMMERMAN REED P.L.L.P
14646 N. Kierland Blvd., Suite 145
Scottsdale, AZ  85254
1-877-455-9404

### PLEASE DO NOT CALL OR WRITE THE COURT ABOUT THIS CLASS NOTICE

DATE:   _____          _____
                                                  **Hon. Virginia A. Phillips**

-11-

# EXHIBIT C



# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

TRACY DAWN TRAUTH, JENNIFER BLAIR, CHRISTEEN RIVERA, VICTORIA OMLOR, JASMINE WRIGHT, ANICIA VINTIMILLA, MARSHAL ELLINGTON, SELENA DENISE PELAEZ, NICOLE GARCIA, REAH NAVARRO, and TAMI SANCHEZ, individually, and on behalf of a Class of similarly situated indiviudals,

        Plaintiffs,

vs.

CITY OF INDUSTRY HOSPITALITY VENTURE, INC., DOWNTOWN LA CLUB VENTURE, INC., FARMDALE HOSPITALITY SERVICES, INC., HIGH EXPECTATIONS HOSPITALITY, LLC, INLAND RESTAURANT VENTURE I, INC., K-KEL, INC., KENTUCKY HOSPITALITY VENTURE, LLC, LCM, LLC, MIDNIGHT SUN ENTERPRISES, INC., OLYMPIC AVENUE VENTURE, INC., SANTA BARBARA HOSPITALITY SERVICES, INC., SANTA MARIA RESTAURANT ENTERPRISES, INC., SPEARMINT RHINO COMPANIES WORLDWIDE, INC., SPEARMINT RHINO CONSULTING WORLDWIDE, INC., THE OXNARD HOSPITALITY SERVICES, LP, and WPB HOSPITALITY, LLC,

        Defendants.

Case No. EDCV09-1316 VAP (DTBx)

[Assigned for all purposes to the Hon. Virginia A. Phillips, Department 2]

**[PROPOSED] JUDGMENT**

Date Action Filed:  July 13, 2009

1

JUDGMENT

Case No.  EDCV09-1316 VAP (DTBx)

0038613/051/ 49295v01

a. Upon consideration of (i) the motion of Plaintiffs for approval of the Settlement[1] of this Action pursuant to the terms of an Agreement dated as of May 17, 2010 among the Class Representatives, Defendants, and the Existing Clubs (ii) the applications of Class Counsel for an award of attorneys' fees and reimbursement of expenses; and (iii) the applications of Tracy Dawn Trauth, Jennifer Blair, Christeen Rivera, Victoria Omlor, Jasmine Wright, Anicia Vintimilla, Marsha Ellington, Selena Denise Pelaez, Nicole Garcia, Rheah Navarro, and Tami Sanchez for awards of incentive fees (collectively, the "Motions");

b. The Court having entered an Order on _____, 2010 preliminarily approving the Settlement, certifying the Settlement Classes' state law claims under Federal Rule of Civil Procedure 23(b)(3) as opt out classes for purposes of proceeding to consider final approval of the Settlement, approving the form of Class Notice and directing the manner of delivery thereof, and scheduling a hearing to consider the fairness of the Settlement (the "Preliminary Approval Order");

c. The Court having entered an Order on _____, 2010 preliminarily certifying the Settlement Class' Fair Labor Standards Act claims pursuant to 29 U.S.C. Section 216(b) as an opt-in class;

d. The Court, having received a declaration attesting to the delivery of the Class Notice in accordance with the Preliminary Approval Order; and

e. A Fairness Hearing having been held before this Court on _____ (i) to consider the fairness of the Settlement, and to determine whether to enter this Order approving the Settlement; (ii) to finally determine whether to certify the Settlement Classes for purposes of Settlement; (iii) to consider the applications of Class Counsel for an award of attorneys' fees and reimbursement of expenses; (iv) to consider the applications of Tracy Dawn Trauth, Jennifer Blair, Christeen Rivera,

---

[1] Unless otherwise specified, capitalized terms used herein shall have the meanings set forth in the Stipulation and Settlement Agreement.

0038613/051/ 49295v01

1 | Victoria Omlor, Jasmine Wright, Anicia Vintimilla, Marsha Ellington, Selena Denise

2 | Pelaez, Nicole Garcia, Rhea Navarro, and Tami Sanchez for incentive fee awards;

3 | and (v) to rule upon such other matters as the Court might deem appropriate,

4 |    IT IS HEREBY ORDERED:

5 |    1.    The Court finds that the prerequisites for a class action have been

6 | satisfied in that:

7 |        (a)    The Settlement Classes, consisting of thousands of members, are

8 | so numerous that joinder of all members thereof is impracticable;

9 |        (b)    There are questions of law and fact common to the Settlement

10 | Classes, as alleged by the Plaintiffs, specifically, the questions of:  (i) whether

11 | dancers were misclassified as independent contractors and (ii) whether Defendants'

12 | and the Clubs' tip-sharing practices are unlawful, are entirely common.  Likewise,

13 | Defendants' defense that offsets apply to negate any recovery of lost wages are

14 | entirely common, having been based on a standard form lease contract.

15 |        (c)    The Class Representatives, Tracy Dawn Trauth, Jennifer Blair,

16 | Christeen Rivera, Victoria Omlor, Jasmine Wright, Anicia Vintimilla, Marsha

17 | Ellington, Selena Denise Pelaez, Nicole Garcia, Reah Navarro, and Tami Sanchez

18 | are members of the Class, and their claims are typical of the claims of the Settlement

19 | Class;

20 |        (d)    The Class Representatives have and will fairly and adequately

21 | represent the interests of the Settlement Classes, have no interests antagonistic to the

22 | Settlement Classes and have retained qualified, experienced and able counsel;

23 |        (e)    The subclass definitions are sufficiently precise and proper notice

24 | was provided to the Settlement Classes; and

25 |        (f)    Lead Class Counsel and Class Counsel are appropriately qualified

26 | and suitable for appointment to represent the Settlement Classes;

27 |        (g)    Accordingly, this Court hereby finally certifies the Settlement

28 | Class as an opt-out class under Federal Rules of Civil Procedure 23(a) and (b)(3)

1  consisting of all individuals, who performed as an exotic dancer at any of the Clubs

2  and falls within at least one of the following subclasses:  The FLSA Settlement

3  Class, the Oxnard Settlement Class, the Farmdale Settlement Class, the Nevada

4  Settlement Class, the Kentucky Settlement Class, the Idaho Settlement Class, the

5  Texas Settlement Class, and the Florida Settlement Class.

6             (h)    Accordingly, this Court hereby finally certifies the Oxnard

7  Settlement Classes as an opt-out class consisting of:

8        the group of individuals who worked as exotic dancers and who have provided nude, semi-nude and/or bikini entertainment for customers at one or more of the Clubs owned by the following entities at some point during the period of time from July 13, 2005 up to and including _____. [The date of entry of the Preliminary Approval Order.]:  City of Industry Hospitality Venture, Inc., Downtown LA Club Venture, Inc., Inland Restaurant Venture I, Inc., Midnight Sun Enterprises, Inc., Olympic Avenue Venture, Inc., Rialto Pockets, Inc., Rouge Gentlemen's Club, Inc., Santa Barbara Hospitality Services, Inc., Santa Maria Restaurant Enterprises, Inc., and The Oxnard Hospitality Services, Inc.,

15

16             (i)    This Court also certifies the Farmdale Settlement Class as an opt-

17  out class consisting of:

18        the group of individuals who worked as exotic dancers and who have provided nude, semi-nude and/or bikini entertainment for customers of the club owned by Farmdale Hospitality Services, Inc. from July 13, 2006 to _____. [The date of entry of the Preliminary Approval Order.]

21             (j)    This Court also certifies the Nevada Settlement Class as an opt-

22  out class consisting of:

23        the group of individuals who performed as exotic dancers and who have provided nude, semi-nude, and/or bikini entertainment for customers at the Club owned by K-Kel Inc. during the period of time from July 13, 2006 to _____. [The date of entry of the Preliminary Approval Order.]

26

27

28

0038613/051/ 49295v01

1            (k)     This Court also certifies the Florida Settlement Class as an opt-

2    out class consisting of:

3              the group of individuals who performed as exotic
          dancers and who have provided nude, semi-nude,

4              and/or bikini entertainment for customers at the Club
          owned WPB Hospitality, LLC during the period of

5              time from May 3, 2006 to _____[The date of
          entry of the Preliminary Approval Order.]

6

7            (l)     This Court also certifies the Texas Settlement Class as an opt-out

8    class consisting of:

9              the group of individuals who performed as exotic
          dancers and who have provided nude, semi-nude,

10             and/or bikini entertainment for customers at the Club
          owned by High Expectations Hospitality Venture,

11             LLC. during the period of time from May 3, 2007 to
          _____[The date of entry of the Preliminary

12             Approval Order.]

13

14           (m)     This Court also certifies the Kentucky Settlement Class as an opt-

15   out class consisting of:

16             the group of individuals who performed as exotic
          dancers and who have provided nude, semi-nude,

17             and/or bikini entertainment for customers at the Club
          owned by Kentucky Hospitality Venture, LLC during

18             the period of time from May 3, 2005 to _____.
          [The date of entry of the Preliminary Approval Order.]

19

20           (n)     This Court also certifies the Idaho Settlement Class as an opt-out

21   class consisting of:

22             the group of individuals who performed as exotic
          dancers and who have provided nude, semi-nude,

23             and/or bikini entertainment for customers at the Club
          owned by LCM, LLC during the period of time from

24             May 3, 2006 to _____[The date of entry of
          the Preliminary Approval Order.]

25           (o)     This Court also certifies the FLSA Settlement Class as an opt-in

26   collective action for purposes of the Federal Labor Standards Act claims as follows:

27             those individuals who are members of the Oxnard,
          Farmdale, Kentucky, Idaho, Texas, Nevada and/or

28             Florida Settlement Classes who elect to participate in
          the Settlement and timely submit a Valid Claim Form

0038613/051/ 49295v01

and who performed at one or more of the Clubs as exotic dancers and who provided nude, semi-nude and/or bikini entertainment for customers at the Clubs during the time period from July 13, 2006 to _____ [The date of entry of the Preliminary Approval Order.]

2.  In accordance with the Court's Preliminary Approval Order, Class Notice was timely given to all members of the Settlement Class who could be identified with reasonable effort by the Settlement Administrator through the date of this Order.  The form and methods of notifying the Settlement Classes of the terms and conditions of the proposed Agreement met the requirements of Federal Rules of Civil Procedure 23, due process, and any other applicable law, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

3.  The motion for approval of the Settlement is hereby GRANTED, and the Settlement is APPROVED as fair, reasonable and adequate.  The Parties are directed to consummate the Settlement in accordance with the terms of the Settlement Agreement.

4.  Upon this Judgment becoming Final, the Oxnard Releasing Persons and the Farmdale Releasing Persons, with the exception of those individuals who have excluded themselves from the Settlement Classes, shall be deemed to have, and by operation of the Judgment shall have, absolutely and unconditionally released, waived, and forever discharged the Released Persons from any and all claims, liabilities, demands, causes of action, or lawsuits, known or unknown, including Unknown Claims, whether legal, statutory, equitable or of any other type or form, whether under federal or state law, and whether brought in an individual, representative or any other capacity, that in any way relate to or arise out of or in connection with acts, omissions, facts, statements, matters, transactions, or occurrences that have been or could have been alleged in the Action, including but not limited to overtime, minimum wages, missed or inadequate meal periods and rest

0038613/051/ 49295v01

1  breaks, unpaid tip income, reimbursement for uniform costs, itemized wage

2  statement violations, record keeping violations, and waiting time penalties, arising in

3  connection with such claims from the Clubs, Consulting and/or Companies'

4  treatment of the Oxnard and Farmdale Settlement Class Members as independent

5  contractors during the Oxnard Class Period for the members of the Oxnard

6  Settlement Class and during the Farmdale Class Period for the members of the

7  Farmdale Settlement Class, including but not limited to claims under Labor Code §§

8  201, 202, 203, 204, 212, 218, 218.6, 221, 224, 226, 226.7, 350, 351, 353, 402, 435,

9  510, 512, 1174, 1194, 1197, 1199, 2802, and the Private Attorneys General Act,

10 Labor Code 2698 *et seq.*, Wage Commission Orders 5 and 10, and Business &

11 Professions Code §§ 17200, *et seq.* ,as it relates to the underlying California Labor

12 Code claims, and any and all claims pursuant to or derived from ERISA that arise

13 from any alleged failure to pay wages including all claims for benefits under any

14 benefit plan subject to ERISA that arise from such failure, and any interest,

15 attorneys' fees and costs.

16     5.     Upon this Judgment becoming Final the Nevada Releasing Persons,

17 with the exception of those individuals who have excluded themselves from the

18 Settlement Classes, shall be deemed to have, and by operation of the Judgment shall

19 have, absolutely and unconditionally released, waived, and forever discharged the

20 Released Persons from any and all claims, liabilities, demands, causes of action, or

21 lawsuits, known or unknown, including Unknown Claims, whether legal, statutory,

22 equitable or of any other type or form, whether under federal or state law, and

23 whether brought in an individual, representative or any other capacity, that in any

24 way relate to or arise out of or in connection with acts, omissions, facts, statements,

25 matters, transactions, or occurrences that have been or could have been alleged in the

26 Action, including but not limited to overtime, minimum wages, missed or inadequate

27 meal periods and rest breaks, unpaid tip income, reimbursement for uniform costs,

28 itemized wage statement violations, record keeping violations, and waiting time

0038613/051/ 49295v01

1  penalties, arising in connection with such claims from the Clubs, Consulting and/or

2  Companies' treatment of the Nevada Settlement Class Members as independent

3  contractors during the Nevada Class Period, including but not limited to claims under

4  Nevada Compensation, Wages and Hours Laws, N.R.S. 608.005, *et seq.* and Nevada

5  Constitution, Art. 15, § 16, and any and all claims pursuant to or derived from

6  ERISA that arise from any alleged failure to pay wages including all claims for

7  benefits under any benefit plan subject to ERISA that arise from such failure, and

8  any interest, attorneys' fees and costs.

9      6.    Upon this Judgment becoming Final the Florida Releasing Persons, with

10  the exception of those individuals who have excluded themselves from the

11  Settlement Class shall be deemed to have, and by operation of the Judgment shall

12  have, absolutely and unconditionally released, waived, and forever discharged the

13  Released Persons from any and all claims, liabilities, demands, causes of action, or

14  lawsuits, known or unknown, including Unknown Claims, whether legal, statutory,

15  equitable or of any other type or form, whether under federal or state law, and

16  whether brought in an individual, representative or any other capacity, that in any

17  way relate to or arise out of or in connection with acts, omissions, facts, statements,

18  matters, transactions, or occurrences that have been or could have been alleged in the

19  Action, including but not limited to overtime, minimum wages, missed or inadequate

20  meal periods and rest breaks, unpaid tip income, reimbursement for uniform costs,

21  itemized wage statement violations, record keeping violations, and waiting time

22  penalties, arising in connection with such claims from the Clubs, Consulting and/or

23  Companies' treatment of the Florida Settlement Class members as independent

24  contractors during the Florida Class Period including those claims arising under

25  Florida Statute §§ 448.01, *et seq.*, the Florida Minimum Wage Act, Florida Stat.

26  § 448.110, and Florida Constitution, Art. X § 24, and any and all claims pursuant to

27  or derived from ERISA that arise from any alleged failure to pay wages including all

28

0038613/051/ 49295v01

1  claims for benefits under any benefit plan subject to ERISA that arise from such
2  failure, and any interest, attorneys' fees and costs.

3        7.     Upon this Judgment becoming Final the Texas Releasing Persons, with
4  the exception of those individuals who have excluded themselves from the
5  Settlement Class shall be deemed to have, and by operation of the Judgment shall
6  have, absolutely and unconditionally released, waived, and forever discharged the
7  Released Persons from any and all claims, liabilities, demands, causes of action, or
8  lawsuits, known or unknown, including Unknown Claims, whether legal, statutory,
9  equitable or of any other type or form, whether under federal or state law, and
10  whether brought in an individual, representative or any other capacity, that in any
11  way relate to or arise out of or in connection with acts, omissions, facts, statements,
12  matters, transactions, or occurrences that have been or could have been alleged in the
13  Action, including but not limited to overtime, minimum wages, missed or inadequate
14  meal periods and rest breaks, unpaid tip income, reimbursement for uniform costs,
15  itemized wage statement violations, record keeping violations, and waiting time
16  penalties, arising in connection with such claims from the Clubs, Consulting and/or
17  Companies' treatment of the Texas Settlement Class Members as independent
18  contractors during the Texas Class Period, including those claims arising under the
19  Texas Payment of Wages Act, Tex. Lab. Code Ann. §§ 61.001, et seq., Minimum
20  Wage Act, Tex. Lab. Code Ann. §§ 62.001, et seq. and Texas Payday Rules, 40 Tex.
21  Admin. Code §§ 821.1, et seq, and any and all claims pursuant to or derived from
22  ERISA that arise from any alleged failure to pay wages including all claims for
23  benefits under any benefit plan subject to ERISA that arise from such failure, and
24  any interest, attorneys' fees and costs.

25        8.     Upon this Judgment becoming Final the Kentucky Releasing Persons,
26  with the exception of those individuals who have excluded themselves from the
27  Settlement Class shall be deemed to have, and by operation of the Judgment shall
28  have, absolutely and unconditionally released, waived, and forever discharged the

9
JUDGMENT

0038613/051/ 49295v01

1  Released Persons from any and all claims, liabilities, demands, causes of action, or
2  lawsuits, known or unknown, including Unknown Claims, whether legal, statutory,
3  equitable or of any other type or form, whether under federal or state law, and
4  whether brought in an individual, representative or any other capacity, that in any
5  way relate to or arise out of or in connection with acts, omissions, facts, statements,
6  matters, transactions, or occurrences that have been or could have been alleged in the
7  Action, including but not limited to overtime, minimum wages, missed or inadequate
8  meal periods and rest breaks, unpaid tip income, reimbursement for uniform costs,
9  itemized wage statement violations, record keeping violations, and waiting time
10  penalties, arising in connection with such claims from the Clubs, Consulting and/or
11  Companies' treatment of the Kentucky Settlement Class Members as independent
12  contractors during the Kentucky Class Period, including those claims arising under
13  KRS Chapters 207, 337, 342 or 344, and any and all claims pursuant to or derived
14  from ERISA that arise from any alleged failure to pay wages including all claims for
15  benefits under any benefit plan subject to ERISA that arise from such failure, and
16  any interest, attorneys' fees and costs.

17      9.      Upon this Judgment becoming Final the Idaho Releasing Persons, with
18  the exception of those individuals who have excluded themselves from the
19  Settlement Class shall be deemed to have, and by operation of the Judgment shall
20  have, absolutely and unconditionally released, waived, and forever discharged the
21  Released Persons from any and all claims, liabilities, demands, causes of action, or
22  lawsuits, known or unknown, including Unknown Claims, whether legal, statutory,
23  equitable or of any other type or form, whether under federal or state law, and
24  whether brought in an individual, representative or any other capacity, that in any
25  way relate to or arise out of or in connection with acts, omissions, facts, statements,
26  matters, transactions, or occurrences that have been or could have been alleged in the
27  Action, including but not limited to overtime, minimum wages, missed or inadequate
28  meal periods and rest breaks, unpaid tip income, reimbursement for uniform costs,

0038613/051/ 49295v01

1  itemized wage statement violations, record keeping violations, and waiting time

2  penalties, arising in connection with such claims from the Clubs, Consulting and/or

3  Companies' treatment of the Idaho Settlement Class Members as independent

4  contractors during the Idaho Class Period, including but not limited to claims under

5  Idaho Hours Worked Act, I.C.A. §§ 44-1201, *et seq.*, and Minimum Wage Law,

6  I.C.A. §§ 44-1501, *et seq*, and any and all claims pursuant to or derived from ERISA

7  that arise from any alleged failure to pay wages including all claims for benefits

8  under any benefit plan subject to ERISA that arise from such failure, and any

9  interest, attorneys' fees and costs.

10      10.    Upon this Judgment becoming Final, all Members of the Settlement

11  Classes who have submitted Claim Forms shall be deemed to have opted into the

12  Federal Fair Labor Standards Act collective action, and by operation of the

13  Judgment, shall have, absolutely and unconditionally released, waived and forever

14  discharged the Released Persons from any and all wage-related claims of any kind,

15  including but not limited to claims pursuant to FLSA that any of the FLSA Releasing

16  Persons has, had, might have or might have had against any of the Released Persons

17  based on any act or omission that occurred, during the FLSA Class Period, in any

18  way related to any of the facts or claims alleged or could have been alleged in the

19  Action or by reason of the negotiations leading to this settlement, even if presently

20  unknown and/or un-asserted.  The matters released by the FLSA Releasing Persons

21  herein also include any FLSA retaliation claims that could be brought by FLSA

22  Settlement Class Members against any Released Persons based on any act or

23  omission that occurred during the FLSA Class Period, any breach of contract claims,

24  and any state common law wage claims including, but not limited to, claims of unjust

25  enrichment and *quantum meruit*, and any and all claims pursuant to or derived from

26  ERISA that arise from any alleged failure to pay wages, including any claims for

27  benefits under any benefit plans subject to ERISA that arise from any such alleged

28  failure, and any wage-and-hour laws or wage-related claims under other laws, and

11

JUDGMENT

Case No.  EDCV09-1316 VAP (DTBx)

1  any other claims of any kind related to the Released Persons' alleged failure to pay
2  wages to FLSA Settlement Class Members during the FLSA Class Period.

3      11.    Class Representative Tracy Dawn Trauth is hereby awarded, as an
4  incentive fee award for her roles in prosecuting the Action on behalf of the
5  Settlement Classes, the total amount of $_____.  Class Representatives
6  Christeen Rivera, Jennifer Blair, Victoria Omlor, Jasmine Wright and Anicia
7  Vintimilla, Marsha Ellington, Selena Denise Pelaez, Nicole Garcia, Rhea Navarro
8  and Tami Sanchez are hereby awarded, as incentive fee awards, the amount of
9  $_____ each.  The Settlement Administrator will pay the incentive fees
10 awarded by the Court to the Class Representatives within ten days of the Effective
11 Date.

12     12.    Class Counsel are hereby awarded, as and for attorney fees,
13 $_____, which the Court finds to be fair and reasonable, and for
14 reimbursement of costs and expenses, the sum of $_____ , to be paid out of
15 the Gross Settlement Amount by the Existing Clubs to Class Counsel.  Twenty-five
16 percent of the attorneys' fees and costs awarded by the Court shall be paid to Class
17 Counsel within ten days of the Effective Date; twenty-five percent of the attorneys'
18 fees and costs awarded by the Court shall be paid to Class Counsel 120 days after the
19 Effective Date; twenty-five percent of the attorneys' fees and costs awarded by the
20 Court shall be paid to Class Counsel 240 days after the Effective Date; and the final
21 twenty-five percent of the attorneys' fees and costs awarded by the Court shall be
22 paid to Class Counsel 360 days after the Effective Date.  Interest shall not accrue on
23 any amount awarded by the Court if payment is timely made.

24     13.    Within 30 days following the Effective Date, the Existing Clubs in the
25 State of California will stop charging dancers Stage Fees.

26     14.    The Existing Clubs will, within 18 months of the Effective Date,
27 reclassify all dancers at the Existing Clubs as employees.  However, the Existing
28 Clubs may, following 30 days written notification to Class Counsel, not reclassify

1  the dancers or if reclassified, make a new reclassification to independent contractor
2  or partner if any of the following occur:  (a) there is a development in the Federal
3  Law or the laws in the states of California, Nevada, Texas, Kentucky, Florida, or
4  Idaho that clarifies, establishes or otherwise supports Defendants' position that exotic
5  dancers are independent contractors or partners; or (b) if, after one year of the
6  reclassification of dancers as employees, Consulting and the Existing Clubs make a
7  determination that, because a majority of the other adult nightclubs in the relevant
8  market have not converted their dancers to employees, the quality and/or number of
9  prospective dancers they are able to attract is such that they are unable to remain
10  competitive in the adult nightclub industry by continuing to treat the dancers as
11  employees; or (c) if, prior to the reclassification or after it, there is (i) a vote by 75%
12  of the dancers at any Existing Club requesting that they be treated as independent
13  contractors or partners; and (ii) a modification of procedures pertaining to dancers
14  working in an Existing Club, that Existing Club will not have to reclassify the
15  dancers as employees or if already reclassified as employees, the Existing Club may
16  reclassify the dancers as independent contractors or partners following such a vote.

17          15.     Jurisdiction is hereby retained over this Action, the Parties, and the
18  Settlement Class Members for all matters relating to the Action, including (without
19  limitation) the administration, interpretation, effectuation or enforcement of the
20  Settlement Agreement and this Judgment, and including any application for fees and
21  expenses incurred in connection with administering and distributing the Settlement
22  proceeds to the members of the Settlement Classes.

23          16.     Without further order of the Court, the Parties may agree to reasonable
24  extensions of time to carry out any of the provisions of the Settlement Agreement.

25          IT IS SO ORDERED, ADJUDGED AND DECREED.

26

27  Dated: _____ 2010     By: _____
                                          Hon. Virginia A. Phillips
28

0038613/051/ 49295v01

# EXHIBIT D

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TRACY DAWN TRAUTH, JENNIFER BLAIR, CHRISTEEN RIVERA, VICTORIA OMLOR, JASMINE WRIGHT, ANICIA VINTIMILLA, MARSHAL ELLINGTON, SELENA DENISE PELAEZ, NICOLE GARCIA, REAH NAVARRO, and TAMI SANCHEZ, individually, and on behalf of a Class of similarly situated indivuidals, | Case No. EDCV09-1316 VAP (DTBx) |
| | [Assigned for all purposes to the Hon. Virginia A. Phillips, Department 2] |
| | **[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF SETTLEMENT** |
| Plaintiffs, | Date Action Filed:  July 13, 2009 |
| vs. | |
| CITY OF INDUSTRY HOSPITALITY VENTURE, INC., DOWNTOWN LA CLUB VENTURE, INC., FARMDALE HOSPITALITY SERVICES, INC., HIGH EXPECTATIONS HOSPITALITY, LLC, INLAND RESTAURANT VENTURE I, INC., K-KEL, INC., KENTUCKY HOSPITALITY VENTURE, LLC, LCM, LLC, MIDNIGHT SUN ENTERPRISES, INC., OLYMPIC AVENUE VENTURE, INC., SANTA BARBARA HOSPITALITY SERVICES, INC., SANTA MARIA RESTAURANT ENTERPRISES, INC., SPEARMINT RHINO COMPANIES WORLDWIDE, INC., SPEARMINT RHINO CONSULTING WORLDWIDE, INC., THE OXNARD HOSPITALITY SERVICES, LP, and WPB HOSPITALITY, LLC, | |
| Defendants. | |

0038613/051/ 49290v01

1       Upon consideration of the motion for Preliminary Approval of Settlement[1]

2  filed by Plaintiffs in this action, Tracy Dawn Trauth, Christeen Rivera, Jennifer

3  Blair, Victoria Omlor, Jasmine Wright, Anicia Vintimilla, Marsha Ellington, Selena

4  Denise Pelaez, Nicole Garcia, Reah Navarro, and Tami Sanchez  (the "Class

5  Representatives"), on behalf of themselves and as Class Representatives, and

6  requesting an Order (i) preliminarily approving the Settlement of the above-

7  captioned action pursuant to the terms of an Agreement among the Parties dated as of

8  _____, 2010, (ii) certifying opt-out classes pursuant to Federal Rules of Civil

9  Procedure 23; (iii) approving the form of Class Notice and directing the manner and

10  delivery thereof; (iv) conditionally certifying the Federal Labor Standards Act claim;

11  and (v) scheduling a hearing to consider the fairness of the Settlement and to

12  consider the attorneys' fee and expense application of Class Counsel and the

13  incentive fee award applications for the Plaintiffs.  And upon consideration of the

14  Agreement and its exhibits, and good cause appearing therefore, it is hereby

15  ORDERED that the motion be GRANTED and that the Court makes the following

16  ORDERS:

17      1.    The Court finds preliminarily for settlement purposes only, that the

18  prerequisites for certification of the Settlement Classes and maintenance of this

19  Action as a class action pursuant to Federal Rules of Civil Procedure are satisfied, in

20  that:  (a) the Settlement Classes are so numerous that joinder of all their members is

21  impracticable; (b) there are questions of law and fact common to the Settlement

22  Classes; (c) the claims of the Class Representatives are typical of the claims of the

23  Settlement Classes; and (d) the Class Representatives and Class Counsel will fairly

24  and adequately represent the interests of the Settlement Classes.

25

26

---

27  [1]  Unless otherwise specified, capitalized terms used herein shall have the meanings

28  set forth in the Stipulation and Settlement Agreement.

0038613/051/ 49290v01

1      2.     Accordingly, for the purposes of Settlement only, pursuant to the

2  Settlement Agreement and Rule 23(a) and (b)(3) of the Federal Rules of Civil

3  Procedure, (i) the Court certifies the following Settlement Class:  all individuals, who

4  performed as an exotic dancer at any of the Clubs and falls within at least one of the

5  following subclasses:  (a) the Oxnard Settlement Class, which consists of the group

6  of individuals who worked as exotic dancers and who have provided nude, semi-

7  nude and/or bikini entertainment for customers at one or more of the Clubs owned by

8  the following entities at some point during the period of time from July 13, 2005 to

9  the date of entry of this Preliminarily Approval Order: City of Industry Hospitality

10  Venture, Inc., Downtown LA Club Venture, Inc., Inland Restaurant Venture I, Inc.,

11  Midnight Sun Enterprises, Inc., Olympic Avenue Venture, Inc., Rialto Pockets, Inc.,

12  Rouge Gentlemen's Club, Inc., Santa Barbara Hospitality Services, Inc., Santa Maria

13  Restaurant Enterprises, Inc. and The Oxnard Hospitality Services, Inc.; (b) the

14  Farmdale Settlement Class, which consists of the group of individuals who worked

15  as exotic dancers and who have provided  nude, semi-nude and/or bikini

16  entertainment for customers of the club owned by Farmdale Hospitality Services,

17  Inc. from July 13, 2006 to the date of entry of this Preliminary Approval Order; (c)

18  the Florida Settlement Class, which consists of the group of individuals who

19  performed as exotic dancers and who have provided nude, semi-nude, and/or bikini

20  entertainment for customers at the Club owned WPB Hospitality, LLC from May 3,

21  2006 through the date of entry of this Preliminary Approval Order; (d) the Idaho

22  Settlement Class, which consists of the group of individuals who performed as exotic

23  dancers and who have provided nude, semi-nude, and/or bikini entertainment for

24  customers at the Club owned by LCM, LLC from May 3, 2006 to the date of entry of

25  this Preliminary Approval Order; (e) the Kentucky Settlement Class, which consists

26  of the group of individuals who performed as exotic dancers and who have provided

27  nude, semi-nude, and/or bikini entertainment for customers at the Club owned by

28  Kentucky Hospitality Venture, LLC from May 3, 2005 to the date of entry of this

0038613/051/ 49290v01

1  Preliminary Approval Order; (f) the Nevada Settlement Class, which consists of the

2  group of individuals who performed as exotic dancers and who have provided nude,

3  semi-nude, and/or bikini entertainment for customers at the Club owned by K-Kel

4  Inc. from July 13, 2006 to the date of entry of this Preliminary Approval Order; (g)

5  the Texas Settlement Class, which consists of the group of individuals who

6  performed as exotic dancers and who have provided nude, semi-nude, and/or bikini

7  entertainment for customers at the Club owned by High Expectations Hospitality

8  Venture, LLC. from May 3, 2007 to the date of entry of this Preliminary Approval

9  Order; (h) the FLSA Settlement Class, which consists of those individuals who are

10  members of the Oxnard, Farmdale, Kentucky, Idaho, Texas, Nevada and/or Florida

11  Settlement Classes who elect to participate in the Settlement and timely submit a

12  Valid Claim Form and who performed at one or more of the Clubs as exotic dancers

13  and who provided nude, semi-nude and/or bikini entertainment for customers at the

14  Clubs; (ii) Tracy Dawn Trauth, Jennifer Blair, Christeen Rivera, Victoria Omlor,

15  Jasmine Wright, Anicia Vintimilla, Marsha Ellington, Selena Denise Pelaez, Nicole

16  Garcia, Reah Navarro, and Tami Sanchez are appointed as Class Representatives;

17  and (iii) Christopher P. Ridout, Esq. and Devon Marie Lyon, Esq. of Ridout and

18  Lyon LLP, Hart L. Robinovitch, Esq. and Timothy J. Becker, Esq. of Zimmerman

19  Reed PLLP, Caleb LH Marker, Esq. of Consumer Law Center, PLLC, Stephen M.

20  Harris, Esq. of the Law Offices of Knapp, Petersen & Clarke and Robert L. Starr,

21  Esq. of the Law Offices of Robert L. Starr are appointed as Class Counsel (Fed. R.

22  Civ. Pro. 23(g)) to represent the subclasses defined above,  Christopher P. Ridout,

23  Esq. and Devon Marie Lyon, Esq. of Ridout and Lyon LLP, Hart L. Robinovitch,

24  Esq. and Timothy J. Becker, Esq. of Zimmerman Reed PLLP, Caleb LH Marker,

25  Esq. of Consumer Law Center, PLLC are appointed as Lead Class Counsel.

26      3.    The Court, for purposes of this Settlement only, conditionally certifies a

27  Fair Labor Standards Act ("FLSA") representative action as an opt-in action (the

28

0038613/051/ 49290v01

"FLSA Class"), and appoints the Class Representatives as representatives of the FLSA Class.

4.  Pursuant to the hearing concerning Final Approval of the Settlement, or Fairness Hearing shall be held before the Court at _____ _.m. on _____ in Department 2 of this Court, for the following purposes:

(a)  to finally determine whether the state law claims should be certified as a class action pursuant to Federal Rules of Civil Procedure 23;

(b)  to finally determine whether the FLSA claims should be certified as a collective action pursuant to the FLSA.

(c)  to determine whether the Agreement is fair, reasonable and adequate and whether it should be finally approved by the Court;

(d)  to determine whether the Final Order and Judgment as provided under the Agreement should be entered;

(e)  to consider Class Counsel's applications for incentive fee awards for the Class Representatives,

(f)  to consider Class Counsel's application for attorneys' fees and expenses;

(g)  to rule upon such other matters as the Court may deem appropriate.

However, if one or both of the Parties notify the Court before the Fairness Hearing that, pursuant to the Settlement Agreement they are terminating the Agreement pursuant to its terms, then the Court will continue or vacate the Fairness Hearing, as may be appropriate.

5.  The form of Class Notice attached to the Agreement is hereby APPROVED and the Court adopts the following schedule:

(a)  On or before the 5th day from the date of entry of this Order, the Settlement Administrator or its designee shall post on its website a copy of this

1  Notice and the Claim Form and shall maintain these Class Notice Documents on its
2  website until the Effective Date;

3          (b)    On or before the 7th day from the date of entry of this Order, the
4  Defendants or their designees shall post the Notice in the dressing rooms of the
5  Existing Clubs and shall maintain the Class Notice in the dressing rooms until two
6  weeks following the mailing of the Class Notice;

7          (c)    On or before the 30th day from the date of entry of this Order, the
8  Settlement Administrator or its designee shall mail, by United States First Class
9  Mail, postage prepaid, the Class Notice Documents to all Members of the Settlement
10  Classes who can be identified and whose addresses can be ascertained with
11  reasonable effort, in accordance with the terms of the Agreement between the parties;

12          (d)    Any applications by Class Counsel for incentive fee awards to the
13  Class Representatives, attorneys' fees and reimbursement of expenses, and all papers
14  in support thereof, shall be filed with the Court and served on all other Parties to the
15  Settlement Agreement not later than _____ (10 days prior to the Fairness
16  Hearing), copies of which shall be available for inspection at the office of the Clerk.

17          (e)    Members of the Settlement Classes shall not be heard in
18  opposition to the Agreement, the proposed incentive payments to the Class
19  Representatives, the appropriateness of class certification, or Class Counsel's request
20  for attorney fees and reimbursement of litigation expenses, and no papers or briefs
21  submitted by or on behalf of such person shall be accepted or considered by the
22  Court unless, on or before _____ such person has filed with the Clerk of the
23  Court and served by first class mail upon counsel for all parties a written statement
24  that indicates with particularity the factual and legal bases for each objection raised,
25  furnished copies of any documents the objector wishes to submit in support of her
26  position; and provided a list of any other objections she has submitted to any class
27  action settlements in any state or federal court in the United States in the past five (5)
28  years. If she has not objected to any other class action settlement in any court in the

0038613/051/ 49290v01

1  United States in the past five (5) years, she shall affirmatively so state in the written

2  materials provided in connection with the objection to this Settlement.  If the

3  objection is presented through an attorney, the written objection must also include:

4  (i) the identity and number of Class Members represented by objector's counsel; and

5  (ii) the date the objector's counsel assumed representation of the objector.  The

6  objection must also state the Class Member's (1) full legal name; (2) any Stage

7  Name(s); (3) the Club(s) she performed at; (4) the specific dates, if known, or the

8  approximate date ranges (month(s)/year(s)) she performed as a dancer at each Club;

9  (5) mailing address and telephone number at the time she performed as a dancer at

10  each Club; and (6) current mailing address and telephone number if different from

11  her mailing address and telephone number at the time she performed as a dancer at

12  each Club.  Further, any objector who intends to appear at the Fairness Hearing,

13  either in person or through counsel, must include with the objection a written

14  statement of the purpose for her appearance.  The notice of intention to appear must:

15  (i) state how much time the Class Member and/or counsel anticipates needing to

16  present the objection; (ii) identify, by name, address, and telephone number any

17  witnesses the Class Member and/or his/her/their attorney intends to present; (iii)

18  identify all exhibits the Class Member and/or his/her/their attorney intends to offer in

19  support of the objection; and (iv) attach complete copies of all such exhibits.  Any

20  Class Member who does not provide an objection and/or notice of intention to appear

21  in complete accordance with the deadlines and other requirements set forth herein

22  and in the Class Notice will be deemed to have waived any objections to the

23  Settlement and shall be barred from speaking or otherwise presenting any views at

24  the Fairness Hearing or from pursuing any appeals.

25          (f)      At least 30 days prior to the Fairness Hearing, the Settlement

26  Administrator or its designee shall file and serve a declaration evidencing the internet

27  notice and the mailing of the notice in compliance with this Order.  The costs for the

28  internet notice and the mailing of the Class Notice and all claims administration

0038613/051/ 49290v01

1 expenses shall be paid from the Gross Settlement Amount.  The Settlement
2 Administrator or its designee is responsible for conducting a search for  Class
3 Members whose addresses are invalid, as set forth in Section 5 of the Settlement
4 Agreement, and all expenses associated with that search shall be paid from the Gross
5 Settlement Amount.

6      6.     The mailing of the Class Notice Documents, in compliance with
7 Paragraph 5 of this Order, is hereby found to be the best notice practicable under the
8 circumstances, and constitutes due and sufficient notice to the Settlement Class of the
9 proposed Settlement, in compliance with the requirements of Federal Rule of Civil
10 Procedure 23 and due process.

11      7.     Pending final determination of whether the Agreement should be
12 approved, the Class Representatives, the Settlement Classes and each of its members,
13 and any other person or entity acting or purporting to act on their behalf, are hereby
14 BARRED AND ENJOINED from instituting and/or prosecuting any action that
15 asserts any of the claims that are the subject of the Agreement against any of the
16 Parties to the Agreement.

17      8.     Until further order of this Court, all proceedings in this Action other
18 than proceedings in connection with the Settlement are stayed.

19      9.     If the Settlement Agreement is terminated, this Preliminary Approval
20 Order shall be null, void and of no further force or effect, and all parties to the
21 Agreement shall be restored to their respective positions as they existed as provided
22 in the Agreement.

23     10.     Jurisdiction is hereby retained over this action and the parties to this
24 action for all matters relating to this action, including, but not limited to, all matters
25 relating to the administration, interpretation, effectuation and enforcement of the
26 Settlement Agreement and this Order.

27

28

0038613/051/ 49290v01

1    11.    The Court expressly reserves the right to continue the Fairness Hearing

2 from time to time without further notice to the Settlement Classes.

3

4 Dated: _____ 2010     By:_____

5                                         Hon. Virginia A. Phillips

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

0038613/051/ 49290v01

# EXHIBIT E

*Tracy Dawn Trauth, et al. ("Plaintiffs") v.*
*Oxnard Hospitality Services, LP, et al. ("Defendants")*
**United States District Court for the Central District of California**
**Case No. EDCV09-1316 VAP (DTBx)**

### REQUEST FOR EXCLUSION

**YOU MUST COMPLETE, SIGN AND MAIL THIS DOCUMENT BY FIRST CLASS MAIL OR EQUIVALENT, POSTAGE PAID POSTMARKED ON OR BEFORE _____, 2010 ADDRESSED AS FOLLOWS, IN ORDER TO BE EXCLUDED FROM THE SETTLEMENT**

*MAIL TO:*

**Trauth, et al. v. Oxnard, et al. Settlement Administrator**
**Gilardi & Co. LLC**
**P.O. Box 8060**
**San Rafael, CA 94912**
**Phone: (866) 243-1452**

**Please exclude me from the proposed class in the Tracy Dawn Trauth et al. v. Spearmint Rhino et al litigation.** IT IS MY DECISION <u>NOT</u> TO PARTICIPATE IN THE CLASS ACTION SETTLEMENT REFERRED TO IN THE NOTICE, AND TO BE EXCLUDED FROM THE CLASS OF PLAINTIFFS IN THIS CLASS ACTION.

By signing below, I understand that, by excluding myself from the Settlement, I am not entitled to receive any payment from the Settlement.

Date: _____          _____
                                                              (Signature)

                                                  _____
                                                  Type or Print Full Legal Name

                                                  _____
                                                  Street Address / Apt. #

_____          _____
(Telephone Number)                              City, State, Zip

-1-

Please list below the names of the club(s) at which you performed, the date(s) you performed as a dancer at the club(s), your stage name, and your mailing address and telephone number at the time you performed at that club:

| Name of Club | Date(s) Performed | Stage Name | Your Address and Telephone Number at the Time You Performed |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

0038613/028/ 49105v03