JEFFREY M. COHON, State Bar No. 131431
COHON & POLLAK, LLP
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Tel: (310) 231-4470; Fax: (310) 231-4610

ROBERT I. MANUWAL, State Bar No. 102781
MANUWAL & MANUWAL
The Trillium - Suite 590
6300 Canoga Avenue
Woodland Hills, CA 91367-2560
Tel: 818-715-6040; Fax: 818-715-6030

MURRAY M. SINCLAIR, State Bar No. 150389
MURRAY M. SINCLAIR & ASSOCIATES
12100 Wilshire Blvd., Suite 1275
Los Angeles, CA 90025
Tel: 310-826-2700; Fax: 310-826-2727

*Attorneys for* Objectors
*Stacy Salazar & Erica Sullivan*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACY DAWN TRAUTH, CHRISTEEN RIVERA, and JENNIFER BLAIR, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>SPEARMINT RHINO COMPANIES WORLDWIDE, INC., SPEARMINT RHINO CONSULTING WORLDWIDE, INC., AND OXNARD HOSPITALITY SERVICES, LP,,<br><br>Defendants. | Case No. EDCV09-1316 VAP (DTBx)<br><br>**NOTICE OF OBJECTION TO CLASS ACTION SETTLEMENT AND NOTICE OF INTENTION TO APPEAR AT FINAL APPROVAL HEARING**<br><br>Date: August 1, 2011<br>Time: 2:00 p.m.<br>CR: 2<br>Judge: Honorable Virginia A. Phillips |

TO THE COURT, AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Pursuant to Rule 23 (e)(5) of the Federal Rules of Civil Procedure and the Court's Order of April 4, 2011, and in accordance with the requirements of the Settlement Agreement between the parties to the settlement, Objectors Stacy Salazar and Erica Sullivan (hereinafter, the "*Salazar* Plaintiffs" or the "*Salazar* Objectors"), who are Class Representatives in two California state court class action lawsuits filed in Los Angeles Superior Court, Case No. BC445244 (Exhibit 1) and BC445307 (Exhibit 2), on September 10, 2010 (originally filed jointly in Case No. BC432102 on February 18, 2010) against the same defendants Spearmint Rhino Companies Worldwide, et al. herein, submit the following notice of their objections to the class action settlement currently before the court, and further notify the Court and the settling parties of the *Salazar* Objectors intention to appear at the Final Approval hearing in this matter, through their counsel, on August 1, 2011.

## I. INTRODUCTION - STANDING OF OBJECTORS

The lawsuits filed by the *Salazar* Plaintiffs contain similar class action allegations against the same defendants as in the *Trauth* case pertaining to adult cabarets in California. Each of these actions is a putative class action brought by an exotic dancer at a nightclub doing business as a Spearmint Rhino nightclub, seeking to certify a class on behalf of the exotic dancers at the particular nightclub based on violations of the state wage and hour laws, alleging that the particular putative class was misclassified as independent contractors.

Specifically, the *Salazar* lawsuits contain eight causes of action for violations of the following statutes, regulations and laws: (1) Illegal Wage Deductions: Labor Code §§ 221, 224, 350(e), 402 and Industrial Wage Commission Orders 5 and 10 and AB 2509; (2) Conversion - Illegal Tip Collection; (3) Uniforms: Industrial Wage Commission Order 9; (4) California

Labor Code §226.7 - Failure to Provide Rest Periods; (5) Section 12 of the Applicable IWC Orders; (6) Declaratory and Injunctive Relief re Waiting Penalties under California Labor Code §203; (7) California Business & Professions Code §17200; and (8) California Labor Code §226(a)(2). (See Exhibits 1 & 2, Salazar and Sullivan Complaints).

Class representatives Stacy Salazar and Erica Sullivan were employed by Defendants Rouge Gentlemen's Club, Inc. aka Rouge Gentlemen's Clubs, aka Downtown LA Club Ventures, Inc., aka Spearmint Rhino Consulting Worldwide, Inc.; Olympic Avenue Ventures, Inc., aka Spearmint Rhino Gentlemen's Club (Los Angeles); Spearmint Rhino Gentlemen's Club (City of Industry), aka City of Industry Hospitality Venture, Inc., and Spearmint Rhino Gentlemen's Club, aka the Oxnard Hospitality Services, Inc. from on or about September 14, 2007. (See Exhibits 3 [Salazar Dancer Performance Lease with Downtown LA Club Ventures] & 4 [Sullivan Dancer Performance Lease with Oxnard Hospitality Services])

Class representative Erica Sullivan's employment with Defendants Farmdale Hospitality Services, Inc. aka Blue Zebra, Aka Spearmint Rhino Gentlemen's Club; Spearmint Rhino Gentlemen's Club (Torrance); Spearmint Rhino (Van Nuys) commenced on or about March 31, 2008. (Exhibit 5 [Sullivan Dancer Performance Lease with Farmdale Hospitality Services])

Stacy Salazar and Erica Sullivan were employed by Defendants as exotic dancers to perform nude, semi-nude and/or bikini dance entertainment for Defendants' customers. (Complaint, 1:28 [defining Salazar and Sullivan collectively as "Plaintiffs"], ¶3a [using the forgoing definition of "Plaintiffs" to state when and where Salazar and Sullivan worked, and what they did]) Sullivan, and her putative class members, whether performing nude, semi-nude and/or in a bikini, generally received tips for dancing on stage, and charged a set fee for lap dances which generally ranged between $10 to approximately $400 per lap dance. (Complaint, ¶8)

As alleged in the *Salazar* Plaintiffs' Complaints, Defendants violated the *Salazar* Plaintiffs' rights in at least five distinct ways. First, Defendants violated the California minimum wage laws in that they did not and do not pay the dancers any wages for working in the clubs and serving drinks. (Complaint, ¶9) Instead, Defendants charged the dancers, including Plaintiff, a nightly "stage fee" to work at the clubs. (Complaint, ¶9) Second, Defendants unlawfully collected tips from Plaintiff, requiring Plaintiff to share her tips with management personnel, as well as with the employer's other employees. (Complaint, ¶9) Indeed, at some of the clubs, the kick back was 60 percent of the tip. (Complaint, ¶9) Third, Defendants took or threatened to take unlawful deductions from Plaintiff's wages in the form of sanctions for: not clocking out properly, not selling a minimum number of drinks (quotas), missing stage sets, deductions for stage fees, not performing for a certain number of hours, not being fully in costume with hair and make-up complete, leaving the dance floor, not being in dance attire, staying in the dressing room, entering the establishment without identification, yelling, not offering specials, changing prices, and for purportedly violating other rules. (Complaint, ¶¶12, 26) Fourth, Defendants required Plaintiff to wear uniforms in the form of dance attire and costumes but did not supply Plaintiff with, or reimburse her for, such uniforms. (Complaint, ¶¶13, 49) Fifth, Defendants unlawfully required Plaintiff to work for more than four hours at a time without allowing Plaintiff a ten minute rest period and required Plaintiff to work for more than five hours without a meal period. (Complaint, ¶54) These practices are universal to all dancers at all of Defendants' clubs.

In light of the above, the *Salazar* Plaintiffs clearly defined the class as "all employees of Defendants performing live nude, semi-nude and/or bikini dance entertainment to Defendants' customers who were subject to Defendants' unlawful policies of taking illegal deductions from Plaintiffs' and Plaintiff class members' wages, illegal tip collection, illegal uniform requirements without providing

uniforms, and illegal failure to provide rest and meal periods." (Complaint, ¶10)

As such, as class members, the *Salazar* Objectors have an interest in, and standing to comment on, the proposed settlement of the *Trauth* action.

## II. SUMMARY OF OBJECTIONS

### A. In Light of the Fact That the Settling Parties Have Allocated 70 Percent of the Net Settlement Amount to Dancers Who Worked in California Clubs, the Settlement Amount Is Too Low Based on the Strength of the *Trauth* Plaintiffs' Case under California Law.

A settlement should be approved if it is fundamentally fair, adequate and reasonable. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir.1993). In order to determine whether a proposed settlement is fair, adequate and reasonable, a court may consider some or all of the following factors: "(1) strength of plaintiffs' case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir.1982).

The *Trauth* Plaintiffs have allocated 70% of the net settlement amount to class members in California because they "believe that class members in California have the strongest claims against Defendants because California courts have "found dancers to be misclassified as independent contractors, determined that consultants and owners of adult entertainment clubs are joint employers of the dancers working there, and (3) certified classes consisting of these workers." Minute Order at page 39; Preliminary Approval Motion at 23-24.

Yet, the maximum settlement amount proposed to the members of Pool 1 ($5,211,000) is only 6.89 % of the very loosely estimated maximum recovery of

$75,600,000 (70 % of the maximum recovery of $108,000,000 for the entire nationwide class).

If the *Trauth* Plaintiffs' case is actually as strong as indicated under California law, there is no reason that the case should be compromised so severely. The leading California case on the issue of whether a service provider is an independent contractor or an employee, *Borello & Sons v. Department of Industrial Relations*, 48 Cal.3d 341 (1989), construes the definition of employer broadly, and holds that the absence of control over work details is of no consequence "where the principal retains pervasive control over the operation as a whole, the worker's duties are an integral part of the operation, the nature of the work makes detailed control unnecessary, and adherence to statutory purpose favors a finding" that the person providing the service is an employee of the principal and not an independent contractor. *See Yellow Cab Cooperative, Inc. v. Workers Compensation Appeals Bd.*, 226 Cal.App.3d 1288, 1295 (1991), citing *Borello, supra*, 48 Cal.3d at 355-358. *See also*, California Department of Industrial Relations, Division of Labor Standards Enforcement, Opinion Letter re Determining Whether a Topless Bar's Dancers Are Independent Contractors or Employees, dated October 10, 1997 (determining that dancers are employees entitled to recover the unpaid balance for the full amount of minimum wage and overtime compensation not paid, interest, attorneys' fees and costs of suit; also stating that "no employer can legally charge its employees a fee in order to work for the employer, or a 'license fee' or 'rental fee' for use of the employer's premises in carrying out the work that the employee was hired to perform."); California, Department of Industrial Relations, Division of Labor Standards Enforcement, Opinion Letter, June 22, 2001 (interpreting California Labor Code §350 (e) and the Industrial Welfare Commission Order No. 5 and 10, and providing, e.g., that "a patron at a striptease theater gives $30 to a dancer, consisting of $20 for the dance fee (which may have been pre-set by the employer)

plus $10 as an additional amount for the dancers' services. Under AB 2509, the dancer is entitled to keep the entire $30.") (Labor Opinions attached as Exhibit 6)

The various quasi-legislative orders of the Industrial Welfare Commission ("IWC"), which oversees the payment of wages, hours of work and working conditions of employees in every industry and occupation in California, expressly defines an "employer" as "any person as defined in Section 18 of the Labor Code who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours or working conditions of any person." In other words, all that is needed to come within the definition of "employer" is the exercise of control over wages, hours or working conditions. *See Buereerong v. Uvawas*, 922 F.Supp. 1450 (C.D.Cal.1996) (holding that under California wage and hour law, the term "employer" should be broadly construed so as to permit corporate officers who exercise sufficient control over employees to be subject to liability for these employees' unpaid wages); see also California, Department of Industrial Relations, Division of Labor Standards Enforcement, Opinion Letter, June 18, 2002. (Exhibit 6)

The *Trauth* Plaintiffs cite to a decision of the U.S. District Court for the Central District of California, *In re Heritage Bond Litigation*, 2005 WL 1594403 (C.D.Cal.), in purported support of their Motion for Preliminary Approval. However, in *Heritage Bond*, a settlement fund totaling $27,783,000 was established, an amount which comprised approximately 36% of the class' net loss of $78 million. Further, in *Heritage Bond,* a large amount of discovery had been conducted (1.1 million documents reviewed, 34 depositions taken, 21 deposition transcripts reviewed from depositions taken by the SEC, expert reports prepared). *See Nat'l Rural*, 221 F.R.D. 527, quoting Manual for Complex Litigation (Third) §30.42 (1995 ("The extent of discovery may be relevant in determining the adequacy of the parties' knowledge of the case.")

In the instant matter, the case was litigated for less than a year before the

NOTICE OF OBJECTION TO CLASS ACTION SETTLEMENT AND NOTICE OF INTENTION TO APPEAR AT HEARING
-7-

parties settled their dispute and filed their first motion for preliminary approval. Plaintiffs propounded a total of 14 interrogatories, 43 document requests and took one deposition. In other words, they barely scratched the surface, and it shows.

### B. The Trauth Plaintiffs Have Failed to Conduct Sufficient Discovery to Adequately Estimate The Size Of The Settlement Class.

The *Trauth* settlement is based entirely on an undeveloped record and guesswork as to the size of the class. The class size influences every aspect of the potential damages which could be recovered by the *Trauth* Plaintiffs.

The *Salazar* Objectors submit that the discovery conducted by the *Trauth* Plaintiffs is woefully inadequate for the purpose of determining the size of the class. For example, in the sole deposition that was taken by the *Trauth* Plaintiffs, that of Kathy Vercher, Defendants' President, a "guesstimate" was made that the number of dancers in the Spearmint Rhino clubs was somewhere between 11,000 to 12,000, after initially estimating that the number may have been as high as 14,497, based on the number of lease contracts that Defendants allegedly had in their possession. (Motion at 30, fn. 26). If we review the excerpts of the deposition of Ms. Vercher which have been provided in support of the Motion for Preliminary Approval, we see how arbitrary the testimony really is. When asked whether she had "any sense of how many dancers would have worked at multiple clubs and, therefore, be counted twice," Ms. Vercher says she has no idea. (Depo Transcript at 90:2-17: "A: How many? No"; Q: "Okay. Is there any way to tell that?" A: "No." [Document 161-3]). Ultimately, she provides her opinion that the total number of class members is between 11,000 and 12,000 ("I'd be comfortable with 11- to 12,000"). (Transcript at 91:1, Document 161-3)

**By the snap of a finger, then, the *Trauth* Plaintiffs allowed the overall class size to be depleted by 25% without any corroboration or additional**

1 **leg work – which certainly would not have been difficult.** A law clerk could have gone through the 14,497 lease contracts and removed any duplicates for those dancers who worked at more than one club. But no one even bothered. Further, it does not appear that anyone bothered to take into consideration the possibility that not all dancers executed a lease contract. In addition, no allowance was made for the possibility that some contracts were lost or destroyed. Clearly, more definitive discovery on such an important issue would seem to have been in order. This is especially true because Ms. Vercher has a vested (and biased) interest in seeing that the class size is as small as possible. Based on the limited information the *Salazar* Objectors have been able to obtain (due to the settling parties' refusal to provide discovery to date), the *Salazar* Objectors are unable to determine whether any other discovery pertaining to class size was conducted.

### III. CONCLUSION AND NOTICE OF INTENTION TO APPEAR AT FINAL APPROVAL HEARING

Based on the foregoing reasons and authorities, the Salazar Objectors submit that the current settlement is inadequate and should not be approved.

The Salazar Objectors intend to appear at the Final Approval hearing through their counsel of record. The Salazar Objectors estimate that they will require approximately 10 to 15 minutes to present their position, that is, unless the settling parties provide responsive discovery before the date of the hearing which will require additional consideration and argument.

COHON & POLLAK, LLP
MANUWAL & MANUWAL
DATED: May 6, 2011           MURRAY M. SINCLAIR & ASSOCIATES

By: /S/
_____
MURRAY M. SINCLAIR
Attorneys for Objectors Stacy Salazar
and Erica Sullivan

## PROOF OF SERVICE

COUNTY OF LOS ANGELES, STATE OF CALIFORNIA

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action, my business address is: 12100 Wilshire Boulevard., Suite 1275, Los Angeles, California 90025.

On May 6, 2011 I served the foregoing document, described as **NOTICE OF OBJECTION TO CLASS ACTION SETTLEMENT AND NOTICE OF INTENTION TO APPEAR TO APPEAR AT FINAL APPROVAL HEARING** on the interested parties in this action by placing a true copy thereof, enclosed in a sealed envelope addressed as follows:

PLEASE SEE ATTACHED SERVICE LIST

[x] BY ELECTRONIC SERVICE: I am causing the document to be served on the Filing Users through the Court's Electronic Filing System.

[x] BY MAIL I caused such envelope to be deposited in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid. I am readily familiar with the firm's practice of collection and processing correspondence for mailing with the United States Postal Service on that same day in the ordinary course of business. I am aware that on motion of a party served, service is presumed invalid if the postal cancellation date or postal meter date on the envelope is more than one day after the date of deposit for mailing contained in this affidavit.

[ ] by facsimile transmission to the facsimile numbers set forth below:

Attached hereto is a certificate of transmission which contains a notation of the date and place of transmission and the facsimile telephone numbers to which the document was transmitted.

[ ]    BY FEDERAL EXPRESS: I caused such envelope to be deposited in a box or other facility regularly maintained by the express service carrier in Los Angeles, California, with delivery fees paid and provided.

I am readily familiar with this firm's practice of collection and processing for overnight delivery by express service carriers. Under that practice, mail is deposited with the express service carrier on the same day in the ordinary course of business.

EXECUTED ON May 6, 2011, at Los Angeles, California.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

/s/

_____   _____
Murray M. Sinclair                                Signature

## SERVICE LIST
*Tracy Dawn Trauth, et al. v. Oxnard Hospitality Services, LP, et al.*
United States District Court for the Central District of California
Case No. EDCV09-1316 VAP (DTBx)

| | |
|---|---|
| Hart L. Robinovitch, Esq.<br>Timothy J. Becker, Esq.<br>Zimmerman Reed PLLP<br>14646 North Kierland Boulevard<br>Suite 145<br>Scottsdale, AZ 85254 | CLASS COUNSEL |
| Christopher P. Ridout, Esq.<br>Devon M. Lyon, Esq.<br>Ridout & Lyon<br>555 E. Ocean Blvd., Ste 500<br>Long Beach, CA 90802 | CLASS COUNSEL |
| Caleb LH Marker, Esq.<br>Consumer Law Center, PLLC<br>601 Abbott Road, Suite 100<br>East Lansing MI 48823 | CLASS COUNSEL |
| Stephen M. Harris, Esq.<br>Knapp, Peterson & Clarke<br>550 North Brand Boulevard,<br>Fifteenth Floor<br>Glendale, California 91203-1904 | CLASS COUNSEL |
| Robert L. Starr, Esq.<br>Law Offices of Robert L. Starr<br>23277 Ventura Boulevard<br>Woodland Hills, CA 91364 | CLASS COUNSEL |
| Peter E. Garrell, Esq.<br>Kim Zeldin, Esq.<br>Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor LLP<br>1100 Glendon Avenue, 14th Floor<br>Los Angeles, California 90024-3503 | DEFENSE COUNSEL |
| Trauth, et al. v. Oxnard, et al. Settlement Administrator Gilardi & Co. LLC<br>P.O. Box 8060<br>San Rafael CA 94912 | SETTLEMENT ADMINISTRATOR |