1 THE LAW OFFICE OF
GARRY M. TETALMAN AND
2 LAUREN JOHN UDDEN
Garry M. Tetalman (#204189)
3 Lauren J. Udden (#083118)
15 W. Carrillo Street, Suite 101
4 Santa Barbara, CA 93101
Telephone: (805) 879-7518
5 Facsimile: (805) 560-0506

6 Attorneys for Objectors
Mikayla Hernandez and
7 Walnetta Jones

8

9 UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA
10

11 TRACY DAWN TRAUTH,                        )  Case No.: EDCV09-1316 VAP (DTBx)
   CHRISTEEN RIVERA, and                    )
12 JENNIFER BLAIR, individually             )  NOTICE OF OBJECTION TO CLASS
   and on behalf of all others similarly    )  ACTION SETTLEMENT AND
13 situated                                  )  NOTICE OF INTENTION TO APPEAR
                                            )  AT FINAL APPROVAL HEARING
14                 Plaintiffs,              )
                                            )  Date:      June 18, 2012
15        vs.                               )  Time:      2:00 p.m.
                                            )  CR:        2
16 SPEARMINT RHINO                          )  Judge: Honorable Virginia A. Phillips
   COMPANIES WORLDWIDE,                     )
17 INC., SPEARMINT RHINO                    )
   CONSULTING WORLDWIDE,                    )
18 INC. AND OXNARD                          )
   HOSPITALITY SERVICES, LP,               )
19                                          )
                                            )
20                 Defendants.              )
                                            )
21 _____            )

22

23

24

25

26

27

28

                                         1

**TO THE COURT, AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Pursuant to Rule 23(e)(5) of the Federal Rules of Civil Procedure and the Court's order of March 16, 2012, and in accordance with the requirements of the Settlement Agreement between the  parties to the settlement, Objectors Mikayla Hernandez and Walnetta Jones (hereinafter the "Hernandez Plaintiffs" or the "Hernandez Objectors"), again reallage and reaffirm and incorporate herein by reference their objections that were initially raised in their papers filed with this Court on or about August 1, 2011 and again re-filed on March 5, 2012, and argue that the same objections apply to this proposed settlement that is currently before the Court.  Moreover, the Hernandez Objectors further notify the Court and the settling parties of their intention to appear at the Final Approval hearing in this matter, through their counsel, on June 18, 2012.

The Hernandez Objectors, who are class representatives in a state court class action lawsuit filed in the Santa Barbara Superior Court, Case No. 1377628 (A true and correct copy of the Complaint filed on April 8, 2011 is attached hereto as Efuckxhibit "1," and a true and correct copy of the First Amended Complaint filed on May 31, 2011 is attached hereto as Exhibit "2") against the same defendants Spearmint Rhino Consulting Worldwide, Inc. et al, herein, submit the following notice of their objections to the class action settlement currently before the Court.

I.     **INTRODUCTION - STANDING OF OBJECTORS**

The class action lawsuit filed by the Hernandez Objectors contain similar claims, allegations and causes of action against many of the same defendants as in the *Trauth* case pending in this court. **HOWEVER,** the Hernandez class action lawsuit includes two causes of action that are not alleged in this case, and it is the existence of those two distinct and separate claims that form the basis for the objections to this settlement.  The Hernandez class action lawsuit includes claims unpaid overtime wages pursuant to California Labor Code Section 1194 and California Wage Order 5-2001(See Exhibit "2," *Hernandez* First Amended Complaint, Second Claim For Relief, Page 7) and Unpaid Meal and Rest Breaks

2

1    pursuant to California Wage Order 5-2001 and California Labor Code Section 226.7(See

2    *Hernandez* First Amended Complaint, Third  Claim For Relief, Page 11).   The claims are

3    brought solely under California state law and on behalf of California employees.   There are

4    no claims in the Hernandez lawsuit under the FLSA or any other federal statute, rule or

5    regulation, and there are no claims on behalf of individuals who worked in states other than

6    California.

7          Claims for unpaid overtime and unpaid meal and rest breaks have never been alleged

8    in the   *Trauth* case, including the Fifth Amended Complaint, the presently operative

9    pleading. Despite the fact that unpaid overtime and meal and rest break claims have never

10   been part of the *Trauth* case and were never litigated in that action, the Settlement

11   Agreement includes and requires a full release of all overtime and meal and rest break

12   claims on behalf of all members of the class. Moreover, the Settlement Agreement does not

13   provide any compensation to the class members for overtime or for missed meal and rest

14   breaks. There is absolutely no economic value ($0.00) assigned in the proposed settlement

15   to offset these injuries.  It would therefore be patently unfair to allow the Settlement

16   Agreement to be approved when it releases and  claims on behalf of the class which were

17   never litigated and for which no compensation is being paid.  In short, if this settlement as

18   presently structured as approved, Defendants will have paid absolutely ***no compensation***

19   ***for injury caused*** by these unfair and illegal practices and there are absolutely no safeguards

20   in place to prevent this illegal activity from continuing in the future with impunity.

21   Moreover, because of the apparently breadth of the proposed settlement in this *Trauth* case,

22   this Action will likely destroy Hernandez Objector's right to pursue its class action, without

23   conferring any benefit whatsoever on the Hernandez Objectors or those they represent

24   resulting from the specific facts alleged in the *Hernandez* suit still currently pending.  As

25   discussed below, this result is particularly unfair in light of the fact that properly evaluated,

26   the alleged unpaid overtime and meal/rest breaks causes exponentially more economic harm

27   than that specifically called out and assessed in the proposed settlement pending before this

28   Court.

It is on that basis that the Hernandez Objectors **DO OBJECT** to the proposed class action settlement to the extent that it seeks to include and release claims for overtime compensation and unpaid meal and rest breaks on behalf of California employees that were never addressed in any of the current pleadings or settlement papers that are currently before this Court.

## II.   FACTUAL BACKGROUND

The *Hernandez* lawsuit alleges the following claims:

1.    Unpaid Minimum Wages pursuant to California Labor Code Section 1194 and California Wage Order 5-2001;

2.    Unpaid Overtime Wages pursuant to California Labor Code Section 1194 and California Wage Order 5-2001;

3.    Unpaid Meal and Rest Breaks pursuant to California Wage Order 5-2001 and California Labor Code Section 226.7;

4.    Violation of Labor Code Section 226(a); and

5.    Violation of California Business and Professions Code Sections 17000 et seq and 17200 et seq.

Neither the class representatives nor their counsel had any awareness of the existence of the *Trauth* action nor any other claims against the Spearmint Rhino companies for wage and hour violations at the time the Hernandez lawsuit was filed.

Class representative Mikayla Hernandez worked as a dancer at the Santa Maria, California Spearmint Rhino club from February 2008 to October 2008. Class representative Walnetta Jones worked as a dander at the Santa Maria, California Spearmint Rhino club from July 2007 to February 2009.

Upon being offered the position of dancer, class representatives Hernandez and Jones were asked to sign a document entitled "dancer's contract." It was mandatory that all employees, upon being offered the position of "dancer" were to sign the dancer's contract. This contract, which was a form contract specifically drafted by Defendants, stated the rules and requirements for individuals who were to work as "dancers" for Defendants. All

4

dancers were not allowed to negotiate the terms of the dancer's contract and it was given to them on a strict "take it or leave it" basis. This contract listed all of the requirements Defendant insisted upon individuals needed to follow if they were going be allowed to dance at Defendants' clubs. Specifically, this contract stated that a dancer was an "independent contractor" and not an employee. Many, if not all, of Defendants' clubs throughout California have a sign in them that states "our dances are not employees but independent contractors." This was specifically done so Defendants could avoid paying employee payroll taxes, overtime and wage requirements, etc. The dancer's contract also required dancers to pay $15.00 to the club for each shift they were working ($30.00 if they were working a double shift that night.) The day shift was from 2:30 p.m., until 8:00 p.m., and the night shift was from 8:00 p.m., until the club closed between 2:30 and 5:00 a.m. A topless dance cost $20.00 and the dancer would keep 60% or $12.00 and the club would receive 40% or $8.00. A fully nude dance cost $40.00 and the dancer would keep 60% or $24.00 and the club 40% or $16.00. Further, as part of the employment agreement forced upon them, dancers had to pay out of their tips the disc jockey approximately $2.00 per dance, bouncers received $1.00 per dance, and the manager received $1.00 per dance. These payouts were absolutely mandatory. On top of that, it was strongly suggested that the doorman also receive part of the dancer's tips that evening or else he would not recommend said dancer and had the ability to steer customers away from her. It was both the bouncer's and/or the manager's job to record the number of dances a dancer performed. It was a regular occurrence for managers and bouncers to state that a dancer performed more dances than were actually performed so that both the club and they personally would benefit. Further, it was also a regular occurrence if the dancer received a larger tip from a patron to be required to give a larger payout to both the bouncer and the manager on duty. Failure to do so would result in termination.

Despite the fact that the dancer's contract called for these dancers to be "Independent Contractors," in fact there was nothing independent about these employees and it was clear that these dancers did not meet the specific requirements called for under

1  valid . Each dancer had a specific scheduled shift in which she was to work that was

2  decided by the manager of the club she worked for. Moreover, she could not leave or stop

3  performing until after that shift was over. Further, there were rules that if the dancer was

4  ever late or missed a shift, they would have to make up that shift and often work on days

5  that they were not scheduled or perform double shifts. Moreover, it was required by

6  Defendants that dancers report to the club at least 30 minutes prior to their shift starting and

7  required dancers to stay an hour or more after their shifts had ended. Further, each manager

8  at each of Defendant's clubs set the schedules. Again, if these dancers did not work the

9  shifts that they were scheduled, they would be forced to work make up shifts, often resulting

10  in working double shifts or risk being terminated. It was a regular occurrence for Plaintiff

11  to be required to work more than 10 (sometimes as many as 14 or more) hours in a day

12  without getting paid any wages.

13  Furthermore, these dancers were required either to be on the club's floor soliciting

14  customers for private dances or dancing on the stage. As such, due to the requirements

15  placed on the dancers by Defendants, the ability to take either a proper meal or rest break

16  pursuant to California law would be significantly reduced or eliminated. Thus, it became

17  the norm for the dancers to be forced to work through the time wherein it would have been

18  possible to have taken either a proper meal and/or rest break.

19  The Hernandez lawsuit is brought on behalf of a class consisting of all current and

20  former employees who worked for Defendants as dancers in California at any time from

21  April 2007 through the present time.

22  Objectors Mikayla Hernandez and Walentta Jones, as class members, and as class

23  representatives, clearly have an interest in, and standing to object to and comment upon, the

24  proposed settlement in the *Trauth* action.

25  **III.  THE PROPOSED SETTLEMENT PROVIDES NO VALUE FOR OBJECTOR'S CLAIM AND FAILS THE TEST OF FAIRNESS, ADEQUACY**

26  **AND REASONABLENESS**

27  The burden is on the settling parties to demonstrate that the proposed *Trauth*

28  settlement is fair, adequate and reasonable for all. *Wershba v. Apple Computer Co.*, (2001)

6

1   91 Cal.App.4th 224. Although the litmus test for fairness, adequacy, and reasonableness is

2   one influenced by a number of factors[1], one guiding principle is that the Court – acting in

3   its role as fiduciary to the absent class members – must protect the rights of absent class

4   members who will be bound by the settlement to ensure that their claims are not

5   compromised without value or adequate consideration. *Id.* at 245; *see also Dunk v. Ford*

6   *Motor Company* (1996) 48 Cal.App.4th 1794, 1801 ("The purpose of the requirements is

7   'the protection of those class members, including the named plaintiffs, whose rights may not

8   have been given due regard by the negotiating parties.'") (quoting *Officers for Justice v.*

9   *Civil Service Com'n, etc.* (9th Cir. 1982) 688 F.2d 615.)

10         As guardian of the rights of absent class members, the Court must independently and

11  objectively analyze the settlement from the standpoint of the best interests of the class

12  members whose claims will be extinguished by the settlement, and not merely rubber stamp

13  the proffered settlement. *Dunk, supra*, 48 Cal.App.4th at 1802. The Court has a non-

14  delegable duty to give careful scrutiny to the terms of the proposed settlement and to make

15  sure class counsel are acting as faithful fiduciaries to absent class members. *See, e.g..,*

16  *Shelton v. Pargo, Inc.* (4th Cir. 1978) 582 F.2d 1298, 1306 ("[T]he District Court should

17  have both the power and the duty, in view of its supervisory power over and its special

18  responsibility in actions brought as class actions . . . to see that the representative party does

19  nothing, whether by way of settlement . . . or otherwise, in derogation of the fiduciary duty

20

21         [1]Although not an exhaustive list, the factors to be considered by a Court in ruling on the

22  substantive fairness of a proposed class action settlement include: "the strength of the plaintiffs'
    case, the risk, expense, complexity and likely duration of further litigation, the risk of

23  maintaining class action status, the amount offered in settlement, the extent of discovery

24  completed and the stage of the proceedings, the experience and views of counsel, the presence of
    a governmental participant, and the reaction of the class members to the proposed settlement."

25  *Wershba v. Apple Computer Co., supra*, 91 Cal.App.4th at 227. The importance of each of these

26  factors in evaluating overall fairness "should be tailored to each case." *Dunk v. Ford Motor*
    *Corp.*, (1996) 48 Cal.App.4th 1794, 1801. As discussed, below, the application of the most

27  relevant of these factors – the strength of the plaintiffs' case, the amount offered in settlement,
    and the extent of the discovery completed – militates strongly in favor of disproving settlement

28  on the limited grounds raised by the Hernandez Objectors.

he assumed."); *Petruzzi's Inc. V. Darling-Delaware Co.,* (1995) 880 F.Supp 292, 296 ("[T]he court must consider 'the rights and interest of *each* class member'") (citations omitted, emphasis on original)[2]. Special care is warranted where, as in this case, class notice, class certification, and class settlement occur nearly simultaneously, and the class representatives and counsel are not tested against the crucible of class certification before negotiating a settlement. As many Courts have observed, such situations are rife with the potential for abuse, requiring special scrutiny to guard against the momentum of settlement overtaking substantive concerns over the fairness and adequacy of the proposed settlement. *See, e.g., 7-Eleven Owners for Fair Franchising* (2000) 85 Cal.App.4th 1135, 1166 ("Courts and commentators have pointed out that 'the use of settlement classes . . . risk transforming the courts into mediation forums,' with a 'natural hydraulic pressure' leading to settlement.") (quoting *Pick-Up Truck Litigation* (3rd Cir. 1995) 55 F.3d 768, 790.

It is the judge's duty in a class action settlement situation to estimate the litigation value of the claims of the class and determine whether the settlement is fair, reasonable and adequate. *Mirafasihi v. Fleet Mortgage Co.* (7th Cir. 2004) 356 F.3d 781, 786. (Court has a duty "to estimate the litigation value of the claims of the class and determine whether the settlement is a reasonable approximation of that value.") (*citing Reynolds v. Beneficial National Bank* (7th Cir. 2002) 288 F.3d 277, 279-83.) "The amount of the settlement or its value is perhaps the most significant factor of all in determining fairness, reasonableness and adequacy." *Livingston v. Toyota Motor Sales USA* (N.D. Cal. 1995) 1995 U.S. Dist. LEXIS 21757 at 31.

With respect to the limited issue of the overtime and meal/rest break premiums, the proposed settlement presents the quintessential example of substantive fairness sacrificed at the alter of settlement expediency. The position of the Hernandez Objectors is fundamental: it is not fair or legally appropriate for a court to approve a Settlement which

---

[2]In the absence of controlling California precedent, Courts may look to federal law and the interpretation of Rule 23 to fill the gaps. *See, e.g., Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 821; *Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695.

NOTICE OF REFILING OBJECTION TO CLASS ACTION SETTLEMENT AND NOTICE OF INTENTION TO APPEAR AT HEARING

1    releases claims on behalf of unnamed class members that have never been part of the lawsuit

2    and for which no compensation is being paid. None of the Complaints in the *Trauth* action,

3    including the presently operative Fifth Amended Complaint include claims for unpaid

4    overtime or for unpaid meal and rest breaks. The release in the Settlement Agreement,

5    however, releases all such claims, while not providing for any compensation for any such

6    claims. It is therefore patently obvious that overtime and meal and rest break claims are not

7    part of this lawsuit, have not been pursued or litigated in the *Trauth* case, and are not being

8    compensated for. In the case of the Hernandez Objectors, this blatant disregard for the

9    overtime and meal/rest break claims, all while attempting to eliminate those claims in

10   exchange for zero compensation shows specifically how this proposed settlement as a whole

11   is dramatically undervalued. The proposed settlement not only fails to properly evaluate and

12   compensate the economic damage caused by Spearmint Rhino's illegal employment

13   practices that are prevalent throughout California but, as currently structured, precludes any

14   of the victims of this illegality from obtaining compensation that they so rightly deserve.

15   At a minimum, the Hernandez Objectors are entitled to discovery on the issue as to how the

16   zero value for both the overtime and meal/rest break claims was calculated, the precise

17   methodology for sampling and review of employment records, and how individual mean

18   damage assessments were quantified, all of which are necessary considerations in evaluating

19   the fairness of this settlement vis a vis the zero payment for the overtime and meal and rest

20   break claims for the California putative class members.

21   **III.   CONCLUSION AND NOTICE OF INTENTION TO APPEAR AT FINAL
     APPROVAL HEARING**

22

23        Based on the foregoing, the Hernandez Objectors submit that the current settlement

24   is improper to the extent that it seeks to release claims for overtime compensation and

25   unpaid meal and rest breaks. The proposed settlement in this action is fundamentally flawed

26   because it forces members of the California class to give up valid and valuable claims

27   without providing any meaningful compensation for those claims. As explained above, the

28   myriad of problems with the proposed settlement are of such magnitude that they undermine

the fundamental fairness and adequacy of the proposed settlement. For the reasons stated herein, the Court should decline to grant final approval to the proposed settlement or, in the alternative, carve out the "overtime and meal/rest break claims" from the class settlement and allow the Hernandez Objectors to redress this wrong by way of its already pending class action filed in the Superior Court of Santa Barbara.

The Hernandez Objectors intend to appear at the Final Approval hearing through their counsel of record. The Hernandez Objectors estimate that they will require approximately ten minutes to present their position.

THE LAW OFFICE OF GARRY M. TETALMAN AND LAUREN JOHN UDDEN

DATED: May 14, 2012          By: _____

Garry M. Tetalman, Esq.
Lauren John Udden, Esq.
Attorneys for Objectors Mikayla Hernandez and Walnetta Jones

NOTICE OF REFILING OBJECTION TO CLASS ACTION SETTLEMENT AND NOTICE OF INTENTION TO APPEAR AT HEARING

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF SANTA BARBARA:

I am employed in the County of Santa Barbara, State of California. I am over the age of eighteen (18) years and not a party to the within action; my business address is 15 W. Carrillo Street, Suite 101, Santa Barbara, California, 93101.

On May 14, 2012, I served the foregoing document described as:

**NOTICE OF OBJECTION TO CLASS ACTION SETTLEMENT AND NOTICE TO APPEAR AT FINAL APPROVAL HEARING**

on the interested parties in this action

☐   by placing the true copies thereof in sealed envelopes addressed as stated on the attached mailing list.

☒   by placing ☐ the original ☒ a true copy thereof enclosed in a sealed envelope addressed as follows:

**PLEASE SEE ATTACHED SERVICE LIST**

☐   by sending via facsimile transmission as follows:

☒   BY ELECTRONIC SERVICE: I am causing the document to be served on the Filing Users through the Court's Electronic Filing System

☒   BY MAIL   ☐   BY FEDERAL EXPRESS   ☐   B Y   H A N D DELIVERY

☒   I deposited such envelope in the mail at Santa Barbara, State of California. The envelope was mailed with postage fully prepaid.

☒   As follows: I am "readily familiar" with the firm's practice for collection and processing of correspondence for mailing. Under that practice it would be deposited with United States Postal Service on that same day with postage thereon fully prepaid at Santa Barbara, California, in the ordinary course of business. I am aware that service made pursuant to Code of Civil Procedure § 1013a(3) upon motion of a party served shall be presumed invalid if the postal cancellation date or postage meter date on the envelope is more than one day after the date of deposit for mailing contained in the affidavit.

I certify and declare under penalty of perjury under the laws of the State of CALIFORNIA that the foregoing is true and correct.

Executed May 14, 2012, at Santa Barbara, California.

_____          _____
Garry M. Tetalman
[PRINT NAME]                                          [SIGNATURE]

11

NOTICE OF REFILING OBJECTION TO CLASS ACTION SETTLEMENT AND NOTICE OF INTENTION TO APPEAR AT HEARING

1

2

3

## SERVICE LIST

*Tracy Dawn Trauth, et al. v. Oxnard Hospitality Services, LP, et al.*
United States District Court for the Cental District of California
Case No. EDCV09-1316 VAP (DTBx)

4

5

6

7

Hart L. Robinovitch, Esq.
Timothy J. Becker, Esq.
Zimmerman Reed LLP
14646 North Kierland Blvd.
Suite 145
Scottsdale, AZ 85254

CLASS COUNSEL

8

9

10

Christopher P. Ridout, Esq.
Devon M. Lyon, Esq.
Ridout & Lyon
555 E. Ocean Blvd., Suite 500
Long Beach, CA 90802

CLASS COUNSEL

11

12

Caleb LH Marker, Esq.
Consumer Law Center, LLC
601 Abbott Road, Suite 100
East Lancing, MI 48823

CLASS COUNSEL

13

14

15

Stephen M. Harris, Esq.
Knapp, Peterson & Clarke
550 North Brand Blvd., 15th Floor
Glendale, CA 91203-1904

CLASS COUNSEL

16

17

Robert L. Starr, Esq.
Law Offices of Robert L. Starr
23277 Ventura Blvd.
Woodland Hills, CA 91364

CLASS COUNSEL

18

19

20

21

Peter E. Garrell, Esq.
Kim Zeldin, Esq.
Liner, Grode, Stein, Yankelevitz, Sunshine
Regenstreif & Taylor LLP
1100 Glendon Ave, 14th Floor
Los Angeles, CA 90024-3503

DEFENSE COUNSEL

22

23

Jeffrey M. Cohon, Esq.
Cohon & Pollak, LLP
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA90067

COUNSEL FOR
OBJECTOR

24

25

26

Robert I. Manuwal, Esq.
Manuwal & Manuwal
The Trillium - Suite 590
6300 Canoga Avenue
Woodland Hills, CA 91367-2560

COUNSEL FOR
OBJECTOR

27

28

NOTICE OF REFILING OBJECTION TO CLASS ACTION SETTLEMENT AND NOTICE OF INTENTION TO APPEAR AT HEARING

| | |
|---|---|
| Murray M. Sinclair, Esq.<br>Murray M. Sinclair & Associates<br>12100 Wilshire Blvd., Suite 1275<br>Los Angeles, CA 90025 | COUNSEL FOR<br>OBJECTOR |
| Trauth, et al. v. Oxnard, et al. Settlement<br>Administrator Gilardi & Co. LLC<br>P.O. Box 8060<br>San Rafael, CA 94912 | SETTLEMENT<br>ADMINISTRATOR |

NOTICE OF REFILING OBJECTION TO CLASS ACTION SETTLEMENT AND NOTICE OF INTENTION TO APPEAR AT HEARING