# EXHIBIT 1

*Tracy Dawn Trauth, et al. ("Plaintiffs") v.*
*Oxnard Hospitality Services, LP, et al. ("Defendants")*
United States District Court for the Central District of California
Case No. EDCV09-1316 VAP (DTBx)

### REQUEST FOR EXCLUSION

YOU MUST COMPLETE, SIGN AND MAIL THIS DOCUMENT BY FIRST CLASS MAIL OR
EQUIVALENT, POSTAGE PAID POSTMARKED ON OR BEFORE July 5, 2011 ADDRESSED
AS FOLLOWS, IN ORDER TO BE EXCLUDED FROM THE SETTLEMENT

*MAIL TO:*

Trauth, et al. v. Oxnard, et al. Settlement Administrator
Gilardi & Co. LLC
P.O. Box 8060
San Rafael, CA 94912
Phone:  (866) 243-1452

**Please exclude me from the proposed class in the Tracy Dawn Trauth et al. v. Oxnard Hospitality
Services, LP et al litigation.** IT IS MY DECISION NOT TO PARTICIPATE IN THE CLASS
ACTION SETTLEMENT REFERRED TO IN THE NOTICE, AND TO BE EXCLUDED FROM THE
CLASS OF PLAINTIFFS IN THIS CLASS ACTION.

By signing below, I understand that, by excluding myself from the Settlement, I am not entitled to
receive any payment from the Settlement.

Date: 07-07-2011

_Walnetta Jones_
(Signature)

_Walnetta Jones_
Type or Print Full Legal Name

REDACTED
Street Address / Apt. #

REDACTED

REDACTED
(Telephone Number)

REDACTED
City, State, Zip

0038613/028/ 49105v03

-1-

Please list below the names of the club(s) at which you performed, the date(s) you performed as a dancer at the club(s), your stage name, and your mailing address and telephone number at the time you performed at that club:

| Name of Club | Date(s) Performed | Stage Name | Your Address and Telephone Number at the Time You Performed |
|---|---|---|---|
| Spearmint Rhino Gentlemen Club | | Jazmine | REDACTED |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

0038613/028/ 49105v03

-2-

# EXHIBIT 2

1   Robert L. Starr, Esq. (State Bar No. 183052)
    THE LAW OFFICES OF ROBERT L. STARR
2   23277 Ventura Boulevard
    Woodland Hills, California 91364-1002
3   Telephone: (818) 225-9040
    Facsimile: (818) 225-9042
4
    Stephen M. Harris, Esq. (State Bar No. 110626)
5   smh@kpclegal.com
    KNAPP, PETERSEN & CLARKE
6   550 North Brand Boulevard, Suite 1500
    Glendale, California 91203-1922
7   Telephone: (818) 547-5000
    Facsimile: (818) 547-5329
8
    Attorneys for Plaintiffs VICTORIA OMLAR and
9   JASMINE WRIGHT, individually, and
    on behalf of A Class of similarly situated individuals.

*CONFORMED COPY*
*OF ORIGINAL FILED*
*Los Angeles Superior Court*

**JUL 17 2009**

John A. Clarke, Executive Officer/Clerk

BY MARY GARCIA, Deputy

10
11              SUPERIOR COURT OF THE STATE OF CALIFORNIA

                       COUNTY OF LOS ANGELES
12
13   VICTORIA OMLAR and JASMINE      )   CASE NO.   BC 418020
     WRIGHT, individually, and on behalf of )
     Class of similarly situated individuals, )
14                                   )   PLAINTIFFS' CLASS ACTION
         Plaintiffs,                 )   COMPLAINT FOR FAILURE TO:
15                                   )
     v.                              )   PAY MINIMUM WAGES AND
16                                   )   OVERTIME COMPENSATION;
                                     )   UNLAWFUL DEDUCTION FROM
17   THE SPEARMINT RHINO COMPANIES   )   PAYCHECK; UNLAWFUL TIP
     WORLDWIDE, INC. a Nevada corporation; )   COLLECTION; FAILURE TO
18   SPEARMINT RHINO COMPANIES, LLC, a )   PROVIDE MEAL & REST PERIODS
     California limited liability company; )   OR ITEMIZED STATEMENTS;
19   SPEARMINT RHINO GENTLEMENS      )   FAILURE TO COMPENSATE FOR
     CLUB, a business organization form )   OR PROVIDE UNIFORMS;
20   unknown; SPEARMINT RHINO        )   WAITING PENALTIES;
     CONSULTING WORLDWIDE, INC., a   )   REIMBURSEMENT FOR TIPS, TIP-
21   Delaware corporation; FARMDALE  )   OUT FEES AND OTHER WAGES
     HOSPITALITY SERVICES, INC., a   )   ACCRUED PURSUANT TO LABOR
22   California corporation; CITY OF )   CODE SECTION 203, et seq.
     INDUSTRY HOSPITALITY VENTURE,   )
23   INC.; L.C.M., LLC dba SPEARMINT )   (CAL. BUS. & PROF. CODE § 17200
     RHINO GENTLEMENTS CLUB, A       )   and CAL. LAB. CODE §§ 202, 203,
24   California fictitious business; and DOES 1 )   210, 221, 224, 226.7, 350(e), 350 et seq.,
     through 100, inclusive.         )   351, et seq., 353, 401,402, 1197, 1194,
25                                   )   98.1, 98.1(c); Industrial Wage
                                     )   Commission Orders 5 and 10.) CIVIL
26       Defendants.                 )   CODE § 51.9 and GOVERNMENT
                                     )   CODE § 12940, et seq.
27                                   )
                                     )   DEMAND FOR JURY TRIAL
28

KNAPP,
PETERSEN
& CLARKE

-1-
*CLASS ACTION COMPLAINT*

1    Comes now Plaintiffs VICTORIA OMLAR and JASMINE WRIGHT on

2  behalf of themselves and all others similarly situated, and on behalf of all aggrieved

3  employee Class members, and herein allege:

### JURISDICTION AND VENUE

5    1.    This Court has jurisdiction over the claims alleged herein pursuant to CAL.

6  BUS. & PROF. CODE § 17200 and CAL. LAB. CODE §§ 101, 202, 203, 210, 221, 224,

7  226.7, 350(e), 350 et seq., 351, et seq., 353, 401, 402, 1197, 1194, 98.1, 98.1(c); and

8  Industrial Wage Commission Orders 5 and 10.

9    2.    Venue is proper in this Court because both the Plaintiffs and the Defendants

10  are located in Los Angeles County and the acts complained of in this Complaint occurred in

11  Los Angeles County. Venue in the Los Angeles Superior Court Central District is also

12  appropriate in this case pursuant to Los Angeles Superior Court Local Rule 15.1.

### PARTIES AND BACKGROUND

14    3.    Plaintiff VICTORIA OMLAR ("Omlar") at all times relevant was a resident of

15  Los Angeles County, California.

16    4.    Plaintiff JASMINE WRIGHT ("Wright") at all times relevant was a resident of

17  Los Angeles County, California.

18    5.    Plaintiffs Omlar and Wright are referred to collectively as Plaintiffs for

19  purposes of this Complaint.

20    6.    Defendant THE SPEARMINT RHINO COMPANIES WORLDWIDE, INC.,

21  is an active Nevada Domestic Corporation, Registration No. C9266-1996, registered in

22  California with corporation No. C2570541, filed on 12/24/2003.    (Hereinafter

23  "SPEARMINT RHINO), doing business at 15411 East Valley Boulevard, City of Industry,

24  California 91746 and 1875 Tandem Way, Norco, California 92860 as SPEARMINT

25  RHINO GENTLEMEN'S CLUB, an establishment where live nude, semi-nude and topless

26  dance entertainment is presented to adult members of the general public;

27    7.    Defendant SPEARMINT RHINO COMPANIES, LLC, is an active California

28  limited liability company registered in California with Registration No. 199923810073,

KNAPP,
PETERSEN
& CLARKE

-2-
*CLASS ACTION COMPLAINT*

1  filed on 08/25/1999. (Hereinafter "SPEARMINT RHINO), doing business at 15411 and

2  15423 East Valley Boulevard. City of Industry. California 91746 as SPEARMINT RHINO

3  GENTLEMEN'S CLUB, an establishment where live semi-nude and/or bikini dance

4  entertainment is presented to adult members of the general public.

5      8.    Defendant SPEARMINT RHINO CLUB is a business organization form

6  unknown, (hereinafter "SPEARMINT RHINO), doing business in California at 15411 and

7  15423 East Valley Boulevard. City of Industry. California 91746 as SPEARMINT RHINO

8  GENTLEMEN'S CLUB, an establishment where live semi-nude and/or bikini dance

9  entertainment is presented to adult members of the general public.

10      9.    Defendant SPEARMINT RHINO CONSULTING WORLDWIDE. INC., is

11  an active Delaware Domestic Corporation, registered in California with corporation No.

12  C3159296, filed on 08/25/2008. (Hereinafter "SPEARMINT RHINO), doing business at

13  15411 East Valley Boulevard, City of Industry, California 91746 and 875 Tandem Way,

14  Norco, California 92860 as SPEARMINT RHINO GENTLEMEN'S CLUB, an

15  establishment where live semi-nude and/or bikini dance entertainment is presented to adult

16  members of the general public.

17      10.    Defendant FARMDALE HOSPITALITY SERVICES. INC. is an active

18  California Domestic Corporation, registered in California with corporation No. C2259317,

19  filed on 08/28/2000. (Hereinafter "SPEARMINT RHINO), doing business at 15411 East

20  Valley Boulevard, City of Industry, California 91746 and 1875 Tandem Way, Norco,

21  California 92860, as SPEARMINT RHINO GENTLEMEN'S CLUB, an establishment

22  where live semi-nude and/or bikini dance entertainment is presented to adult members of

23  the general public.

24      11.    Defendant CITY OF INDUSTRY HOSPITALITY VENTURE, INC., is an

25  active California Corporation, registered in California with corporation No. C1793773,

26  filed on 11/13/1996. (Hereinafter "SPEARMINT RHINO), doing business at 15411 East

27  Valley Boulevard, City of Industry. California 91746 and 1875 Tandem Way, Norco,

28  California 92860 as SPEARMINT RHINO GENTLEMEN'S CLUB, an establishment

KNAPP,
PETERSEN
& CLARKE

-3-
CLASS ACTION COMPLAINT

1  where live semi-nude and/or bikini dance entertainment is presented to adult members of

2  the general public.

3      12.   Defendant L.C.M.. LLC dba SPEARMINT RHINO GENTLEMENS CLUB

4  is an active California Fictitious Business. filed in California with Identification No.

5  D0099320. filed on 05/01/2006. (Hereinafter "SPEARMINT RHINO). doing business at

6  15411 and 15423 East Valley Boulevard. City of Industry. California 91746. as

7  SPEARMINT RHINO GENTLEMENS CLUB. an establishment where live semi-nude

8  and/or bikini dance entertainment is presented to adult members of the general public.

9      13.   Each of the Defendants above is referred to collectively as "SPEARMINT

10  RHINO" or "Defendants" for purposes of this Complaint.

11      14.   Plaintiffs and all others similarly situated are. and at all relevant times were.

12  employees employed by Defendants as exotic dancers to perform semi-nude and/or bikini

13  entertainment for Defendants and their patrons/customers.

14      15.   This is a civil action brought pursuant to Section 1194 of the California Labor

15  Code. and Section 17204 of the California Business and Professions Code.

16      16.   The true names and capacities of defendants sued as DOES 1 through 100.

17  inclusive. are unknown to Plaintiffs at this time. Plaintiffs will amend the Complaint when

18  the true names. identities. and/or capacities of said defendants. become known to Plaintiffs.

19      17.   Plaintiffs and the class members allege that at all times mentioned herein.

20  Defendants and the DOE defendants. DOES 1 through 100. inclusive, were the agents and

21  employees of each of their co-defendants. and in doing the things alleged in this Complaint.

22  were acting within the course and scope of that agency and employment.

23                **CLASS ACTION ALLEGATIONS**

24      18.   Plaintiffs hereby bring this action on their own behalf. on behalf of the class

25  of all persons similarly situated. and on behalf of all aggrieved employees employed by

26  Defendants. and employed by all DOE Defendants herein. including DOES 1 through 100.

27      19.   Plaintiffs Omlar and Wright worked as nightclub dancers. ("dancers"). and as

28  employees of Defendants at various periods of time from on or about 2004 through 2006

KNAPP,
PETERSEN
& CLARKE

-4-

*CLASS ACTION COMPLAINT*

1 and 2007 through 2008. respectfully. along with over a hundred other potential Class

2 member/dancers. residing in the state of California. during the time period embraced by the

3 action.

4      20.   Plaintiffs seek to represent the Class of all employees who performed as live.

5 nude, semi-nude and/or bikini dance entertainers for Defendants' customers, during the time

6 period of four years prior to the filing of this Complaint and up to and including the entry of

7 judgment in this action. who were subject to Defendants' unlawful policies and practices of:

8 1) failing to pay all employees the applicable minimum wage: 2) failing to pay employees

9 overtime wages; 3) taking illegal deductions from Plaintiffs and Class members' wages; 4)

10 illegal tip collection and illegal "pay-outs/tip-outs" to Defendants' employees. including but

11 not limited to. pay-outs/tip-outs to the D.J.s. doormen/floor-men and Defendants' managers:

12 5) requiring Plaintiffs and Class members to either sell 3 to 6 drinks or pay for 3 to 6 drinks

13 per shift: 6) illegally taking a percentage of Plaintiffs and Class members' dance fees paid to

14 Plaintiffs by Defendants' patrons; 7) illegal uniform requirements without providing or

15 reimbursement for uniforms: 8) failure to provide rest and meal periods: 9) failure to

16 properly treat Plaintiffs and Class members as employees entitled to Workers

17 Compensation Insurance and California Health and Safety protection as are all California

18 employees: 10) failure to provide safe and sanitary working conditions for all employees

19 pursuant to California's Health and Welfare laws. .

20      21.   During all times relevant herein, Plaintiffs and putative Class members were

21 employees. not independent contractors pursuant to California state law.. Plaintiffs and

22 putative class members were employees pursuant to California law despite the transient

23 nature of work. because the dancers lack specialized skills. their only real investment was in

24 their costumes. and the employer nightclub Defendants. and each of them. exercised

25 significant control over dancers' behavior and opportunity for profit." (See *Reich v. Circle*

26 *Investments. Inc..* 998 F.2d 324. (5th Cir. 1993)).

27      22.   Plaintiffs and putative class members were employees of. Defendants. not

28 independent contractors'. for wage and hour purposes according to California law. Plaintiffs

NAPP,
ETERSEN
CLARKE

-5-

*CLASS ACTION COMPLAINT*

1 further allege that California Labor Code Section 350(b) defines "employed" as "person
2 including aliens and minors. rendering actual service to any business for an employer,
3 whether gratuitously or for wages or pay and whether such wages or pay are measured by
4 the standard or time. piece. task. commission, or other method of calculation and whether
5 such service is rendered on a commission. concessionaire, or other basis."

6    23.   The class consists of all current and former dancers and all other personnel
7 similarly situated. during the time frame of four years prior to the filing of this action, up to
8 and including entry of judgment in this action. Thus. Plaintiffs seek Class certification
9 under California Code of Civil Procedure Section 382, with respect to the state claims set
10 forth herein for all similarly situated persons residing in the State of California during the
11 relevant statutory period.

12    24.   Plaintiffs are informed and believe that one-hundred or more such persons
13 resided in California during their employment with Defendants and are currently located in
14 all parts of the USA and are therefore so numerous as to make it impractical to bring them
15 all before the court. The rights which are subject to this action are common to all the current
16 and former employed similarly situated individuals identified above who worked for
17 Defendants. There are questions of law and fact presented herein which are common to the
18 entire class represented by Plaintiffs and Plaintiffs claims. as hereinafter set-forth. and said
19 claims are typical of all Class members. Plaintiffs are qualified to. and will. fairly and
20 adequately protect the interests of each Class member.

21    25.   This action is maintainable by Plaintiffs under Section 382 as a class action
22 because the questions of law and fact common to the class members predominate over any
23 questions affecting individual members and. on balance a class action is superior to other
24 methods available for adjudicating the controversy. There is a well a defined community of
25 interest in the litigation and the Class is easily ascertainable:

26    a.   Numerosity: Plaintiffs Class is so numerous that the individual joinder of all
27 members is impractical under the circumstances of this case. Although the exact number of
28 Class members is unknown to Plaintiffs at this time. Plaintiffs are informed and believe and

KNAPP,
PETERSEN
& CLARKE

-6-
CLASS ACTION COMPLAINT

1 | thereon allege that there are at least one hundred similarly situated personnel who resided in
2 | California during their employment by Defendants and were subject to California state law.

3 |       b.    Common questions predominate:  The rights. which are the subject of this
4 | action, are common to all the current and former dancer personnel who worked for
5 | Defendants as residents of California.  There are questions of law presented herein which
6 | are common to the entire Class of persons represented by Plaintiffs, and Plaintiffs claims, as
7 | hereinafter set forth. are typical of the claims of all Class members including, but not
8 | limited to:

9 |       (i)    Whether Defendants' practice of not paying wages was unlawful;

10 |       (ii)    Whether Defendants' practice of not paying overtime pay to employees who
11 | share common classifications. duties and responsibilities was unlawful;

12 |       (iii)    Whether Defendants' unlawfully failed to pay overtime wages to the Class
13 | members;

14 |       (iv)    Whether Defendants' failed to provide rest breaks and meal periods for class
15 | members; and

16 |       (v)    Whether Defendants' policies and practices of requiring Plaintiffs and putative
17 | Class members to share their tips with management and other employees of Defendants
18 | who were not providing the same services as Plaintiffs was unlawful; and,

19 |       (vi)    Whether Defendants' practice of charging Plaintiffs and putative Class
20 | members penalties for failing to abide by Defendants' policies and procedures was illegal
21 | under the wage and hour laws and regulations of the State of California.

22 |       c.    Typicality:  Plaintiffs claims are typical of the claims of Class members.
23 | Plaintiffs and the members of the Class sustained damages arising out of Defendants'
24 | common practice of failing to pay wages and/or overtime compensation and failing to
25 | provide meal periods and rest periods.  Plaintiffs. like the other Class members. routinely
26 | worked without any pay. and were fined for violating any number of Defendants' punitive
27 | policies and procedures during the operative time period of the Complaint. Plaintiffs and
28 | Class members in this case performed the same duties and had the same responsibilities as

KNAPP,
PETERSEN
& CLARKE

-7-
*CLASS ACTION COMPLAINT*

1  all the other Class members during the operative time of the Complaint.

2      d.    Adequacy:  Plaintiffs are qualified to, and will, fairly and adequately protect

3  the interests of each Class member.  Plaintiffs have no interests that are adverse to the

4  interests of the other Class members.

5      e.    Superiority: A class action adjudication is superior to the other available

6  methods because a class action will achieve economies of time, effort and expense as

7  compared to separate lawsuits, and avoid inconsistent outcomes because the same issues

8  can be adjudicated in the same manner for the entire Class. Plaintiffs are currently unaware

9  of any pending litigation commenced by any class member involving the same issues in this

10  Complaint.

11      f.    Public policy consideration:  Employers throughout the state violate wage and

12  hour laws every day.  Current employees are often afraid to assert their rights out of fear of

13  direct or indirect retaliation. Plaintiffs are informed and believe that Defendants in this

14  matter continue to violate California's overtime laws and have a standard policy of simply

15  not paying overtime regardless of the hours the employer scheduled their employees to

16  work. Current employees are lower wage employees who need jobs, need the money that

17  they are making, and cannot afford to look elsewhere for employment or the possibility of

18  losing their jobs as a result of speaking out against Defendants' unlawful acts. Former

19  employees are fearful of bringing actions because they perceive their former employers can

20  damage their future endeavors through negative references, including blacklisting and other

21  means.  Class actions provide the Class members who are not named in the complaint with

22  a type of anonymity that allows for the vindication of their rights.

23      26.    Plaintiffs allege that in the seminal wage and hour case: *Borello & Sons v.*

24  *Department of Industrial Relations* (1989) 48 Cal.3d 341, the California Supreme Court

25  rejected the traditional common law focus on control of work details as the determinative

26  factor in analyzing an employee-employer relationship. Instead, the *Borello* Court decision

27  adopted a multi-factor test.

28      27.    Further, Plaintiffs allege the Supreme Court in *Borello* noted that the various

KNAPP,
PETERSEN
& CLARKE

-8-
*CLASS ACTION COMPLAINT*

1   individual elements that must be considered are intertwined and their weight depends on

2   particular combinations. Therefore, the absence of control over work details is of no

3   consequence where the workers duties are an integral part of the operation and the nature of

4   the work makes control by the employer unnecessary.

5       28.    Plaintiffs allege that in determining whether one who is acting for another is

6   an employee or independent contractor, the following multi-factor tests (*id. Borello*) are

7   considered:

8       a.     Whether the person performing the service is engaged in a business or

9   occupation distinct from that of the principal. The work that Plaintiffs and Class member

10  dancers performed for Defendants was an integral part, if not the essential core of the

11  principal's business.

12      b.     Whether or not the work is part of the regular business of the principal. In this

13  case, the work the Class member dancers performed is part of Defendants regular business

14  practice and as stated previously the essential core of Defendants business. Therefore,

15  Plaintiffs contend that Defendants scheduled dancers to work during specific time slots,

16  also known in the business as "rotation". The scheduling of Plaintiffs and Class member

17  dancers in rotation, assures that one or more dancers are always performing on stage while

18  the club is open for business. The Defendants management for a continuous stage show

19  integrated each of the dancer's performances. This integration of Plaintiffs and Class

20  members into the heart of Defendants business indicates that SPEARMINT RHINO,

21  functions as an employer to all putative Class members.

22      c.     Whether the principal or the worker supplies the instrumentalities, tools and

23  the place for the person doing the work.  Plaintiffs contend that Defendants provided the

24  place or Club for the persons or dancers doing the work. Defendants provided the stage, the

25  lights, the dressing rooms, the music and the clients. Plaintiffs and Class members were

26  sometimes allowed to request their own lists of songs music be played, but they had to

27  purchase their own dance uniforms, shoes and other dance apparel to work in the club.

28      d.     The alleged employee's investment in the equipment or materials required by

KNAPP,
PETERSEN
& CLARKE

-9-

his or her task. Plaintiffs and Class members had no investment in equipment, advertising, supplies, location or materials. Plaintiffs and Class members only investment involved the clothing they wore.

e.      Whether the service requires special training and skills characteristic of licensed contractors. Plaintiffs contend they and the members of the class had no type of formal training and/or schooling in dance to work as topless or nude dancers for Defendants.  Further, dancers were not required to have any license(s) or permits to work as topless or nude dancers under California state law and did not have formal training, schooling, licenses or permits to work independently as topless or nude dancers during the time periods of their employment by Defendants.

f.      The kind of occupation, with reference to whether the work is usually done under the direction of the principal or by a specialist without supervision.  Plaintiffs contend that the nature of Plaintiffs and Class members work made detailed control by employer unnecessary. In Plaintiffs and Class members situation, where they did not receive wages, they received tips/gratuities as their only form of compensation. This situation compelled Plaintiffs and Class member dancers to work productively, that is, to perform lap dances, stage dances and mingle with customers in order to make an income from dancing. This type of work made it unnecessary for the principal to exercise control or provide supervision over Plaintiffs and Class member dancers.

g.      The employee's alleged opportunity for profit or loss depending on her managerial skills.   Plaintiffs and Class member dancers contend that in this case, a disproportionate level of investment by the employer is a factor that points towards an employer/employee relationship. Plaintiffs and Class member dancers invested in the purchase of dress attire and were required to 'tip-out' the DJs, security guards, doormen, bartenders, waitresses, managers and others, not a significant investment. On the other hand, Defendants invested in the music, the sound system, all kinds of business equipment, liquor licenses, liquor/soft drink inventories, fixtures (i.e. stage(s)) and lap dance booths/couches and other furniture), advertising, parking and employer also paid the

KNAPP,
PETERSEN
& CLARKE

-10-

1  lease mortgage on Defendants' building-club. Plaintiffs and Class member dancers did not

2  operate their own businesses nor did they obtain any business licenses or permits for

3  themselves.

4        h.      In stark contrast, Defendants registered Primary SIC numbers and obtained

5  the necessary and required licenses from the California State Board of Equalization, county

6  of Los Angeles and City of Industry entertainers-adult licenses and registered for required

7  City/State business and tax permits, and Police, Fire and alarm permits for the location at:

8  15411 E. Valley Blvd., City of Industry, California 91746.

9        i.      The length of time for which the services are to be performed. Plaintiffs

10  contend Plaintiffs and Class member dancers performed services on a weekly basis.

11  Dancers performed work eligible for overtime compensation but were not paid. Dancers

12  were not allowed to take rest or meal breaks and were not permitted to leave the club for

13  any reason during their shift or face termination. In addition, if Plaintiffs and Class member

14  dancers failed to show up for their scheduled shifts, dancers would be fined, sanctioned or

15  terminated. Dancers were fined for failing to strictly adhere to Defendants schedules, were

16  required to pay Defendants approximately 50% of all their tips (including dance fees), pay

17  stage fees and were required to pay drink fees and tip-out the DJs, doormen/floor-men,

18  security guards, and managers 1 to 3 dollars for each song. Dancers also were required to

19  tip-out waitresses and other employees of Defendants. In addition, Plaintiffs and Class

20  members were required to pay unlawful fines to the club for being late; for failing to show

21  up on time to work or for stage rotation; or for attempting to leave the Club during their

22  shift. If dancers actually left the club, they were usually terminated when they showed up

23  for work. Dancers were often fired and then re-hired, fined and then sanctioned again as a

24  means to control and manipulate the dancers and to assure that the club would have a steady

25  supply of dancers on any given day-shift, night-shift or double-shift.

26        j.      The degree of permanence of the working relationship. Plaintiffs and Class

27  members contend that the employee turnover at Defendants' club was extremely high, due to

28  the level of control it exerted over the dancers it hired and the unsafe, unhealthful and

KNAPP,
PETERSEN
& CLARKE

-11-

1 | unsanitary working conditions Defendants maintained at the club.

2 |     k.    The method of payment, whether by time or by the job. Plaintiffs and Class

3 | members were not paid by time or job. They were paid a gratuity by Defendants patrons

4 | and were required to split their gratuity with Defendants and numerous employees of

5 | Defendants.

6 |     l.    The extent of control, which by agreement, is exercised over the details of the

7 | work. Plaintiffs and Class member dancers contend that they did not have the ability to hire

8 | their own employees and that during all times relevant herein, Defendants regularly

9 | exercised total control over Plaintiffs and Class members weekly dance/appearance

10 | schedules, their income, their work hours and their poor and unsanitary working conditions.

11 | Plaintiffs and Class member dancers were scheduled by Defendants who required the

12 | dancers to remain on premises at all times during their shifts..

13 |     m.    Whether or not the parties believe they are creating an employer-employee

14 | relationship. Plaintiffs, on behalf of Class members, allege that they intended to enter into

15 | an agreement in which both parties would mutually benefit.

16 |     n.    Plaintiffs and Class member dancers contend that the multi-factor elements to

17 | be considered as to whether one acting for another is an employee or independent

18 | contractor pursuant to the Supreme Court's ruling in *Borello, supra*, 48 Cal.3d 341,

19 | demonstrates clearly that Plaintiffs and Class member dancers were in fact employees,

20 | entitled to minimum wages, rest and meal breaks, and overtime wages etc.  Further, the

21 | dancers were entitled to fair and sanitary working conditions free from punishment by fines

22 | and other sanctions and the daily threat of termination for attempting to take a rest break,

23 | meal break or to take a day off, sometimes after consecutive weeks of working double-

24 | shifts.

25 |     29.    During all times relevant herein, Defendants took unlawful deductions from

26 | Plaintiffs and Class members' wages in the form of monetary sanctions, penalties or fines

27 | and for each dance performed, the dancers were required to "tip-out" the DJs; the security

28 | personnel, the door men, the managers, waitresses, bartenders, and "floaters", and pay house

KNAPP,
PETERSEN
& CLARKE

-12-
*CLASS ACTION COMPLAINT*

1  fines and or fees, (including having to use their own dance gratuities to pay their employer

2  and managers), penalties/fines for coming in late, penalties/fines for missing stage sets,

3  penalties/fines for not performing a certain number of hours and/or leaving the club early or

4  during shift, penalties/fines for not being fully in costume with hair and make-up complete

5  at scheduled times, penalties/fines for leaving the dance floor early, penalties and fines for

6  not being in proper dance attire or proper uniforms, penalties/fines for being late for their

7  shift, late to the stage or late to mandatory SPEARMINT RHINO meetings and/or special

8  events with dancers and club owners, etc., and penalties/fines for violating numerous other

9  employer established policies and procedures which clearly demonstrates Defendants'

10  control and manipulation of the dancers. The dancers were not paid for their attendance and

11  participation at club meetings, promotional functions or merchandizing events, but were

12  required by Defendants to attend and participate or risk being taken off Defendants' work

13  schedules, face termination and/or be assessed monetary penalties and face other fines or

14  penalties.

15       30.    During all times relevant herein, Defendants required Plaintiffs and Class

16  members to sell drinks to patrons. During day-shifts from 11:00 a.m. to 6:00 p.m., dancers

17  were required to sell at least 3 large drinks and during night-shifts from approximately 6:00

18  p.m. to 4:00 a.m., dancers were required to sell 5 or 6 large drinks per night. If dancers did

19  not sell the required number of drinks to patrons dancers were required to pay Defendants

20  the full price of the drinks in the amount of $8.00 to $10.00 per drink. On occasions, when

21  dancers had a slow night, dancers were required to pay drink fees and stage fees out of their

22  own pockets. In this situation, Plaintiffs and Class members were required to pay the

23  Defendants to dance at their club after working an entire shift and went home without any

24  money at all. Plaintiffs and Class members were never compensated for their sales efforts

25  or for their sales work by time or by commission. Plaintiffs and Class members therefore

26  contend they are entitled to compensation and reimbursement for the drinks they sold for

27  Defendants per shift. Further, Plaintiffs and Class members allege they are entitled to be

28  compensated by Defendants for all the drink fees and stage fees they were illegally required

KNAPP,
PETERSEN
& CLARKE

1   to pay Defendants and each of them.

2       31.    During all times relevant herein, Defendants required Plaintiffs and Class

3   members to wear a uniform in the form of dance attire, including expensive exotic dance

4   shoes and exotic dance apparel that Defendants did not supply or reimburse Plaintiffs and

5   Class members for. Plaintiffs and Class members contend they are therefore entitled by law

6   to be compensated or reimbursed for uniforms and dance attire they were required to

7   purchase in order to work at Defendants' club.

8       32.    During all times relevant herein, Defendants and each of them, took unlawful

9   deductions from Plaintiffs and Class members for: 1) unlawful deductions in the form of a

10  percentage of Plaintiffs and class members gratuities and as compensation from customers

11  for performing dances (i.e., "lap dances/couch dances and other dances") were paid by

12  dancers to Defendants for each dance; 2) unlawful deductions in the form of a percentage of

13  Plaintiffs and Class members gratuities consisting of compensation from customers for

14  performing dances which were paid by the dancers to the DJs in the amount of $1.00 to

15  $3.00 for each song danced during each shift; 3) unlawful deductions paid by dancers to the

16  doormen and floor-men in the amount of $1.00 to $3.00 for each song danced during each

17  shift; 4) unlawful deductions paid by dancers to the manager in the amount of $1.00 to

18  $3.00 for each song danced during each shift; 5) unlawful deductions paid by dancers to the

19  "security personnel" and/or "security guards" for each shift; and, 6) unlawful deductions paid to

20  the bartenders and waitresses for each shift, 6) Plaintiffs and Class members were required

21  to pay more than $10.00 plus tip, and regularly paid more than $10.00 plus tip to the

22  bartenders, waitresses, security personnel and or bouncers, out of Plaintiffs and Class

23  members' gratuities given to the dancers by the patrons for each shift. The DJs,

24  doormen/floor-men and managers regularly required dancers to tip-out $1.00 to $3.00 per

25  song and required Plaintiffs and Class members to pay excessive tip-outs based on the

26  manager's discretion. Further, Plaintiffs and Class members were required to pay stage or

27  house fees just to work/dance at Defendants club.

28      33.    Further, at all times relevant herein, Defendants regularly did not credit

KNAPP,
PETERSEN
& CLARKE

-14-

1  Plaintiffs and Class members' for gratuities received by Defendants that were paid by
2  customers/patrons in cash and/or by credit cards intended by customers/patrons to be paid
3  to Plaintiffs and Class members as their dance fees and tips. Plaintiffs and Class members
4  contend that Defendants withheld tips and gratuities paid to Defendants by customers,
5  which were intended for Plaintiffs and Class members and redirected Plaintiffs and Class
6  members' tips and gratuities to Defendants' employees, i.e., the DJS, doormen/floor-men,
7  managers, bartenders, waitresses, and security guards.

8      34.    Plaintiffs and Class members were paid a pre-set fee for the dancer's services
9  for a dance (i.e., topless or nude lap dance/couch dance or other dances) in which the dance
10  fee was established by the club including an amount for the dancer's services and an amount
11  representing Defendants share of each dance fee/gratuity given to the dancer directly by the
12  customer/patron. Defendants' share of the fee was most often times 50% or greater, and out
13  of that 50%, the dancers had to tip-out the DJS, doormen/floor-men, managers, bartenders,
14  waitresses and security guards etc. However, according to Assembly Bill 2509, and
15  California Labor Code § 350(e), the full amount *given, left* or *intended* for Plaintiffs and
16  Class member dancers is a gratuity and is the sole property of the dancers. Plaintiffs and
17  Class members further allege that Defendants, and each of them knowingly and
18  intentionally violated Assembly Bill 2509, and California Labor Code § 350(e) many times
19  per day, including each time a song/dance was performed by Plaintiffs and Class members
20  for Defendants customers.

21      35.    During all times relevant herein, Defendants unlawfully collected tips from
22  Plaintiffs and Class members that Plaintiffs and Class members received from Defendants
23  customers. Plaintiffs and Class members contend that the money received directly from
24  Defendants customers to perform a dance, or paid in any manner for the dance, belonged
25  entirely to Plaintiffs and Class members as their gratuity pursuant to Assembly Bill 2509,
26  and California Labor Code § 350(e).

27      36.    During all times relevant herein, Defendants unlawfully required Plaintiffs
28  and Class members to work for more than four (4) hours at a time without allowing

KNAPP,
PETERSEN
& CLARKE

-15-
*CLASS ACTION COMPLAINT*

1  Plaintiffs and Class members a ten-minute rest break and required the dancers work for
2  more than five hours without a meal period. Further, Defendants hard and fast rules
3  prohibited the dancers from leaving the club for lunch or to have a meal, or to go out to
4  bring refreshments back to the club due to the fact that dancers were not permitted to take
5  breaks or leave the club during the dancers' shifts for any reason whatsoever.

6       37.   During all times relevant herein Defendants unlawfully required Plaintiffs and
7  Class members to work over eight hours per day without compensating Plaintiffs and Class
8  members 1½ times the hourly rate for hours worked over eight (8) hours in a one day or
9  over 40 hours per week or without compensating class members double time for any hours
10 in excess of 12 hours in any one day as required by California law governing overtime
11 compensation.

12      38.   During all times relevant herein Defendants unlawfully required Plaintiffs and
13 Class members to solicit and sell lap dances, including couch dances and other dances
14 without compensating Plaintiffs and Class members. Instead of compensating Plaintiffs or
15 Class members for selling these dance services, Plaintiffs and Class members were required
16 to pay 50% or more of the dance fees to Defendants for lap dances, and other dances that
17 Plaintiffs and Class members' solicited, sold, and performed for Defendants and their
18 customers, without proper compensation for the work the dancers solicited and performed.

19      39.   There is a well-defined community of interest in the questions of law and fact
20 affecting the Class members Plaintiffs seek to represent herein. The class members' claims
21 against Defendants involve questions of common or general interest, in that their claims are
22 based on implementation and utilization of employment policies pursuant to which all
23 members of the class were subject to Defendants illegal policies of taking illegal deductions
24 from Plaintiffs and Class members' wages, illegal tip collection, illegal uniform
25 requirements without providing uniforms, illegal policy regarding lack of any rest periods,
26 failure to pay Plaintiffs and Class members an applicable minimum wage, failure to pay
27 overtime wages, or furnish meal or break periods as required, and Defendants' imposition of
28 unlawful penalties, fines, illegal fees and unreasonable sanctions upon the dancers. These

KNAPP,
PETERSEN
& CLARKE

-16-

1 | questions are such that proof of a statement of facts common to the members of the class

2 | will entitle each member of the Class to the relief requested in the Complaint.

3     40.    Plaintiffs will fairly and adequately represent the interests of the entire Class,

4 | because Plaintiffs are members of the Class and the claims of Plaintiffs herein are nearly all

5 | the same and certainly typical of those in the Class Plaintiffs seek to represent herein.

6                     **FIRST CAUSE OF ACTION**

7              (Failure to Pay Minimum Wages or Overtime

8                Compensation Against All Defendants)

9     41.    Plaintiffs hereby incorporate Paragraphs 1-40. inclusive. of this Complaint,

10 | and reallege said allegations as if fully set forth herein.

11     42.    Plaintiffs worked for Defendants as topless/nude night club dancers (dancers),

12 | and were employees during the time periods specified in this Complaint. along with over a

13 | hundred other potential class member dancers who worked for Defendants during the class

14 | period.

15     43.    Plaintiffs and class member dancers were not paid the minimum hourly wage

16 | for their services. In addition. Plaintiffs and Class members often worked more than eight

17 | (8) hours per day. and over forty hours per week. and were never compensated for any

18 | overtime hours they worked.

19     44.    Plaintiffs and Class members allege that they are entitled to be compensated

20 | in the amount of the applicable minimum wages for all hours worked for Defendants. In

21 | the application of minimum wage legislation. "employees are those who as a matter of

22 | economic reality are dependent upon the business to which they render service." (*Real v.*

23 | *Driscoll Strawberry Associates.* 603 F.2d 748.754 (9th Cir.1979). The economic reality is

24 | that Plaintiffs and Class members were not in business for themselves. They were

25 | employees scheduled by Defendants during all relevant time periods embraced by this

26 | action.

27     45.    California Labor Code Section 1197(a) provides that the payment of a less

28 | wage than the minimum so fixed is unlawful. The Labor Code mandates the payment of

KNAPP,
PETERSEN
& CLARKE

-17-
*CLASS ACTION COMPLAINT*

1  the minimum wage.

2      46.    In addition, California Labor Code Section 1194(a) states "Notwithstanding

3  any agreement to work for a lesser wage, any employee receiving less than the legal

4  minimum wage or the legal overtime compensation applicable to the employee is entitled to

5  recover in a civil action the unpaid balance of the full amount of this minimum wage or

6  overtime compensation, including interest thereon, reasonable attorney's fees, and costs of

7  suit."

8      47.    Plaintiffs and Class members further allege that *Hernandez v. Meddoza*

9  (1988) 199 Cal.App.3d 721, states: "When the employer fails to keep accurate time records

10 and employee proves he or she performed work for which he or she was uncompensated

11 and provides sufficient evidence to show by reasonable inference the amount and extent of

12 uncompensated hours, burden shifts to the employers to come forward with precise amount

13 of work performed or with evidence to negate reasonableness of the inferences to be drawn

14 from employee's evidence."

15     48.    Therefore, Plaintiffs and Class members demand payment of all wages

16 (including overtime compensation and minimum wages) unlawfully unpaid to all

17 employees performing nude, semi-nude, and/or topless entertainment for Defendants'

18 customers who were employed by Defendants within the State of California within four

19 years of the filing of this Complaint until the date of entry of judgment after trial.

20     49.    In addition, Plaintiffs and Class members demand all statutory penalties

21 provided for by the Labor Code, including but not limited to Sections 558, (a), and 1197.1,

22 except those penalties provided for by California Labor Code Section 2699.

23     50.    Pursuant to California Labor Code Section 218.6 and 1194, interest at the rate

24 of 10 percent per annum is due for the non-payment of wages due Plaintiffs and Class

25 members in an amount to be proved at trial.

26                     **SECOND CAUSE OF ACTION**

27         (Illegal Wage Deductions: Labor Code §§ 221, 224, 350(e), 351, 402 and

28         IWC Commission Orders 5 and 10; and A.B. 2509 Against All Defendants)

KNAPP,
PETERSEN
& CLARKE

-18-
*CLASS ACTION COMPLAINT*

51.    Plaintiffs hereby incorporate Paragraphs 1-50, inclusive, of this Complaint, and reallege said allegations as if fully set forth herein.

52.    Defendants are subject to Wage order 10, 8 CCR 11000 which regulates "any industry, business or establishment operated for the purpose of furnishing entertainment or recreation to the public, including but not limited to *theaters, dance halls*, bowling alleys, billiard parlors, skating rinks, riding academies, racetracks, amusement parks, athletic fields, swimming pools, gymnasiums, golf courses, tennis courts, carnivals, and *wired music studios.*" (Emphasis supplied.)

53.    In addition, and in the alternative, Defendants are subject to Wage Order 5, 8 CCR 11050, which regulates, inter alia, "Public Housekeeping Industry" means any industry, business or establishment which provides meals, housing, or maintenance services whether operated as a primary business or when incidental to other operations in an establishment not covered by an industry order of the Commission, and includes, but is not limited to the following: (1) Restaurants, night clubs, taverns, bars, cocktail lounges, lunch counters, cafeterias, boarding houses, clubs, and all similar establishments where food in either solid or liquid form is prepared and served to be consumed on the premises.

54.    During all times relevant herein, Defendants took unlawful deductions from Plaintiffs and Class members' wages.

55.    During all times relevant herein, Defendants took unlawful deductions from Plaintiffs and Class member dancers' wages and from tips in the form of a percentage of the money Plaintiffs and Class member dancers received from customers for performing "stage dances", "lap/couch dances" and other dances. Plaintiffs and Class member dancers further contend that Defendants practice of imposing the costs of their business enterprise on the dancers, including unlawful fines and/or other similar conduct, is unlawful pursuant to California law and is subject to injunction herein.

56.    California Labor Code § 221 provides: "it shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee."

KNAPP,
PETERSEN
& CLARKE

-19-
*CLASS ACTION COMPLAINT*

57.   California Labor Code § 224 provides:

The provisions of Sections 221, 222, and 223 shall in no way make it unlawful for an employer to withhold or divert any portion of an employee's wages when the employer is required or empowered by state or federal law or when a deduction is expressly authorized in writing by the employee to cover insurance premiums, hospital or medical dues, or other deductions not amounting to a rebate or deduction from the standard wage arrived at by collective bargaining or pursuant to wage agreement or statute, or when a deduction to cover health and welfare or pension plan contributions is expressly authorized by a collective bargaining or wage agreement. **Nothing in this section or any other provision of law shall be construed as authorizing an employer to withhold or divert any portion of an employee's wages to pay any tax, fee or charge prohibited by Section 50026 of the Government Code, whether or not the employee authorizes such withholding or diversion.**

58.   California Labor Code § 402 provides as follows:

No employer shall demand, exact, or accept any cash bond from any employee or applicant unless:

The employee or applicant is entrusted with property of an equivalent value; or The employer advances regularly to the employee goods, wares, or merchandise to be delivered or sold by the employee, and for which the employer is reimbursed at regular periodic intervals, and the employer limits the cash bond to an amount sufficient to cover the value of the goods, wares, or merchandise so advanced during the period prior to the payment therefor.

59.   Effective January 1, 2000, A.B. 2509 added the last sentence to California Labor Code § 350(e), which now provides as follows:

'Gratuity' includes any tip, gratuity, money or part thereof **that has been paid** or **given to or left** for an employee by a patron of a business over and above the actual amount due the business for service rendered or for goods, food, drink, or articles sold or served to the patron. **Any amounts paid directly by a patron to a dancer employed by an employer subject to Industrial Welfare Commission Order No. 5 or 10 shall be deemed a gratuity."** (Emphasis supplied.)

60.   California Labor Code § 353 provides as follows:

KNAPP,
PETERSEN
& CLARKE

-20-

"Every employer shall keep accurate records of all gratuities received by him, whether received directly from the employee or indirectly by means of deductions from the wages of the employee or otherwise. Such records shall be open to inspection at all reasonable hours by the department."

61. At all relevant times. Defendants employed more than one employee and actually employed more than 100 dancers.

62. At all relevant times. Defendants violated both Section 20(A) of Wage Order 10, 8 CCR 11100(20) (A) and Section 20 (A) of Wage Order 5, 8 CCR 11050 in addition to any other requirements provided by law, and are responsible for civil penalties imposed upon any employer or any other person acting on behalf of the employer who violates, or causes to be violated, the provisions of these orders.

63. The State of California, Department of Industrial Relations, Division of Labor Standards Enforcement issued an opinion on June 22, 2001, interpreting California Labor Code § 350(e) and the Industrial Welfare Commission Order No. 5 and 10. This opinion provides that "a patron at a striptease theater gives $30 to a dancer, consisting of $20 for the dance fee (which may have been pre-set by the employer) plus $10 as an additional amount for the dancer's services. **Under A.B. 2509, the dancer is entitled to keep the entire $30.00.**" (Emphasis and underline added)

64. By Defendants unlawfully taking deductions from Plaintiffs and Class members' tips or other compensation. Defendants violated California Labor Code §§ 221, 224, 350(e), 351, 402, Industrial Wage Commission Orders 5 and 10 and A.B. 2509.

65. Therefore. Plaintiffs and Class members demand return of all sums unlawfully deducted from all employees performing nude, semi-nude, topless and/or bikini entertainment for Defendants' customers employed by Defendants or any of them, within the State of California within four years of the filing of this complaint until the date of entry of judgment after trial.

66. In addition. Plaintiffs and Class members demand all penalties provided for by the Industrial Wage Commission Orders 5 and 10 for each employee for each payroll

KNAPP,
PETERSEN
& CLARKE

-21-
*CLASS ACTION COMPLAINT*

1   period during the period of time of three years from the filing of this lawsuit to and

2   including the entry of judgment in this action.

### THIRD CAUSE OF ACTION

(Illegal Tip Collection: California Labor

Code § 351 Against All Defendants)

67.   Plaintiffs hereby incorporate Paragraphs 1-66, inclusive, of this Complaint, and reallege said allegations as if fully set forth herein.

68.   During all times relevant herein, Defendants unlawfully collected tips from Plaintiffs and Class members that Plaintiffs and Class members received directly or indirectly from Defendants customers.

69.   California Labor Code § 350(e) provides as follows:

> i.   (e) "Gratuity" includes any tip, gratuity, money or part thereof;
>
> ii.   that has been paid or given to or left for an employee by a patron of a business over and above the actual amount due the business for service rendered or for goods, food, drink, or articles sold or served to the patron. Any amounts paid directly by a patron to a dancer employed by an employer subject to Industrial Welfare Commission Order No. 5 or 10 **shall be deemed a gratuity.**

70.   The State of California, Department of Industrial Relations, Division of Labor Standards Enforcement issued an opinion on June 22, 2001 interpreting California Labor Code § 350(e) and the Industrial Welfare Commission Order No. 5 and 10. This opinion provides that "a patron at a striptease theater gives $30 to a dancer, consisting of $20 for the dance fee (which may have been pre-set by the employer) plus $10 as an additional amount for the dancer's services. Under AB 2509, the dancer is entitled to keep the entire $30.00."

71.   California Labor Code  § 351 provides as follows:

> i.   No employer or agent shall collect, take or receive any:
>
> ii.   Gratuity or part thereof that is paid, given to, or left for an:

KNAPP,
PETERSEN
& CLARKE

-22-

iii.    Employee by a patron, or deduct any amount from wages due an employee on account of a gratuity, or require an employee to credit the amount, or any part thereof, of a gratuity against and as part of the wages due the employee from the employer. Every gratuity is hereby declared to be the sole property of the employee or employees **to whom it was paid, given or left for**." (Emphasis added)

"An employer that permits patrons to pay gratuities by credit card shall pay the employees the full amount of the gratuity that the patron indicated on the credit card slip, without any deductions for any credit card payment processing fees or costs that may be charged to the employer by the credit card company. Payment of gratuities made by patrons using credit cards shall be made to employees not later than the next regular payday following the date the patron authorized the credit card payment."

72.    By Defendants unlawfully collecting tips from Plaintiffs and Class members' Defendants violated Labor Code § 351.

73.    Therefore, Plaintiffs and Class members demand return of all tips unlawfully misappropriated from all employees employed by Defendants or any of them for the purpose of performing nude, semi-nude, topless and/or bikini entertainment for Defendants' customers, within the State of California within four (4) years of the filing of this complaint until the date of entry of judgment after trial.

74.    In addition, Plaintiffs and Class members demand all penalties provided for by the Labor Code or Industrial Wage Commission Orders with the exception of those penalties set forth in California Labor Code Section 2699.

## FOURTH CAUSE OF ACTION

(Uniforms: Industrial Wage Commission Order 9, Against All Defendants)

75.    Plaintiffs hereby incorporate Paragraphs 1-74, inclusive, of this Complaint, and reallege said allegations as if fully set forth herein.

76.    Defendants required Plaintiffs and Class members to wear dance uniforms and/or costumes and did not provide the dance costumes and/or reimburse Plaintiffs and Class members for the cost of such uniforms or dance costumes.

KNAPP,
PETERSEN
& CLARKE

-23-
CLASS ACTION COMPLAINT

77.    Section 9 of the Wage Orders of the Industrial Wage Commission applicable to Defendants state that: "When **uniforms are required by the employer to be worn by the employee as a condition of employment, such uniforms shall be provided and maintained by the employer.** The term 'uniform' includes wearing apparel and accessories of distinctive design or color."

78.    Therefore, Plaintiffs and Class members demand return of the costs of all costumes, which were required to be worn by Defendants' employees or any of them, within the State of California within four (4) years of the filing of this complaint until the date of entry of judgment after trial.

79.    In addition, Plaintiffs and Class members demand all penalties provided for by the Labor Code or Industrial Wage Commission Orders for each employee for each payroll period three years from the filing of this lawsuit, except those penalties provided for by California Labor Code Section 2699.

## FIFTH CAUSE OF ACTION

(California Labor Code § 226.7-Failure to Provide Rest and

Meal Periods Against All Defendants)

80.    Plaintiffs hereby incorporate Paragraphs 1-79, inclusive, of this Complaint, and reallege said allegations as if fully set forth herein.

*Meal and Rest Periods:*

81.    Labor Code Section 226.7, subdivision (a) reads: "No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission."

82.    California Code of Regulations, Title 8, Section 11070, subdivision (12)(A) reads: "Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (31/2)

KNAPP,
PETERSEN
& CLARKE

-24-
*CLASS ACTION COMPLAINT*

hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages." (Cal.Code Regs., Title 8, Section 11070, subd. (12)(A); Labor Code Section 226.7, subd. (a).)

83.   "If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the rest period is not provided." (Cal.Code Regs., Title 8, § 11070, subd. (12)(B); Lab.Code, §§ 226.7, subd. (b)).

84.   Labor Code section 226.7, subdivision (b) states: "If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided."

85.   According to an opinion letter from the Department of Industrial Relations Division of Labor Standards Enforcement (DLSE), "The requirement that every employee have a 10-minute rest period every four hours or major fraction thereof is a *state-mandated minimum labor standard*." (*Cicairos v. Summit Logistics, Inc.* (2005) 133 Cal.App.4th 949, 954, 35 Cal.Rptr.3d 243, quoting Dept. of Industrial Relations, DLSE, Opinion Letter 1995.06.02, p. 2, underscoring in original, italics in original, fn. omitted.)

86.   As noted in *Cicairos*, generally, "courts defer to the agency charged with enforcing a regulation when interpreting a regulation because the agency possesses expertise in the subject area." [Citation.]" (*Cicairos v. Summit Logistics, Inc., supra,* 133 Cal.App.4th at p. 958, 35 Cal.Rptr.3d 243.) **Moreover,** California Labor Code Section 512 (a) reads as follows:

> An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer may not employ an

KNAPP, PETERSEN & CLARKE

-25-
*CLASS ACTION COMPLAINT*

employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

87.　During all times relevant herein, Defendants unlawfully required Plaintiffs and Class members to work for more than four (4) hours at a time without allowing Plaintiffs and Class members a ten (10) minute break period and for more than five hours without giving employees a meal break period.

88.　California Labor Code § 226.7 requires an employer to pay an additional hour (1) of premium pay compensation for each rest period the employer fails to provide, and for each meal period the employer fails to provide. Employees are entitled to a ten (10) minute rest break for every four (4) hours worked or major fraction thereof, and a meal period after working for five hours. Plaintiffs and Class members consistently worked over four (4) hours per shift, with no rest breaks, and for five or more hours without a meal period.

89.　By failing to provide a rest or meal period without any work or duties for Plaintiffs and members of the Class, Defendants violated the provisions of California Labor Code Section 226.7.

90.　Therefore, Plaintiffs and Class members pray for the relief provided by California Labor Code Section 226.7 in the amount of an additional one (1) hour of pay at the employee's regular rate of compensation for each day that the meal or rest periods were not provided.

91.　In addition, Plaintiffs and Class members demand all penalties provided for by the Labor Code or Industrial Wage Commission Orders, with the exception of those penalties provided for under Labor Code Section 2699(F)(2) for each employee for each payroll period during the period of time of three years prior to the filing of this lawsuit, up to and including the entry of judgment in this action.

## SIXTH CAUSE OF ACTION

( Violations of Section 12 of the Applicable IWC Orders

KNAPP, PETERSEN & CLARKE

-26-

and Labor Code § 558 Against All Defendants).

92.     Plaintiffs hereby incorporate Paragraphs 1-91, inclusive, of this Complaint, and reallege said allegations as if fully set forth herein.

93.     By failing to provide rest or meal periods to Plaintiffs and Class members Defendants violated the provisions of Section 12 of the Order of the Industrial Wage Commission regulating the hours of work.

94. .    Plaintiffs and Class members pray for the amount of an additional one (1) hour of premium pay at the employee's regular rate of compensation for each day that the meal or rest period is not provided pursuant to Section 12 of order 9 of the Industrial Wage Commission for each class member for the first pay period for which the employee was not given proper breaks, and for each class member for each subsequent pay period for which the employee was not given proper breaks, in addition to all other penalties allowed by California Labor Code § 558, with the exception of those penalties provided for under Labor Code Section 2699 for Class members who terminated employment without being paid the proper payments by Defendants.

95.     Labor Code Section 558 states:

  (a) Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows:
  (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.
  (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.
  (3) Wages recovered pursuant to this section shall be paid to the affected employee.
  (b) If upon inspection or investigation the Labor Commissioner determines that a person had paid or caused to be paid a wage for overtime work in violation of any provision of this chapter, or any provision regulating hours and days of work in any order of the

KNAPP,
PETERSEN
& CLARKE

-27-
*CLASS ACTION COMPLAINT*

Industrial Welfare Commission. the

Labor Commissioner may issue a citation. The procedures for issuing, contesting, and enforcing judgments for citations or civil penalties issued by the Labor Commissioner for a violation of this chapter shall be the same as those set out in Section 1197.1.
(c) The civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law."

96. Therefore, for each initial violation by Defendants, and each of them, Plaintiffs and Class members request (1). Fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages; (2). For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages; and; (3). That the wages recovered pursuant to this section be paid to Plaintiffs and each affected class member employee.

97. Plaintiffs and Class members request Defendants pay the civil penalties provided for in this section, in addition to any other civil or criminal penalty provided by law, with the exception of those penalties provided for under Labor Code Section 2699 pursuant to proof at trial.

## SEVENTH CAUSE OF ACTION

(Waiting Penalties Under California Labor Code § 203 Against All Defendants)

98. Plaintiffs hereby incorporate Paragraphs 1-97, inclusive, of this Complaint, and reallege said allegations as if fully set forth herein.

99. California Labor Code § 203 states in pertinent part as follows:

If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202 and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but wages shall not continue for more than 30 days.

100. Plaintiffs and Class members who terminated employment without being paid the proper payments are entitled to 30 days wages as waiting penalties.

KNAPP,
PETERSEN
& CLARKE

-28-
*CLASS ACTION COMPLAINT*

1    101.   Therefore, Plaintiffs and Class members demand payment of waiting

2    penalties for class members who terminated employment without being paid the proper

3    payments by Defendants.

### EIGHTH CAUSE OF ACTION

5    (California Business & Professions Code § 17200, et seq. Against All Defendants).

6    102.   Plaintiffs hereby incorporate paragraphs 1-101, inclusive, of this Complaint,

7    and reallege said allegations as if fully set forth herein.

8    103.   At all times relevant herein, Defendants violated the above-cited provisions of

9    the California Labor Code and the applicable Industrial Wage Commission Orders.

10   104.   In addition, Defendants have repeatedly misrepresented to the members of the

11   Class that they were exempt from coverage of the above-cited Industrial Wage Commission

12   Orders and/or California laws regarding minimum wage, and overtime compensation for all

13   hours worked, rest periods and unlawful deductions from wages and uniform costs. These

14   representations were false and fraudulent and designed to prevent Plaintiffs and Class

15   members from pursuing their legal remedies.

16   105.   Defendants' conduct described above in this Complaint constitutes an

17   unlawful, unfair and fraudulent business act or practice in violation of the provisions of the

18   California Business & Professions Code § 17200, *et seq.*

19   106.   Therefore, Plaintiffs demand restitution of all sums due and owing to them,

20   including but not limited to all sums due and owing to Plaintiffs and Class members for

21   each of the above causes of action. In addition, Plaintiffs and Class members request

22   injunctive relief to prevent Defendants continuing violations of the wage and hour

23   violations identified in this pleading at Defendants club: SPEAARMINT RHINO, located

24   at: 15411 East Valley Boulevard, City of Industry California, 91746..

### NINTH CAUSE OF ACTION

26   (California Labor Code § 226(a)(2)

27   (Itemized Wage Statements Against All Defendants)

28   107.   Plaintiffs hereby incorporate Paragraphs 1-106 inclusive, of this Complaint,

KNAPP,
PETERSEN
& CLARKE

-29-
*CLASS ACTION COMPLAINT*

1   and reallege said allegations as if fully set forth herein.

2   *Itemized Wage-Statements:*

3      108.   Labor Code section 226. subdivision (a), specifies the form and content of

4   paycheck stubs. The statute directs employers to furnish each employee. at the time wages

5   are paid. a separable statement containing an accurate, dated, itemized account, in indelible

6   writing showing, among other things. the gross and net wages earned. the total hours the

7   employee worked. all deductions. the dates of the pay period. the employee's name and

8   identification number. the employer's name and address. and all applicable hourly rates in

9   effect during the pay period.

10     109.   Labor Code section 226. subdivision (a). reads, "Every employer shall,

11  semimonthly or at the time of each payment of wages. furnish each of his or her employees,

12  either as a detachable part of the check. draft. or voucher paying the employee's wages, or

13  separately when wages are paid by personal check or cash, an accurate itemized statement

14  in writing showing (1) gross wages earned. (2) total hours worked by the employee, except

15  for any employee whose compensation is solely based on a salary and who is exempt from

16  payment of overtime under subdivision (a) of Section 515 or any applicable order of the

17  Industrial Welfare Commission, (3) the number of piece-rate units earned and any

18  applicable piece rate if the employee is paid on a piece-rate basis. (4) all deductions,

19  provided that all deductions made on written orders of the employee may be aggregated and

20  shown as one item. (5) net wages earned. (6) the inclusive dates of the period for which the

21  employee is paid, (7) [the name of the employee]. (8) [the name and address of the

22  employer]. and (9) all applicable hourly rates in effect during the pay period and the

23  corresponding number of hours worked at each hourly rate by the employee. The

24  deductions made from payments of wages shall be recorded in ink or other indelible form.

25  properly dated. showing the month. day. and year. and a copy of the statement or a record

26  of the deductions shall be kept on file by the employer for at least three years at the place of

27  employment or at a central location within the State of California."

28     110.   An employer who knowingly and intentionally violates Labor Code Section

KNAPP,
PETERSEN
& CLARKE

-30-
*CLASS ACTION COMPLAINT*

1   226 is guilty of a misdemeanor and is subject to monetary penalties or imprisonment.

2   (Lab.Code, 226, subd. (e), 226.6.)

3       111.   According to an opinion letter from the DLSE " '[T]he obligation to list the

4   total hours worked during the pay period can only be satisfied by listing the precise, actual

5   number of hours worked.' (Dept. of Industrial Relations, DLSE, Opinion Letter 2002.05.17,

6   p. 3.)' *The failure to list* the precise number of hours worked during the pay period conflicts

7   with the express language of the statute and *stands in the way of the statutory purpose.'*

8   ( *Ibid.*) 'If it is left to the employee to add up the daily hours shown on the time cards or

9   other records so that the employee must perform arithmetic computations to determine the

10   total hours worked during the pay period, the requirements of section 226 would not be

11   met.' ( *Id.* at p. 6.)'( *Cicairos v. Summit Logistics, Inc.*, *supra,* 133 Cal.App.4th at p. 955, 35

12   Cal.Rptr.3d 243, italics added, original italics omitted.)

13       112.   Most important, the Legislature has declared in Labor Code section 219,

14   subdivision (a) that " *no* provision *of this article* [including sections 226 and 226.7] *can in*

15   *any way be contravened or set aside by a private agreement, whether written, oral, or*

16   *implied.*" (Italics added.)

17       113.   At all relevant times herein, Defendants violated California Labor Code §

18   226(a)(2) by not providing any itemized statement(s) showing gross wages earned or total

19   hours worked by Plaintiffs and Class members.

20       114.   Plaintiffs and Class members pray for the greater of actual damages or the

21   civil penalty of fifty dollars ($50) for each aggrieved employee within the Class per pay

22   period for the initial violation and one hundred dollars ($100) for each aggrieved employee

23   within the Class per pay period for each subsequent violation as provided for in California

24   Labor Code § 226, up to a maximum of $4,000.

25       **WHEREFORE**, Plaintiffs, individually and on behalf of a Class of similarly

26   situated persons, demand judgment against Defendants, and each of them as hereinafter set

27   forth:

28       1.   For an order certifying this action as a class action and appointing Plaintiffs

KNAPP,
PETERSEN
& CLARKE

-31-
*CLASS ACTION COMPLAINT*

1  counsel as Counsel for the Class;

2      2.     For payment of all minimum wages on behalf of all employees who worked

3  for Defendants;

4      3.     For expenses pursuant to *California Labor Code* Section 2802, in an amount

5  to be proved at trial;

6      4.     For payment of all overtime compensation and statutory penalties pursuant to

7  *California Labor Code* §§ 203. 218.6, 510. 558, 1197.1, and 1194, on behalf of all

8  employees who worked for Defendants;

9      5.     For Waiting Penalties on behalf of all employees who were terminated or

10  constructively terminated without proper compensation;

11      6.     For restitution of tips and or gratuities collected from Plaintiffs and Class

12  members in violation of *California Labor Code* §§ 212 & 351, and A.B. 2509;

13      7.     For all penalties provided by the *California Labor Code* or Industrial Wage

14  Commission Orders, other than *California Labor Code* § 2699, for each and every separate

15  violation of the *California Labor Code* above for each payroll period, four years from the

16  filing of this lawsuit, up to and including the date of the entry of judgment;

17      8.     For restitution of all unlawful deductions taken from the wages of Plaintiffs

18  and Class members in violation of *California Labor Code* §§ 210, 221, 224, including all

19  drinks fees solicited, sold and paid by Plaintiffs and Class members, in an amount to be

20  ascertained at trial in this matter;

21      9.     For an award of restitution and disgorgement of profits, according to proof,

22  under the *Labor Code* and under *Business and Professions Code* §§ 17200, *et seq.*;

23      10.     For reimbursement for failure to provide and/or reimburse Plaintiffs and Class

24  members for required uniforms;

25      11.     For the greater of actual damages or penalties as provided for in Labor Code

26  Section 226;

27      12.     For relief provided by California Labor code Section 226.7 in the amount of

28  an additional one (1) hour of pay at the employee's regular rate of compensation for each

KNAPP,
PETERSEN
& CLARKE

-32-
*CLASS ACTION COMPLAINT*

1    day that the meal or rest periods were not provided;

2      13.    For pre-judgment interest at the rate of ten percent (10%) per annum up to

3    and including the date of the entry of judgment in this action;

4      14.    For reasonable attorney's fees, pursuant to *Labor Code* §§ 218.5, 226, 1194,

5    *California Code of Civil Procedure* § 1021.5, or pursuant to the Common Fund Theory of

6    Recovery;

7      15.    For injunctive relief;

8      16.    For costs of this suit; and

9      17.    For any other and further relief the court deems just and proper.

10

11    Dated: July 16, 2009           LAW OFFICES OF ROBERT L. STARR

12                     KNAPP, PETERSEN & CLARKE

13

14                   By: _____

15                      ROBERT L. STARR, ESQ.,
                         Attorneys for Plaintiffs VICTORIA

16                        OMLAR, and JASMINE WRIGHT,
                       individually, and on behalf of A Class

17                        of similarly situated individuals

18                 **DEMAND FOR JURY TRIAL**

19

20      Plaintiffs and Class members demand a trial by jury.

21

22    Dated: July 16, 2009      LAW OFFICES OF ROBERT L. STARR

23                     KNAPP, PETERSEN & CLARKE

24

25

26                   By: _____
                       ROBERT L. STARR, ESQ.,

27                        Attorneys for Plaintiffs VICTORIA
                       OMLAR, and JASMINE WRIGHT,

28                        individually, and on behalf of A Class
                       of similarly situated individuals

KNAPP,
PETERSEN
& CLARKE

-33-
*CLASS ACTION COMPLAINT*

# EXHIBIT 3

### NOTICE OF PENDENCY AND SETTLEMENT OF
### CLASS ACTION; SETTLEMENT
### HEARING; AND EXCLUSION PROCEDURES

Edward Baird v. J.C. Penney Corporation, Inc.

Ventura County Superior Court, Case No. 230226

TO:   All current and former employees of J.C. Penney Corporation, Inc. ("J.C. Penney") who were employed by J.C. Penney in California in a Department Manager, Senior Department Manager, Sales Support Manager or Sales Manager position at any time from October 28, 2000 through April 4, 2006 ("Plaintiffs").

\*   \*   \*   \*

THIS NOTICE AFFECTS YOUR RIGHTS.  PLEASE READ THIS NOTICE CAREFULLY.

## I.
## INTRODUCTION

If you were employed by J.C. Penney in California in a Department Manager, Senior Department Manager, Sales Support Manager or Sales Manager position at any time from October 28, 2000 through April 4, 2006 (the "Class Period"), you are a member of the proposed settlement class in this class action lawsuit (the "Action") and your rights will be affected as set forth in the proposed settlement described in this Notice (the "Settlement").  On April 4, 2006, the Court preliminarily approved the Settlement and conditionally certified a settlement class.  You have received this Notice because J.C. Penney's records show you were a member of the class of employees employed by J.C. Penney in California in a Department Manager, Senior Department Manager, Sales Support Manager or Sales Manager position at some time during the Class Period.

## II.
## NATURE OF THE ACTION

On October 28, 2004, a complaint was filed by Edward Baird ("Baird" or "Named Plaintiff") in the Ventura County Superior Court.  The Named Plaintiff generally alleges that J.C. Penney misclassified the Plaintiffs as exempt from overtime requirements, and therefore failed to pay Plaintiffs for all overtime to which they were entitled under California law and failed to provide rest periods under California law.  Named Plaintiff also alleges J.C. Penney misclassified Plaintiffs for purposes of federal law and failed to pay Plaintiffs overtime to which they were entitled under the Fair Labor Standards Act ("FLSA"), the federal law that regulates the payment of wages.  The Named Plaintiff further alleges these alleged practices constituted unfair competition, and that J.C. Penney owes waiting time penalties associated with these allegations (collectively, the "Claims").

## III.
## POSITIONS OF THE PARTIES

The Named Plaintiff's contentions are summarized above.

J.C. Penney has denied and continues to deny each of the claims and contentions alleged by Plaintiffs in the Action.  J.C. Penney has repeatedly asserted and continues to assert defenses thereto, and has expressly denied and continues to deny any wrongdoing or legal liability arising out of any of the facts or conduct alleged in the Action.  J.C. Penney also has denied and continues to deny, inter alia, the allegations that the Plaintiffs have suffered damage; that J.C. Penney misclassified any of the Plaintiffs as exempt from overtime requirements; that J.C. Penney failed to pay any of the Plaintiffs for all overtime to which they were entitled; that J.C. Penney violated the law regarding meal and rest periods, that J.C. Penney engaged in any unlawful, unfair or fraudulent business practices; that J.C. Penney owes any penalties to Plaintiffs; or that the Plaintiffs were harmed by the conduct alleged in the Action.  Neither the Settlement discussed here, nor any document referred to herein, nor any action taken to carry out the Settlement, is, shall be, may be construed as, or may be used as an admission, concession or indication by or against J.C. Penney of any fault, wrongdoing or liability whatsoever.

Counsel for the Named Plaintiff and the Plaintiffs ("Class Counsel") have extensively investigated and researched the facts and circumstances underlying the issues raised in the Action, and the law applicable thereto.  Class Counsel recognizes the expense and length of continued proceedings necessary to continue the litigation against J.C. Penney through trial and through any possible appeals.  Class Counsel has also taken into account the uncertainty and the risk of the outcome of further litigation, and the difficulties and delays inherent in such litigation.

Class Counsel is also aware of the burdens of proof necessary to establish liability for the Claims, of J.C. Penney's defenses thereto, and of the difficulties in establishing damages for the Plaintiffs.  Class Counsel also has taken into account the extensive settlement negotiations conducted by Plaintiffs and J.C. Penney (the "Parties").  Based on the foregoing, Class Counsel believes the proposed Settlement is fair, adequate and reasonable and in the best interests of the Plaintiffs.

1

J.C. Penney is also aware of the inherent risk of any litigation, and has likewise concluded that the further defense of this litigation would be protracted and expensive for all Parties. J.C. Penney has, therefore, agreed to settle this Action in the manner and upon the terms set forth in the proposed Settlement, to put to rest all claims that are or could have been asserted against it in the Action.

For purposes of the Settlement, the Court has certified a Class consisting of all current and former J.C. Penney employees who were employed by J.C. Penney in California in a Department Manager, Senior Department Manager, Sales Support Manager or Sales Manager position from October 28, 2000 to April 4, 2006.

### IV.
### THE SETTLEMENT

The following is only a summary of the provisions of the proposed Settlement between the Named Plaintiff, the Plaintiffs and J.C. Penney. The specific and complete terms of the proposed Settlement are described in the Stipulation and Settlement Agreement of Class Action Claims ("Settlement Agreement"), a copy of which is available for your review as set forth at the end of this Notice.

J.C. Penney shall make the following Settlement Payments: (1) Settlement Awards to the Settlement Class Members; (2) a Fees Award to Class Counsel; (3) an Incentive Award to Baird; and (4) costs of administration. The Fees Award, Incentive Award and costs of administration are explained in Section VI below.

As explained above, all current and former employees of J.C. Penney who were employed by J.C. Penney in California in a Department Manager, Senior Department Manager, Sales Support Manager or Sales Manager position from October 28, 2000 to April 4, 2006 are defined as "Plaintiffs." All Plaintiffs are receiving this Notice. All Plaintiffs who do not request to be excluded from the Settlement as set forth in Section VIII below will be "Class Members." As a Class Member, if you wish to participate in the monetary recovery, you must sign and return the enclosed Claim Form/FLSA Consent Form as set forth below in Section V. You will then be a "Settlement Class Member." J.C. Penney has agreed to make available a maximum of $2,126,667 for distribution to, or for the benefit of, Settlement Class Members. Each Settlement Class Member will receive payment based on the number of weeks the Settlement Class Member worked for J.C. Penney in California during the Class Period. Each Settlement Class Member's gross payment is called his or her "Gross Settlement Amount." Your Gross Settlement Amount will be approximately $▒▒▒▒▒▒▒. Fifty percent of each Settlement Class Member's Gross Settlement Amount will be considered wages, and fifty percent will be considered miscellaneous income. From the fifty percent considered wages, payroll deductions will be made, for state and federal withholding taxes and any other applicable payroll deductions owed by J.C. Penney and the Settlement Class Member as a result of the payment. The amount remaining after these deductions will be the Settlement Class Member's "Net Settlement Amount." The Net Settlement Amount that will be paid to each Settlement Class Member is that Settlement Class Member's "Settlement Award." The Settlement Awards will be paid within 10 days after the Settlement becomes fully final and effective (the "Effective Date" as defined in the Settlement Agreement).

### V.
### CLAIM PROCEDURE FOR MONETARY RECOVERY/FLSA
### CONSENT PROCEDURE

A.      The Settlement of this action includes claims under both California state law and federal law. All Plaintiffs receiving this Notice will be bound by the Settlement as to their state law claims unless they request exclusion as set forth below in Section VIII. However, only Plaintiffs who complete, sign and return the enclosed Claim Form/FLSA Consent Form will become Settlement Class Members and receive payment. Federal law provides that Plaintiffs will not be bound by the Settlement of this action as to their federal claims unless they complete the enclosed Claim Form/FLSA Consent Form. This means that when you complete, sign and return the Claim Form/FLSA Consent Form, you are doing two things: (1) requesting a monetary award and (2) consenting to join the federal action and to be represented by the Named Plaintiff and his counsel. You therefore have three options:

- If you wish to receive a Settlement Award, you must complete, sign and return the Claim Form/FLSA Consent Form as outlined below in subsection B. This will also indicate your consent to join the FLSA portion of the action. You will be bound by the Settlement as to both your state and federal claims.

- If you do not return the Claim Form/FLSA Consent Form or request exclusion, you will be bound by the Settlement as to your state claims but not as to your federal claims, and you will not receive a Settlement Award.

- If you wish to be excluded from the Settlement, you must follow the procedures outlined below in Section VIII. You will not be bound by the Settlement as to either your state or federal claims, and you will not receive a Settlement Award.

2

B.     As a Class Member, if you wish to receive a recovery and consent to join the FLSA action, you must complete, sign and return in a proper and timely fashion the Claim Form/FLSA Consent Form to Desmond, Marcello and Amster ("Claims Administrator"), located at 6060 Center Drive, Suite 825, Los Angeles, CA 90045 via first class U.S. mail or equivalent, postage paid, postmarked on or before June 3, 2006.  Any Claim Form/FLSA Consent Form that is not submitted by first class mail or equivalent, is postmarked after the applicable date, is not completely and legibly filled out, is not addressed to the proper address, or is not signed by the Class Member, will not constitute a valid claim and will be denied unless otherwise ordered by the Court.

The Claims Administrator shall review each Claim Form/FLSA Consent Form received and shall verify each form to reasonably ensure its validity and accuracy as may be reasonably necessary.

Each Class Member who submits a valid Claim Form/FLSA Consent Form shall be paid by check.  The checks shall remain valid and negotiable for ninety (90) days from issuance and may thereafter automatically be canceled if not cashed.

## VI.
## CLASS COUNSEL'S FEES AWARD, CLASS REPRESENTATIVE
## INCENTIVE AWARD AND CLAIMS
## ADMINISTRATION EXPENSES

As part of the preliminary approval of the Settlement, Anticouni & Associates ("Class Counsel") requested attorneys' fees and costs of $1,083,333 (the "Fees Award"); the Court will determine whether this request is reasonable at the Settlement Hearing discussed below in Section IX.  Class Counsel shall not be permitted to petition the Court for any additional payments for fees, costs or interest and the award shall be for all claims for attorneys' fees and costs past, present and future incurred in the Action. The Fees Award shall be paid by J.C. Penney.  As part of the Settlement, you will not be required to pay Class Counsel for their representation of you in the Action.

As part of the preliminary approval of the Settlement, the Court has preliminarily approved an Incentive Award of $15,000 to Baird for his time and effort spent pursuing this Action to be paid by J.C. Penney.

Expenses of the administration of this Settlement will be paid by J.C. Penney.

## VII.
## BINDING EFFECT/RELEASE OF CLAIMS

### A.   Release Of Claims Affecting All Class Members

All Class Members, *i.e.*, all Plaintiffs who have not validly requested exclusion, will be bound by the terms of the proposed Settlement with regard to their state law claims if it is approved and if the Final Judgment of the Court dismissing the Action is entered and becomes final.  If the proposed Settlement is approved, all Class Members will have released the "Released Parties" from the "Released Claims" as defined below and will be permanently barred from suing or otherwise making a claim against any of the Released Parties that is in any way related to the Released Claims.  This is more completely set forth as follows:

Release As To All Class Members.  As of the Effective Date, the Class Members, including the Named Plaintiff, release J.C. Penney and each of its past, present and future officers, directors, shareholders, employees, agents, principals, heirs, representatives, accountants, auditors, attorneys, consultants, insurers and reinsurers, and its and their respective successors and predecessors in interest, subsidiaries, affiliates, parents and each of their company-sponsored employee benefit plans and all of their respective officers, directors, employees, administrators, fiduciaries, trustees and agents (the "Released Parties"), from the "Released Claims."  For purposes of this Agreement, the "Released Claims" are defined as:

> all claims, demands, rights, liabilities, and causes of action of every nature and description whatsoever, known or unknown, asserted or that might have been asserted, whether in tort, contract, or for violation of any state or federal constitution, statute, rule or regulation, including state wage and hour laws, whether for economic damages, non-economic damages, restitution, penalties or liquidated damages, arising out of, relating to, or in connection with: (1) any and all facts, transactions, events, policies, occurrences, acts, disclosures, statements, omissions or failures to act, which are or could be the basis of claims that J.C. Penney failed to compensate Plaintiffs for all hours worked in accordance with California law, including claims: (a) that J.C. Penney did not pay the Plaintiffs all amounts due for work that was performed by the Plaintiffs for J.C. Penney, including but not limited to overtime work and/or off-the-clock work; (b) that J.C. Penney did not provide Plaintiffs all meal periods and/or rest breaks required by any applicable laws; and/or (c) that J.C. Penney owes wages, commissions, penalties (specifically including but not limited to waiting time penalties and meal/rest period

3

penalties), interest, attorneys' fees or other damages of any kind based on a failure to comply with any state wage and hour laws, at any times on or before the last day of the Class Period (whether based on California state wage and hour law, contract, or otherwise); and/or (2) the causes of action asserted in the Class Action, including any and all claims for alleged failure to pay overtime and/or to provide rest breaks and, as related to the foregoing, for alleged unlawful, unfair and/or fraudulent business practices under California Business and Professions Code § 17200, et seq.

The Released Claims include any unknown claims that the Class Members do not know or suspect to exist in their favor at the time of the release, which, if known by them, might have affected their settlement with, and release of, the Released Parties or might have affected their decision not to object to this Settlement.  With respect to the Released Claims, the Class Members stipulate and agree that, upon the Effective Date, the Class Members shall be deemed to have, and by operation of the Final Judgment shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, or any other similar provision under federal or state law, which Section provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The Class Members may hereafter discover facts in addition to or different from those they now know or believe to be true with respect to the subject matter of the Released Claims, but upon the Effective Date, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever settled and released any and all of the Released Claims, whether known or unknown, suspected or unsuspected, contingent or non-contingent, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.  Nothing herein shall be construed to release any claims not within the scope of "Released Claims" as defined herein.

The Class Members agree not to sue or otherwise make a claim against any of the Released Parties that is in any way related to the Released Claims.

**B. Release Of Claims Affecting Only Class Members Who Return A Claim Form/FLSA Consent Form**

All Settlement Class Members, *i.e.*, all Plaintiffs who have submitted a valid Claim Form/FLSA Consent Form, will be bound by the terms of the proposed Settlement with regard to their federal law claims if it is approved and if the Final Judgment of the Court dismissing the Action is entered and becomes final.  If the proposed Settlement is approved, all Settlement Class Members will have released the "Released Parties" from the "Released Federal Claims" as defined below and will be permanently barred from suing or otherwise making a claim against any of the Released Parties that is in any way related to the Released Federal Claims.  This is more completely set forth as follows:

> As of the Effective Date (as defined in the Settlement Agreement), all claims, demands, rights, liabilities, and causes of action of every nature and description whatsoever, known or unknown, asserted or that might have been asserted, whether in tort, contract, or for violation of any state or federal constitution, statute, rule or regulation, including federal wage and hour laws, whether for economic damages, non-economic damages, restitution, penalties or liquidated damages, arising out of, relating to, or in connection with: (1) any and all facts, transactions, events, policies, occurrences, acts, disclosures, statements, omissions or failures to act, which are or could be the basis of claims that J.C. Penney failed to compensate Plaintiffs for all hours worked in accordance with federal law, including claims: (a) that J.C. Penney did not pay the Plaintiffs all amounts due for work that was performed by the Plaintiffs for J.C. Penney, including but not limited to overtime work and/or off-the-clock work; and/or (b) that J.C. Penney owes wages, commissions, penalties, interest, attorneys' fees or other damages of any kind based on a failure to comply with any federal wage and hour laws, at any times on or before the last day of the Class Period (whether based on federal wage and hour law, contract, or otherwise); and/or (2) the causes of action asserted in the Class Action, including any and all claims for alleged failure to pay overtime.

The Released Federal Claims include any unknown claims that the Settlement Class Members do not know or suspect to exist in their favor at the time of the release, which, if known by them, might have affected their settlement with, and release of, the Released Parties or might have affected their decision not to object to this Settlement.  With respect to the

4

Released Federal Claims, the Settlement Class Members stipulate and agree that, upon the Effective Date, the Settlement Class Members shall be deemed to have, and by operation of the Final Judgment shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, or any other similar provision under federal or state law, which Section provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

The Settlement Class Members may hereafter discover facts in addition to or different from those they now know or believe to be true with respect to the subject matter of the Released Federal Claims, but upon the Effective Date, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever settled and released any and all of the Released Federal Claims, whether known or unknown, suspected or unsuspected, contingent or non-contingent, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. Nothing herein shall be construed to release any claims not within the scope of "Released Federal Claims" as defined herein.

The Settlement Class Members agree not to sue or otherwise make a claim against any of the Released Parties that is in any way related to the Released Federal Claims.

## VIII.
## PROCEDURE FOR EXCLUSION

Plaintiffs may exclude themselves from the Settlement as to their state law claims by mailing to Desmond, Marcello and Amster ("Claims Administrator"), located at 6060 Center Drive, Suite 825, Los Angeles, CA 90045 via first class U.S. mail or equivalent, postage paid, postmarked on or before June 3, 2006, a written statement expressing their desire to be excluded from the Baird et. al. v. J.C. Penney, Inc. et. al. litigation Settlement as to their state law claims in the litigation. If you wish to request exclusion from the Settlement as to your state law claims in this class action lawsuit, your written statement must include your name (and former names, if any), current address, telephone number, the last four digits of your social security number, and the dates of your employment by J.C. Penney. In addition, it must be postmarked on or before June 3, 2006. Requests for exclusion that do not include all required information, or that are not submitted on a timely basis, will be deemed null, void and ineffective. Persons who are eligible to and do submit valid and timely requests for exclusion from the Settlement as to their state law claims will not receive Settlement Awards, and will not be bound by the terms of the proposed Settlement as to their state law claims, if it is approved, or the Final Judgment in this Action.

## IX.
## SETTLEMENT HEARING/OBJECTIONS TO THE PROPOSED SETTLEMENT

A hearing (the "Settlement Hearing") will be held before the Honorable Harry J. Walsh on July 24, 2006 at 9:00 a.m. at the Superior Court of California for the County of Ventura, 800 S. Victoria Avenue, Ventura, CA 93009 (the "Court"), to determine whether the proposed Settlement of the Action is fair, adequate and reasonable and should be approved by the Court and whether the Action should be dismissed on the merits with prejudice. The hearing may be adjourned by the Court from time to time as the Court may without further notice direct.

Any Class Member may appear in person or through counsel at the Settlement Hearing and be heard as to why the proposed Settlement of the Action should not be approved as fair, adequate and reasonable, or why a Final Judgment dismissing the Action against J.C. Penney with prejudice should or should not be entered. No Class Member, however, shall be heard or entitled to object and no papers or briefs submitted by any such person shall be received or considered by the Court unless written notice of intention to appear at the Settlement Hearing, together with copies of all papers and briefs proposed to be submitted to the Court at the Settlement Hearing, shall have been filed with the Court and have been served personally on or before June 5, 2006, or if by mail then postmarked no later than June 3, 2006, upon all of the following:

| | |
|---|---|
| Bruce N. Anticouni | Julie A. Dunne |
| Maureen C. O'Hara | Jennifer B. Zargarof |
| Garry M. Tetalman | Sheppard, Mullin, Richter & Hampton LLP |
| Anticouni & Associates APC | 333 South Hope Street, 48th Floor |
| 23 East De la Guerra Street | Los Angeles, California  90071-1448 |
| Santa Barbara, California 93101 | |

5

Any member of the Settlement Class who does not make and serve his or her written objections in the manner provided above shall be deemed to have waived such objections and shall be foreclosed from making any objections (by appeal or otherwise) to the proposed Settlement.

Any Class Member who is satisfied with the proposed Settlement need not appear at the Settlement Hearing.

## X.
## EXAMINATION OF PAPERS AND INQUIRIES

The foregoing is only a summary of the Action and the proposed Settlement and does not purport to be comprehensive.  For a more detailed statement of the matters involved in the Action and the proposed Settlement, you may refer to the pleadings, the Stipulation and Settlement Agreement of Class Action Claims, and other papers filed in the Action, which may be inspected at the Office of the Clerk of the Superior Court of California for the County of Ventura, 800 S. Victoria Ave., Ventura, CA 93009, during regular business hours of each Court day.

All inquiries by Plaintiffs regarding this Notice and/or the Settlement should be directed to counsel for the Settlement Class, Bruce N. Anticouni and Garry M. Tetalman of Anticouni & Associates, 23 East De la Guerra Street, Santa Barbara, California 93101, (805) 962-0467.

PLEASE DO NOT CONTACT THE CLERK OF THE COURT, THE JUDGE, J.C. PENNEY, OR J.C. PENNEY'S ATTORNEYS WITH INQUIRIES.

Dated: April 19, 2006

_____

HARRY J. WALSH

JUDGE, SUPERIOR COURT OF CALIFORNIA FOR THE COUNTY OF VENTURA

6

# EXHIBIT 4

## Kim Zeldin

| | |
|---|---|
| **From:** | Peter E. Garrell |
| **Sent:** | Wednesday, January 04, 2012 10:15 AM |
| **To:** | 'Caleb Marker' |
| **Cc:** | 'Christopher P. Ridout'; 'Hart L. Robinovitch Esq. (Hart.Robinovitch@zimmreed.com)'; 'Stephen M. Harris'; 'robert@starrlawmail.com'; 'Jeff Cohon'; 'ryan@murraysinclairlaw.com'; 'robert@manuwal.com'; 'murray@murraysinclairlaw.com'; Kim Zeldin; 'ludden@ljulaw.com'; 'Garry Tetalman' |
| **Subject:** | RE: Trauth v. SR - Settlement Communication |

Caleb --

Please allow this e-mail to confirm that pursuant to the Second Amendment to Stipulation and Settlement Agreement, the confirmatory discovery deposition of Juan Rivera, the IT representative from the Spearmint Rhino Norco office will take place in my office (address below) on Thursday, January 5, 2012. The deposition will immediately follow the deposition of Dena Hernandez which will commence at 10:00 a.m.

You have confirmed that you will make arrangements for a court reporter.

To my knowledge the only other attorneys attending will be Steve Harris and Jeff Cohon, along with one of his colleagues in the event the depositions go longer than Mr.. Cohon's availability but if anyone else copied on this e-mail intends on attending, please let Caleb and I know in advance.  If you do not respond to us, we will assume you are not attending.

Please let me know if you have any questions.

Best, Peter


**Peter E. Garrell, Esq.**



1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024.3503
main: 310.500.3500 | dir: 310.500.3576 | fax: 310.500.3501
pgarrell@linerlaw.com
www.linerlaw.com

**Privileged and Confidential** information may be contained in this message. If you are not the addressee indicated in this message (or Responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer does not consent to Internet email for messages of this kind. Opinions, conclusions and other information in this message that do not relate to the official business of my firm shall be understood as neither given nor endorsed by it. **IRS Circular 230 Disclosure:** To ensure compliance with Treasury Department Regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this communication was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matter addressed herein.

***PLEASE CONSIDER THE ENVIRONMENT BEFORE PRINTING THIS EMAIL***

**Kim Zeldin**

| | |
|---|---|
| **From:** | Peter E. Garrell |
| **Sent:** | Friday, January 13, 2012 4:52 PM |
| **To:** | 'Caleb Marker' |
| **Cc:** | 'Christopher P. Ridout'; 'Hart L. Robinovitch Esq. (Hart.Robinovitch@zimmreed.com)'; 'Stephen M. Harris'; 'robert@starrlawmail.com'; 'Jeff Cohon'; 'ryan@murraysinclairlaw.com'; 'robert@manuwal.com'; 'murray@murraysinclairlaw.com'; Kim Zeldin; 'Dawn Dudas'; 'ludden@ljulaw.com'; 'Garry Tetalman' |

**Subject:** Trauth v. SR - Settlement Communication

Caleb --

Please allow this e-mail to confirm that pursuant to the Second Amendment to Stipulation and Settlement Agreement, the confirmatory discovery deposition(s) of the Gig Computer representative(s)  who are knowledgeable concerning the ClubTrax database will take place on Thursday, January 19, 201 21 commencing at 11:00 a.m. (one deposition to follow the other , if necessary ) at the following location:

> Glaser Weil Fink Jacobs Howard Avchen & Shapiro LLP
>
> 3763 Howard Hughes Parkway, Suite 300
> Las Vegas, Nevada 89169
> Telephone:  702/650-7900

Our contact at the Glaser Weil firm in Las Vegas is Dawn Dudas and her direct line is 702/650-7946 in the event of emergency.  Thank you Dawn for assisting us.

I will leave it up to you to make arrangements for a court reporter but, in the event you need names of any court reporting agencies Ms. Dudas has offered to provide names for us.

To my knowledge the only other attorney attending is Jeff Cohon but if anyone else copied on this e-mail intends on attending, please let Caleb and I know in advance.  If you do not respond to us, we will assume you are **not** attending.

Please let me know if you have any questions.

Best, Peter

**Peter E. Garrell, Esq.**



LINER GRODE STEIN
YANKELEVITZ SUNSHINE
REGENSTREIF + TAYLOR

1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024.3503
main: 310.500.3500  |  dir: 310.500.3576  |  fax: 310.500.3501
pgarrell@linerlaw.com
www.linerlaw.com

**Privileged and Confidential** information may be contained in this message. If you are not the addressee indicated in this message (or Responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer does not consent to Internet email for messages of this kind. Opinions, conclusions and other information in this message that do not relate to the official business of my firm shall be understood as neither given nor endorsed by it. **IRS Circular 230 Disclosure:** To ensure compliance with Treasury Department Regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this communication was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matter addressed herein.

5/31/2012

***PLEASE CONSIDER THE ENVIRONMENT BEFORE PRINTING THIS EMAIL***

**From:** Peter E. Garrell
**Sent:** Friday, December 09, 2011 5:46 PM
**To:** 'Caleb Marker'
**Cc:** Christopher P. Ridout ; Hart L. Robinovitch Esq. (Hart.Robinovitch@zimmreed.com) ; 'Stephen M. Harris' ; robert@starrlawmail.com ; 'Jeff Cohon' ; ryan@murraysinclairlaw.com ; robert@manuwal.com ; 'murray@murraysinclairlaw.com' ; Kim Zeldin ; 'Dawn Dudas' ; ludden@ljulaw.com ; 'Garry Tetalman'
**Subject:** Trauth v. SR - Settlement Communication

Caleb --

Please allow this e-mail to confirm that pursuant to the Second Amendment to Stipulation and Settlement Agreement, the confirmatory discovery depositions of the K-Kel/Spearmint Rhino Las Vegas representatives, Sharon Rosen (Office Manager) and Charlie De la Paz (Club Manager) will take place on Monday, December 19, 2011 commencing at 10:00 a.m. (one deposition to follow the other) at the following location:

> Glaser Weil Fink Jacobs Howard Avchen & Shapiro LLP
> 3763 Howard Hughes Parkway, Suite 300
> Las Vegas, Nevada 89169
> Telephone:  702/650-7900

Our contact at the Glaser Weil firm in Las Vegas is Dawn Dudas and her direct line is 702/650-7946 in the event of emergency.  Thank you Dawn for assisting us.

I am still trying to make the arrangements for the deposition of the ClubTrax representative and hope to confirm that early next week but, in any event, we will go forward with the above club representatives and if necessary, set the ClubTrax deposition for a different time - although we hope to accomplish them all on the 19th.

I will leave it up to you to make arrangements for a court reporter but, in the event you need names of any court reporting agencies Ms. Dudas has offered to provide names for us.

To my knowledge the only other attorney attending is Jeff Cohon but if anyone else copied on this e-mail intends on attending, please let Caleb and I know in advance.  If you do not respond to us, we will assume you are **not** attending.

Please let me know if you have any questions.

Best, Peter


**Peter E. Garrell, Esq.**



1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024.3503
main: 310.500.3500  |  dir: 310.500.3576  |  fax: 310.500.3501
pgarrell@linerlaw.com
www.linerlaw.com

**Privileged and Confidential** information may be contained in this message. If you are not the addressee indicated in this message (or Responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer does not consent to Internet email for messages of this kind. Opinions, conclusions and other information in this message that do not relate to the official business of my firm shall be understood as neither given nor endorsed by it. **IRS Circular 230 Disclosure:** To ensure compliance with Treasury Department Regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this communication was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matter addressed herein.

**\*\*\*PLEASE CONSIDER THE ENVIRONMENT BEFORE PRINTING THIS EMAIL\*\*\***